JONATHAN L. SEGAL (State Bar No. 264238)
  jonathansegal@dwt.com
SAMANTHA LACHMAN (State Bar No. 331969)
  samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

ABIGAIL EVERDELL (*Pro hac vice*)
  abigaileverdell@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone:  (212) 489-8230
Fax:  (212) 379-5244

Attorneys for Defendants
ANDREW CALLAGHAN, CHANNEL 5 LLC,
EVAN GILBERT-KATZ, AND NICOLAS
MOSHER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOINER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW CALLAGHAN, an Individual; CHANNEL 5 LLC, a Washington Limited Liability Company; EVAN GILBERT-KATZ, an Individual; NICOLAS MOSHER, an Individual; KELLY SCOTT JOHNSON, an Individual; and DOES 1 through 200, Inclusive,<br><br>Defendant. | Case No. 8:24-cv-01160-CBM-KS<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>[Notice Of Motion And C5 Defendants' Special Motion to Strike; Request For Judicial Notice; Declaration Of Abigail Everdell With Exhibits A-D; Notice Of Lodging; Proposed Orders Filed Concurrently]<br><br>Date:       October 15, 2024<br>Time:      10:00 a.m.<br>Dept.:      8D<br><br>Action Filed:  May 30, 2024 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 15, 2024 at 10:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 8D before the Honorable Consuelo B. Marshall of the United States District Court for the Central District of California, located at 350 W. 1st Street, Los Angeles, California 90012, defendants Andrew Callaghan, Channel 5 LLC, Evan Gilbert-Katz, and Nicolas Mosher (the "C5 Defendants") will and hereby do move this Court for an order dismissing with prejudice the Complaint filed by plaintiff William Joiner ("Plaintiff") for failure to state a claim under Fed. R. Civ. P. 12(b)(6) for the following reasons:

1.     Plaintiff's first claim for violation of the federal Wiretap Act fails because Plaintiff has not alleged that the C5 Defendants intercepted any confidential communications.

2.     Plaintiff's second claim for violation of the federal Electronic Communications Privacy Act fails for the same reasons as his Wiretap Act claim.

3.     Plaintiff's third claim for violation of California Civil Code 1708.7 fails because the claim is based on constitutionally-protected activity, which is excluded from the statute, and Plaintiff has not alleged the requisite pattern of conduct under that statute, or provided independent corroborating evidence thereof.

4.     Plaintiff's fourth claim for an injunction under California Code of Civil Procedure 527.6 fails because the claim is based on constitutionally protected speech and Plaintiff has not pled qualifying harassing conduct or that the C5 Defendants harassed him within the meaning of this statute.

5.     Plaintiff's fifth claim for violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 632, 637.2, fails because Plaintiff has not alleged that the C5 Defendants recorded any confidential communications.

6.     Plaintiff's seventh claim for intentional infliction of emotional distress fails because it is duplicative of his defamation claim, he fails to allege sufficiently outrageous conduct, and he fails to allege serious emotional distress.

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

i

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

7.     Plaintiff's eighth claim for negligent infliction of emotional distress ("NIED") fails because he fails to plead that the C5 Defendants owed or breached any duty, engaged in sufficiently outrageous conduct, or caused him serious emotional distress.

8.     Plaintiff's ninth and eleventh claims for common law invasion of privacy (intrusion upon seclusion) fail because he has not sufficiently alleged a highly offensive, intentional intrusion into a place or places where he had a reasonable expectation of privacy.

9.     Plaintiff's tenth claim for false light invasion of privacy fails because he fails to identify the specific statements at issue, the statements concerning him in the Documentary and Trailer are protected opinion, and because the Documentary's account is protected by California's statutory fair report privilege.

10.     Plaintiff's twelfth claim for violation of California Business and Professions Code 17200, *et seq*. fails because it is barred by the First Amendment and Plaintiff fails to allege facts required to support any theory of liability.

For each of these reasons, the Court should grant Defendants' motion to dismiss Plaintiff's claims with prejudice.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place telephonically on July 26, 2024.  Declaration of Abigail Everdell ("Everdell Decl.") ¶ 10.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Request for Judicial Notice ("RJN"), the Declaration of Abigail Everdell, all pleadings, files, and records before this Court and arguments that may be received at the hearing on this Motion.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  DATED: August 2, 2024

DAVIS WRIGHT TREMAINE LLP
JONATHAN L. SEGAL
ABIGAIL EVERDELL
SAMANTHA LACHMAN


By: */s/ Jonathan Segal*
Jonathan Segal
Attorneys for Defendants
ANDREW CALLAGHAN, CHANNEL
5 LLC, EVAN GILBERT-KATZ, AND
NICOLAS MOSHER

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................ 1

II.    STATEMENT OF FACTS ................................................................. 3

    A.     The Parties ............................................................................. 3

    B.     The Documentary ................................................................... 3

    C.     The Trailer .............................................................................. 6

    D.     This Lawsuit ........................................................................... 6

III.   LEGAL STANDARD ....................................................................... 7

IV.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW ........................ 8

    A.     Plaintiff Cannot State a Claim Under the Wiretap Act (Claim 1), the ECPA (Claim 2), or CIPA (Claim 5) ............................................. 8

    B.     Plaintiff Cannot State a Claim Under California Civil Code § 1708 (Claim 3).................................................................... 10

    C.     Plaintiff Fails to Show Entitlement to an Injunction Under California Code of Civil Procedure § 527.6 (Claim 4) ..................... 11

    D.     Plaintiff's False Light Claim Fails (Claim 10).................................. 12

        1.     Plaintiff Fails to Plead Specific Statements ........................... 13

        2.     Johnson's Claims About Plaintiff Are Protected Opinion ....... 13

        3.     The Account of Johnson's Claims Is A Fair Report ............... 16

    E.     Plaintiff Fails to Plead Intentional or Negligent Infliction of Emotional Distress (Claims 7 and 8)................................................. 17

    F.     Plaintiff Fails to Plead Common Law Invasion of Privacy or Intrusion Upon Seclusion (Claims 9 and 11) ................................. 18

    G.     Plaintiff Fails to Plead a Claim Under the California Business and Professions Code § 17200 (Claim 12)........................................ 20

V.     CONCLUSION ................................................................................. 21

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aisenson v. Am. Broad. Co.*,
    220 Cal. App. 3d 146 (1990) .................................................................... 19, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 7

*Ault v. Hustler Mag., Inc.*,
    860 F.2d 877 (9th Cir. 1988) ................................................................... 19

*Bassam v. Bank of America*,
    2015 WL 4127745 (C.D. Cal. July 8, 2015) ............................................ 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................. 7

*Blatty v. New York Times Co.*,
    42 Cal. 3d 1033 (1986) ............................................................................ 17

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ..................................................... 9

*Brown v. Elec. Arts, Inc.*,
    724 F.3d 1235 (9th Cir. 2013) ................................................................. 7

*Carrese v. Yes Online*,
    2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) .......................................... 9

*Comstock v. Aber*,
    212 Cal. App. 4th 931 (2012) .................................................................. 17

*Doe No. 1 v. Wynn Resorts, Ltd.*,
    2023 WL 1782439 (D. Nev. Feb. 3, 2023) ............................................... 20

*Dora v. Frontline Video, Inc.*,
    15 Cal. App. 4th 536 (1993) .................................................................... 21

*Esparza v. Kohl's, Inc.*,
    __F. Supp. 3d.__, 2024 WL 1152732 (S.D. Cal. Mar. 18, 2024) ............... 19

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Fellows v. Nat'l Enquirer, Inc.*,
42 Cal. 3d 234 (1986) ..................................................................... 12

*Felton v. Schaeffer*,
229 Cal. App. 3d 229 (1991) ........................................................... 17

*Ferlauto v. Hamsher*,
74 Cal. App. 4th 1394 (1999) ................................................. 14, 16

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ......................................................... 21

*Franklin v. Dynamic Details, Inc.*,
116 Cal. App. 4th 375 (2004) ......................................................... 16

*Gardner v. Martino*,
563 F.3d 981 (9th Cir. 2009) ........................................................... 14

*Gill v. Hearst Publ'g Co.*,
40 Cal. 2d 224 (1953) ..................................................................... 10

*Gonzalez v. Planned Parenthood of Los Angeles*,
759 F.3d 1112 (9th Cir. 2014) ...........................................................7

*Hawran v. Hixson*,
209 Cal. App. 4th 256 (2012) ......................................................... 20

*Hebrew Academy of San Francisco v. Goldman*,
42 Cal. 4th 883 (2007) ................................................................... 16

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ................................................................... 19

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) ..................................................... 14, 15

*Hughes v. Pair*,
46 Cal. 4th 1035 (2009) ................................................................. 18

*Hunt v. City of Los Angeles*,
638 F.3d 703 (9th Cir. 2011) ........................................................... 21

*Hustler Magazine, Inc. v. Falwell*,
485 U.S. 46 (1988) ......................................................................... 17

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Ileto v. Glock Inc.*,
　349 F.3d 1191 (9th Cir. 2003) ................................................................7

*In re Google Assistant Privacy Litig.*,
　546 F. Supp. 3d 945 (N.D. Cal. 2021) ....................................................9

*Jackson v. Mayweather*,
　10 Cal. App. 5th 1240 (2017), *as modified* (Apr. 19, 2017)............................ 12

*Jennings v. Telegram-Trib. Co.*,
　164 Cal. App. 3d 119 (Ct. App. 1985)................................................... 16

*Knievel v. ESPN*,
　393 F.3d 1068 (9th Cir. 2005) ...............................................................3

*Koch v. Goldway*,
　817 F.2d 507 (9th Cir. 1987) ........................................................... 14, 18

*Kyriakakos v. MasTec Network Solutions, Inc.*,
　2018 WL 11357185 (C.D. Cal. Jan. 23, 2018) .......................................... 13, 18

*Leidholdt v. L.F.P. Inc*,
　860 F.2d 890 (9th Cir. 1988) ....................................................... 14, 15, 17

*Lema v. Bd. of Trs. of Cal. State Univ. Sys. through San Diego State Univ.*,
　2024 WL 1376488 (S.D. Cal. Mar. 28, 2024) .......................................... 18

*Levine v. Blue Shield of Cal.*,
　189 Cal. App. 4th 1117 (2010) ........................................................... 21

*Lopez v. Apple, Inc.*,
　519 F. Supp. 3d 672 (N.D. Cal. 2021) ....................................................8

*Luo v. Volokh*,
　322 Cal. Rptr. 3d 323 (Cal. App. 2024).............................................. 11, 12

*Mark v. Seattle Times*,
　635 P.2d 1081 (Wash. 1981)........................................................... 19, 20

*McClatchy Newspapers, Inc. v. Superior Court*,
　189 Cal. App. 3d 961 (Ct. App. 1987)................................................... 16

*McCloskey v. Humboldt County Sheriff's Dep't*,
　2023 WL 7597215 (N.D. Cal. Nov. 14, 2023) ......................................... 19

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Near v. Minnesota ex rel. Olson*,
  283 U.S. 697 (1931) (Brennan, J., concurring)................................................. 11

*New York Times v. United States*,
  403 U.S. 713 (1971)........................................................................................ 11

*Noel v. Hall*,
  568 F.3d 743 (9th Cir. 2009) ............................................................................8

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ...............................................................9

*Obsidian Fin. Grp., LLC v. Cox*,
  812 F. Supp. 2d 1220 (D. Or. 2011) ................................................................ 16

*Olson v. Doe*,
  12 Cal. 5th 669 (2022) .................................................................................... 11

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) .......................................................................... 14

*Paterno v. Superior Court*,
  163 Cal. App. 4th 1342 (2008) ....................................................................... 15

*Potter v. Firestone Tire & Rubber Co.*,
  6 Cal. 4th 965 (1993) ..................................................................................... 17

*Principe v. Curry*,
  2018 WL 1406912 (C.D. Cal. Jan. 3, 2018) .................................................... 12

*Rosenow v. Facebook, Inc.*,
  2020 WL 1984062 (S.D. Cal. Apr. 27, 2020).....................................................9

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) .................................................................... 1, 21

*Shulman v. Group W Prods., Inc.*,
  18 Cal. 4th 200 (1998) ................................................................................... 19

*Snyder v. Phelps*,
  562 U.S. 443 (2011)........................................................................................ 18

*Stutzman v. Armstrong*,
  2013 WL 4853333 (E.D. Cal. Sept. 10, 2013)................................................. 21

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Tarlson v. United States*,
   2014 WL 605489 (N.D. Cal. Feb. 13, 2014) ................................................... 12

*Thing v. La Chusa*,
   48 Cal. 3d 644 (1989) ................................................................................... 17

*Thunder Studios, Inc. v. Kazal*,
   13 F.4th 736 (9th Cir. 2021) ....................................................................... 10

*Tichinin v. City of Morgan Hill*,
   177 Cal. App. 4th 1049 (2009) ............................................................. 10, 18

*Tull v. Higgins*,
   2021 WL 6116971 (N.D. Cal. Dec. 27, 2021)............................................. 13

*Ultimate Creations, Inc. v. McMahon*,
   2007 WL 9735048 (D. Ariz. Feb. 5, 2007)................................................. 13

*Underwager v. Channel 9 Austl.*,
   69 F.3d 361 (9th Cir. 1995) ....................................................................... 14

*United States v. Smith*,
   155 F.3d 1051 (9th Cir. 1998) .......................................................................8

*Winter v. DC Comics*,
   30 Cal. 4th 881 (2003) ..................................................................................8

**Statutes**

18 U.S.C.
   § 2511.................................................................................................... 7, 9
   § 2511(1)(a), (c), (d), (e)................................................................................8
   § 2520.................................................................................................... 7, 8

California Business and Professions Code
   § 17200.............................................................................................. 7, 20
   § 17204................................................................................................... 21

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

California Civil Code
    § 47(d) ............................................................................ 16
    § 527.6(i) .......................................................................... 11
    § 1708 .............................................................................. 10
    § 1708.7 ......................................................................... 7, 10
    § 1708.7(a)(1) ................................................................... 11
    § 1708.7(f) ....................................................................... 10

California Code of Civil Procedure
    § 527.6 ...................................................................... 7, 11, 12
    § 527.6(b)(1) .................................................................... 12
    § 527.6(b)(3) .................................................................... 12

California Penal Code § 632(a) ...............................................8

Electronic Communications Privacy Act ...............................8

Invasion of Privacy Act, Penal Code
    § 632 ...............................................................................7
    § 637.2 .............................................................................7

Unfair Competition Law ................................................ 20, 21

Wiretap Act ................................................................... 8, 9

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ......................... 7, 8

**Constitutional Provisions**

First Amendment................................................................ *passim*

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this action, Plaintiff William Joiner ("Plaintiff") asserts claims premised on baseless conjecture in an attempt to scare the defendants into stopping publication of their documentary film, "Dear Kelly" (the "Documentary").  The Documentary is about a right-wing conspiracy theorist named Kelly Johnson who has long been fixated on the idea that Plaintiff "stole" his home, after Plaintiff admittedly foreclosed upon and evicted him from it.  The Documentary does not ratify Johnson's beliefs, but refutes them in an effort to explore the causes of political radicalization, and to help Johnson reconnect to reality.  Nor does Plaintiff offer any facts supporting his concocted claims that the filming of the Documentary violated his privacy.  Instead, the Complaint is rooted in a mistaken belief that a person is entitled to prevent the use of his name in publications he finds disagreeable.  But "the First Amendment . . . safeguards the storytellers and artists who take the raw materials of life—including the stories of real individuals, ordinary or extraordinary—and transform them into art[.]"  *Sarver v. Chartier*, 813 F.3d 891, 905 (9th Cir. 2016).  Federal pleading standards play a critical role in cases like this one, which seek to chill constitutionally protected speech.  Plaintiff has failed to meet these standards.

The Documentary was created by filmmaker Andrew Callaghan through his production company Channel 5 LLC ("Channel 5"), initially with his former business partners Evan Gilbert-Katz and Nicolas Mosher (together, the "C5 Defendants").  Callaghan creates videos and documentaries exploring fringe communities and political radicals.  His work has been praised for recognizing its subjects' humanity while still highlighting the absurdity of many of their beliefs.  The Documentary focuses on Johnson, a conspiracy theorist whose fixations reveal deeper truths about American politics.  The Documentary uses humor and empathy to explore how Johnson's deeply destabilizing loss of his home corresponded with

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

his descent into radicalization, and how this affected his family.  Callaghan tries to help Johnson let go of his obsession, first attempting to find Plaintiff and arrange a mediation between the two men, and then organizing an intervention by Johnson's family.  Finally, Johnson admits to Callaghan: "***I need to go back and I need to forgive Bill Joiner, apologize to him for not taking care of my financial obligations that put me in that position***."  Ex. A at 1:17:03 (emphasis added).  Any reasonable viewer of the Documentary would conclude that while it treats Johnson with compassion, it ultimately portrays him as delusional, and makes clear that his vendetta against Plaintiff is unjustified.

In May 2024, after seeing a trailer for the Documentary posted to YouTube (the "Trailer"), Plaintiff sent dozens of cease and desist letters to venues scheduled to show it via screenings in June and July.  ECF No. 1 ("Compl.") ¶ 91.  He proceeded to file this action ten days before the Documentary was set to premiere.

The Complaint asserts eleven claims against the C5 Defendants, accusing them of breaking the law in the course of their newsgathering, invading his privacy, and painting him in a false light.  Yet betraying this litigation as a strategic ploy, Plaintiff fails to offer any facts in support of these claims.  He asserts wiretap and eavesdropping claims, but does not identify any conversations that were supposedly intercepted or recorded.  (Section IV.A, *infra*).  He pleads harassment and stalking, but can only point to legal newsgathering conduct and non-actionable speech (Sections IV.B-IV.C, *infra*).  He pleads a false light claim, but the Trailer and Documentary's inclusion of Johnson's opinion that Plaintiff "stole" his home is plainly not a factual statement by the C5 Defendants, and moreover is protected by California's fair report privilege (Section IV.D, *infra*).  He pleads invasion of privacy and emotional distress, but identifies not a single private fact or image captured or publicized by the C5 Defendants, much less any other "extreme and outrageous" conduct (Section IV.E-IV.F, *infra*).  And he pleads unlawful business conduct, but improperly bases this claim upon non-commercial journalistic speech

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(Section IV.G, *infra*).  In short, Plaintiff fails to plead facts in support of any wrongful act by the C5 Defendants, and fails to state a claim for relief.

## II.      STATEMENT OF FACTS

### A.      The Parties

Callaghan is an independent journalist and documentarian known for his "gonzo" reporting style and short documentaries delving into fringe subcultures and radical right-wing activists.  Compl. ¶¶ 23, 65, 75-77.  His work is known for being both trenchant and comedic.  *See generally* Ex. A.  Callaghan is the proprietor of Channel 5 News, an internet media company.  Channel 5's first feature-length documentary "This Place Rules," which premiered on HBO in 2022, chronicled the cultural undercurrents of extreme thinking that led to the January 6 Capitol Riot. *See* Compl. ¶¶ 23, 65.  Defendants Evan Gilbert-Katz and Nicolas Mosher are Callaghan's former business partners.  *Id*. ¶¶ 12-13.

### B.      The Documentary

The Documentary is Channel 5's second feature-length film.  It focuses on Johnson, a right-wing activist and conspiracy theorist.  *Id*. ¶¶ 1, 22.  Callaghan becomes interested in Johnson because, setting him apart from the other political radicals Callaghan had interviewed, Johnson coupled his conspiratorial beliefs about subjects like vaccines, Hunter Biden, Planned Parenthood, and the "deep state" with a specific fixation on Plaintiff, who he claimed had "stolen" his home. Ex. A at 00:06-1:11, 3:53-4:20, 8:52-11:17.[1]

As set out in the Complaint, Plaintiff provided a $150,000 loan to Johnson, secured by his residence.  *Id*. ¶ 33.  After Johnson defaulted on the loan, Plaintiff foreclosed on the home and instituted unlawful detainer proceedings when Johnson

---

[1] The content of the Documentary forms the basis of Plaintiff's claims.  *See, e.g*., Compl. ¶¶ 1, 5-6, 8, 69-75.  Accordingly, the Documentary is incorporated by reference and is appropriate for judicial notice.  *See* Everdell Decl., Ex. A; RJN at 1-3; *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005).

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

refused to leave.  *Id*. ¶¶ 35, 40.  After years of litigation, Johnson was evicted and Plaintiff sold the home.  *Id*. ¶ 55.

As the Documentary recounts, Callaghan met Johnson at a 2021 White Lives Matter rally.  Ex. A at 6:04-9:55; *see also* Compl. ¶ 75.  After being struck by Johnson's odd obsession with Plaintiff, Callaghan realizes that Johnson could be a case study for his theory—honed through his years reporting on the radical fringe—"that almost every radicalized person jumped down the rabbit hole not out of burning hatred but in the wake of a deep personal tragedy or some kind of negative cannon event that collapsed their support system."  Ex. A at 14:05-14:23.  "In Kelly's story about Bill and his home being stolen," Callaghan explains, "I saw a chance to prove this theory."  *Id*. at 15:06.

While exploring the foreclosure, the Documentary also describes how Johnson's wife took custody of their children "as his mental health and financial stability declined."  Ex. A at 20:11.  Callaghan interviews Johnson's daughter, who characterizes her father as being "high 24/7" on cannabis and "very obsessive" after the family experienced financial difficulties.  *Id*. at 33:20, 33:52.  He also interviews Johnson's son, who calls his dad "son" due to his emotional immaturity.  *Id*. at 29:40-30:22.  Callaghan sees how Johnson's obsessions have affected his family and is inspired to help Johnson "let go of his resentments to Bill Joiner and move on with his life and most importantly, be a caring father again."  *Id*. at 37:59.

The Documentary then chronicles Callaghan's earnest (though in some cases played for comedy) attempts to help Johnson face reality.  Callaghan tries to facilitate a meeting between Johnson and Plaintiff, in the hopes this will diffuse Johnson's delusions.  Ex A at 47:20-47:28.  The crew then engages in comedic "bits" in which they try unsuccessfully to find Plaintiff or anyone who knows him.  In one segment, Callaghan (without Johnson) goes to the office building where Plaintiff's business is located, hoping to find someone to interview, but finds the office unlit and apparently unoccupied.  *Id*. at 48:24-48:44.  Callaghan rings the

1  doorbell, looks through the transparent portion of the glass door, and leaves, having

2  spoken to no one. *Id*. at 48:45-49:07.  In another, Callaghan and Johnson go on a

3  joking "mission" to find Plaintiff, wearing camouflage "ghillie" suits and driving a

4  decidedly un-camouflaged red sports car.  Ex. A at 50:04-50:09.  Callaghan and

5  Johnson walk a public hiking trail outside Joiner's gated neighborhood, and wander

6  into an adjacent field. *Id*. at 50:20.  Johnson points out to Callaghan what he

7  believes to be Plaintiff's house inside the community. *Id*. at 50:55.  Callaghan

8  encourages Johnson to express what he would "say to [Joiner] if you saw him," and

9  Johnson replies "Why was your money, $150,000, more important than my family's

10  future?" *Id*. at 50:58-51:58.

11      The Documentary then looks back at the inconsistencies in Johnson's account

12  of the foreclosure on his home and his disbarment.  Ex. A at 53:20-54:54.

13  Callaghan interviews an attorney to understand what happened, asking him, "[s]o

14  did Bill Joiner steal [Johnson's] home?" The attorney responds, "Not from what I

15  saw in any of the pleadings.  It looks like he's cherry picking the facts to support his

16  narrative…." *Id*. at 54:59-55:04.  Johnson, the attorney explains, "failed to repay

17  that loan and that set into motion the chain of events that caused him to lose his

18  home." *Id*. at 55:19.  The attorney also describes the 21 counts of misconduct

19  against Johnson. *Id*. at 54:15, 54:25, 55:49.

20      Callaghan decides that the impediment to Johnson's de-radicalization may be

21  his inability to take responsibility what happened to his home and his family.  The

22  Documentary culminates with a formal intervention, at which Johnson's children

23  describe the impact his obsessions have had on their lives.  Ex. A at 1:03:50-

24  1:08:24.  Johnson's daughter tells him, "[w]e haven't been a family, and it's not

25  because we don't have a house, but because we don't have a father." *Id*. at 1:08:44-

26  1:08:49.  Johnson is moved, agrees to go to rehab, and from there admits to

27  Callaghan:  "I need to go back and I need to forgive Bill Joiner, apologize to him

28  for not taking care of my financial obligations that put me in that position for him to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

do that to me and my family.  I can't flip my finger at everyone else, forever."  *Id.* at 1:17:03.  Johnson  appears to make progress toward repairing his relationship with his children.  *Id.* at 1:15:50-1:16:20.  After he leaves rehab, however, Johnson slips back into far-right political activism.  *Id.* at 1:23:00.

**C.    The Trailer**

On May 6, 2024, Callaghan and Channel 5 released a video announcing the Documentary and associated tour ("the Trailer").  *See* Compl. ¶¶ 69-73 (incorporating the Trailer by reference, *see also* RJN filed herewith); Ex. B at 7:46. The Trailer presents the Documentary in a comedic, tongue-in-cheek manner, describing it as a "secret project" driven by "journalistic obsession and a first-person deep dive into a rabbit hole of clues and conspiracy theories."  *Id.* at 1:12-1:17.  Over this narration, it includes a brief shot of Callaghan outside the transparent door of an apparently empty office suite, before the camera zooms in on a pile of wires.  *Id.* at 1:14-1:17.  The Trailer then shows clips of Johnson holding a flyer reading "Bill Joiner Stole My Home," *id.* at 5:46-6:58, followed by a scene of Johnson asserting these claims and other wild conspiratorial beliefs to security guards at the entry to Plaintiff's gated neighborhood.  *Id.* at 6:16-6:23.  It also includes brief clips of the ghillie suit scene, including blurry footage of the exterior of houses, in which no person is visible.  *Id.* at 1:21-1:23; 1:53-1:55.  The Documentary was screened at theaters across the United States in June and July of 2024.  Compl. ¶¶ 8, 73.

**D.    This Lawsuit**

Before filing suit, Plaintiff sent a demand letter to dozens of venues scheduled to screen the Documentary, threatening to sue them if they did not cancel the showings.  Compl. ¶ 91; *see also* Ex. C at 1-3, 16-20.  In response, the C5 Defendants' counsel wrote a letter to Plaintiff's counsel, explaining that the Documentary "does not adopt or encourage Mr. Johnson's beliefs about Mr. Joiner. In fact, the Film does the opposite."  Compl. ¶¶ 92-93; Ex. D at 2.  The letter also

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

explained that, contrary to Plaintiff's claims (Compl. ¶ 68), the filmmakers had not trespassed, harassed, or surveilled Plaintiff.  Ex. D at 30.

Plaintiff ignored these explanations, and filed this lawsuit on May 30, 2024, asserting claims against the C5 Defendants for under the Wiretap Act, 18 U.S.C. §§ 2511, 2520; Electronic Communications Privacy Act, 18 U.S.C. §§ 2510, 2520; California Civil Code § 1708.7; California Code of Civil Procedure § 527.6; California Invasion of Privacy Act, Penal Code §§ 632, 637.2; intentional infliction of emotional distress; negligent infliction of emotional distress; common law invasion of privacy; false light; intrusion upon seclusion; and California Business and Professions Code § 17200.  *Id.* ¶¶ 103-173.

### III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The facts pleaded must support "more than a sheer possibility that a defendant has acted unlawfully;" they must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  556 U.S. at 678.  While the Court must presume that well-pled allegations in the Complaint are true, the Court is not required to "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations."  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

In deciding a 12(b)(6) motion, the Court may consider works that are incorporated by reference in the complaint, and need not accept as true allegations contradicted by these materials.  *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 n. 7 (9th Cir. 2013); *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).  *See also* RJN.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

California law recognizes that "unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights," and therefore "speedy resolution of cases involving free speech is desirable." *Winter v. DC Comics*, 30 Cal. 4th 881, 892 (2003) (citation omitted).

## IV.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW

**A.    Plaintiff Cannot State a Claim Under the Wiretap Act (Claim 1), the ECPA (Claim 2), or CIPA (Claim 5)**

Plaintiff's wiretap and eavesdropping claims fail because his pleadings do not identify any confidential conversation that was intercepted.  Nor does he offer any reason to believe such interception occurred.  In short, these claims are not only implausible, they are imaginary.

Under the Wiretap Act, which is a part of the federal Electronic Communications Privacy Act ("ECPA"), a person who "intentionally intercepts . . . any wire, oral, or electronic communication," uses a device to so "intercept," or discloses any "intercepted" communication "knowing or having reason to know that the information was obtained through [] interception," may be subject to a private cause of action.  18 U.S.C. § 2511(1)(a), (c), (d), (e); *see* 18 U.S.C. § 2520(a).  The term "intercept" means that one must "*actually* [acquire] the contents of a communication[.]"  *United States v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998) (emphasis in original); *see also Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009).  To state a claim, Plaintiff must also plead the intercepted communications were subject to a reasonable expectation of privacy.  *See Lopez v. Apple, Inc*., 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) (dismissing Wiretap Act claim where confidentiality was supported by "only conclusory allegations).

CIPA likewise requires the Plaintiff to plead recording or eavesdropping of a confidential communication.  Cal. Pen. Code § 632(a).  "To prevail against a Rule 12(b)(6) motion, the plaintiff must 'allege facts that would lead to the plausible inference that his was a confidential communication–that is, a communication that

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

he had an objectively reasonable expectation was not being recorded.'"  *Carrese v. Yes Online*, 2016 WL 6069198, at *6 (C.D. Cal. Oct. 13, 2016) (citation omitted). Accordingly, "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act."  *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020)*; see also NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("Because NovelPoster is unable to allege a violation of the Wiretap Act, it is also unable to allege a violation of CIPA."); *In re Google Assistant Privacy Litig*., 546 F. Supp. 3d 945, 957 (N.D. Cal. 2021).

Plaintiff has failed to plead the required elements of these claims.  Instead, the Complaint baldly asserts that the C5 Defendants made "surreptitious recordings," Compl. ¶¶ 104, 109, and "eavesdropped on confidential communications that were had within Mr. Joiner's residence and place of business[.]"  *Id*. ¶ 131.  But Plaintiff does not plead *what* conversations were supposedly intercepted or how they were confidential, making his claims facially deficient.  Instead, Plaintiff speculates that because Callaghan filmed with Joiner *outside* his property, he therefore *may have*, in some other way, intercepted unspecified confidential conversations.  Compl. ¶¶ 68, 109-110, 131.  Plaintiff cannot state a claim on the basis of these conclusory, implausible pleadings.  *See Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing 18 U.S.C. § 2511 claims where the pleadings "fail[ed] to state facts that support an inference" of unlawful interception).

The facts Plaintiff *does* plead only underscore the baselessness of his claims.  He alleges that in the Trailer, "Callaghan is … shown inside Mr. Joiner's office, with depictions of areas in the office that are accessible only with an authorized key card," *id*. ¶ 72, but the referenced footage shows Callaghan *outside* the glass door of an *empty* office, before the camera zooms in on generic office equipment inside.  Ex. B at 1:14-1:17.  Nothing in this footage supports an inference that any private conversations were recorded or intercepted.  *See also* Ex. A at 48:44.  The Trailer

and Documentary also include footage of Callaghan filming on a public hiking trail outside Plaintiff's neighborhood, *see* Compl. ¶ 5, but the most the footage shows is the outside of a residence, with its shades drawn and no one visible, filmed from a distance.  *See* Ex. B at 1:53-1:55; *see also* Ex. A at 50:20.  Plaintiff's cannot plausibly suggest these scenes—which do not capture audio or video of *any* third party—are evidence of wiretap and eavesdrop violations.

**B.    Plaintiff Cannot State a Claim Under California Civil Code § 1708 (Claim 3)**

Plaintiff fails to state a claim for civil stalking under Civil Code § 1708.7.

First, as constitutionally protected speech, the Documentary and Trailer are explicitly excluded from liability under that statute.  *See* Cal. Civ. Code § 1708.7(f) ("[t]his section shall not be construed to impair any constitutionally protected activity, including, but not limited to, speech"); *see also Gill v. Hearst Publ'g Co.*, 40 Cal. 2d 224, 229-230 (1953) ("constitutional guaranties of freedom of expression apply with equal force whether [a publication] be a news report or an entertainment feature"); *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1077 (2009) (the First Amendment protects "non-expressive conduct that intrinsically facilitates one's ability to exercise the right of free speech, including lawful efforts to gather evidence and information").  Plaintiff's theory of stalking is based on the C5 Defendants' constitutionally protected speech and newsgathering activities, which are excluded from liability.  *See* Compl. ¶ 118 (alleging the "creation and publication of the" Documentary constituted a "credible threat").  Indeed, even if the C5 Defendants had joined Johnson's protest activities (which they did not), that conduct would still be excluded from liability.  *See Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 745, 747-48 (9th Cir. 2021) (protest activities excluded from liability under Section 1708.7).

Moreover, Section 1708.7 requires a plaintiff present "independent corroborating evidence" that the defendant "engaged in a pattern of conduct the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

intent of which was to follow, alarm, place under surveillance, or harass the plaintiff" in order to state a claim.  Cal. Civ. Code § 1708.7(a)(1).  As noted above, the C5 Defendants' creation of footage for the Documentary does not constitute actionable conduct.  Nor is there a plausible claim that the scenes at issue were intended to "alarm, place under surveillance, or harass" Plaintiff.  Indeed, Plaintiff admits that he was not even aware of the Documentary until 2024.  Compl. ¶¶ 69, 75.  Instead, the scenes—which did not include any footage of Plaintiff or even anyone who knows him—were plainly created for a work of journalism.  In short, the Complaint fails to plead any plausible, cognizable theory of civil stalking.

## C.   Plaintiff Fails to Show Entitlement to an Injunction Under California Code of Civil Procedure § 527.6 (Claim 4)

Plaintiff's claim for a harassment injunction under Code of Civil Procedure § 527.6 fails because the claim is premised upon constitutionally protected speech and fails to cite any qualifying harassing conduct.

Preliminarily, Section 527.6 does not provide a cause of action for damages, but is a mechanism to seek an injunction.  *Olson v. Doe*, 12 Cal. 5th 669, 682 (2022) ("the petitioner in a section 527.6 proceeding has no ability to seek . . . damages" (citation omitted)).  A court may issue a restraining order under this statute only after finding by *clear and convincing evidence* that unlawful harassment exists and is reasonably likely to recur.  Cal. Civ. Code § 527.6(i); *see also Luo v. Volokh*, 322 Cal. Rptr. 3d 323, 332 (Cal. App. 2024).  Such a showing has not been made here, and would be impossible since the only alleged continuing conduct by the C5 Defendants is the publication of the Documentary.  *See* Compl. ¶ 128.  An injunction restraining that publication would be an unconstitutional prior restraint, a remedy abhorred by the Constitution.  *See Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 709 (1931) (vacating prior restraint against publication that had provoked "assaults and the commission of crime") (Brennan, J., concurring); *see also New York Times v. United States*, 403 U.S. 713, 726 (1971).

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Moreover, "harassment" under Section 527.6 cannot be shown.  Under the statute, this includes "unlawful violence, a credible threat of violence, or a knowing and willful *course of conduct* directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose."  Cal. Civ. Proc. Code § 527.6(b)(3) (emphasis added).  "Constitutionally protected activity is not included within the meaning of 'course of conduct.'"  Cal. Civ. Proc. Code § 527.6(b)(1).  Making and disseminating a documentary—even about Plaintiff's antagonist—therefore cannot constitute harassment.  *See Luo*, 322 Cal. Rptr. 3d at 332 (naming plaintiff in a law review article could not be construed as harassment); *Principe v. Curry*, 2018 WL 1406912, at *3 (C.D. Cal. Jan. 3, 2018) (holding that "derogatory criticisms posted on the Internet alone do not support relief" under Section 527.6).

The C5 Defendants' conduct in filming for the Documentary—from outside Plaintiff's gated community and outside the door of his company's empty office suite—cannot satisfy this standard either because there is no claim that this conduct created a threat of violence.  Rather, filming these scenes served the purpose of creating the Documentary, as the Complaint acknowledges.  Compl. ¶¶ 1, 5, 10, 126.

## D.    Plaintiff's False Light Claim Fails (Claim 10)

A false light claim may lie where the defendant publishes material "that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity[.]"  *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1264 (2017), *as modified* (Apr. 19, 2017) (citation omitted).  "A 'false light' cause of action is in substance equivalent to a libel claim, and should meet the same requirements of the libel claim[.]"  *Id*.; *see also Fellows v. Nat'l Enquirer, Inc*., 42 Cal. 3d 234, 245, 251 (1986); *Tarlson v. United States*, 2014 WL 605489, at *3 (N.D. Cal. Feb. 13,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2014) ("California courts have largely considered a false light claim to be substantially equivalent to a defamation claim[.]").[2]

Plaintiff does not sufficiently plead this claim.

### 1. Plaintiff Fails to Plead Specific Statements

As a threshold pleading issue, Plaintiff fails to identify the specific allegedly false statements at issue.  Defamation/false light claims are subject to dismissal when they fail to identify "the specific statements that are allegedly defamatory … leaving the court to speculate about the particulars[.]"  *Tull v. Higgins*, 2021 WL 6116971, at *10 (N.D. Cal. Dec. 27, 2021); *see also Kyriakakos v. MasTec Network Solutions, Inc*., 2018 WL 11357185, at *4 (C.D. Cal. Jan. 23, 2018) (dismissing defamation claim premised on the "general substance" of a publication); *Ultimate Creations, Inc. v. McMahon*, 2007 WL 9735048, at *2 (D. Ariz. Feb. 5, 2007) (false light claim under California law was deficient "due to the failure to identify any specific statements that cast Plaintiffs in a false light").  Plaintiff alleges the Trailer and the Documentary "accuse [Plaintiff] of having committed crimes and civil wrongs."  Compl. ¶ 137.  There is no *specific statement* identified in this paragraph, or in the rest of the Complaint.

### 2. Johnson's Claims About Plaintiff Are Protected Opinion

Assuming, *arguendo*, that Plaintiff's false light claim is based upon the Documentary's inclusion of Johnson's statements, including "Bill Joiner Stole Our Home," Ex. A at 4:01, *see also* Compl. ¶ 71 (citing Johnson holding up a sign with this statement in Trailer), Plaintiff still could not state a claim because these accounts of Johnson's beliefs do not constitute factual assertions by the C5 Defendants.

---

[2] Plaintiff's false light claim is based on the same allegedly injurious publications as Plaintiff's defamation claim asserted against Defendant Johnson alone, *compare* Compl. ¶¶ 136-37 *with id*. ¶¶ 159-160.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"[I]f [a publication] expresses opinion, then . . . claims for libel, intentional infliction of emotional distress, and false light invasion of privacy" based on that publication "must fail." *Leidholdt v. L.F.P. Inc*, 860 F.2d 890, 893 (9th Cir. 1988). Whether a challenged statement "is one of opinion or fact is a question of law." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009); *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999). To determine whether a statement is opinion, the court must examine the "totality of the circumstances" in which the statement was made. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021). First, the court looks at "the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995). Second, the court considers the "specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." *Id*. Finally, the court considers whether the "statement itself is sufficiently factual to be susceptible of being proved true or false." *Id*.

"Context can be determinative that a statement is opinion and not fact, for the context of a statement may control whether words were understood in a defamatory sense." *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987). For instance, in *Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995), the Ninth Circuit held that statements in an attorney's memoir painting his opposing counsel as incompetent, though technically factual, were non-actionable opinion. The court noted that "[b]ecause the book outlines Bugliosi's own version of what took place, a reader would expect him to set forth his personal theories about the facts of the trials and the conduct of those involved in them." *Id.* at 1153. Similarly, in *Herring Networks*, 8 F.4th 1148, the Ninth Circuit affirmed dismissal of a defamation claim based on Rachel Maddow's statement on her program that a right-wing news network "really literally is paid Russian propaganda." *Id*. at 1153. The Court

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

arrived at this conclusion in part because "the medium through which the contested statement was made"—a political opinion show—supported a conclusion "that a reasonable viewer would not conclude the statement implies an assertion of fact." *Id*. at 1157; *see also Leidholdt*, 860 F.2d at 894 ("[e]ven apparent facts must be allowed as opinion 'when the surrounding circumstances of a statement are those of a heated political debate'") (citation omitted).

Here, the broad context of Trailer and Documentary bear unmistakable indications that Johnson's statements would not be taken as factual by a reasonable audience. From the outset of the Trailer, Johnson is shown as a conspiracy theorist, pasting up hyperbolic signs and telling the security guards for a residential community, "I've heard that Hunter Biden and Bill Joiner are tight. He's tied in with the White House," Ex. B at 6:16-6:24, before the Trailer cuts to footage of Callaghan and a colleague laughing at Johnson's behavior. *Id*. at 6:55-6:59. The Documentary similarly opens with Johnson spouting conspiracy theories while protesting at Planned Parenthood. Ex. A at 00:37-3:39. To resolve any doubt, the Documentary goes on to refute Johnson's views, describing his claim that his home was stolen "absurd," *id*. at 46:34, and then interviewing an attorney who explains that Johnson is "cherry picking the facts to support his narrative." Callaghan surmises that "Kelly fell behind on his payments, pure and simple." *Id*. at 59:11. The Documentary also shows Johnson ultimately coming to terms with his misplaced blame of Plaintiff. *See, e.g*., *id*. at 1:17:03 ("I need to go back and I need to forgive Bill Joiner, apologize to him for not taking care of my financial obligations that put me in that position").

The specific context of Johnson's statements further underscores that they are opinion. The Complaint admits that Plaintiff foreclosed on Johnson's home, evicted him from it, and sold it. Compl. ¶¶ 40, 55. In light of this, Johnson's statement that Plaintiff "stole" his home is plainly a use of "figurative or hyperbolic language" to express his belief that these actions were wrong. *See Paterno v.*

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Superior Court*, 163 Cal. App. 4th 1342, 1356 (2008) ("Opinions that present only an individual's personal conclusions and do not imply a provably false assertion of fact are nonactionable[.]"); *see also Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 386 (2004) (claims "that [plaintiffs] stole copyrighted material, plagiarized data, breached a nondisclosure agreement … and were dishonorable" were opinion); *Obsidian Fin. Grp., LLC v. Cox*, 812 F. Supp. 2d 1220, 1232-34 (D. Or. 2011) (blog entries using language like "corrupt," "immoral," and "thief," were opinion where context indicated defendant had a "personal vendetta against plaintiffs").[3]  The broad and specific context of Johnson's statements within the Trailer and Documentary make clear that they would not be understood as factual assertions.

### 3.    The Account of Johnson's Claims Is A Fair Report

As noted above, the Documentary fairly and accurately puts Johnson's claims into the context of his legal dispute with Plaintiff, and reports on the outcome of that dispute.  Ex. A at 54:54-55:49.  The Documentary is thus protected by California's absolute statutory privilege for "fair and true report" on court proceedings.  *See* Cal. Civ. Code, § 47(d); *Jennings v. Telegram-Trib. Co.*, 164 Cal. App. 3d 119, 128 (Ct. App. 1985).  "The media's responsibility [under the fair report statute] lies in ensuring that the "gist or sting" of the report—its very substance—is accurately conveyed. . . [A] degree of flexibility is tolerated in deciding what is a 'fair report.'"  *McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal. App. 3d 961, 975–76 (Ct. App. 1987) (citation omitted).  Because Johnson's claims included in the Documentary and Trailer are all consistent with the "gist" of statements he made in the course of legal disputes with Plaintiff, *see*

---

[3] The Complaint also alleges that Callaghan stated, "Fuck Bill Joiner" at a theater in November 2022. Compl. ¶¶ 7, 82, 94.  This statement is non-actionable, *see Ferlauto*, 74 Cal. App. 4th at 1404 ("curse words, although not in good taste, are of course not to be taken literally"), and outside the statute of limitations.  *Hebrew Academy of San Francisco v. Goldman*, 42 Cal. 4th 883, 894-95 (2007).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    Compl. ¶¶ 33-60, and the Documentary fairly reports those disputes, Ex. A at

2    54:54-55:49, the C5 Defendants are immune from liability.

3    **E.     Plaintiff Fails to Plead Intentional or Negligent Infliction of Emotional**

4    **Distress (Claims 7 and 8)**

5         Plaintiff's claims for intentional infliction of emotional distress (IIED) and

6    negligent infliction of emotional distress (NIED) are deficient.

7         Preliminarily, because the claims arise from the same allegedly "false and

8    defamatory" statements about Plaintiff, *compare* Compl. ¶¶ 159-164 *with id.* ¶¶

9    142, 147-48, 159-160, they fail alongside the false light claim. *See* Section IV.D,

10   *supra. See also Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986);

11   *Leidholdt*, 860 F.2d at 893 ("claims for libel, intentional infliction of emotional

12   distress, and false light invasion of privacy" arising from a publication all "fail"

13   where the publication was "constitutionally protected . . . opinion"); *Hustler*

14   *Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988).

15        Plaintiff moreover fails to plead the elements of either of these claims. ***First***,

16   in California "there is no independent tort for negligent infliction of emotional

17   distress." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993); *see*

18   *also Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989). Instead, "the tort is

19   negligence, a cause of action in which a duty to the plaintiff is an essential

20   element." *Potter*, 6 Cal. 4th at 966. Plaintiff has not pled, nor could he, that the C5

21   Defendants owed him any duty. *See Felton v. Schaeffer*, 229 Cal. App. 3d 229, 239

22   (1991) (declining to recognize "negligence duty" where claim was based on

23   allegedly false publication).

24        ***Second***, Plaintiff's IIED claim fails because this tort requires "the

25   complained-of conduct [to] be outrageous, that is, beyond all bounds of reasonable

26   decency," *Comstock v. Aber*, 212 Cal. App. 4th 931, 954 (2012), and the allegations

27   as to the C5 Defendants' conduct do not come close to this level of egregiousness.

28   The IIED tort "does not extend to mere insults, indignities, threats, annoyances,

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

petty oppressions, or other trivialities." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009) (quotation and citations omitted).  And IIED claims based on speech, like those here, are particularly disfavored.  *See Koch*, 817 F.2d at 510 (defendant's conduct in using  "vicious slur" likening plaintiff to a Nazi war criminal  could not constitute IIED).  Indeed, IIED claims are barred where, as here, the speech and conduct concerns "a subject of legitimate news interest," and "[s]uch speech cannot be restricted simply because it is upsetting or arouses contempt." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011).

Nor could the C5 Defendants' conduct in filming scenes for the Documentary fulfill this element, since it is hardly "outrageous . . . beyond all bounds of human decency" to film the exterior of a home from a field adjacent to a public hiking trail, or to film a pile of charging cables and telephone wires through the transparent door of an office suite.  Ex. B at 1:14-1:17.  Moreover, the First Amendment protects "non-expressive conduct that intrinsically facilitates one's ability to exercise the right of free speech, including lawful efforts to gather evidence and information" on matters of public concern.  *Tichinin*, 177 Cal. App. 4th at 1077.

***Third***, Plaintiff has not adequately pled the required element of "severe emotional distress." *See Bassam v. Bank of America*, 2015 WL 4127745, at *5 (C.D. Cal. July 8, 2015) ("Plaintiffs allege no *facts* that satisfy this demanding standard; they simply assert, in conclusory fashion, that defendants caused them 'severe emotional distress.'"); *see also Kyriakakos*, 2018 WL 11357185, at *4; *Lema v. Bd. of Trs. of Cal. State Univ. Sys. through San Diego State Univ.*, 2024 WL 1376488, at *8 (S.D. Cal. Mar. 28, 2024).  Plaintiff's boilerplate allegation of distress is insufficient.  *See* Compl. ¶ 144.

## F.    Plaintiff Fails to Plead Common Law Invasion of Privacy or Intrusion Upon Seclusion (Claims 9 and 11)

California recognizes four common law privacy torts: (1) intrusion upon seclusion; (2) public disclosure of private facts; (3) false light; and (4) appropriation

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of name or likeness.  *Shulman v. Group W Prods., Inc*., 18 Cal. 4th 200, 214 & n.4
(1998).  "Common law invasion of privacy," the Complaint's Ninth Claim,
"involves similar elements" as intrusion upon seclusion and the two claims can be
analyzed together.  *McCloskey v. Humboldt County Sheriff's Dep't*, 2023 WL
7597215, at *7 (N.D. Cal. Nov. 14, 2023); *see also Esparza v. Kohl's, Inc*., __F.
Supp. 3d.__, 2024 WL 1152732, at *8 (S.D. Cal. Mar. 18, 2024).  *Compare* Compl.
¶¶ 152-157 *with* ¶¶ 165-170.

　　　　Plaintiff has failed to plead intrusion.  "The right to be secure from intrusion
is not absolute."  *Aisenson v. Am. Broad. Co*., 220 Cal. App. 3d 146, 161 (1990).
"To state a claim for intrusion upon seclusion, a plaintiff must plead that (1) a
defendant 'intentionally intrude[d] into a place, conversation, or matter as to which
the plaintiff has a reasonable expectation of privacy[,]' and (2) that the intrusion
'occur[red] in a manner highly offensive to a reasonable person.'"  *McCloskey*,
2023 WL 7597215, at *7 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286
(2009)); *see also Ault v. Hustler Mag., Inc.*, 860 F.2d 877, 882 (9th Cir. 1988)
(affirming dismissal of intrusion claim based on the allegedly misleading portrayal
of plaintiff in an article because "the facts do not fit the elements of the tort").

　　　　Where an intrusion claim is based upon information gathering, the question is
whether the Plaintiff had a reasonable expectation of privacy as to the alleged
intrusion.  In *Aisenson*, the court held it was not an invasion of privacy to film
plaintiff walking outside his home to his car, even with "an enhanced lens," since he
was "in full public view" when the filming occurred.  220 Cal. App. 3d at 161-63.
Similarly, in *Mark v. Seattle Times*, 635 P.2d 1081, 1095 (Wash. 1981), the
Washington Supreme Court held it was not intrusion to broadcast footage of the
interior of Plaintiff's business, with him inside, even where the cameraman had
filmed by pressing his camera "against the window of the store" while potentially
on private property.  This did not matter, since "the place from which the film was
shot was open to the public and thus any passerby could have viewed the scene

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

recorded." *Id.*; *see also Doe No. 1 v. Wynn Resorts, Ltd.*,  2023 WL 1782439, at *20 (D. Nev. Feb. 3, 2023) ( "an individual's workplace has not generally been considered an area in which they have an expectation of privacy").

The circumstances alleged fall far below the threshold set out in these cases. Preliminarily, while Plaintiff asserts that the C5 Defendants "surreptitiously … recorded … Plaintiff … within his residence and place of business," Compl. ¶ 166, neither the Complaint nor the exhibits incorporated therein offer a single instance of Plaintiff—or any private facts about him—being recorded *at any point*.  Plaintiff's claims otherwise are a speculative fiction unsupported by factual allegations.

Moreover, the footage the C5 Defendants *did* record—of a residential building's exterior and of an empty office through a glass door—were plainly taken from outside these locations, and captured only inanimate architecture and office equipment "in full public view." *Aisenson*, 220 Cal. App. 3d at 162-63.  *See* Ex. A at 48:44, 50:20, 50:48, 51:08 (footage in common areas of an office building); Ex. B at 1:14-1:17, 1:53-1:55 (blurry exterior footage of homes in Plaintiff's gated neighborhood).  In short, Plaintiff fails to plausibly plead *any* actionable intrusion.

## G.    Plaintiff Fails to Plead a Claim Under the California Business and Professions Code § 17200 (Claim 12)

Plaintiff's final claim asserts a mismatched cause of action under California's Unfair Competition Law (UCL).  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice[.]"  Cal. Bus. & Prof. Code § 17200.  *See also* Compl. ¶ 172.  Because UCL claims do not apply to expressive works like the Documentary, this claim fails.

*First*, UCL claims premised upon allegedly false statements in a publication are derivative of accompanying false light claims, and will "stand[] or fall[]" with them.  *Hawran v. Hixson*, 209 Cal. App. 4th 256, 277 (2012).  Because Plaintiff's false light claim fails, *see* Section IV.D, *supra*, so does any UCL claim.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   **Second**, UCL lawsuits are "barred by the First Amendment where the speech

2   complained of is not commercial speech." *Stutzman v. Armstrong*, 2013 WL

3   4853333, at \*14 (E.D. Cal. Sept. 10, 2013) (citations omitted).  Commercial speech

4   "does no more than propose a commercial transaction," *Hunt v. City of Los

5   Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citation omitted), and expressive

6   journalistic works fall outside this definition.  *See Sarver*, 813 F.3d at 905 (film was

7   "not speech proposing a commercial transaction"); *Dora v. Frontline Video, Inc*., 15

8   Cal. App. 4th 536, 542 (1993).

9   **Third**, Plaintiff does not have standing under the UCL because he has not

10  alleged that he has suffered an economic injury.  *See* Cal. Bus. & Prof. Code

11  § 17204; *Folgelstrom v. Lamps Plus, Inc*., 195 Cal. App. 4th 986, 995 (2011)

12  (affirming dismissal where "plaintiff does not allege that he suffered an economic

13  injury").  Plaintiff makes no mention of any sort of economic injury.  *See* Compl. ¶¶

14  171-73.

15  **Fourth**, Plaintiff fails to allege facts required to support any theory of

16  liability under the UCL, i.e., that the C5 Defendants "committed a business act that

17  is either fraudulent, unlawful, or unfair."  *Levine v. Blue Shield of Cal*., 189 Cal.

18  App. 4th 1117, 1136 (2010).  The Complaint identifies no business act at all, much

19  less one that satisfies this pleading requirement.

### V.    CONCLUSION

21  For all of the foregoing reasons, the Plaintiff's claims against the C5

22  Defendants should be dismissed, with prejudice.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DATED: August 2, 2024

DAVIS WRIGHT TREMAINE LLP
JONATHAN L. SEGAL
ABIGAIL EVERDELL
SAMANTHA LACHMAN


By: _/s/ Jonathan Segal_
        Jonathan Segal
Attorneys for Defendants
ANDREW CALLAGHAN, CHANNEL
5 LLC, EVAN GILBERT-KATZ, AND
NICOLAS MOSHER

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the C5 Defendants, certifies that this Memorandum contains 6,950 words, which complies with the word limit of L.R. 11-6.1.


DATED: August 2, 2024                    DAVIS WRIGHT TREMAINE LLP
                                         JONATHAN L. SEGAL
                                         ABIGAIL EVERDELL
                                         SAMANTHA LACHMAN


                                         By: */s/ Jonathan Segal*
                                             Jonathan Segal
                                             Attorneys for Defendants
                                             ANDREW CALLAGHAN, CHANNEL
                                             5 LLC, EVAN GILBERT-KATZ, AND
                                             NICOLAS MOSHER

MOTION TO DISMISS
4875-8396-2576v.9 0123725-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899