**MURPHEY & MURPHEY**
  A PROFESSIONAL CORPORATION
Meghan C. Murphey, (SBN 259487))
  meghan@themurpheylawyers.com
Matthew D. Murphey (SBN 194111))
  matt@themurpheylawyers.com
Dennis J. Canty (SBN 207978))
  dennis@themurpheylawyers.com
Kerry Moynihan (SBN 250571)
  kerry@themurpheylawyers.com
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656
Tel: 949.464.4540 Fax: 562.375.6674

Attorneys for Plaintiff,
WILLIAM JOINER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOINER, an Individual | CASE NO. 8:24-cv-01160-CBM-KS |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT** |
| v. | |
| ANDREW CALLAGHAN, an Individual; CHANNEL 5 LLC, a Washington Limited Liability Company; EVAN GILBERT-KATZ, an Individual; NICOLAS MOSHER, an Individual; KELLY SCOTT JOHNSON, an Individual; and DOES 1 through 200, Inclusive, | Date:      October 15, 2024<br>Time:     10:00 a.m.<br>Dept.:     8D |
| Defendants. | Action Filed:      May 30, 2024 |

# Table of Contents

I.     INTRODUCTION ........................................................................0

II.    FACTUAL BACKGROUND ...................................................3

III.   LEGAL STANDARD ..............................................................5

IV.   ARGUMENT ...........................................................................7

     A.    Defendants Engaged in No Protected Activity, and Consequently
        California's Anti-SLAPP Statute Does Not Apply ..............................7

        1.    *Defendants' Videos are NOT a Documentary.* ...........................7

        2.    *There is No First Amendment Protection for Defendants'
           Unlawful Newsgathering* ..............................................10

        3.    *The Videos Do Not Depict or Otherwise Communicate
           Matters of Public Interest* ...........................................13

        4.    *The Controversies Depicted in the Videos Concluded
           Nearly Two Years Ago.* ..............................................15

        5.    *In Context, There is No Degree of Closeness to
           Defendants' False Statements of Criminal Conduct and
           the Alleged "Public Issue."* ........................................18

     B.    Plaintiff is Likely to Prevail on Each of His State Law Claims. ..........19

        1.    *Plaintiff Will Prevail on His Claim 3 for Stalking.* ...................19

        2.    *Plaintiff Will Prevail on His Claim 4 for Harassment* ...............20

        3.    *Plaintiff is Likely to Prevail on his Claim 5 for CIPA
           Violations.* ...............................................................21

        4.    *Plaintiff is Likely to Prevail on His IIED and NIED
           Claims (Claim 7-8)* ....................................................22

        5.    *Plaintiff is Likely to Prevail on his Invasion of Privacy
           Claims, False Light Claims and UCL Claim (Claims 9-12)* ......23

V.    CONCLUSION .......................................................................24

# Table of Authorities

**Cases**

**Page(s)**

*Abuemeira v. Stephens*,
 246 Cal.App.4th 1291 (2016) ............................................................... 6,11,23

*Anti-Defamation League of B'Nai B'Rith v. Superior Court*,
 67 Cal.App.4th 1072 (1998) ................................................................. 12

*Association for Los Angeles Deputy Sheriffs v. Los Angeles Times Communications LLC*,
 239 Cal.App.4th 808 (2015) ................................................................. 14

*Blatt v. Pambakian, Case No. 2055084*,
 2021 U.S. App. LEXIS 29015 (9th Cir. 2021) ......................................... 25

*Blue v. Office of Inspector General*,
 23 Cal.App.5th 138 (2018) ................................................................... 14

*California v. Ciraolo*
 (1986) 476 U.S. 207 ........................................................................... 23

*Castillo v. The Well Cmty. Church, Case No. 1:21cv01460*,
 2022 U.S. Dist.  LEXIS 224801 *22 (E. D. Cal. 2022) ........................... 24

*Citizens United v. Federal Election Commission*,
 558 U.S. 310 (2010) ........................................................................... 12

*Cohen v. Cowles Media Co.*,
 501 U.S. 663 (1991) ........................................................................... 11

*Collier v. Harris*,
 240 Cal.App.4th 41 (2015) ................................................................... 13

*Commonwealth Engy. Corp. v. Investor Data Exchange, Inc.*,
 110 Cal.App.4th 26 (2003) ................................................................... 16

*Consumer Justice Center v. Trimedica Int'l, Inc.*,
 107 Cal.App.4th 595 (2003) ................................................................. 16

1

*Cox v. Mariposa Cnty., Case No. 1:19cv01105AWI,*
  2022 U.S. Dist. LEXIS 165502 *42 (E.D. Cal 2022) ............................... 20

*Davis v. Costa-Gavras,*
  654 F.Supp. 653 (S.D.N.Y. 1987) ................................................. 8

*Dozier v. Maispace, Case No.: C051761PVT,*
  2007 U.S. Dist. LEXIS 14540 (N.D. Cal. 2007) ...................................... 25

*DuCharme v. Uusi-Kerttula,*
  159 Cal.App.4th 1027 (2008) ........................................................ 17

*Florida v. Jardines,*
  569 U.S. 1 (2013) .................................................................. 23

*Hall v. Time Warner, Inc.,*
  153 Cal.App.4th 1337 (2007) ........................................................ 13

*Herbert v. Lando,*
  441 U.S. 153 (1978) ................................................................ 11

*Hewlett-Packard Co. v. Oracle Corp.,*
  239 Cal.App.4th 1174 (2015) ........................................................ 18

*In re Silicon Graphics Inc. Sec. Litig.,*
  183 F.3d 970 (9th Cir. 1999) ......................................................... 7

*Kolar v. Donahue, McIntosh & Hammerton,*
  145 Cal.App.4th 1532 (2006) ........................................................ 18

*Lieberman v. KCOP Television, Inc.,*
  110 Cal.App.4th 156 (2003) ...................................................... 12,13

*Lovingood v. Discovery Communs., Inc.,*
  275 F.Supp.3d 1301 (N.D. Ala. 2017) ................................................. 8

*Martinez v. Netflix, Inc., Case No. 20cv24328WPD,*
  2023 U.S. Dist. LEXIS 31102 ** (S.D. Fla. 2023) ................................... 8,9

*Matoff v. Brinker Rest. Corp.,*
  439 F. Supp. 2d 1035 (C.D. Cal. 2006) ............................................... 25

OPPOSITION TO SPECIAL MOTION TO STRIKE

*Miller v. National Broadcasting Company*,
    187 Cal.App.3d 1463 (1986) ....................................... 12

*Mitchell v. Twin Galaxies, LLC*,
    70 Cal.App.5th 207 (2021) ....................................... 20

*Nelson v. Wells, Case No. B320223*,
    2023 Cal. App. Unpub. LEXIS 6395 *11 (Cal. Ct. App. 2023) ............... 18

*Obsidian Fin. Group, LLC v. Cox*,
    740 F.3d 1284 (9th Cir. 2013) ....................................... 12

*Ojjeh v. Brown*,
    43 Cal.App.5th 1027 (2019) ....................................... 13

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ....................................... 7

*Rand Resources, LLC v. City of Carson*,
    6 Cal.5th 610 (2019) ....................................... 16

*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO*,
    105 Cal.App.4th 913 (2003) ....................................... 17

*San Diegans for Open Gov't. v. San Diego State Univ. Rsch. Foundation*,
    13 Cal.App.5th 76 (2017) ....................................... 13

*Schulman v. Group W. Productions, Inc.*,
    18 Cal. 4th 200 (Cal. 1998) ....................................... 12,14

*Seale v. Gramercy Pictures*,
    964 F.Supp. 918 (E.D. Pa. 1997) ....................................... 8

*Sycamore Ridge v. Naumann*,
    157 Cal.App.4th 1385 (2008) ....................................... 20

*Time, Inc. v. Firestone*,
    424 U.S. 448 (1976) ....................................... 19

*Turnbull v. ABC, Case No. CV033554SJO*,
    2004 U.S. Dist. LEXIS 24351 ** (C.D. Cal. 2004) ....................................... 12

3

*Vess v. Salem*, Case No. D081614,
       2024 Cal.App. Unpub. LEXIS 303 *3 (Cal. Ct. App. 2024) ...................... 18

*Weinberg v. Feisel*,
       110 Cal.App.4th 1122 (2003) ........................................................ 16

*Wilkins v. Nat'l Broadcasting Co.*,
       71 Cal.App.4th 460 (1997) .......................................................... 24

*Wilson v. Cable News Network, Inc.*,
       7 Cal.5th 871 (2019) ................................................... 4,5,6,15,19

**Statutes**

Civil Code § 1708.7 ........................................................................ 21

Penal Code section 602 .................................................................. 25

Penal Code section 6126.5 ............................................................. 14

Penal Code § 470 .......................................................................... 10

Penal Code § 532f ......................................................................... 10

Section 425.16 ................................................................................ 7

Section 17200 ............................................................................... 25

§ 425.16 ........................................................ 3,4,7,11,12,14,17,18,19,20

**Rules**

Fed. R. Civ. P. 10 .......................................................................... 24

Fed. R. Civ. P. 12 ............................................................................ 7

Fed. R. Civ. P. 56 ............................................................................ 7

4

## I.    **INTRODUCTION**

Moving Defendants' Special Motion to Strike ("Motion") attacks the claims of a complaint that Defendants wish they were facing – not the *actual* complaint and the *actual* facts that give rise to the claims brought by Mr. Joiner. Further, Defendants' Motion lacks evidentiary support. Defendants seek to have this Court admit as evidence two videos, the "Atlanta Cut Video" ("ACV") and the "Tour & Movie Announcement" video trailer ("TMA"), submitted as Exhibits A and B, respectively (collectively "Videos"), either through judicial notice or as attachments to their counsel's declaration. While Plaintiff concedes the authenticity of the TMA, as he personally viewed the TMA when it was published on YouTube and did rely on that completed video in his Complaint, neither of the attempted methods is sufficient to allow the Court to consider the ACV.[1] The TMA has been viewed hundreds of thousands of times, is completely one-sided and baseless, and accuses Mr. Joiner of criminal conduct that courts have already found did not occur. Mr. Joiner did not need to see the ACV prior to filing suit. The damages caused to Mr. Joiner as a result of the publication of the TMA alone, especially when paired with the vitriol Defendants stirred up toward Mr. Joiner without his knowledge in the years leading up to the release of the TMA, are substantial.  See Murphey Decl., Exhs. 14-17, which include public chants of "Fuck Bill Joiner" and Defendants' announcement that Callaghan and Johnson were on a "daring mission for revenge," be the subject of a Channel 5 film that at the time was titled "Finding Bill Joiner."

---

[1] While Plaintiff objects to the admission of the ACV, given that Defendants attempt to rely on its contents, Plaintiff addresses those arguments and includes cites to the ACV herein, in the event the Court considers the ACV over Plaintiff's objection. While the Videos are often referred to collectively herein, the Court should analyze the TMA and the ACV as two independent publications.

Defendants' Motion starts with the false assumption that the Videos, which are a large, but not the entire, subject of Mr. Joiner's claims, are collectively a "documentary."  As case law and as the expert opinion of Emeritus Distinguished Professor Mark J. Harris from the School of Cinematic Arts at USC submitted herewith demonstrate, the Videos (especially the TMA) are not even close to the definition of a "documentary." Defendants' Motion also claims that Callaghan is a "journalist" who engaged in "privileged" newsgathering and Defendants are therefore immune from claims under the First Amendment.  In a word: Hardly.

Callaghan is a friend and confidant of his co-defendant Kelly Johnson, a disbarred California lawyer who lost his license for perpetrating fraud on several courts, as well as stealing money from his clients. Johnson has engaged in multiple years of stalking, intimidating, threatening, suing, and harassing Mr. Joiner and his family.  Callaghan took a personal interest in Johnson's sob stories, and because of public accusations of sexual improprieties with various women against him, Callaghan disappeared into the desert for nearly a year. During that time, he created what he hoped would rebuild his crumbling career – a hit piece on Mr. Joiner, a man who Callaghan and Johnson admit they have never met, and who Johnson blames for ruining his life.

Mr. Joiner is a private individual who had the misfortune of providing a home loan through his trust to Johnson in 2007.  Due to Johnson's repeated failures to meet his obligations over a period of years, Mr. Joiner commenced foreclosure proceedings on the real property that secured the loan.  Johnson thereafter engaged in lawfare against Mr. Joiner, filing so many losing lawsuits and appeals against Mr. Joiner that Johnson was declared a vexatious litigant by the Orange County Superior Court.  Johnson has made allegations that Mr. Joiner engaged in criminal conduct, all of which were judicially determined against Johnson and in favor of Mr. Joiner by state and federal courts.  Callaghan nevertheless published the Videos and repeated Johnson's same claims of illegal and criminal conduct by Mr. Joiner.

Defendants' Motion fails on numerous grounds. The primary grounds are:

**First**, even if Callaghan could be considered a "journalist" (he is not), court decisions are legion that members of the press enjoy no First Amendment immunity against laws of general application such as trespass, defamation, violations of wiretap acts, invasion of privacy, and related torts in "newsgathering." There is a marked difference between "newsgathering" and *unlawful* newsgathering, which Defendants curiously fail to distinguish in their Motion. Moreover, since the Videos do not meet the judicial and academic definitions of a "documentary," no press or media privileges exist to aid Defendants in their acts of unlawful newsgathering.

**Second**, California's anti-SLAPP statute does not apply to false allegations of criminal conduct against a Plaintiff, nor to issues that are not of public interest or in furtherance of the right of free speech;

**Third**, garden-variety, private disputes that end up in litigation over the right to possess and own private property are not a "public issue." The Videos concern long-ago concluded disputes that existed between Johnson and Mr. Joiner, and only those two individuals were affected by the conclusion of those disputes;

**Fourth**, under the mandatory, careful analysis that must be applied to motions based on the "catchall" provision of Cal. Code Civ. P. § 425.16, subd. (e)(4), Defendants' Motion simply doesn't cut it. As binding California Supreme Court precedent establishes, a matter of "public interest" under subdivision (e)(4) is accused activity that "occurred within the context of an <u>ongoing</u> controversy, dispute or discussion."[2] The judicially resolved controversies between Johnson and

---

[2] *See FilmOn.com, Inc., v. DoubleVerify, Inc*., 7 Cal. 5th 133, 145 (Cal. 2019), underline added. *Film On, Inc*., is the leading California Supreme Court case for anti-SLAPP motions that are based on the "catchall" provision of subdivision (e)(4). *FilmOn, Inc*., "limit[s] the application of the catchall provision." *Ellis v. Dun & Bradstreet*, Case No. CV 18-10077 MRW, 2019 U.S. Dist. LEXIS 228001 *7 (C.D Cal. 2019). Surprisingly, this leading authority is ***entirely absent*** from Defendants' Motion.

Mr. Joiner were concluded nearly two years ago, entirely in Mr. Joiner's favor. There is no individual or other controversy(s) depicted in the Videos that analyze anything other than those concluded controversies. Therefore, the catchall provision of California's anti-SLAPP statute is inapplicable to the claims raised by Mr. Joiner;

*Fifth*, since the speech that is the subject of Mr. Joiner's claims was private, Defendants have a heavy burden to demonstrate their conduct falls under the protections of § 425.16, subd. (e)(4). *Wilson v. Cable News Network, Inc*., 7 Cal.5[th] 871, 903 (2019). Like Defendants' failure to analyze *FilmOn, Inc*., *Wilson* is also inexplicably absent from Defendants' Motion. Defendants have failed to meet their heavy burden. In virtually all aspects, Defendants' Motion gets the law wrong. The Motion must be denied.

## II.    FACTUAL BACKGROUND

What is most fascinating about the "statement of facts" and convenient characterizations in both of Defendants' pending motions is the obvious failure of Callaghan's lawyers to communicate with him about the Videos and the Videos' subject matter.  In the Motion at 1:7-8, filed on August 2, 2024, the lawyers state: "The Documentary (*sic*) focuses upon a conspiracy theorist whose fixations reveal *deeper truths about American politics*."  Doc. # 19, ECF p. 11, emphasis added. Forty-three days earlier, however, on June 21, 2024, Callaghan conversely stated "Politics are definitely a theme [of the ACV], *but a very minor one*."  See Moreau, "Andrew Callaghan is Back With 'Dear Kelly,' a Poignant Documentary About a Pro-Trump Conservative Who Saved His Life" (emphasis added) and Callaghan's comment thereto (Exh. 1 to the Declaration of Matthew Murphey, submitted concurrently). Callaghan's disagreement with his lawyers about the nature of his work doesn't end there.  Callaghan's lawyers call him a "filmmaker" and "journalist." Callaghan, to the contrary, explains in the ACV that he was "struck by the desire to go beyond the role of a journalist and actually help [Johnson]."  See Defs' Exh. A (ACV), at 26:29.

OPPOSITION TO SPECIAL MOTION TO STRIKE

Callaghan's career was apparently on an upward trajectory until late 2022. Murphey Decl., Exh. 2. He had millions of followers on YouTube, and had created a video with an established producer named "Tim Heidecker" which was later picked up by HBO. Id., Exh. 3. Sometime around the end of 2022, several women came forward and accused Callaghan of sexual assault. Id., Exh 2-3. After admitting to improper behavior with these women, Callaghan lost his business relationship with Mr. Heidecker. Id. Callaghan thereafter claimed to sequester himself somewhere in the desert for nearly a year, effectively hiding from the controversies he had created with his accusers. Id., Exh. 4. According to Callaghan's Motion to Dismiss, co-defendants Gilbert-Katz and Mosher are former "business partners" of Callaghan who assisted in creation of the Videos. MTD at 1:22.

Johnson took a loan from Mr. Joiner's trust in 2007 that was secured by his personal residence. Joiner Decl., ¶ 2. Johnson stopped paying on the loan, and after giving Johnson four years to resolve the default, which Johnson failed to do, Mr. Joiner foreclosed on the property that secured the loan. Id. This resulted in a nearly decade-long series of frivolous lawsuits and appeals brought by Johnson against Mr. Joiner. Johnson also started a terror campaign against Mr. Joiner and his family which ultimately resulted in the issuance of a restraining order against Johnson. *See Joiner v. Johnson*, Case No. G055764, 2019 Cal.App.Unpub, LEXIS 7607 **1-13 (Cal. Ct. App. 2019). Johnson repeatedly violated the restraining order by continuing to stalk Mr. Joiner and his family late at night and continuing to trespass on Mr. Joiner's property and peeping through the windows in Mr. Joiner's home. *Id*., at *13. Johnson was ultimately deemed a vexatious litigant by the Orange County Superior Court in September, 2020. See Plaintiff's Request for Judicial Notice ("PRJN"), Exh. 1. Johnson violated the pre-filing order issued by that court by using his 18-year-old daughter as a "straw plaintiff" in a subsequent lawsuit he filed against Mr. Joiner and others after the pre-filing order issued. PRJN, Exh. 2-4.

Callaghan claims to have met Johnson sometime during 2021, but the TMA shows that Callaghan and Johnson teamed up as early as January 2, 2019.  See Def's. Exh. B at 01:22 and 08:16-08:23. Callaghan has stated that Johnson "saved his life" during the time he was hiding out in the desert, and the two became very close personal friends.  Murphey Decl., Exhs. 4 and 5.

Callaghan and Johnson started working together on various projects for Callaghan's company, co-defendant Channel 5, LLC, including use of Johnson in ads for Channel 5 merchandise. Murphey Decl., Exh. 6. Apparently because Callaghan had lost his previous business relationships due to the sexual assault allegations, Callaghan and Johnson schemed together to create a hit piece on Mr. Joiner; Johnson wants to destroy Mr. Joiner because of Johnson's deranged belief that Mr. Joiner ruined his life. Callaghan apparently thought such a hit piece would revitalize his floundering career, and help out Johnson, who he states is the cousin of Channel 5 star, "Sidam."  Murphey Decl., Exh. 4 at 00:52. The TMA was released on May 6, 2024, and in the first four weeks, it was viewed 465,000 times. Murphey Decl., Exh. 7.  Shortly thereafter, a friend of Mr. Joiner happened upon the video and told Mr. Joiner about it.  Joiner Decl., ¶ 10.  Thereafter Mr. Joiner observed people lurking at the fence surrounding his backyard at 4:56 a.m. and looking into his house. Id. This litigation was later instituted to recover damages against the Defendants and to seek injunctive relief against them.

## III.  LEGAL STANDARD

Mr. Joiner agrees with Defendants that application of the anti-SLAPP statute involves a two-step analysis. "The trial court first decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  If the court finds that the showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on his claim." *Abuemeira v. Stephens*, 246 Cal.App.4th 1291, 1297-98 (2016).  Beyond his agreement on this noncontroversial point, Mr. Joiner parts company with

Defendants.  Defendants' Motion is based entirely on the "catchall" provision found at Cal. Code Civ. P. § 425.16, subd. (e)(4)[3]. See Motion, generally. "[Section 425.16(e)(4)] consequently suggests that courts should engage in a *relatively careful analysis* of whether a particular statement falls within the ambit of 'other conduct' encompassed by subdivision (e)(4)." *FilmOn.com, Inc., supra*, 7 Cal.5th at 145, emphasis added.  A careful analysis of Defendants' conduct as alleged in the Complaint establishes that the anti-SLAPP statute does not apply to Mr. Joiner's claims.

Relatedly, and as more fully set forth in Mr. Joiner's Opposition to Defendants' Motion to Dismiss, Defendants made a tactical decision to submit the Videos under the "incorporation by reference" doctrine. The incorporation by reference doctrine does not apply in the Ninth Circuit unless all parties agree on the authenticity of an incorporated document.  *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).  Here, the ACV is supposedly a "version" of Callaghan's video about Mr. Joiner, but certainly not a final version.  Murphey Decl., Exhs. 8, 9.  Defendants' counsel also confirmed prior to filing the Motion that there will be no final version of the video until it is "picked up" by a streaming service like Netflix, Prime Video, or the like.  Murphey Decl., ¶ 12.  Mr. Joiner does not agree that the version of the ACV submitted by Defendants is final or genuine.  Consequently, this Motion cannot be resolved under a Fed. R. Civ. P. 12(b)(6) analysis; it must be evaluated under the standards of Fed. R. Civ. P. 56 for consideration of evidence.  *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018).  The Court should not consider Defendants' Exh. A under the incorporation by reference doctrine, as more fully set forth in Plaintiff's Evidentiary Objections, filed concurrently.

---

[3] All references to "section 425.16" in this memorandum refer to Cal. Code Civ. P. § 425.16 and its subdivisions.

OPPOSITION TO SPECIAL MOTION TO STRIKE

## IV.  <u>ARGUMENT</u>

### A.  <u>Defendants Engaged in No Protected Activity, and Consequently California's Anti-SLAPP Statute Does Not Apply.</u>

#### 1.    *Defendants' Videos are <u>NOT</u> a Documentary.*

While Defendants urge that the Videos are a documentary (without citation to any legal or other authority), Defendants simply presume the Court will buy their story that the videos are in fact "documentaries."  Not so. "A documentary is a non-fictional story or series of historical events portrayed in their actual location; a film of real people and real events as they occur. A documentary *maintains strict fidelity to fact*." *Davis v. Costa-Gavras*, 654 F.Supp. 653, 658 (S.D.N.Y. 1987) (emphasis added); *accord*, *Lovingood v. Discovery Communs., Inc*., 275 F.Supp.3d 1301, 1313 (N.D. Ala. 2017) (same); *Seale v. Gramercy Pictures*, 964 F.Supp. 918, 923 (E.D. Pa. 1997) (same); *Martinez v. Netflix, Inc*., Case No. 20cv24328WPD, 2023 U.S. Dist. LEXIS 31102 ** 9-10 (S.D. Fla. 2023) (same). See also Prof. Harris Decl., ¶ 7:

> Documentaries are about real people and real events. They respect known facts and other verifiable evidence. They present people, living or dead, and events, past or present, that belong to the world we share rather than invent characters and actions. They are about something that actually happened. They speak about actual situations or events and honor known and observable facts; they do not introduce new, unverifiable facts.

Thus, since the Videos are riddled with false statements and false and/or staged events with no fealty to the truth, the Videos are ***not*** documentaries, and the "newsgathering" immunities urged by Defendants in their Motion are consequently unavailable to them.

Notably, Defendants have systematically refused to provide all the video footage that is specifically and solely in Callaghan's possession for fear that Mr. Joiner would sue them for the content of the same. Murphey Decl., Exh. 10. So, providing the Court with the universe of false statements and false events in the

finalized "Dear Kelly" video at this time is impossible.[4]  Id., Exh. 8-10.

Nevertheless, certain falsehoods, outright lies, and staged events are contained in the

Videos and other public statements by Defendants, affirming that the Videos are not

a documentary.  In the TMA, at time stamp 49:29, Callaghan is depicted at Mr.

Joiner's country club.  Callaghan's overdubbed voice states "[a]lthough I had no

idea what [Joiner] looked like…"  But at time stamp 49:46, Callaghan is depicted

showing a photo on his phone screen to another person at or around the same time,

and Callaghan says: "Have you seen this guy before?" In Exh. B at time stamp

00:49, Callaghan says, referring to when he claims to have met Johnson, "Four years

ago, in the heart of 2020, I began working on a secret project that stemmed from a

casual conversation that I had in Huntington Beach, California, on a cloudy

Thursday afternoon." (Emphasis added.) Yet, in Defendants' Exh. A, at time stamp

1:09:07, Callaghan states "Dear Kelly, when we first met you two and a half years

ago on April 11th, 2021. . ."

In the ACV, at time stamp 11:11, Johnson states: "A guy stealing my home.

He falsified a trustee's deed to himself with seven false representations on it and

stole my home to take about [$]600,000 equity down in Laguna Hills and Nellie

Gale Ranch. His name is Bill Joiner, and he's demonic also. He destroyed my

family, destroyed my 25-year business, separated and devastated my family."  Also,

at time stamp 45:40, Callaghan says "Hello Bill, we've been watching you while

you sleep."  More to the point, this portion of the ACV evidences repeated

---

[4] "The fact that evidence necessary to establish the plaintiff's prima facie case is in
the hands of the defendant or a third party goes a long way toward showing good
cause for discovery." *Sanchez v. Bezos*, 80 Cal.App.5th 750, 778 (2022). In the
TMA, Callaghan claims to have over 300 hours of video footage in his possession.
See Defts' Exh. B, at 01:24.  If the Court is persuaded that Plaintiff cannot make a
prima facie case in the second step of the anti-SLAPP analysis, Plaintiff requests
that the Court continue the ruling on this Motion and order discovery, including
production of all the footage in Defendants' possession related to this case.

falsehoods being perpetuated by Callaghan, to wit: at time stamp 47:01, Callaghan purportedly writes to Mr. Joiner: "while the stolen home debacle is only a small part of our documentary . . ." Emphasis added. In truth, the "stolen home" claim permeates the ACV, and Callaghan profited from merchandise he sold that is imprinted with the words "Somebody Stole Our Home" – Murphey Decl., Exh. 11 At time stamp 47:15, Callaghan shows himself "sending" the purported email to Mr. Joiner, but the email does not exist and was never received.  Joiner Decl., at ¶ 4-5.

Also, in various other publications, false statements by Johnson, Callaghan and others include: Exh. 12 to Murphey Decl. (Callaghan stating "Bill Joiner, who falsified the trustee's deed . . ."); Exh. 13 to Murphey Decl. (Callaghan stating "This one guy that we document a lot is named Kelly Johnson . . . He fell down the rabbit hole because he took a *predatory loan* from a *shitty mortgage company* prior to the 2008 financial crisis.") (emphasis added); Exh. 14 to Murphey Decl. ("Fuck Bill Joiner Channel 5 live with Kelly Johnson and friends," where Channel 5 personalities lead the crowd in chants of "FUCK BILL JOINER!"); Exh. 15 to Murphey Decl. ("Channel 5 Live + Sidam + Unkle Pill + Andrew Callaghan Q&A," where Callaghan again leads the crowd in chants of "FUCK BILL JOINER!", accuses Mr. Joiner of providing an "unfair loan" to Johnson, and further states that Callaghan has more information on Mr. Joiner and Defendants are going to "get him.")  These are only a few samples of the false statements made by Johnson and Callaghan to date, all of which remain publicly accessible.

Falsifying a trustee's deed is a crime in California. *See* Penal Code § 470, subd. (c). Engaging in predatory lending is a crime in California. *See* Penal Code § 532f.  Providing an "unfair loan" is also arguably a criminal offense in California. *See* Penal Code § 532f, subd. (a)(1).  These statements by Defendants are lies, and have already been adjudicated by several courts as lacking merit. See PRJN, Exhs. 5-7.  Moreover, neither Mr. Joiner nor his trust is a mortgage company.  Joiner Decl., at ¶ 2.  These false statements by themselves demonstrate that Defendants'

Videos are not documentaries, and are not protected by § 425.16, subdiv. (e)(4). *See Abuemeira, supra*, 246 Cal.App.4th at 1298 ("Causes of action arising from false allegations of criminal conduct are not subject to the anti-SLAPP laws.")  This is so because "[s]preading false information in and of itself carries no First Amendment credentials.  There is no constitutional value in false statements of fact." *Herbert v. Lando*, 441 U.S. 153, 171 (1978) (internal citations omitted.); see *also Wilson, supra*, 7 Cal.5th at 903:

> To sweep in a claim about falsehoods made regarding a nonpublic figure, where the falsehoods do not contribute in any meaningful way to discussion or resolution of an ongoing matter of public significance, would do nothing to advance the statute's stated purpose of shielding defendants from meritless lawsuits designed to chill speech and petitioning on matters of public interest or controversy.

 Consequently, Defendants' claims that their conduct as alleged in the Complaint are constitutionally immunized or protected by subdivision (e)(4) are simply wrong. Defendants have no immunity from their false claims and false claims of criminal conduct by Mr. Joiner.

> 2.  *There is No First Amendment Protection for Defendants' Unlawful Newsgathering.*

Even if the Court were to somehow find that the Videos constitute "documentaries," Defendants' Motion still fails.  Defendants baldly assert that their "newsgathering" conduct is "protected" by the First Amendment's guaranty of freedom of the press. Again, not so. Even assuming Callaghan was a journalist (he is not) and that the Videos are a documentary (they are not), it is beyond dispute that the press may not engage in unlawful newsgathering.  *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991) (The U.S. Supreme Court discussing cases "that generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news.  As the cases relied on by respondents recognize, the truthful information sought to be published *must have been lawfully acquired*." Emphasis added.)

Case law is legion that the press enjoys no constitutional immunity from laws of general application.  *See Anti-Defamation League of B'Nai B'Rith v. Superior Court*, 67 Cal.App.4th 1072, 1086-87 (1998) ("In contrast to the broad privilege the press enjoys for publishing truthful, newsworthy information in its possession, the press has *no recognized constitutional privilege to violate generally applicable laws in pursuit of material*. Nor, even absent an independent crime or tort, can a highly offensive intrusion into a private place, conversation, or source of information generally be justified by the plea that the intruder hoped thereby to get good material for a news story."  Emphasis added, internal quotation marks and citation omitted); *Miller v. National Broadcasting Company*, 187 Cal.App.3d 1463, 1490 (1986) ("Where the United States Supreme Court has addressed the problem of providing adequate constitutional protection for newsgathering . . . *Branzburg*, for example, cited with approval the statement that '[the] publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others.'" Citing *Associated Press v. NLRB*, 301 U.S. 103, 132-133 (1937); *see also Branzburg v. Hayes*, 408 U.S. 665, 683 (1972)); *Citizens United v. Federal Election Commission*, 558 U.S. 310, 352 (2010); *Obsidian Fin. Group, LLC v. Cox*, 740 F.3d 1284, 1290 (9th Cir. 2013); *Turnbull v. ABC*, Case No. CV033554SJO, 2004 U.S. Dist. LEXIS 24351 ** 61-62 (C.D. Cal. 2004); and *Schulman v. Group W. Productions, Inc*., 18 Cal. 4th 200, 238-39 (Cal. 1998).

Defendants apparently believe that the law taught in these case decisions is not applicable to them.  Defendants are again wrong – and the case decisions Defendants rely on are entirely distinguishable from the facts of the instant case.

For example, Defendants state "Section 425.16 protects newsgathering." Motion at 5:5. Defendants then curiously cite the decision of *Lieberman v. KCOP Television, Inc*., 110 Cal.App.4th 156 (2003), a case in which an anti-SLAPP motion was *denied* by the trial court and the denial affirmed on appeal.  In *Lieberman*, the Court affirmed that <u>unlawful newsgathering</u> is <u>not immunized</u> by constitutional

protection. *See Id.,* at 165-66: "We agree that unlawful *newsgathering* activity does not enjoy constitutional protection to the same extent as news *reporting* activity. (Citation omitted). The right to speak and publish does not carry with it the unrestrained right to gather information[,]" internal citations omitted, emphasis in original.

*San Diegans for Open Gov't. v. San Diego State Univ. Rsch. Foundation*, 13 Cal.App.5th 76 (2017), erroneously cited by Defendants as "13 Cal.App.5th 78 (*sic*)," involved no allegations of unlawful newsgathering. The claims at issue there were based on allegations of self-dealing. That case does not support Defendants' arguments. Similarly, *Ojjeh v. Brown*, 43 Cal.App.5th 1027 (2019) involved "defendants' solicitation of investments from plaintiff and their performance of allegedly unsatisfactory work on the uncompleted documentary" about the Syrian refugee crisis. *Ojjeh* involved no allegations of unlawful newsgathering.

In *Hall v. Time Warner, Inc.*, 153 Cal.App.4th 1337 (2007), the Court of Appeals reversed a trial court's denial of an anti-SLAPP motion that was based on a consensual interview of the former housekeeper of the world-famous actor Marlon Brando. The Court found the topic of the alleged torts committed against the housekeeper, who was a beneficiary of Brando's will, to be newsworthy because of the "public's fascination with Brando and widespread public interest in his personal life made Brando's decisions concerning the distribution of his asserts a public issue or an issue of public interest." 153 Cal.App.4th at 1347. Neither Johnson (or any Defendant) nor Mr. Joiner have such repute with the public on the level of a world-famous actor like Brando. Moreover, *Hall* also does not involve allegations of unlawful newsgathering.

*Collier v. Harris*, 240 Cal.App.4th 41 (2015) was not determined on the first prong of the anti-SLAPP analysis, but was decided on "whether plaintiff's evidence established the requisite probability she would prevail on her claims." *Id.*, at 55-56. *Collier* has nothing to do with unlawful newsgathering, or newsgathering at all.

OPPOSITION TO SPECIAL MOTION TO STRIKE

1    *Association for Los Angeles Deputy Sheriffs v. Los Angeles Times Communications*

2    *LLC*, 239 Cal.App.4th 808 (2015) ("*ALADS*") was also not decided on the first

3    prong of the section 425.16 analysis – the court held "ALADS [Plaintiff] has

4    presented no admissible evidence that Faturechi or anyone else at the Times stole

5    anything."  Moreover, as expressly conceded by Defendants in their Motion, *ALADS*

6    focused solely on "ordinary news-gathering techniques," not unlawful

7    newsgathering techniques.  Motion at 5.

8        Finally, *Blue v. Office of Inspector General*, 23 Cal.App.5th 138 (2018), was

9    based on a government investigation, and was also not decided under the first prong

10   of the anti-SLAPP analysis.  The decision was based on the court's finding that

11   "plaintiffs have not demonstrated a probability of prevailing on their causes of

12   action under Penal Code section 6126.5 and the Public Safety Officers Procedural

13   Bill of Rights Act."  *Id*., at 157.  None of these cases cite to nor explain the

14   numerous cases holding that the First Amendment does not immunize members of

15   the press from unlawful newsgathering.  *E.g., Schulman, supra*, 18 Cal. 4th at 238-

16   39 ("[T]he press in its newsgathering activities enjoys no immunity or exemption

17   from generally applicable laws.")

18           3.    *The Videos Do Not Depict or Otherwise Communicate Matters*
                   *of Public Interest*.
19

20       Nothing depicted in the Videos involve matters of public interest.  Defendants

21   again appear confused about the definition of a matter of "public interest" under

22   California law, specifically in the context of § 425.16, subd. (e)(4).[5]  This is also

23   _____

24   [5] For example but not limitation, Defendants rely on *Nygard, Inc. v. Uusi-Kerttula*,

25   159 Cal.App.4th 1027, 1042 (2008) for the proposition that "In other words, the
     issue need not be 'significant' . . . it is enough that it is one in which the public takes

26   an interest." Motion at 9. *Nygard's* analysis has been criticized by other courts as

27   being inconsistent with the California Supreme Court's decision in *FilmOn, Inc*.
     *See, e.g., Musero v. Creative Artists Agency, LLC*, 72 Cal.App.5th 802, 822 n.8

28   (footnote continued)

borne out by Defendants' statement: "The origins and consequences of extremism are unquestionably topics of public interest."  Motion at 10-11. This statement is merely the unsworn conclusion of Defendants' lawyers, who have apparently not watched the Videos. Plainly, there *are* <u>no</u> "origins and consequences of extremism" depicted in the Videos, and particularly in the TMA, except <u>solely</u> Johnson's bizarre beliefs and conduct against Mr. Joiner.  In the context of the Videos, the depiction of one private controversy between two private individuals does not, as Defendants assert, demonstrate a larger public issue. *See Wilson, supra*, 7 Cal.5th at 902-903:

> CNN's final argument is that, even if Wilson is not a figure in the public eye, discussion of his termination implicates a larger issue that indisputably is of public interest—journalistic ethics. This argument rests on 'what might be called the synecdoche theory of public issue in the anti-SLAPP statute.' (citation omitted): <u>that the discussion of a purported lapse on the part of one of its writers is equivalent to a conversation about the ethical lapses of all journalists everywhere</u>. But for anti-SLAPP purposes, as courts have long recognized, '[t]he part is not synonymous with the greater whole.' (citation omitted) Contrary to arguments that various defendants have pressed over the years, '[s]elling an herbal breast enlargement product is not a disquisition on alternative medicine. Lying about the supervisor of eight union workers is not singing one of those old Pete Seeger union songs (e.g., 'There Once Was a Union Maid'). And … hawking an investigatory service is not an economics lecture on the importance of information for efficient markets.'" [6]

_____

(2021) ("*Nygard's* sweeping pronouncement made 11 years before *FilmOn* is at odds with the Supreme Court's caution that determining whether the subject of speech or other conduct constitutes a matter of public interest requires an evaluation of specific contextual considerations.")  This example and the others stated below establish that Defendants' motion is untethered to the applicable law.

[6] In this portion of the opinion, *Wilson* analyzes § 425.16, subd. (e) (1)-(3).  It is applicable to the instant Motion because the Supreme Court has held that subd. (e)(4) "supports the inference that this provision encompasses conduct and speech similar to what is referenced in § 425.16, subdivision (e)(1) through (3)."  *FilmOn, Inc., supra*, 7 Cal.5th at 144.

Underline added, citing authorities including *FilmOn, Inc., supra,* 7 Cal.5th at 152, and *Commonwealth Engy. Corp. v. Investor Data Exchange, Inc*., 110 Cal.App.4th 26, 31 (2003).

        4.      *The Controversies Depicted in the Videos Concluded Nearly Two Years Ago.*

It is without question that the private controversies between Johnson and Mr. Joiner have long-ago concluded, entirely in favor of Mr. Joiner.  Defendants mischaracterize what is depicted in the Videos as having some overarching theme of "radicalization" of people like Johnson through right-wing politics. Not surprisingly, Callaghan and his lawyers disagree with each other as to what the Videos depict.[7] Aside from Callaghan's disagreement with his counsel, broad, amorphous allegations of the "theme" of the Videos simply misstate how courts are to analyze the "public issue" element.  "What a court scrutinizing the nature of speech in the anti-SLAPP context must focus on is the speech at hand, rather than the prospects that such speech may conceivably have indirect consequences for an issue of public concern."  *Rand Resources, LLC v. City of Carson*, 6 Cal.5th 610, 625 (2019). Defendants' generalized abstraction of what constitutes a "public issue" is immaterial and has been rejected by California courts. "If we were to accept [defendant's] arguments that we should examine the nature of the speech in terms of generalities instead of specifics, then nearly any claim could be sufficiently abstracted to fall within the anti-SLAPP statute." *Consumer Justice Center v. Trimedica Int'l, Inc*., 107 Cal.App.4th 595, 601 (2003); *and see Weinberg v. Feisel*, 110 Cal.App.4th 1122, 1132-33 (2003) ("[T]he assertion of a broad and amorphous public interest is not sufficient.")  See also Motion at 1: "The Documentary focuses

---

[7] See Section II, infra, Callaghan conversely states "Politics are definitely a theme, *but a underline{very minor one}*."  Emphasis added.

OPPOSITION TO SPECIAL MOTION TO STRIKE

upon a conspiracy theorist whose fixations reveal deeper truths about American politics."

The Videos solely focus on Johnson's false claims that Mr. Joiner "stole [his] house," and by doing so supposedly committed various crimes and similar misdeeds, which, according to Callaghan, pushed Johnson to become radicalized. These controversies occurred between 2007 and August 17, 2022, when the Superior Court sustained a demurrer to Johnson's daughter's lawsuit against Mr. Joiner as a violation of the vexatious litigant pre-filing order entered against Johnson. See PRJN, at Exhs. 1-4. As Defendants' motion is based entirely on the "catchall" provision of subdivision (e)(4), for purposes of the "public issue" element, the "speech at hand" comprises claims about concluded controversies. This demonstrates plainly why Mr. Joiner's claims are not subject to anti-SLAPP protections. Where the "issue is not of interest to the public at large, but rather a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected ***must***, at a minimum, occur in the context of an ***ongoing controversy, dispute or discussion*** such that it warrants protection by a statute that embodies the public policy encouraging participation in matters of public significance." *DuCharme v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (2008), emphasis added. *See also* Section 425.16, subd. (a): the statute "declares that it is in the public interest to encourage *continued participation* in matters of public significance." Emphasis added. Callaghan, his co-defendants and the public cannot engage in "continued participation" of controversies that have already been concluded.

Generally, a matter constitutes a public issue if it concerns: (1) a person or entity in the public; (2) conduct that could directly affect a large number of people beyond the direct participants; or (3) a topic of widespread public interest. *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO*, 105 Cal.App.4th 913, 924 (2003). Mr. Joiner and Johnson are private individuals, not

public persons. The false allegations of criminal conduct and other misdeeds that Johnson and Callaghan allege against Mr. Joiner in the Videos and their related public statements are not conduct that directly affects (or affected) a large number of people beyond Mr. Joiner and Johnson.  Subdivision (e)(4) applies only to <u>ongoing</u> controversies. *See Nelson v. Wells*, Case No. B320223, 2023 Cal. App. Unpub. LEXIS 6395 *11 (Cal. Ct. App. 2023) ("[Defendant's] dispute with [Plaintiff] was not ongoing, having ended two years earlier."); *see also DuCharme, supra*, 110 Cal.App.4th at 117-118 (The union's posting "was unconnected to any discussion, debate or controversy" because DuCharme's termination "was a *fait accompli*; its propriety was no longer at issue.  To grant protection to mere informational statements, in this context, would in no way further the statute's purpose of encouraging *participation* in matters of public significance." Emphasis in original).

The dispute between Johnson and Mr. Joiner was a garden-variety claim to ownership of real property and the right to remain on the property in a garden-variety unlawful detainer action, that Johnson attempted to relitigate numerous times. Such disputes between private parties do not show that the Videos were made in connection with a public issue or an issue of public interest within the meaning of section 425.16, subd. (e)(4).  *See Nelson supra*, 2023 Cal. App. Unpub. LEXIS 6395 *12 ("[A]bsent unusual circumstances, a garden-variety employment dispute concerning a non-public figure will implicate no public issue[,]" citing *Wilson v. Cable News Network, Inc*., 7 Cal. 5th 871, 901 (2019)).  *See also Kolar v. Donahue, McIntosh & Hammerton*, 145 Cal.App.4th 1532, 1539 (2006); *Vess v. Salem*, Case No. D081614, 2024 Cal.App. Unpub. LEXIS 303 *3 (Cal. Ct. App. 2024) ("Garden variety" property dispute not subject to anti-SLAPP protection); *Hewlett-Packard Co. v. Oracle Corp*., 239 Cal.App.4th 1174, 1184 (2015) (listing cases of "garden variety" disputes that lead to anti-SLAPP motions that the court labeled as "abusive" due to the litigation having no "connection to an issue of public significance or interest, or to anything that might plausibly be labeled 'public participation.'")

Because the dispute between Johnson and Mr. Joiner concluded nearly two years ago, § 425.16, subd. (e)(4) does not apply to Mr. Joiner's claims.  *See Wilson, supra*, 7 Cal.5th at p. 900. The Videos and their content cannot resolve an issue that was *already* resolved nearly two years ago.

> 5.   *In Context, There is No Degree of Closeness to Defendants' False Statements of Criminal Conduct and the Alleged "Public Issue."*

"The catchall provision demands 'some degree of closeness' between the challenged statements and the asserted public interest." *FilmOn, Inc, supra,* 7 Cal.5th at 150, internal citation omitted. To do so, courts must examine "whether a defendant – through public or private speech or conduct – participated, or furthered, the discourse that makes an issue one of public interest." *Id*., at 151.  Johnson's and Callaghan's false claims that Mr. Joiner engaged in criminal conduct do not and did not contribute to a broader debate on "deeper truths about American politics." Motion at 1:7-8.  The statements are isolated to disputes between Johnson and Mr. Joiner personally, and are not equated at any time in the Videos with any larger debate about "American politics." Other than platitudes about "popular journalism and entertainment" and the alleged "significant public interest," in the same, nowhere in Defendants' Motion is it explained how these specific Videos contribute to the larger discussion of "radicalization" nor to "American politics."

The fact that the controversies between Johnson and Mr. Joiner were litigated in court does not create a public issue, either.  *See Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976) ("We have said that in such an instance '[r]esort to the judicial process . . . is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court."), citing *Boddie v. Connecticut*, 401 U.S. 371, 376-77 (1971).

Defendants simply cannot tie the private controversies between Johnson and Mr. Joiner to an issue of public interest.  "[T]he focus of our inquiry must be on the

specific nature of the speech, rather than on any generalities that might be abstracted from it. (Citation omitted.) Defendants cannot offer a 'synecdoche theory' of public interest, defining their narrow dispute by its slight reference to the broader public issue." *FilmOn, Inc., supra*, 7 Cal.5th at 152.  Defendants' arguments are infected with such theory, claiming that the single, narrow, and concluded real estate controversies between Johnson and Mr. Joiner are indicative of the larger issues of "radicalization" and "deeper truths about American politics."  Defendants' arguments fail logically as well as legally.

Because of Defendants' acts of unlawful newsgathering, their false accusations that Mr. Joiner engaged in criminal conduct, and their inability to tie the Videos to a matter of public interest, the protections of § 425.16 are unavailable to them. The Court's inquiry should end here. Defendants' Motion should be denied.

## B.    Plaintiff is Likely to Prevail on Each of His State Law Claims.

The second prong of the anti-SLAPP analysis requires that if the Court finds Defendants' actions arose from protected conduct, Plaintiff must present a prima facie case that demonstrates Plaintiff is likely to prevail on his state law claims. "We accept as true the evidence favorable to the plaintiff.  A plaintiff must establish that the challenged claims have minimal merit to defeat an anti-SLAPP motion." *Mitchell v. Twin Galaxies, LLC*, 70 Cal.App.5th 207, 217-18 (2021).  "A plaintiff is not required to prove the specified claim to the trial court in connection with the minimal merit determination." *Cox v. Mariposa Cnty.*, Case No. 1:19cv01105AWI, 2022 U.S. Dist. LEXIS 165502 *42 (E.D. Cal 2022).  *See also Sycamore Ridge v. Naumann*, 157 Cal.App.4th 1385, 1389 (2008) ("... the court[ ] . . . must draw every legitimate favorable inference from the plaintiff's evidence.")

### 1.    *Plaintiff Will Prevail on His Claim 3 for Stalking.*

Defendants claim that "as constitutionally protected speech, the (Videos) are explicitly excluded from liability under that statute."  Motion at 12.  The Videos are not a documentary. See § IV A 1 *infra*. As also demonstrated above, unlawful

newsgathering is not constitutionally protected. See § IV A 2. Defendants next claim that Mr. Joiner cannot provide "independent corroborating evidence that the defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance or harass the plaintiff." Motion at 12. Defendants seem to forget that Callaghan and Johnson video recorded themselves surveilling Mr. Joiner's home, the home's curtilage, and inside Mr. Joiner's home (through windows). See Defendant's Exh. B at time stamp 01:54 and 08:13-08:24; see also Joiner Decl. at ¶ 7, confirming that the house depicted in the TMA is in fact his home. As for the element that the alleged activity was intended to alarm or harass the plaintiff, see TMA at time stamp 50:08 (Callaghan and Johnson in ghillie suits, with Callaghan smirking and Johnson stating "Bill, truth and justice is heading your way. Nothing more, nothing less.") Moreover, another element under Civil Code § 1708.7(a) includes that "the defendant violated a restraining order . . ." Defendant's Exh. B shows the date when the stalking was performed at time stamp 50:48. The date displayed is "1/2/2019." As of January 2, 2019, Johnson was under a restraining order that required him to stay away from Mr. Joiner and his property of a distance of 300 yards. PRJN, Exh. 8.

### 2.    *Plaintiff Will Prevail on His Claim 4 for Harassment*

Defendants claim again that because the Videos are a so-called "Documentary," Plaintiff cannot state a claim for harassment due to constitutional immunity. As demonstrated above, Defendants are wrong. Defendants also claim, without any evidentiary support whatsoever, that they were "outside Plaintiff's gated community" when they stalked and surveilled Mr. Joiner and his home. Motion at 13. Defendants' Exh. B at 08:18 demonstrates at least that Callaghan and Johnson were directly behind Mr. Joiner's home while they surveilled him. See Joiner Decl., at ¶ 7 explaining that even were Callaghan and Johnson surveilling his home and the interior thereof from outside his perimeter fencing, the property directly behind his property belongs to his homeowners' association. Moreover, it

has already been judicially determined that Johnson's skulking around Mr. Joiner's property late at night and early in the morning is harassment and would cause a reasonable person in to suffer substantial emotional distress.  *See Joiner v. Johnson*, Case No. G055764, 2019 Cal.App.Unpub, LEXIS 7607 * 13 (Cal. Ct. App. 2019):

> Johnson's hostile behavior would cause a reasonable person to suffer substantial emotional distress. . . . He . . . accused [Joiner] of . . . *violating state and federal laws*, and trying to steal Johnson's home. . . . In one instance, he came onto Joiner's property and was seen on video surveillance walking up to and around Joiner's house, attempting to look over the gates and into the house in the middle of the night. <u>Even after the temporary restraining order was issued, Johnson returned to Joiner's home and videoed Joiner's back fence, pausing at the access points</u>. Emphasis added.

The fact that Johnson continued to engage in this harassment even after a restraining order issued against him is sufficient evidence to demonstrate he will do it again.  The fact that Callaghan purchased the ghillie suits for both himself and Johnson (Defendants' Exh. B, time stamp 50:00) to engage in this activity does not support Defendants' lawyer's unsworn testimony that Defendants' unlawful harassment of Mr. Joiner and his family "is [not] reasonably likely to occur." Motion at 13:4.

       3.    *Plaintiff is Likely to Prevail on his Claim 5 for CIPA Violations.*

Defendants' arguments on this claim are bereft of a single legal authority. Defendants call this claim "imaginary."  Motion at 13.  Defendants also claim Mr. Joiner is required to identify "what conversations were supposedly intercepted." Motion at 14.  There is a reason that Defendants provide no authority for this proposition – because the law is against them. See Oppo to MTD, p. 2.  Defendants misstate the TMA, claiming that it only shows Callaghan outside the door of an empty office.  Motion at 14.  In Defendants' Exh. B at time stamp 01:13 to 01:15, Callaghan is depicted staring at a person in one of Mr. Joiner's offices with binoculars, and later shows him in Mr. Joiner's building, standing outside the office doors on his knees peering through the glass.  Defendants claim that no video or

OPPOSITION TO SPECIAL MOTION TO STRIKE

audio recording was made of anyone during Callaghan's visit to Mr. Joiner's office, but the claim is unsupported with evidence – what is shown in the Videos is heavily edited. Defendants Exh. B plainly establishes that Callaghan was in Mr. Joiner's office building with recording equipment – a camera with video and audio recording capabilities. It is a reasonable assumption that Callaghan had the ability to use that camera to record visual and audio conversations with people he encountered in Mr. Joiner's office, and Callaghan was there to interview people. Joiner Decl. ¶ 9. Plaintiff is likely to prevail on his Claim 5.

4.    *Plaintiff is Likely to Prevail on His IIED and NIED Claims, (Claims 7 and 8)*

Again, Defendants' argument for claims 7 and 8 are bereft of legal authority except one inapposite case. Motion at 16. Defendants' arguments here are easily dispatched. Mr. Joiner has proven that Callaghan and Johnson have falsely accused Mr. Joiner of having committed crimes such as falsifying a trustee's deed and engaging in mortgage fraud (see § IV A 1 above). "Causes of action arising from false allegations of criminal conduct <u>are not subject to the anti-SLAPP laws</u>." *Abumeira, supra*, 246 Cal.App.4th at 1298, underline added. Defendants' Motion therefore fails and Plaintiff does not have to demonstrate a likelihood of prevailing on the merits of these claims. Nevertheless, Defendants admit to having recorded at least the curtilage of Mr. Joiner's home. Motion at 16:12. "Curtilage" is the area immediately surrounding and associated with a home. *Florida v. Jardines*, 569 U.S. 1, 6 (2013). The close connection between the curtilage and the home means that the curtilage is entitled to the same degree of privacy protection as the home itself. *California v. Ciraolo* (1986) 476 U.S. 207, 212. Moreover, Defendants' conduct has already been judicially determined to have caused substantial emotional distress to Mr. Joiner and his family. *See Joiner v. Johnson, supra*, 2019 Cal.App.Unpub, LEXIS 7607 * 13 ("Johnson's hostile behavior would cause a reasonable person to suffer substantial emotional distress.") Further, it is a legitimate inference that

Defendants recorded Mr. Joiner and/or his family members in their home for quite some time and only put a few seconds of their recording in Defendants Exhibits A and B. Defendants have more video footage that shows the extent of their unlawful conduct – they just refuse to produce it to date.

Defendants apparently believe that stalking and recording persons within their home and place of business is "not outrageous." Motion at 15. To determine "outrageousness," courts look to the "context, conduct, and circumstances surrounding the intrusion, as well as the intruder's motives and objectives, the setting into which he intrudes, and expectations of those whose privacy is invaded." *Wilkins v. Nat'l Broadcasting Co*., 71 Cal.App.4th 460, 466 (1997). The home is sacrosanct. Plaintiff is likely to prevail on these claims.

> 5. *Plaintiff is Likely to Prevail on his Invasion of Privacy Claims False Light Claims and UCL Claim (Claims 9-12)*

For similar reasons, Mr. Joiner is likely to prevail on his Ninth and Eleventh claims for invasion of privacy. Defendants provide no legal authority for the arguments in this regard. The invasions of privacy claims are based on *unlawful* newsgathering, not "information gathering." Defendants have admitted to recording Plaintiff's home and office but have produced clips that are only seconds long.

Regarding the False Light Claim 10, Defendants are apparently unaware of Fed. R. Civ. P. 10(c), which states in pertinent part: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." At least paragraph 78 of the Complaint which is incorporated into Claim 10 at paragraph 159 addresses this point. Furthermore, the critical question is not whether a statement is fact or opinion, but 'whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact' [citation], when considering the totality of the circumstances." *Castillo v. The Well Cmty. Church*, Case No. 1:21cv01460, 2022 U.S. Dist. LEXIS 224801 *22 (E. D. Cal. 2022). Defendants' further claim that Johnson's statements "are not factual

OPPOSITION TO SPECIAL MOTION TO STRIKE

assertions" and that the statements in the "Documentary" are fair and true reporting on court proceedings is frivolous.  "The fair-and-true-report privilege protects 'fair and true reports of anything said in the course of a judicial proceeding,' including pleadings." *Blatt v. Pambakian*, Case No. 2055084, 2021 U.S. App. LEXIS 29015, *2 (9th Cir. 2021).  Nowhere in the Videos is anything mentioned about what was "said in the course of a judicial proceeding."

With respect to Claim 12, "Section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Matoff v. Brinker Rest. Corp.*, 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006). Callaghan and Johnson violated at least Penal Code section 602, which is sufficient to state a UCL claim.  It is undisputed that Callaghan is using the Videos and selling merchandise to make money and has made money in the nationwide showings of "Dear Kelly."  Defendants cannot deny this fact without committing perjury or intentionally misleading the Court.  Plaintiff is entitled to disgorgement of profits from Defendants under section 17200.  "Section 17200 allows only disgorgement of profits. . .". *Dozier v. Maispace*, Case No.: C051761PVT, 2007 U.S. Dist. LEXIS 14540, *30-31 (N.D. Cal. 2007).

## V.    **CONCLUSION**

Defendants' Motion is factually and legally incorrect.  For the reasons stated herein, Defendants' Motion should be denied.

Dated: September 24, 2024                     **MURPHEY & MURPHEY, A.P.C.**


                                              */s/ Meghan C. Murphey*
                                              Meghan C. Murphey
                                              Matthew D. Murphey
                                              Attorneys for Plaintiff William Joiner