1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11

WILLIAM JOINER,

Case No.: 8:24-cv-01160-CBM-KS

12

Plaintiff,

13

v.

**AMENDED ORDER RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

ANDREW CALLAGHAN *et al.*,

14

Defendants.

15

16    The matter before the Court is Defendants Andrew Callaghan, Channel 5

17    LLC, Evan Gilbert-Katz, and Nicolas Mosher's (collectively, "C5 Defendants'" or

18    "Defendants'") Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ.

19    P. 12(b)(6). (Dkt. No. 16 (the "Motion").)

20    **I.    BACKGROUND**

21    On May 30, 2024, Plaintiff William Joiner ("Plaintiff") filed the Complaint

22    naming Andrew Callaghan, Channel 5 LLC, Evan Gilbert-Katz, Nicolas Mosher,

23    and Kelly Scott Johnson as Defendants, and asserting the following twelve causes

24    of action: (1) violation of the Federal Wiretap Act, 18 U.S.C. §§ 2511, 2520; (2)

25    violation of the Federal Electronic Communications Privacy Act, 18 U.S.C. §§

26    2510, 2520; (3) civil stalking in violation of Cal. Civ. Code § 1708.7; (4)

27    harassment in violation of Cal. Code of Civ. Proc. § 527.6; (5) violation of

28    California Invasion of Privacy Act, Cal. Pen. Code §§ 632, 637.2; (6) defamation;

(7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; (9) common law invasion of privacy; (10) false light invasion of privacy; (11) intrusion upon seclusion; and (12) violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*. (Dkt. No. 1.) Each of Plaintiff's claims are asserted against all Defendants except for Plaintiff's sixth cause of action for defamation which asserted against Defendant Johnson only.[1]

## II.    STATEMENT OF THE LAW

The court may dismiss a complaint for "failure to state a claim upon which relief can be granted" pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal of a complaint can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). On a motion to dismiss for failure to state a claim, courts accept as true all well-pleaded allegations of material fact and construes them in a light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031-32 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555. Labels and conclusions are insufficient to meet the Plaintiff's obligation to provide the grounds of his or her entitlement to relief. *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* If a complaint cannot be cured by additional factual allegations, dismissal without leave to amend is proper. *Id.* A court may consider the allegations contained in the pleadings, exhibits attached to or referenced in the complaint, and matters

---

[1] Defendant Johnson has not appeared in this action.

properly subject to judicial notice in ruling on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Thomas v. Walt Disney Co.*, 337 Fed. App'x. 694, 694-95 (9th Cir. 2009).

## III.    DISCUSSION

**A.    Federal Wiretap Act, Federal Electronic Communications Privacy Act ("ECPA"), and California Invasion of Privacy Act ("CIPA") (First, Second and Fifth Causes of Action)**

Defendants move to dismiss Plaintiff's Wiretap Act and ECPA claims on the ground Plaintiff does not allege Defendants intercepted any confidential communications. Defendants also move to dismiss Plaintiff's CIPA claim on the ground the Complaint does not allege Defendants recorded any confidential communications.

It is a violation of the Wiretap Act if a person:

> **(a)** intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; . . .

> **(c)** intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

> **(d)** intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

> **(e)(i)** intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, intercepted by means authorized by sections 2511(2)(a)(ii), 2511(2)(b)-(c), 2511(2)(e), 2516, and 2518 of this chapter, (ii) knowing or having reason to know that the information was obtained through the interception of such a communication in connection with a criminal investigation, (iii) having obtained or received the information in connection with a criminal investigation, and (iv) with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation . . . .

18 U.S.C. § 2511.  California Penal Code § 632 provides "[a] person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio" violates CIPA.[2]

Here, the Complaint alleges Defendants made video and audio recordings of Plaintiff in his residence and place of business without his consent.[3]   Therefore, Plaintiff pleads sufficient facts to state a claim under the Wiretap Act, EPCA, and CIPA.  *See* 18 U.S.C. §§ 2510, 2511; Cal. Pen. Code § 632.[4]

**B.    Cal. Civ. Code § 1708.7 (Third Cause of Action)**

Defendants move to dismiss Plaintiff's California Civil Code 1708.7 claim on the ground it is based on constitutionally-protected activity which is excluded from the statute, and Plaintiff has not alleged the requisite pattern of conduct under the statute or "provided independent corroborating evidence thereof."

Cal. Civ. Code § 1708.7 provides:

> (a) A person is liable for the tort of stalking when the plaintiff proves all of the following elements of the tort:

> (1) The defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff. In order to establish this element, the plaintiff shall be required to support his or her allegations with independent corroborating evidence.

> (2) As a result of that pattern of conduct, either of the following

---

[2] "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (citing *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018)); *see also Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *9 n.8 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021).

[3] *See* Compl. ¶¶ 1, 5, 6, 10, 90, 104, 105, 109.

[4] *See also In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 816-17 (N.D. Cal. 2020); *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 959 (N.D. Cal. 2021).

4

occurred:

(A) The plaintiff reasonably feared for his or her safety, or the safety of an immediate family member. For purposes of this subparagraph, "immediate family" means a spouse, parent, child, any person related by consanguinity or affinity within the second degree, or any person who regularly resides, or, within the six months preceding any portion of the pattern of conduct, regularly resided, in the plaintiff's household.

(B) The plaintiff suffered substantial emotional distress, and the pattern of conduct would cause a reasonable person to suffer substantial emotional distress.

(3) One of the following:

(A) The defendant, as a part of the pattern of conduct specified in paragraph (1), made a credible threat with either (i) the intent to place the plaintiff in reasonable fear for his or her safety, or the safety of an immediate family member, or (ii) reckless disregard for the safety of the plaintiff or that of an immediate family member. In addition, the plaintiff must have, on at least one occasion, clearly and definitively demanded that the defendant cease and abate his or her pattern of conduct and the defendant persisted in his or her pattern of conduct unless exigent circumstances make the plaintiff's communication of the demand impractical or unsafe.

(B) The defendant violated a restraining order, including, but not limited to, any order issued pursuant to Section 527.6 of the Code of Civil Procedure, prohibiting any act described in subdivision (a).

A "pattern of conduct" for the purposes Cal. Civ. Code § 1708.7 means "conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose," but "[c]onstitutionally protected activity is not included within the meaning of 'pattern of conduct.'" Cal. Civ. Code § 1708.7(b)(1); *see also* Cal. Civ. Code § 1708.7(f) ("This section shall not be construed to impair any constitutionally protected activity, including, but not limited to, speech, protest, and assembly."); *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021).

Here, Defendants argue Plaintiff's theory of stalking is based on Defendants' constitutionally protected speech and newsgathering activities which are excluded from liability under Cal. Civ. Code § 1708.7, relying on *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049 (2009). However, in the portion of *Tichinin* relied on by Defendants, the California Court of Appeals noted "the right of free speech protects not only the actual expression of one's views, thoughts,

opinions, and information concerning improper or unlawful conduct by **_public_** **_officials_** but also non-expressive conduct that intrinsically facilitates one's ability to exercise the right of free speech, including lawful efforts to gather evidence and information about **_public officials_** concerning allegedly improper or unlawful conduct. *Tichinin*, 177 Cal. App. 4th at 1077 (emphasis added).  Here, the Complaint does not allege Plaintiff is a public official.

Defendants argue in their reply that the exception for constitutionally protected speech excluded from liability under Cal. Civ. Code § 1708.7 is not limited to speech regarding public figures or speech with a legitimate newsworthy purpose, and contend it also applies to speech regarding a private business dispute, relying on *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736 (9th Cir. 2021).  However, the Ninth Circuit has rejected "[t]he defendant[s'] claims that the First Amendment immunizes [them] from liability for invading plaintiff's [home] with a hidden camera and its concealed electronic instruments because its employees were gathering news and its instrumentalities 'are indispensable tools of investigative reporting,'" noting although "[w]e agree that newsgathering is an integral part of news dissemination," "[w]e strongly disagree, however, that the hidden mechanical contrivances are 'indispensable tools' of newsgathering," reasoning "[i]nvestigative reporting is an ancient art; its successful practice long antecedes the invention of miniature cameras and electronic devices," "[t]he First Amendment has never been construed to accord newsmen immunity from torts or crimes committed during the course of newsgathering," and "[t]he First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office."  *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971); *see also Turnbull v. Am. Broad. Cos.*, 2004 WL 2924590, at *18 (C.D. Cal. Aug. 19, 2004) (citing *Dietemann*, 449 F.2d at 249-50).

As to Defendants contention that Plaintiff fails to submit "independent

6

corroborating evidence" that Defendants engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff, Fed. R. Civ. P. 12(b)(6) examines the sufficiency of the pleadings, not evidence. While Cal. Civ. Code § 1708.7 references "independent collaborating evidence," such language relates to Plaintiff's burden of proof to prevail on his claim, not pleadings standards. *See also McCluskey v. Hendricks*, 2023 WL 3376564, at *1 (9th Cir. May 11, 2023); *Liguore v. Simmons*, 2024 WL 4112332, at *11 (N.D. Cal. Sept. 5, 2024) (citing *Thunder Studios*, 13 F.4th at 743); *Mata v. U.S. Dep't of Navy*, 2020 WL 5983927, at *5 (C.D. Cal. Mar. 26, 2020); *Bolton v. City of Berkeley*, 2019 WL 6250927, at *4 (N.D. Cal. Nov. 22, 2019).

　　　　With respect to the requirement that "plaintiff must have, on at least one occasion, clearly and definitively demanded that the defendant cease and abate his or her pattern of conduct and the defendant persisted in his or her pattern of conduct unless exigent circumstances make the plaintiff's communication of the demand impractical or unsafe," the Complaint alleges Plaintiff "demanded by written correspondence dated May 23, 2024 and thereafter, served by overnight courier, that clearly and definitely demanded that defendants, and each of them, cease their actions in stalking Mr. Joiner and his immediate family, to not use the recordings and other information on Mr. Joiner and his family that was the product of defendants' stalking, and to cease publication of the Callaghan Film." (Compl. ¶ 119.)[5] Defendants argue the May 23, 2024 correspondence "occurred long after filming was complete" and there are "no allegations of conduct after this except the protected speech activities of promoting and screening the Documentary." However, the Complaint alleges Defendants' "pattern of conduct" has "made a credible threat" to Plaintiff's safety "through their intentional creation and

---

[5] Plaintiff submits a copy of the May 23, 2024 correspondence (Everdell Decl. Ex. C), which the Court may consider pursuant to the incorporation by reference doctrine.

publication of the Callaghan Film and/or parts thereof," "defendants' actions have caused Mr. Joiner to reasonably fear for his safety," and "[b]ased on the impending release of the Callaghan Film, [Plaintiff] continues to reasonably fear for his safety." (Compl. ¶¶ 116, 118.) "The First Amendment has never been construed to accord newsmen immunity from torts or crimes committed during the course of newsgathering," and "[t]he First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office." *Dietemann*, 449 F.2d at 249. Therefore, the Complaint alleges conduct by Defendants that occurred after the May 23, 2024 correspondence.

Accordingly, Plaintiff pleads sufficient facts to state a claim for violation of Cal. Civ. Code § 1708.7.

## C.    Cal. Civ. Proc. Code § 527.6 (Fourth Cause of Action)

Cal. Civ. Proc. Code § 527.6(b) provides: "'Harassment' is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." "Course of conduct" for purposes of Cal. Civ. Proc. Code § 527.6 is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email," and "[c]onstitutionally protected activity is not included within the meaning of 'course of conduct.'" Cal. Civ. Proc. Code § 527.6(b)(1).

Defendants argue Plaintiff's Cal. Civ. Proc. Code § 527.6 claim it is based on constitutionally protected speech and Plaintiff has not pled harassing conduct

within the meaning of the statute.  Defendants argue Cal. Civ. Proc. Code § 527.6 only provides for injunctive relief (not damages) which would be "impossible" here because an injunction restraining that publication of the Documentary "would be an unconstitutional prior restraint."  However, "harassment" as defined under Cal. Civ. Proc. Code § 527.6 "constitutes a narrow exception to the First Amendment's general prohibition against prior restraints and content-based restrictions on speech," and "despite the robust protections afforded by the First Amendment, a district court still possesses 'the inherent power to issue an injunction against litigants who harass their opponents.'" *Jeffrey Katz Chiropractic, Inc. v. iBeat, Inc.*, 2020 WL 4459122, at *3 (N.D. Cal. May 26, 2020) (citing *Yates v. Belli Deli*, , 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007); *DeLong v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990)).  As recognized in *Jeffrey Katz Chiropractic*:

> Courts have made a distinction between communication and harassment.  The difference is one between free speech and conduct that may be proscribed.  Although restrictions based upon conduct may incidentally restrict speech, the courts have found that such a restriction poses only a minimal burden on speech.... Thus, courts do have the power to enjoin harassing communication.  Courts also have the power to enjoin repeated invasions of privacy.

*Id.* (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005)).  Moreover, "[t]he First Amendment has never been construed to accord newsmen immunity from torts or crimes committed during the course of newsgathering," and "[t]he First Amendment is not a license to trespass . . . or to intrude by electronic means into the precincts of another's home or office." *Dietemann*, 449 F.2d at 249;[6] *cf. Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200,

---

[6] *Luo v. Volokh*, 102 Cal. App. 5th 1312 (Cal. Ct. App. 2024), relied on by Defendants is inapposite.  In that case, the California Court of Appeals found in reviewing the trial court's rulings on an anti-SLAPP motion that the defendant's conduct which consisted of identifying the plaintiff in a law review article and on his blog was "not within the ambit of section 527.6's definition of harassment" because it "was not unlawful violence or a credible threat of violence, and "[t]here was no evidence that [the defendant] stalked [the plaintiff], made harassing phone calls, or sent her harassing correspondence," and the defendant's "writings served a legitimate purpose—a discussion on how a litigant's use of a pseudonym could

229-30 (1998), *as modified on denial of reh'g* (July 29, 1998).

Defendants also argue the making and dissemination of a documentary cannot constitute harassment, and "[t]he C5 Defendants' conduct in filming for the Documentary—from outside Plaintiff's gated community and outside the door of his company's empty office suite—cannot satisfy this standard [for harassment] either because there is no claim that this conduct created a threat of violence," but "[r]ather, filming these scenes served the purpose of creating the Documentary." However, "harassment" for purposes of Cal. Civ. Proc. Code § 527.6 is not limited to "a credible threat of violence," and includes "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Cal. Civ. Proc. Code § 527.6(b).

Therefore, Plaintiff plead sufficient facts to state a claim for harassment under Cal. Civ. Proc. Code § 527.6. (*See* Compl. ¶¶ 1, 10, 67-72, 87.)

**D.     False Light Invasion of Privacy (Tenth Cause of Action)**

To state a claim for false light invasion of privacy, Plaintiff must allege: (1) disclosure to one or more persons of information about or concerning Plaintiff that was presented as factual but that was actually false or created a false impression about Plaintiff; (2) the information was understood by one or more persons to whom it was disclosed as stating or implying something highly offensive that would have a tendency to injure Plaintiff's reputation; (3) Defendant acted with actual malice; and (4) Plaintiff was damaged by the disclosure. *Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1082 (9th Cir. 2002); *see also R & R Surgical Inst. v. Int'l Longshore & Warehouse Union*, 2022 WL 1514653, at *5 (C.D. Cal. Jan. 5, 2022) (citing *Solano*, 292 F.3d at 1082).

---

affect open access to court proceedings and impede investigations into a litigant's credibility." *Id*. at 1323. In contrast, here, the allegations in the Complaint include more than Defendants mentioning Plaintiff's name in an article or on a blog—the Complaint alleges Defendants spent "two years stalking, surveilling, video recording, and audio recording [Plaintiff], his family, his home residence, and his place of business" (Compl. ¶ 1.)

### (1)    Statements

Defendants move to dismiss Plaintiff's false light invasion of privacy claim on the ground Plaintiff fails to identify the specific statements at issue. However, the Complaint alleges purported false statements that Plaintiff "stole" Johnson's home, falsified a trustee's deed, and violated the law in foreclosing on Johnson's property. (*See, e.g.,* Compl. ¶¶ 59, 70-71, 78, 82-83, 85.)

### (2)    Protected Opinion

Defendants also argue the statements regarding Plaintiff in the Documentary and Trailer are protected opinion. However, Defendants' alleged trespassing on private property to audio record and video record Plaintiff and his family at Plaintiff's residence without their consent falls outside the protections of the First Amendment. *See Dietemann*, 449 F.2d at 249; *Turnbull*, 2004 WL 2924590, at *18. Defendants also contend the Trailer and Documentary "bear unmistakable indications" that Johnson's statements "would not be taken as factual by a reasonable audience." However, "a statement of opinion can be actionable if it implies a false assertion of fact." *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12114762, at *22 (C.D. Cal. Oct. 8, 2013) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-20 (1990); *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696 (Cal. Ct. App. 2012)). Here, accepting the Complaint's allegations as true regarding the litigation between Plaintiff and Defendant Johnson in connection with the loan and foreclosure on his property, the statements in the Documentary that Plaintiff was a "financial predator" who "falsified legal documents" to improperly foreclose on and "steal" Johnson's home are "provably false" assertions of fact because the state courts have upheld the foreclosure on Johnson's home based on Johnson's default on the loan on his property.[7] *See Mireskandari*, 2013 WL 12114762, at *22; *cf. Summit Bank v.*

---

[7] See Compl. ¶¶ 33, 35, 37-42, 44-46, 49, 50-52, 55.

1    *Rogers,* 206 Cal. App. 4th 669, 697 (Cal. Ct. App. 2012).  Accordingly, the

2    statements in the Documentary are not protected opinion.

3         **(3)    Fair Report Privilege**

4         Defendants also contend the Documentary is protected by California's

5    statutory fair report privilege under Cal. Civ. Code § 47, which provides:

6         A privileged publication or broadcast is one made . . . By a fair and
         true report in, or a communication to, a public journal, of (A) a
7         judicial, (B) legislative, or (C) other public official proceeding, or (D)
         of anything said in the course thereof, or (E) of a verified charge or
8         complaint made by any person to a public official, upon which
         complaint a warrant has been issued.
9

10   A publication is privileged as a matter of law under the fair report privilege only

11   "when there is no dispute as to what occurred in the judicial proceeding reported

12   upon or as to what was contained in the report."  *Dorsey v. Nat'l Enquirer, Inc.*,

13   973 F.2d 1431, 1435 (9th Cir. 1992) (quoting *McClatchy Newspapers, Inc. v.*

14   *Super. Ct.*, 189 Cal. App. 3d 961, 976 (Cal. Ct. App. 1987); *Kilgore v. Younger*,

15   30 Cal. 3d 770, 777 (1982) (internal quotation marks omitted)); *see also Crane v.*

16   *Arizona Republic*, 972 F.2d 1511, 1517 (9th Cir. 1992).  In determining whether

17   the fair report privilege applies, "courts must accord media defendants a 'certain

18   amount of literary license' and exercise a 'degree of flexibility' in determining

19   what is a 'fair report.'"  *Dorsey*, 973 F.2d at 1436 (quoting *McClatchy*

20   *Newspapers, Inc.*, 189 Cal. App. 3d at 976).  The fair report privilege is not

21   limited to verbatim quotations but also extends to commentary that captures "the

22   substance, the gist, [and] the sting of the libelous charge."  *Crane*, 972 F.2d at

23   1519 (quoting *Hayward v. Watsonville Register-Pajaronian & Sun*, 265 Cal. App.

24   2d 255, 262 (Cal. Ct. App. 1968) (internal quotation marks omitted)).  "In the

25   context of judicial proceedings, case law is clear that reports which comprise a

26   *history* of the proceeding come within the [fair report] privilege."  *Braun v. Chron.*

27   *Publ'g Co.*, 52 Cal. App. 4th 1036, 1050 (Cal. Ct. App. 1997).  Moreover, "where

28   a newspaper accurately reports statements made in a judicial proceeding, they are

protected under the privilege irrespective of whether the statements are in fact true or [whether] the reporter [acted with] actual malice." *Mireskandari*, 2013 WL 12114762, at *20-21 (citing *Smith v. Santa Rosa Democrat*, 2011 WL 5006463, at *3 (N.D. Cal. Oct. 20, 2011); *McClatchy Newspapers, Inc.*, 189 Cal. App. 3d at 974)). "News articles, in other words, need only convey the substance of the proceedings on which they report, as measured by their impact on the average reader." *Crane*, 972 F.2d at 1519.

Here, Defendants contend the Documentary "fairly reports" the prior legal disputes between Plaintiff and Defendant Johnson, citing to 55 seconds of the Documentary (54:54-55:49), and argues Defendants are thus "immune" for any liability for false light. The Documentary is over one hour in length. Even if the "fair report" privilege may protect the 55 second portion of the Documentary cited by Defendants, Defendants do not demonstrate the remainder of the Documentary is protected under the fair report privilege. The Court has reviewed the entire Documentary which includes material which are not reports regarding a judicial proceeding. Therefore, the Court cannot conclude Plaintiff's false light claim fails as a matter of law based on the fair report privilege. *See Mireskandari*, 2013 WL 12114762, at *21 (citing Cal. Civ. Code § 47(d)(1)).

Moreover, the Complaint alleges Defendants released a video entitled "Tour & Movie Announcement" on May 6, 2024 and a video of a White Lives Matter Rally in April 2021 (*see* Compl. ¶¶ 69-70, 78), which are not reports regarding a judicial proceeding. Accordingly, the fair report privilege does not apply as a matter of law to those videos. *See* Cal. Civ. Code § 47(d)(1); *Dorsey*, 973 F.2d at 1435; *Mireskandari*, 2013 WL 12114762, at *21 (citing *Hawran v. Hixson*, 209 Cal. App. 4th 256, 281-82 (Cal. Ct. App. 2012)).

**E.    Intentional Infliction of Emotional Distress ("IIED") and Negligent Infliction of Emotional Distress ("NIED") (Seventh and Eighth Cause of Action)**

**(1)  Constitutionally Protected Speech**

Defendants move to dismiss Plaintiff's IIED and NIED claims on the ground they are based on constitutionally protected opinion.  For the reasons discussed above in connection with Plaintiff's false light claim, the allegedly false and defamatory statements in the Trailer and Documentary are not protected opinion because they imply a false assertion of fact.  Moreover, Plaintiff's IIED and NIED claims are not based solely on alleged false statements by Defendants. (*See* Compl. ¶¶ 141-44, 146-47).  Furthermore, Defendants' alleged trespassing on private property to audio record and video record Plaintiff and his family at Plaintiff's residence without their consent for the Documentary falls outside the protections of the First Amendment.  *See Dietemann*, 449 F.2d at 249; *Turnbull*, 2004 WL 2924590, at *18.

**(2)  Outrageous Conduct**

To state a claim for IIED, Plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct[.]" *Colonial Van & Storage, Inc. v. Super. Ct.*, 76 Cal. App. 5th 487, 506 (Cal. Ct. App. 2022). Conduct is "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009) (citation omitted).  Here, Defendants argue the Complaint does not allege outrageous conduct as required to state a claim for IIED.  However, the Complaint alleges Defendants stalked, surveilled, video recorded, and audio recorded Plaintiff and his family at his home residence and place of business for a period of two years without Plaintiff's or his family's consent for a film regarding Plaintiff.  (Compl. ¶¶ 1, 6.)  Such alleged conduct is beyond the bounds of what should be tolerated in a civilized community, and therefore the Complaint

sufficiently alleges outrageous conduct for Plaintiff's IIED claim.  *See Covert v. Harris*, 2017 WL 10543399, at *2 (C.D. Cal. June 15, 2017); *Shulman*, 18 Cal. 4th at 231.

### (3)    Duty

Defendants also contend Plaintiff fails to plead Defendants owed or breached any duty as required for his NIED claim.  Under California law, "[t]he *negligent* causing of emotional distress is not an independent tort but the tort of *negligence*," and therefore "[t]he traditional elements of duty, breach of duty, causation, and damages apply."  *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989) (internal quotations and citation omitted) (emphasis in original); *see also Moon v. Guardian Postacute Servs., Inc.*, 95 Cal. App. 4th 1005, 1009 (Cal. Ct. App. 2002).  There is generally no "duty to avoid negligently causing emotional distress to another."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993).  "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty."  *Id.* ("Even then, with rare exceptions, a breach of the duty must threaten physical injury.").  A legal "duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship."  *Id.*

Here, Plaintiff does not identify a special relationship nor argue Defendants assumed a duty.  Therefore, Plaintiff must show a duty imposed by law.  Plaintiff argues under California law, all persons have a duty to use ordinary care to prevent others from being injured as a result of their conduct, relying on Cal. Civ. Code § 1714, which provides:  "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the

injury upon himself or herself." Cal. Civ. Code § 1714 "establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others." *Cabral v. Ralphs Grocery Co.*, 51 Cal.4th 764, 768 (2011). "Courts, however, have invoked the concept of duty to limit generally the otherwise potentially infinite liability which would follow from every negligent act." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 397 (1992), *as modified* (Nov. 12, 1992); *see also Parsons v. Crown Disposal Co.*, 15 Cal. 4th 456, 476 (1997). "[I]n the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where clearly supported by public policy." *Vasilenko v. Grace Fam. Church*, 3 Cal. 5th 1077, 1083 (2017) (internal quotations and citation omitted). California courts thus consider the following factors when determining whether a duty is imposed by law: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Id.* at 1083. "We do not ask whether these factors . . . support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy." *Id*.

Here, the Complaint alleges Defendants surveilled, video recorded, and audio recorded Plaintiff and his family at his home residence and place of business without Plaintiff's or his family's consent (Compl. ¶¶ 1, 6), Defendants broadcasted a video about the release of the film which includes the name of the city and community where Plaintiff resides, shows Johnson holding up a sign stating, "Bill Joiner Stole Our Home," "shows Johnson outside the gates of that

16

community, clearly identifying the community in which [Plaintiff] and his family reside," and shows Johnson "brandishing a firearm" in front of a Channel 5 marked van (*id.* ¶¶ 69, 70, 71), and shows "Callaghan and Johnson surveilling [Plaintiff's] property (*id.* ¶ 96). A reasonable person would find it foreseeable that such alleged conduct would cause Plaintiff to experience serious emotional distress.[8] Moreover, the Complaint alleges Defendants' actions have caused Plaintiff to reasonably fear for his safety and the safety of his immediate family members (*id.* ¶¶ 1, 116), "more individuals have returns to stalk [Plaintiff's] residence and his family" since the video was broadcasted (*id.* ¶ 89), and Defendants' publication and broadcasting of the film has caused Plaintiff substantial emotional distress (*id.* ¶ 148). Therefore, the Complaint sufficiently alleges a close connection between Defendants' conduct and Plaintiff's alleged emotional distress. Moreover, moral blame may be assigned to Defendants' alleged conduct of surveilling and recording Plaintiff and his family at his residence without Plaintiff or his family's consent, and policy considerations of preventing future harm based on the alleged conduct supports imposing a duty owed by Defendants to refrain from negligently inflicting emotional distress on Plaintiff based on the alleged conduct. *See, e.g., Lorenzo v. United States*, 2010 WL 11508278, at *4 (S.D. Cal. Oct. 21, 2010). Accordingly, the Court finds the Complaint alleges sufficient facts regarding a duty owed to Plaintiff and breach of that duty for Plaintiff's NIED claim.

### (4)    Severe Emotional Distress

Defendants also contend Plaintiff fails to adequately plead severe emotional distress as required for his IIED and NIED claims. To state a claim for IIED, Plaintiff must allege he suffered "severe or extreme emotional distress." *Colonial Van & Storage, Inc.*, 76 Cal. App. 5th at 506. Similarly, to make a prima facie

---

[8] *See also Joiner v. Johnson*, 2019 WL 6111383, at *5 (Cal. Ct. App. Nov. 18, 2019).

1   case of negligent infliction of emotional distress, a plaintiff must show he suffered

2   "extreme or severe emotional distress." *Ortaliza v. Gen. Mills, Inc.*, 56 F.3d 72

3   (9th Cir. 1995). The severe emotional distress must be "emotional distress of such

4   substantial quality or enduring quality that no reasonable [person] in civilized

5   society should be expected to endure it." *Hughes*, 46 Cal. 4th at 1051. A

6   plaintiff's "assertions that she has suffered discomfort, worry, anxiety, upset

7   stomach, concern, and agitation as the result of defendant's [conduct] . . . do not

8   comprise "emotional distress of such substantial quality or enduring quality that

9   no reasonable [person] in civilized society should be expected to endure it." *Id*.

10  Here, Plaintiff alleges fear for Plaintiff's safety and the safety of his family based

11  on Defendants' conduct which has lasted over two years (*see* Compl. ¶¶ 1, 6, 116-

12  18, 127, 128). Therefore, the Complaint pleads sufficient facts regarding severe

13  emotional distress of substantial and enduring quality that no reasonable person in

14  a civilized society should be expected to endure. *See Covert*, 2017 WL 10543399,

15  at *3; *Otano v. Ocean*, 2013 WL 2370724, at *4 (C.D. Cal. May 30, 2013).[9]

16  Accordingly, the Complaint pleads sufficient facts regarding severe emotional

17  distress as required for Plaintiff's IIED and NIED claims.

18  **F.    Common Law Invasion of Privacy and Intrusion Upon Seclusion (Ninth**

19          **and Eleventh Causes of Action)**

20          To state a claim for intrusion upon seclusion, Plaintiff must allege: (1) the

21  defendant "intentionally intrude[d] into a place, conversation, or matter as to

22  which the plaintiff has a reasonable expectation of privacy," and (2) "the intrusion

23  occur[ed] in a manner highly offensive to a reasonable person." *Hernandez v.*

24  *Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). The same standard applies to a

25  common law invasion of privacy claim. *Id*. As to the first element, "the

26  expectation of privacy must be objectively reasonable," and "the defendant must

27  _____

28  [9] *See also Joiner*, 2019 WL 6111383, at *5.

have penetrated some zone of physical or sensory privacy ... or obtained unwanted

access to data by electronic or other covert means, in violation of the law or social

norms." *Id.* (internal quotations and citation omitted).  In determining the

reasonableness of privacy expectations, courts consider "factors as (1) the identity

of the intruder, (2) the extent to which other persons had access to the subject

place, and could see or hear the plaintiff, and (3) the means by which the intrusion

occurred." *Id.*  The second element regarding whether the intrusion was highly

offensive to a reasonable person "essentially involves a policy determination as to

whether the alleged intrusion is highly offensive under the particular

circumstances." *Id.* at 287 (internal quotations and citations omitted).  "Relevant

factors include the degree and setting of the intrusion, and the intruder's motives

and objectives." *Id.*  "Even in cases involving the use of photographic and

electronic recording devices, which can raise difficult questions about covert

surveillance, California tort law provides no bright line on [offensiveness]; each

case must be taken on its facts." *Id.* (internal quotations and citations omitted).

Defendants argue Plaintiff has not sufficiently alleged a highly offensive,

intentional intrusion into a place or places where he had a reasonable expectation

of privacy.

As to the first element, the Complaint pleads sufficient facts that

Defendants intruded Plaintiff's residence and place of business where Plaintiff had

an objectively reasonable expectation of privacy.[10]  *See Dietemann*, 449 F.2d at

249; *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1490 (Cal. Ct. App.

1986); *Amelina v. Manufacturers & Traders Tr. Co.*, 2016 WL 3982483, at *14

(S.D. Cal. July 21, 2016); *Petrosyan v. Hustedt*, 2014 WL 12967310, at *4 (C.D.

Cal. Nov. 6, 2014); *see also Hernandez*, 47 Cal. 4th at 291.

With respect to the second element, the alleged surveillance and video and

_____

[10] *See* Compl. ¶¶ 1, 5, 6, 10, 154.

audio recording of Plaintiff and his family at his residence occurred over a period of two years without Plaintiff's or his family's consent for Defendants' film. (Compl. ¶¶ 1, 6.)  Therefore, the degree of the alleged intrusion is substantial. With respect to Defendants' motives for obtaining audio and video recordings from Plaintiff's home and place of business for their Documentary without Plaintiff's consent, the Ninth Circuit has rejected "[t]he defendant[s'] claims that the First Amendment immunizes [them] from liability for invading plaintiff's [home] with a hidden camera and its concealed electronic instruments because its employees were gathering news and its instrumentalities 'are indispensable tools of investigative reporting,'" noting although "[w]e agree that newsgathering is an integral part of news dissemination," "[w]e strongly disagree, however, that the hidden mechanical contrivances are 'indispensable tools' of newsgathering," reasoning "[i]nvestigative reporting is an ancient art; its successful practice long antecedes the invention of miniature cameras and electronic devices," "[t]he First Amendment has never been construed to accord newsmen immunity from torts or crimes committed during the course of newsgathering," and "[t]he First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office."  *Dietemann*, 449 F.2d at 249. Moreover, the Complaint alleges Plaintiff previously obtained a civil restraining order against Defendant Johnson for three years based on Johnson's harassment of Plaintiff and his family, Defendant Callaghan "has taken on Johnson's crusade against [Plaintiff] as his own," Callaghan posted a photograph of him and Johnson wearing ghillie suits they wore to camouflage themselves when they secretly surveilled Plaintiff's residence with a caption stating "the two were on a 'daring mission for revenge,'" and Defendants stalked and video and audio recorded Plaintiff and his family for two years without their consent.  (Compl. ¶¶ 1, 3, 5, 6, 56-59, 81.)  *See Petrosyan*, 2014 WL 12967310, at *5-6; *Shulman*, 18 Cal. 4th at 231.  Therefore, the Complaint alleges sufficient facts that the alleged intrusion

would be highly offensive to a reasonable person under the circumstances.

Accordingly, Plaintiff pleads sufficient facts to state a claim for invasion of privacy and intrusion upon seclusion.

**G.    Cal. Bus. & Prof. Code § 17200 (Twelfth Cause of Action)**

Defendants contend Plaintiff lacks standing for his Cal. Bus. & Prof. Code § 17200 claim because the Complaint does not allege Plaintiff suffered an economic injury.  To have standing under Cal. Bus. & Prof. Code § 17200, Plaintiff must allege he "suffered injury in fact and has lost money or property as a result of" a violation of the false advertising law.  *Id*.  The "lost money or property" requirement requires that a plaintiff "demonstrate some form of economic injury."  *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011).  The phrase "as a result of" means economic injury "caused by" the unfair competition, and thus "requires a showing of a causal connection or reliance."  *Id*. at 326.[11]  While Plaintiff argues he is entitled to a disgorgement of profits from Defendants' alleged conduct, an entitlement to disgorgement of profits does not show Plaintiff suffered economic injury.  Thus, Plaintiff fails to plead sufficient facts to establish standing for his Cal. Bus. & Prof. Code § 17200 claim.

## IV.    CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss the Complaint as to Plaintiff's Cal. Bus. & Prof. Code § 17200 claim (twelfth cause of action) **with leave to amend** to allege additional facts re: standing, and **DENIES** the Motion to Dismiss as to Plaintiff's remaining claims against Defendants.

Any amended complaint to cure the deficiencies identified in this Order as to Plaintiff's Cal. Bus. & Prof. Code § 17200 claim (twelfth cause of action) shall be filed by Plaintiff **no later than March 12, 2025.**  A failure to file an amended

---

[11] *See also Chong v. Hormel Foods Corp.*, 2021 WL 11732982, at *9 (C.D. Cal. Apr. 13, 2021) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (Cal. Ct. App. 2010); *Kwikset*, 51 Cal. 4th at 327)).

complaint by that date shall result in dismissal of Plaintiff's Cal. Bus. & Prof.

Code § 17200 claim (twelfth cause of action) with prejudice.

      **IT IS SO ORDERED.**

DATED:  February 26, 2025.

                             CONSUELO B. MARSHALL
                             UNITED STATES DISTRICT JUDGE