MURPHEY & MURPHEY
A PROFESSIONAL CORPORATION
Meghan C. Murphey (SBN 259487)
meghan@themurpheylawyers.com
Matthew D. Murphey (SBN 194111)
matt@themurpheylawyers.com
Dennis J. Canty (SBN 207978)
dennis@themurpheylawyers.com
120 Vantis Drive, Suite 300
Aliso Viejo, CA  92656
Tel:  949.464.4540   Fax:  562.375.6674

Attorneys for Plaintiff,
WILLIAM JOINER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOINER, an Individual, | Case No. 8:24-cv-01160-CBM-KS |
| Plaintiff, | **DECLARATION OF DENNIS J. CANTY IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION TO MODIFY SCHEDULING ORDER TO EXTEND FACT DISCOVERY CUTOFF** |
| v. | |
| ANDREW CALLAGHAN, an Individual; CHANNEL 5 LLC, a Washington Limited Liability Company; EVAN GILBERT-KATZ, an Individual; NICOLAS MOSHER, an Individual; KELLY SCOTT JOHNSON, an Individual; and DOES 1 through 200, Inclusive, | Action Filed: May 30, 2024 |
| Defendant. | |

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

- 1 -

DECLARATION OF DENNIS J. CANTY ISO EX PARTE APPLICATION

**I, Dennis J. Canty, declare:**

1.     I am an attorney licensed to practice in the State of California and admitted to practice before this Court. I am of counsel at Murphey & Murphey, A.P.C., counsel of record for plaintiff William Joiner.

2.     I make this declaration in support of plaintiff's ex parte application to modify the July 30, 2025 Scheduling Order to extend the fact discovery cutoff by sixty days. I have personal knowledge of the matters stated, and if called upon I could and would competently testify to them.

3.     L.R. 7-19 information. The names, addresses, and e-mail addresses of counsel for the opposing parties on this application are: Abigail B. Everdell and Sam H. Lachman, Davis Wright Tremaine LLP, 1251 Avenue of the Americas, 21st Floor, New York, NY 10020; e-mail abigaileverdell@dwt.com and samlachman@dwt.com. Davis Wright Tremaine LLP represents the Channel 5 defendants (Andrew Callaghan, Channel 5 LLC, Evan Gilbert-Katz, and Nicolas Mosher). Defendant Kelly Scott Johnson has not appeared.

4.     On July 30, 2025, the Court entered a Civil Minutes order setting the fact discovery cutoff at April 30, 2026; initial expert disclosures at May 29, 2026; rebuttal expert disclosures at June 12, 2026; expert discovery completion at July 17, 2026; the dispositive-motion hearing cutoff at September 1, 2026; settlement conference on or before June 30, 2026; final pretrial conference on November 3, 2026; and trial on November 17, 2026. (Dkt. 48.) The present application seeks to extend the fact discovery cutoff only.

5.     The case was filed on May 30, 2024. Defendants moved to dismiss and to strike under California's anti-SLAPP statute. The Court denied those motions on February 20, 2025.

6.     Plaintiff asked for a Rule 26(f) conference repeatedly, including in July 2024 and on February 24, 2025 (writing that "this case was filed in May, 2024, and you have yet to fulfill your obligations for a meeting of counsel under Rule 26. We will wait no longer"). A true and correct copy of correspondence between counsel is attached as Exhibit A.  The conference was finally held on March 7, 2025 – more than nine months after the case was filed.

DECLARATION OF DENNIS J. CANTY ISO EX PARTE APPLICATION

7.    On March 19, 2025, my colleague Meghan C. Murphey memorialized defense counsel's representations on the Rule 26(f) call, including: "You informed us that at the outset of the case, your clients were instructed to preserve all physical and electronic documents and other evidence related to this lawsuit and that you have no reason to think they have not complied with this request"; "All data and documents in your clients' [possession] have been maintained in their original state"; and "The videos specifically relating to our clients' federal claims for violation of the wiretap act and the electronic communications privacy act, which you indicated were more than a terabyte of data, exist on their own drive, which you intend to have a third-party electronic discovery company image in its entirety." A true and correct copy of correspondence between counsel is attached as Exhibit B.

8.    On March 20, 2025, defense counsel Abigail B. Everdell confirmed (with capitalized emphasis): "AGREE THAT ALL THE FOOTAGE FOR THE DOCUMENTARY IS ON A SET OF DRIVES (OF MANY TERABYTES IN SIZE) WHICH OUR DISCOVERY VENDOR WILL FORENSICALLY IMAGE." (Exhibit B)

9.    On May 2, 2025, plaintiff served Requests for Production, Set One on Channel 5 LLC.

10.    On June 9, 2025, Channel 5 LLC served objections and responses. Responses 3, 12, 13, and 14 (among others) recited, after objections, that "[s]ubject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged documents referring to or evidencing recordings made of Plaintiff in [defendant's] possession, custody, or control responsive to this Request, if any exist, subject to the terms of a protective order entered in this action." A true and correct copy of the responses, highlighted for emphasis, is attached as Exhibit C.

11.    The executed Stipulated Protective Order was filed on July 14, 2025 (Dkt. 45). The Court entered the protective order on July 16, 2025 (Dkt. 46).

12.    On October 21, 2025 – more than four months after the responses – defendants made their first production, consisting of approximately 115 gigabytes of video, transmitted via Davis Wright Tremaine's secure FTP portal.  It contained no written documents.  Defendants

MURPHEY & MURPHEY
A PROFESSIONAL CORPORATION

DECLARATION OF DENNIS J. CANTY ISO EX PARTE APPLICATION

made their second production, with some text messages and emails, on February 9, just days before Channel 5's deposition.  Defendants made a third production on April 3, which contained a supplement of video files.  Defendants made a fourth production this past Saturday, April 25, containing approximately another 125 gigabytes of video, and 250 megabytes of documents.  Plaintiff's counsel has not yet been able to review this production.

13.     From November through December 2025, plaintiff's counsel reviewed the 115-gigabyte production (and opposed the motion defendants filed to stay the anti-SLAPP appeal in the Ninth Circuit.)

14.     Plaintiff's analysis identified various gaps in the production.  Defendants' recording devices numbered video files in numerical sequence, and several gaps appeared in those sequences. These included (without limitation) a critical seven-file gap at a highly relevant time frame – between C0039 (when defendants are in the car in ghillie suits at sunset) and C0047 (where the defendants are crawling in the underbrush "45 feet south" of plaintiff's house).

15.     Plaintiff requested deposition dates on January 6, 2026; served the Rule 30(b)(6) deposition notice on January 20, 2026 (with topics covering recording methods, storage systems, metadata, collection and preservation); and took the deposition of Channel 5 LLC on February 12, 2026.  Andrew Callaghan was designated to testify.

16.     Mr. Callaghan testified that, before the spring of 2023, Channel 5 had no office and no server; that footage was stored on three to five solid-state drives (one to three terabytes each); that those drives were transferred to a 100-terabyte OWC ThunderBay 8 server in the spring of 2023.  Mr. Callaghan further testified that the original three-to-five drives were still in his possession in the Los Angeles office, but were never collected or imaged: the third-party forensic vendor (Lighthouse) imaged only the server. True and correct excerpts from the certified deposition transcript of Andrew Callaghan, taken February 12, 2026, are attached as Exhibit D.

17.     Until that testimony, plaintiff's counsel believed that the drives containing the original media relevant to the lawsuit had been imaged and searched by defendants and that was the source of defendants' production.

18.     On March 9, 2026, defendants made a supplemental production, filling some of the gaps in the production, attempting to explain others, and (importantly) qualifying what they had and had not produced. A true and correct copy of the March 9, 2026 letter is attached as Exhibit E.  This began a lengthy meet and confer process by telephone and in writing.  Attached as Exhibit F is a true and correct copy of email correspondence by and between counsel.  Attached as Exhibit G is a true and correct copy of a letter sent during that chain on April 3 by defense counsel.

19.     On March 30, 2026, plaintiff asked that defendants (i) image the original hard drives that first stored the project media; (ii) compare those images against the imaged server and provide a Lighthouse declaration regarding the comparison; and (iii) produce all Adobe Premiere Pro project files (.prproj) and Media Cache databases (.db) associated with the project. Through discussions with our retained forensic expert, I am informed and believe that Adobe Premiere Pro project files (.prproj) identify the media files referenced in defendants' editing project, including files used in prior cuts, and the Media Cache database retains entries for media that Premiere has processed even after the underlying files are removed from a project. Comparing those records against defendants' production would help plaintiff assess whether responsive media existed in defendants' editing environment but was not produced.  The presence (or absence) of particular files in those logs would help plaintiff assess whether defendants' production is complete.

20.     On April 23, 2026, plaintiff submitted the parties' discovery dispute to the chambers of Magistrate Judge Karen L. Stevenson and requested a pre-motion telephonic conference under the Magistrate Judge's standing order.  No response has been received.

21.     On April 28, Ms. Murphey advised Ms. Everdell that plaintiff would seek a continuance of the discovery cutoff.  Ms. Everdell advised that defendants would not stipulate to the requested extension and oppose this ex parte application.  A true and correct copy of correspondence between counsel is attached as Exhibit H.

24.     Plaintiff has not previously sought an extension of the fact discovery cutoff.

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

DECLARATION OF DENNIS J. CANTY ISO EX PARTE APPLICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 29, 2026, at Aliso Viejo, California.

Dated: April 29, 2026

MURPHEY & MURPHEY, A.P.C.

By: _____
Dennis J. Canty
Attorneys for Plaintiff,
WILLIAM JOINER

DECLARATION OF DENNIS J. CANTY ISO EX PARTE APPLICATION

# Exhibit A

**From:** Matt Murphey <matt@themurpheylawyers.com>
**Sent:** February 24, 2025 08:19 PM UTC
**To:** Abigail Everdell <AbigailEverdell@dwt.com>; Sam Lachman <SamLachman@dwt.com>; Jonathan Segal <JonathanSegal@dwt.com>
**Cc:** Meghan Murphey <meghan@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** Joiner v. Callaghan, et al - Fed. R. Civ. P. 26 Meeting of Counsel

---

Abigail:

We presume that you have read the district court's orders denying your clients' Anti-SLAPP Special Motion to Strike and Rule 12(b) Motion to Dismiss. We are further analyzing the order denying your clients' Special Motion to Strike and will be in contact with you regarding a meet and confer discussion prior to moving for an award of our client's attorneys' fees, as we advised you we would seek at the time your client's motion was contemplated.

On another note, this case was filed in May, 2024, and you have yet to fulfill your obligations for a meeting of counsel under Rule 26. We will wait no longer. I am flying east tomorrow, so I suggest we talk by telephone on Wednesday, February 26, 2025, at 11 am Pacific time. We will call your office number unless you provide us with a different number if you prefer.

Thank you.

Matthew D. Murphey, Esq.
MURPHEY & MURPHEY, A.P.C.
(949) 464-4542
Sent from my iPad
Please excuse any typos
Standard email caveats apply

**Exhibit A**

8

# Exhibit B

**From:** "Everdell, Abigail" <AbigailEverdell@dwt.com>
**Sent:** March 21, 2025 01:00 AM UTC
**To:** Meghan Murphey <meghan@themurpheylawyers.com>
**Cc:** Matt Murphey <matt@themurpheylawyers.com>; "Lachman; Sam" <SamLachman@dwt.com>; "Segal; Jonathan" <JonathanSegal@dwt.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** Re: Meet and Confer prior to filing amended complaint

---

Thanks Meghan.

Abigail

Get Outlook for iOS <https://aka.ms/o0ukef>

---

From: Meghan Murphey <meghan@themurpheylawyers.com>
Sent: Thursday, March 20, 2025 8:53:14 PM
To: Everdell, Abigail <AbigailEverdell@dwt.com>
Cc: Matt Murphey <matt@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
Subject: Re: Meet and Confer prior to filing amended complaint

[EXTERNAL]

---

The stipulation is fine as amended, you may add my electronic signature to the clean version. Thank you.

Meghan

Meghan C. Murphey
MURPHEY & MURPHEY, A.P.C.
120 Vantis Drive, Suite 300
Aliso Viejo, CA 92656
(949) 464-4540

On Mar 20, 2025, at 5:20 PM, Everdell, Abigail <AbigailEverdell@dwt.com> wrote:

■

Meghan,

Thanks for this. We've added minor revisions to the draft stip, attached. If this looks good to you we'll update the proposed order accordingly and get it on file today.

I have put notes below in your summary of our meet and confer.

1. We agreed that the pleadings and discovery would move forward on the federal claims asserted by our client; AGREE
2. You informed us that at the outset of the case, your clients were instructed to preserve all physical and electronic documents and other evidence related to this lawsuit and that you have no reason to think they have not complied with this request; AGREE
3. All data and documents in your clients' position have been maintained in their original state; AGREE
4. The videos specifically relating to our clients' federal claims for violation of the wiretap act and the electronic communications privacy act, which you indicated were more than a terabyte of data, exist on their own drive, which you intend to have a third-party electronic discovery company image in its entirety upon receipt of a

discovery request by our client. As we discussed, we will have the image provided by your client examined by our third party e-discovery vendor and the imaged drives will be subjected to forensic analysis themselves; AGREE THAT ALL THE FOOTAGE FOR THE DOCUMENTARY IS ON A SET OF DRIVES (OF MANY TERABYTES IN SIZE) WHICH OUR DISCOVERY VENDOR WILL FORENSICALLY IMAGE. WE DO NOT AGREE TO PROVIDE THE FORENSIC IMAGE IN ITS ENTIRETY, BUT WILL PLAN TO PRODUCE RELEVANT, RESPONSIVE, AND NON-PRIVILEGED MATERIALS FROM THE IMAGED SET OF DRIVES.

5. You agreed to provide both the raw audio and the raw video files, as well as a version of the same files with the audio and video synched; WITH RESPECT TO AUDIO-VISUAL MATERIALS WE PRODUCE, WE HAVE OFFERED TO HAVE OUR CLIENT 'SYNC' THE AUDIO AND VIDEO FROM ANY PORTIONS THAT ARE NOT ALREADY SYNCHED AS A COURTESY, AND IN THAT EVENT WILL PRODUCE THE 'RAW' FILES AS WELL AS THE SYNCHED VERSION.

6. Further discovery, relating to the state court claims, will be forthcoming once the appeal is resolved, and you will handle the audio and video footage similarly when the time comes; AGREE

7. While we agree settlement does not appear likely at this time, we indicated we would inquire of our client what his monetary demand would be, but any monetary demand would be in addition to his continued demand that all rights to the "Dear Kelly" film and all related footage be removed from any and all platforms displaying the same, assigned to my client, and then deleted by your clients in its entirety; AGREE THAT WE ASKED YOUR CLIENT TO ARTICULATE A SETTLEMENT DEMAND, KEEPING IN MIND THAT ASSIGNMENT OF COPYRIGHT WOULD NOT BE A CONCEIVABLE ELEMENT OF ANY DAMAGES AWARD.

8. We are not yet able to rule out the adding of additional parties as defendants in this case; UNDERSTOOD, THOUGH WE RESERVE OUR RIGHT TO OPPOSE ANY FURTHER AMENDMENTS

9. We were not in agreement on the length of discovery, but you believed 3-4 months would be appropriate and we believed we would need closer to 6-7 months. We agreed to "put a pin in it" for time being, pending outcome of the appeal; WE ARE FINE WITH 6-7 MONTHS, IF THE COURT ALLOWS

10. You anticipate filing a motion for summary judgment and possibly a sanctions motion; we informed you that we are considering a request for sanctions and/or attorney's fees arising out of your clients' appeal of the trial court's decision on the anti-SLAPP motion; AGREE

11. Trial will be by jury; we estimated the trial would last 3 weeks based on the court's schedule of holding trial only 3 days per week; WITH REGARD TO THE FEDERAL CLAIMS, WE THINK A TRIAL OF ONE WEEK (3 DAYS) WOULD BE SUFFICIENT. WE CAN OFFER A RANGE.

12. You and I will act as lead trial counsel; and JON SEGAL AND I ARE LEAD TRIAL COUNSEL FOR OUR SIDE

13. Neither side believes that this case is appropriate for decision by a magistrate. AGREE

Finally, one other thing I should have reiterated at our meet and confer is that Nicolas Mosher and Evan Gilbert-Katz are no longer associated with Channel 5. They both resigned from the company well before the initiation of this dispute (in fall 2023 and early 2024), and played no role in the publication of the Tour & Announcement Video or Documentary. They are therefore not proper defendants with regard to any claims arising from those publications. Should any of your client's claims arising from the Documentary's publication proceed at the conclusion of our appeal, we ask that you drop any such claims as against Mr. Mosher and Mr. Gilbert-Katz.

Best,

Abigail

Abigail Everdell
Counsel, Davis Wright Tremaine LLP

P 212.603.6468 E abigaileverdell@dwt.com <mailto:abigaileverdell@dwt.com>
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM <https://www.dwt.com/>

**Exhibit B**

11

From: Meghan Murphey <meghan@themurpheylawyers.com>
Sent: Wednesday, March 19, 2025 9:56 PM
To: Everdell, Abigail <AbigailEverdell@dwt.com>
Cc: Matt Murphey <matt@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
Subject: Re: Meet and Confer prior to filing amended complaint

[EXTERNAL]

_____

Abigail:

We are willing to agree to the requested stay, as modified in the attached. The stay should be mutual as to all proceedings relating to the state law claims and the anti-SLAPP motion. Please see attached a suggested revised stipulation, which provides that our client's deadline to file a fees motion will also be stayed.

To be sure there is no confusion as to what was discussed in our call on March 7, in addition to the issues we discussed this week by email, I'd like to recap the discussion below. If there is anything I missed or if you have a different recollection, please let me know as soon as possible.

1. We agreed that the pleadings and discovery would move forward on the federal claims asserted by our client;

2. You informed us that at the outset of the case, your clients were instructed to preserve all physical and electronic documents and other evidence related to this lawsuit and that you have no reason to think they have not complied with this request;

3. All data and documents in your clients' position have been maintained in their original state;

4. The videos specifically relating to our clients' federal claims for violation of the wiretap act and the electronic communications privacy act, which you indicated were more than a terabyte of data, exist on their own drive, which you intend to have a third-party electronic discovery company image in its entirety upon receipt of a discovery request by our client. As we discussed, we will have the image provided by your client examined by our third party e-discovery vendor and the imaged drives will be subjected to forensic analysis themselves;

5. You agreed to provide both the raw audio and the raw video files, as well as a version of the same files with the audio and video synched;

6. Further discovery, relating to the state court claims, will be forthcoming once the appeal is resolved, and you will handle the audio and video footage similarly when the time comes;

7. While we agree settlement does not appear likely at this time, we indicated we would inquire of our client what his monetary demand would be, but any monetary demand would be in addition to his continued demand that all rights to the "Dear Kelly" film and all related footage be removed from any and all platforms displaying the same, assigned to my client, and then deleted by your clients in its entirety;

8. We are not yet able to rule out the adding of additional parties as defendants in this case;

9. We were not in agreement on the length of discovery, but you believed 3-4 months would be appropriate and we believed we would need closer to 6-7 months. We agreed to "put a pin in it" for time being, pending outcome of the appeal;

10. You anticipate filing a motion for summary judgment and possibly a sanctions motion; we informed you that we are considering a request for sanctions and/or attorney's fees arising out of your clients' appeal of the trial court's decision on the anti-SLAPP motion;

11. Trial will be by jury; we estimated the trial would last 3 weeks based on the court's schedule of holding trial only 3 days per week;

12. You and I will act as lead trial counsel; and

13. Neither side believes that this case is appropriate for decision by a magistrate.

Meghan C. Murphey

120 Vantis Drive, Suite 300

Aliso Viejo, California 92656

Tel: 949-464-4540

_____

From: Everdell, Abigail
Sent: Wednesday, March 19, 2025 5:09 PM
To: Meghan Murphey
Cc: Matt Murphey; Lachman, Sam; Segal, Jonathan; Dennis Canty; Kerry Moynihan
Subject: Re: Meet and Confer prior to filing amended complaint

Meghan,

I'm not available Friday so why don't we set a time to talk tomorrow. And if you have a position ahead of that after reviewing the caselaw you can let us know. How's 1pm?

Abigail

Get Outlook for iOS <https://aka.ms/o0ukef>

_____

From: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >
Sent: Wednesday, March 19, 2025 6:26:23 PM
To: Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> >
Cc: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >; Lachman, Sam <SamLachman@dwt.com <mailto:SamLachman@dwt.com> >; Segal, Jonathan <JonathanSegal@dwt.com <mailto:JonathanSegal@dwt.com> >; Dennis Canty <Dennis@themurpheylawyers.com <mailto:Dennis@themurpheylawyers.com> >; Kerry Moynihan <kerry@themurpheylawyers.com <mailto:kerry@themurpheylawyers.com> >
Subject: Re: Meet and Confer prior to filing amended complaint

[EXTERNAL]

_____

I agree that since the state court claims subject to appeal are automatically stayed, we did not need to discuss a stipulation, consistent with my recollection of what happened on our call. I will review the authorities you provided and get back to you as to whether we can nonetheless agree to your proposed stipulation. I'm otherwise available tomorrow afternoon or Friday late morning to discuss.

Meghan

Meghan C. Murphey

Murphey & Murphey, APC

949-464-4540

www.themurpheylawyers.com <http://www.themurpheylawyers.com>

_____

From: Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> >
Sent: Tuesday, March 18, 2025 1:57:58 PM
To: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >
Cc: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >; Lachman, Sam
<SamLachman@dwt.com <mailto:SamLachman@dwt.com> >; Segal, Jonathan <JonathanSegal@dwt.com
<mailto:JonathanSegal@dwt.com> >; Dennis Canty <Dennis@themurpheylawyers.com
<mailto:Dennis@themurpheylawyers.com> >; Kerry Moynihan <kerry@themurpheylawyers.com
<mailto:kerry@themurpheylawyers.com> >
Subject: RE: Meet and Confer prior to filing amended complaint

Meghan,

I'm a bit confused about this. On our March 7 call, after you mentioned a stay, I made a point to confirm that you were willing to "stipulate" to staying discovery on all your state law claims—not just the ones on appeal—so we could avoid having to go through motion practice regarding any new claims. While I understand that there may have been a miscommunication as to the scope of the stipulation I was proposing, it doesn't serve either of us for you to now claim that a stipulation wasn't discussed at all.

Moreover, since the claims subject to our appeal are automatically stayed, there would not have been a reason for us to ask for a stipulation solely as to these claims. See Makaeff v. Trump Univ., LLC, No. 10-CV-940-IEG WVG, 2011 WL 613571, at *2 (S.D. Cal. Feb. 11, 2011) ("Under California law, an appeal of a denial of an anti-SLAPP motion automatically stays further trial court proceedings on causes of action related to the motion"). Indeed, following this principle, the newly asserted state law claims would also be automatically stayed, as they are within the scope of the prior claims and will be directly affected by the Ninth Circuit's determination on our anti-SLAPP motion. Id.; Moser v. Encore Cap. Grp., Inc., No. 04 CV 2085 LAB WMC, 2007 WL 1114113, at *4 (S.D. Cal. Mar. 27, 2007) (granting stay of claims not included in appeal of denial of anti-SLAPP motion, since "virtually all Plaintiff's claims against the Anti-SLAPP Defendants are affected by the matters appealed"). This is why we understood it to be mutually beneficial to avoid motion practice and simply stipulate to a stay of all your state law claims.

Just so I understand, are you now taking the position that you will not agree to any stipulation whatsoever? If so, please let me know as soon as possible when you can meet and confer on a motion to stay. If you're proposing a narrower stipulation, however, please let me know your position.

Abigail

Abigail Everdell
Counsel, Davis Wright Tremaine LLP

P 212.603.6468 E abigaileverdell@dwt.com <mailto:abigaileverdell@dwt.com>
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM <https://www.dwt.com/>

From: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >
Sent: Tuesday, March 18, 2025 1:31 PM
To: Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> >
Cc: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >; Lachman, Sam <SamLachman@dwt.com <mailto:SamLachman@dwt.com> >; Segal, Jonathan <JonathanSegal@dwt.com <mailto:JonathanSegal@dwt.com> >; Dennis Canty <Dennis@themurpheylawyers.com <mailto:Dennis@themurpheylawyers.com> >; Kerry Moynihan <kerry@themurpheylawyers.com <mailto:kerry@themurpheylawyers.com> >
Subject: Re: Meet and Confer prior to filing amended complaint

[EXTERNAL]

_____

Abigail:

We never discussed any stipulation at all on our call on March 7, let alone the contents of this one. We agreed that discovery would be stayed as to the state court claims for which appeal of the anti slapp motion is pending. We made no such agreement as to new state court claims not subject of the appeal. Moreover, we previously stipulated that you would answer the amended complaint within 14 days, which conflicts with your new proposed stipulation.

Meghan

Meghan C. Murphey

Murphey & Murphey, APC

949-464-4540

www.themurpheylawyers.com <http://www.themurpheylawyers.com>

_____

From: Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> >
Sent: Tuesday, March 18, 2025 10:01:13 AM
To: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >
Cc: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >; Lachman, Sam <SamLachman@dwt.com <mailto:SamLachman@dwt.com> >; Segal, Jonathan <JonathanSegal@dwt.com <mailto:JonathanSegal@dwt.com> >; Dennis Canty <Dennis@themurpheylawyers.com <mailto:Dennis@themurpheylawyers.com> >; Kerry Moynihan <kerry@themurpheylawyers.com <mailto:kerry@themurpheylawyers.com> >
Subject: RE: Meet and Confer prior to filing amended complaint

Meghan,

Following up on this. Please let us know your thoughts.

Abigail

Abigail Everdell
Counsel, Davis Wright Tremaine LLP

P 212.603.6468 E abigaileverdell@dwt.com <mailto:abigaileverdell@dwt.com>
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM <https://www.dwt.com/>

From: Everdell, Abigail
Sent: Friday, March 14, 2025 8:33 PM
To: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >
Cc: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >; Lachman, Sam <SamLachman@dwt.com <mailto:SamLachman@dwt.com> >; Segal, Jonathan <JonathanSegal@dwt.com <mailto:JonathanSegal@dwt.com> >; Dennis Canty <Dennis@themurpheylawyers.com <mailto:Dennis@themurpheylawyers.com> >; Kerry Moynihan <kerry@themurpheylawyers.com <mailto:kerry@themurpheylawyers.com> >
Subject: RE: Meet and Confer prior to filing amended complaint

Meghan,

Attached is a draft of the stipulation and proposed order we discussed on our 26(f) call concerning your newly added/amended claims. Please let us know if this looks good to you.

Abigail

Abigail Everdell
Counsel, Davis Wright Tremaine LLP

P 212.603.6468 E abigaileverdell@dwt.com <mailto:abigaileverdell@dwt.com>
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM <https://www.dwt.com/>


From: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >
Sent: Thursday, March 6, 2025 4:12 PM
To: Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> >
Cc: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >; Lachman, Sam <SamLachman@dwt.com <mailto:SamLachman@dwt.com> >; Segal, Jonathan <JonathanSegal@dwt.com <mailto:JonathanSegal@dwt.com> >; Dennis Canty <Dennis@themurpheylawyers.com <mailto:Dennis@themurpheylawyers.com> >; Kerry Moynihan <kerry@themurpheylawyers.com <mailto:kerry@themurpheylawyers.com> >
Subject: Re: Meet and Confer prior to filing amended complaint

[EXTERNAL]

_____

I have another call at 11 that may run into that. Can we do noon PT?

Meghan C. Murphey

Murphey & Murphey, APC

949-464-4540

www.themurpheylawyers.com <http://www.themurpheylawyers.com>

_____

From: Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> >
Sent: Thursday, March 6, 2025 10:34:33 AM
To: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >

**Exhibit B**
16

Cc: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >; Lachman, Sam <SamLachman@dwt.com <mailto:SamLachman@dwt.com> >; Segal, Jonathan <JonathanSegal@dwt.com <mailto:JonathanSegal@dwt.com> >; Dennis Canty <Dennis@themurpheylawyers.com <mailto:Dennis@themurpheylawyers.com> >; Kerry Moynihan <kerry@themurpheylawyers.com <mailto:kerry@themurpheylawyers.com> >
Subject: RE: Meet and Confer prior to filing amended complaint

Meghan,

We're available to confer on the federal claims tomorrow at 11:30 am PT. Does that work for you?

Abigail

Abigail Everdell
Counsel, Davis Wright Tremaine LLP

P 212.603.6468 E abigaileverdell@dwt.com <mailto:abigaileverdell@dwt.com>
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM <https://www.dwt.com/>


From: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >
Sent: Thursday, March 6, 2025 12:19 AM
To: Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> >
Cc: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >; Lachman, Sam <SamLachman@dwt.com <mailto:SamLachman@dwt.com> >; Segal, Jonathan <JonathanSegal@dwt.com <mailto:JonathanSegal@dwt.com> >; Dennis Canty <Dennis@themurpheylawyers.com <mailto:Dennis@themurpheylawyers.com> >; Kerry Moynihan <kerry@themurpheylawyers.com <mailto:kerry@themurpheylawyers.com> >
Subject: Re: Meet and Confer prior to filing amended complaint

[EXTERNAL]

_____

Abigail - please let us know your availability tomorrow and Friday for the rule 26(f) conference with respect to the federal claims, as indicated below. Thank you.

Meghan

Meghan C. Murphey

120 Vantis Drive, Suite 300

Aliso Viejo, California 92656

Tel: 949-464-4540 <tel:949-464-4540>

www.themurpheylawyers.com <http://www.themurpheylawyers.com/>

On Feb 28, 2025, at 2:59 PM, Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> > wrote:

■

Matt,

Once again, it does not make sense to schedule a 26(f) on the whole case when the state law claims are stayed pending appeal and you are planning to file an amended complaint in under two weeks. That being said, we are prepared to confer next week regarding the unstayed federal claims only, provided you agree that any discovery requests served in the wake of the conference will be limited to those claims.

Abigail

Abigail Everdell
Counsel, Davis Wright Tremaine LLP

P 212.603.6468 E abigaileverdell@dwt.com <mailto:abigaileverdell@dwt.com>
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM <https://www.dwt.com/>


From: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >
Sent: Friday, February 28, 2025 1:32 PM
To: Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> >
Cc: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >;
Lachman, Sam <SamLachman@dwt.com <mailto:SamLachman@dwt.com> >; Segal, Jonathan
<JonathanSegal@dwt.com <mailto:JonathanSegal@dwt.com> >; Dennis Canty
<Dennis@themurpheylawyers.com <mailto:Dennis@themurpheylawyers.com> >; Kerry Moynihan
<kerry@themurpheylawyers.com <mailto:kerry@themurpheylawyers.com> >
Subject: Re: Meet and Confer prior to filing amended complaint

[EXTERNAL]

_____

Abigail - It is simply unproductive to engage in a battle of emails. You continue to refer to your client's hit piece as "constitutionally protected speech." Your claim has been rejected by the district court. Because you did not raise nor argue the two leading authorities on the catch-all provision of section 425.16 in the district court, you are precluded from arguing them in your appeal. We see no reason why these authorities were missed by you and we do not believe the Ninth Circuit will be sympathetic to your clients' excuses. Mr. Joiner reserves all his rights with respect to the remedies he will seek with respect to your clients' appeal.

I made no request for an "early" Rule 26 conference. This case has been pending for nine months. There has been no stay entered in the case. Your lack of cooperation in agreeing to hold the Rule 26 meeting is simply another delay tactic and effort by your clients to interfere with the process.

We will provide you with three different dates and times for the meeting next week. If you continue to refuse to cooperate, we will seek the assistance of the court.

Thank you.

Matthew D. Murphey, Esq.

MURPHEY & MURPHEY, A.P.C.
Sent from my iPhone

Please excuse any typos

Standard email caveats apply

On Feb 28, 2025, at 11:47 AM, Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> > wrote:

■

Matt,

Needless to say we disagree on the merits of our appeal, and your understanding of the anti-SLAPP statute. There was nothing frivolous about our anti-SLAPP motion nor would there be any basis for seeking sanctions for our appeal of its denial—an appeal to which we are entitled as of right.

On your demand for an early 26(f) conference, we have offered to schedule the conference within the time period required under the Federal Rules, or sooner provided we have had an opportunity to review the amended pleadings you have said you intend to file. As you have previously noted, Rule 26 requires a conference only as soon as is "practicable." Since you plan to amend your pleadings to add additional allegations and claims, this is not a practicable time to discuss the scope of discovery. If helpful, we would be happy to set a firm date after our deadline to answer your amended pleadings, assuming you file those by March 12 as ordered by the Court. We fail to understand on what basis you would seek the Court's intervention to demand a different schedule than this.

Instead, it appears you are continuing to pursue the strategy of attempting to impose unnecessary litigation expenses as a means to further punish and chill my clients' First Amendment-protected speech. As I have repeatedly told you, the evidence will show that your client was never at any point wiretapped or eavesdropped upon. But Courts in this state recognize that being forced to defend a lawsuit is itself a speech-chilling burden, which is precisely why your state law claims are automatically stayed by appeal of the Court's order. Batzel v. Smith, 333 F.3d 1018, 1025 (9th Cir. 2003) (denials of anti-SLAPP motions are immediately appealable "[b]ecause the anti-SLAPP motion is designed to protect the defendant from having to litigate meritless cases aimed at chilling First Amendment expression"). In short, my interest in protecting my client from your unreasonable litigation tactics by proceeding as required by the Federal Rules—rather than in accordance with your arbitrary demands—is entirely consistent with my confidence that your client's claims are meritless.

Abigail

Abigail Everdell
Counsel, Davis Wright Tremaine LLP

P 212.603.6468 E abigaileverdell@dwt.com <mailto:abigaileverdell@dwt.com>
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM <https://www.dwt.com/>


From: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >
Sent: Thursday, February 27, 2025 12:56 PM
To: Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> >
Cc: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >; Lachman, Sam <SamLachman@dwt.com <mailto:SamLachman@dwt.com> >; Segal, Jonathan <JonathanSegal@dwt.com <mailto:JonathanSegal@dwt.com> >; Dennis Canty <Dennis@themurpheylawyers.com <mailto:Dennis@themurpheylawyers.com> >; Kerry Moynihan <kerry@themurpheylawyers.com <mailto:kerry@themurpheylawyers.com> >
Subject: Re: Meet and Confer prior to filing amended complaint

[EXTERNAL]

_____

Abigail:

You use a term like "baseless" to describe our client's claims, yet your two motions were entirely rejected by the Court, save for one claim for relief that the Court granted leave to amend.

What is most disturbing to me is that the two leading and controlling California authorities on the catch-all provision of the anti-SLAPP law were entirely omitted from your motion. Both of those authorities significantly limit the reach of the catch-all to issues that are ongoing. Your motion is frivolous because the issues your clients' videos depict concluded more than two years ago. Irrespective of the other grounds on which your motion failed, because the issues your client Callaghan depicts in his video are concluded (entirely in Mr. Joiner's favor. The anti-SLAPP law is consequently unavailable to your client, as those two authorities clearly explain. Your appeal is doomed to fail. We will seek sanctions for your client's purported appeal, both as filed and as argued.

You continue to engage in delay tactics, certainly because (among other reasons) your client Callaghan does not want to produce his video footage, as he surely fears the potential of further liability. He will ultimately produce all of it, and because of your client's penchant for lying, we will mirror-image all of his media retention devices to determine what your client has saved (and what he deleted from) the same.

Unless you relent and agree to our mandatory meeting of counsel by or before the end of next week, we will seek the assistance of the Court to order the meeting take place without further gamesmanship by your clients. There is no automatic stay of the federal claims under the appeal provisions of the anti-SLAPP law, as you know.

Please advise by or before 5 pm tomorrow whether you will agree to a Rule 26 conference by the end of next week, along with date(s) and time(s) that are convenient for the same.

Thank you.

Matthew D. Murphey, Esq.

MURPHEY & MURPHEY, A.P.C.
Sent from my iPhone

Please excuse any typos

Standard email caveats apply


On Feb 25, 2025, at 5:08 PM, Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com>> wrote:

■

Meghan and Matt,

Responding here to this email as well as Matt's from yesterday.

First, since you plan to amend, will you stipulate to putting off our answering deadline until after you have filed your amended complaint? There's no sense in us responding to pleadings that will be mooted.

Second, on the merits of any renewed Section 17200 or additional defamation claim, our position on these was set out in our motion to dismiss, which addressed the numerous clear deficiencies in applying a UCL claim to

the facts at hand, as well as the fact that the Documentary simply does not assert Mr. Johnson's opinions about Mr. Joiner as fact and clearly sets forth the truth behind them.

Third, in response to Matt's email about moving for attorneys' fees, on what basis do you believe such a motion is warranted? As you have previously acknowledged, such fees are only available where an anti-SLAPP motion was "frivolous." While the Court may have denied our motion, she certainly did not treat it as frivolous, nor could she. Her findings on prong one unfortunately misunderstood the Documentary's purpose and message. And her determination on the merits relied upon your own pleadings' false and knowingly baseless allegations regarding supposed intercepted communications and surreptitious filming of your client. As I have repeatedly informed you, no such recordings ever occurred, and you have offered no evidence to the contrary.

Finally, particularly as you have indicated you plan to amend your pleadings, it does not make sense to schedule a 26(f) conference now. We suggest scheduling something for after we have answered your amended complaint, unless the Court schedules an initial conference that would set our deadline earlier. This would allow us to have an informed and productive conference.

Abigail

Abigail Everdell
Counsel, Davis Wright Tremaine LLP

P 212.603.6468 E abigaileverdell@dwt.com <mailto:abigaileverdell@dwt.com>
A 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104

DWT.COM <https://www.dwt.com/>

From: Meghan Murphey <meghan@themurpheylawyers.com <mailto:meghan@themurpheylawyers.com> >
Sent: Monday, February 24, 2025 5:30 PM
To: Everdell, Abigail <AbigailEverdell@dwt.com <mailto:AbigailEverdell@dwt.com> >
Cc: Matt Murphey <matt@themurpheylawyers.com <mailto:matt@themurpheylawyers.com> >
Subject: Meet and Confer prior to filing amended complaint

[EXTERNAL]

_____

Abigail:

My client intends to amend his complaint to plead additional facts in support of his Section 17200 claim, as permitted by the court's order on your clients' motion to dismiss. In light of what has transpired since this case was filed, my client also intends to add your clients to his sixth claim for defamation. To avoid the need for further amendment and motion practice, I wanted to meet and confer with you as to that cause of action in advance of filing our amended complaint. If you have authority that suggests a defamation claim against your clients is not supported by the facts of this case, please provide that to me at your earliest convenience.

Thank you,

Meghan

Meghan C. Murphey

120 Vantis Drive, Suite 300

Aliso Viejo, California 92656

Tel: 949-464-4540 <tel:949-464-4540>

www.themurpheylawyers.com <http://www.themurpheylawyers.com/>

<Stipulation to Stay Discovery.docx>

# Exhibit C

Exhibit C

23

JONATHAN L. SEGAL (State Bar No. 264238)
  jonathansegal@dwt.com
SAMANTHA LACHMAN (State Bar No. 331969)
  samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

ABIGAIL EVERDELL (*Pro hac vice*)
  abigaileverdell@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone:  (212) 489-8230
Fax:  (212) 379-5244

Attorneys for Defendants
ANDREW CALLAGHAN and CHANNEL 5
LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOINER, an individual,<br><br>                    Plaintiff,<br><br>      vs.<br><br>ANDREW CALLAGHAN, an Individual;<br>CHANNEL 5 LLC, a Washington<br>Limited Liability Company; EVAN<br>GILBERT-KATZ, an Individual;<br>NICOLAS MOSHER, an Individual;<br>KELLY SCOTT JOHNSON, an<br>Individual; and DOES 1 through 200,<br>Inclusive,<br><br>                    Defendant. | Case No. **8:24-cv-01160-CBM-KS**<br><br>**OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT CHANNEL 5 LLC**<br><br>Action Filed:  May 30, 2024 |

PROPOUNDING PARTY:       Plaintiff Willaim Joiner

RESPONDING PARTY:        Defendant Channel 5 LLC

SET NUMBER:              ONE

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

**Exhibit C**

24

Defendant Channel 5 LLC ("Defendant") responds to plaintiff Willaim Joiner's ("Plaintiff") First Set of Requests for Production as follows:

## PRELIMINARY STATEMENT

The responses set forth below represent Defendant's present knowledge based on discovery, investigation, and case preparation to date.  Defendant has made reasonable efforts to locate responsive documents and the contents hereof are based on the information obtained from these efforts.  Defendant's investigation into this matter is, and will continue to be, ongoing.  Defendant may locate additional responsive documents at a later date, and may assert appropriate objections to the use of the documents identified herein.  Defendant, therefore, expressly reserves the right to rely on additional responsive documents, whether located in the course of its continuing investigation or in the course of discovery, at all future hearings and at trial, and the right to object on appropriate grounds to the use of any documents produced in response to this Request.  Similarly, Defendant expressly reserves the right to rely on any and all responsive documents already filed in this matter, and incorporates any and all such responsive documents herein by this reference.  Defendant also reserves the right to supplement this Response and any production in response to the Request in the future.

The production of any given document pursuant to the Request is not an admission or acknowledgment by Defendant that such document is relevant to any claim or defense in this action; is without prejudice to Defendant's right to contend at trial or in any other or subsequent proceeding in this action or otherwise that such document is inadmissible, irrelevant, immaterial, or not the proper basis for discovery; and is without prejudice to or waiver of any objection to any future use of such document which Defendant may be advised to make.

Many of the categories in the Request are duplicative or overlapping.  As a result, any document produced is, or potentially may be, responsive to more than one category.  Nonetheless, Defendant may only produce each such document once

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C
25

and not each time it conceivably may be responsive to a given item in the Request. The circumstance that a document is produced only once is not an acknowledgment that it is potentially germane only to one category and is not a waiver of Defendant's right to use such document, if any, in any manner or on any point or subject as may be appropriate.

## GENERAL OBJECTIONS

1. Defendant objects to the Requests, and to each and every item contained therein, to the extent that they attempt or purport to impose obligations beyond those set forth in the Code of Civil Procedure or the Local Rules of the United States District Court for the Central District of California. Defendant's responses are made pursuant to, and as limited by, the Federal Rules of Civil Procedure.

2. Defendant objects to any request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work-product doctrine, the common-interest privilege, or any other applicable privilege, doctrine, or immunity. To the extent that any request may be construed as seeking such privileged or protected information, Defendant hereby claims such privilege and invokes such protection. The fact that Defendant does not specifically object to an individual request on the grounds that it seeks such privileged or protected documents shall not be deemed a waiver of the protection afforded by the attorney-client privilege, the attorney work-product doctrine, the common-interest privilege, or any other applicable privilege or protection.

3. Insofar as certain requests are overbroad and/or vague and ambiguous, Defendant objects because such requests are unduly burdensome. Reasonable assumptions will be made, where possible, as to the intended meanings.

4. Defendant objects to any request to the extent that it calls for the disclosures of confidential or proprietary business information and/or trade secrets.

2

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C
26

Such material will be produced, if it is discoverable, subject to the terms of a protective order entered in this action.

5. Defendant objects to the Requests to the extent they seek information or documents already within Plaintiff's possession, publicly available or otherwise available to Plaintiff from other source(s) equally convenient, less burdensome, or less expensive.

6. Defendant objects to the Requests to the extent they seek disclosure of documents from persons or entities over whom Defendant has no control, or seek documents not in Defendant's possession, custody, or control.

7. Defendant objects to the Requests to the extent that they are not limited in time and seek documents or information created after Plaintiff filed his Complaint.

8. Defendant objects to the Requests as premature to the extent that they seek information related to opinion testimony or expert discovery.

9. Defendant objects to the definition of the term "YOU" or "YOUR" as being vague and overbroad.  Defendant will review and produce documents in its possession, custody, and control.

10. Defendant objects generally to the Requests on the grounds that they call for the disclosure of unpublished editorial information that is independently protected from compelled disclosure under the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  *E.g., Shoen v. Shoen*, 5 F.3d 1289, 1294 (9th Cir. 1993) ("*Shoen I*"); *Mitchell v. Super. Ct.*, 37 Cal. 3d 268, 280, 282 (1984); *O'Grady v. Super. Ct.*, 139 Cal. App. 4th 1423, 1466-68 (2006).

11. Defendant objects to the Requests to the extent that they seek information not relevant to Plaintiff's Wiretap Act and Electronic Communications Privacy Act claims (together, the "Federal Claims") and outside of the scope of the

3

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C

27

Court's order staying discovery regarding Plaintiff's state law claims (the "Order"). ECF No. 36.

12. Defendant's responses do not in any way constitute an adoption of Plaintiff's purported definitions of words or phrases contained in the Requests. Defendant objects to the definitions to the extent they are (a) unclear, ambiguous, overly broad, or unduly burdensome; or (b) inconsistent with the ordinary and customary meaning of the words or phrases they purport to define.

13. Defendant's investigation is ongoing, and Defendant specifically reserves the right to correct, amend, modify, or supplement its responses to the Requests at any time in the future, as warranted by the circumstances.

14. These General Objections are incorporated by reference into each of the responses set forth below.

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:

Produce the FILM.

RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case, including on the grounds that Plaintiff is already in possession of the multiple published iterations of the FILM. Defendant objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case on the grounds that it seeks information not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case on the grounds that it seeks material duplicative of the raw footage requested in Request No. 2. Defendant further objects to this Request to the extent it seeks unpublished iterations of the FILM, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the

4

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C
28

California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, Defendant will produce the version of the FILM referenced in Paragraph 8 of the Complaint.

REQUEST FOR PRODUCTION NO. 2:

Produce all FOOTAGE.

RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague and ambiguous to the extent that "FOOTAGE" is defined to encompass recordings "as it relates to JOINER and/or the FILM."  Defendant further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it calls for the production of recordings other than recordings of Plaintiff or concerning recordings of Plaintiff, which are irrelevant to the alleged Federal Claims at issue, and will not produce such recordings.  Defendant further objects to this Request to the extent that it seeks unpublished footage, which is privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce non-privileged footage relevant to Plaintiff's Federal Claims in its possession, custody, or control, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS relating to, referring to or evidencing recordings of any JOINER PARTIES.

5

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CA 90071
Exhibit C
(213)
Fax: (21      29

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 3</u>:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, vague and ambiguous, and not proportional to the needs of the case on the grounds that it seeks information relating to recordings of parties other than Plaintiff, which are irrelevant to the alleged Federal Claims at issue, and will not produce such recordings. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant states that it will produce non-privileged documents referring to or evidencing recordings of Plaintiff, if any, subject to the terms of a protective order entered in this action.

<u>REQUEST FOR PRODUCTION NO. 4</u>:

All DOCUMENTS relating to, referring to or evidencing recordings of any JOINER PROPERTIES.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 4</u>:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the

6

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C
30

extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce non-privileged documents evidencing recordings of any JOINER PROPERTIES in its possession, custody, or control, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' physical presence at the JOINER PROPERTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce any non-privileged documents evidencing any of DEFENDANTS' physical presence in or on any JOINER PROPERTY, if any exist, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' physical presence within 1000 feet of the JOINER PROPERTIES.

7

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C
31

RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, and seeking information that is not relevant to any claim or defense or proportional to the needs of the case, to the extent that it seeks documents relating to a physical proximity from which communications could not reasonably be intercepted, which are not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce non-privileged documents evidencing their presence in the immediate vicinity of the JOINER PROPERTIES, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS relating to, referring to or evidencing the purpose of DEFENDANTS' physical presence at the JOINER RESIDENCE.

RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague and ambiguous as to the undefined term "purpose." Defendant further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it calls for the production of documents irrelevant to the alleged Federal Claims at issue and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from

8

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C
32

disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS relating to, referring to or evidencing the purpose of DEFENDANTS' physical presence at the JOINER BUSINESS.

RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague and ambiguous as to the undefined term "purpose."  Defendant further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it calls for the production of documents irrelevant to the alleged Federal Claims at issue and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims.  Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 9:

All DOCUMENTS relating to, referring to or evidencing the purpose of DEFENDANTS' purchase, possession, and/or use of a ghillie suit on or within 1000 feet of the JOINER RESIDENCE.

9

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C
33

RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague and ambiguous as to the undefined term "purpose." Defendant further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it calls for the production of documents irrelevant to the alleged Federal Claims at issue and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 10:

All DOCUMENTS relating to, referring to or evidencing equipment, including surveillance or recording equipment, in DEFENDANTS' possession, custody or control at the time DEFENDANTS were within 1000 feet of any of the JOINER PROPERTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a)

10

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C

34

of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged documents in its possession, custody, or control sufficient to identify any recording equipment used to make recordings of the JOINER PROPERTIES, or of Plaintiff, if any exist, and subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 11:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' attempts to locate and/or communicate with JOINER.

RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 12:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' attempts to surveille JOINER.

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C

35

RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged documents referring to or evidencing recordings made of Plaintiff in its possession, custody, or control, if any exist, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 13:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' attempts to obtain audio or video recordings of any JOINER PARTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the

12

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C

36

extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged documents referring to or evidencing recordings made of Plaintiff in its possession, custody, or control responsive to this Request, if any exist, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 14:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' attempts to obtain audio or video recordings at the JOINER PROPERTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims.  Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged documents referring to or evidencing recordings made of Plaintiff in its possession, custody, or control responsive to this Request, if any exist, subject to the terms of a protective order entered in this action.

13

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C

37

REQUEST FOR PRODUCTION NO. 15:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' intent regarding publishing, broadcasting, disclosing or otherwise using audio or video recordings of any JOINER PARTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague, ambiguous, and not susceptible to a reasonably discernable meaning as to the undefined term "intent."  Defendant will construe "intent" as meaning documents evidencing its intent with regard to the use of recordings made of the JOINER PARTIES. Defendant further objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, Defendant states that, to its knowledge, it has not published, broadcast, disclosed, or otherwise used audio or video recordings of any JOINER PARTIES, thus no responsive documents exist.

REQUEST FOR PRODUCTION NO. 16:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' intent regarding publishing, broadcasting, disclosing or otherwise using audio or video recordings of any JOINER PROPERTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

Defendant incorporates its General Objections as if fully set forth here.

14

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C

38

Defendant objects to this Request on the grounds that it is vague and ambiguous as to the undefined term "intent." Defendant further objects on the grounds that the Request is overbroad, unduly burdensome, and seeks information that is not proportional to the needs of the case to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections. On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 17:

All DOCUMENTS consisting of or evidencing communications by and between any DEFENDANTS relating to JOINER.

RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. On the basis

15

Exhibit C

39

of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 18:

All DOCUMENTS consisting of or evidencing communications by and between any DEFENDANTS relating to audio or video recordings of any JOINER PARTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims.  Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.  Defendant further objects to this Request on the grounds that, to the extent not objectionable, the Request is duplicative of other Requests, including Request No. 3.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged communications between DEFENDANTS referring to any audio or video recordings made of Plaintiff in its possession, custody, or control responsive to this Request, if any exist, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 19:

All DOCUMENTS consisting of or evidencing communications by and between any DEFENDANTS relating to audio or video recordings of any JOINER PROPERTIES.

16

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C

40

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 19</u>:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims.  Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections. Defendant further objects to this Request on the grounds that, to the extent not objectionable, the Request is duplicative of other Requests, including Request No. 4.

On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

<u>REQUEST FOR PRODUCTION NO. 20</u>:

All DOCUMENTS relating to, referring to or evidencing YOUR Affirmative Defenses to the First Claim for Relief set forth in YOUR ANSWER.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 20</u>:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, vague and ambiguous, and not proportional to the needs of the case to the extent it seeks documents "relating to" or "referring to" Defendant's affirmative defenses. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.  Defendant further objects to the Request to the extent

17

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit "C"

41

that it calls for documents not relevant to affirmative defenses asserted by Defendant with respect to claims other than Plaintiff's Federal Claims.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce non-privileged documents sufficient to support its affirmative defenses, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 21:

All DOCUMENTS relating to, referring to or evidencing YOUR Affirmative Defenses to the Second Claim for Relief set forth in YOUR ANSWER.

RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, vague and ambiguous, and not proportional to the needs of the case to the extent it seeks documents "relating to" or "referring to" Defendant's affirmative defenses. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections. Defendant further objects to the Request to the extent that it calls for documents not relevant to affirmative defenses asserted by Defendant with respect to claims other than Plaintiff's Federal Claims.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce non-privileged documents sufficient to support its affirmative defenses, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 22:

All DOCUMENTS consisting of or evidencing communications by, between, or among any DEFENDANTS relating to the above-captioned litigation and/or the demand letters sent by counsel for JOINER before the litigation was filed.

18

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C
42

RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, vague and ambiguous, and not proportional to the needs of the case to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims.  Defendant further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.  On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 23:

All DOCUMENTS consisting of or evidencing communications by, between, or among any DEFENDANTS regarding JOINER.

RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims.  Defendant further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.  Defendant further objects to this Request on the grounds that, to the extent not objectionable, the Request is duplicative of other Requests, including Request Nos. 3 and 12.  On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C

43

DATED: June 9, 2025

DAVIS WRIGHT TREMAINE LLP
JONATHAN L. SEGAL
ABIGAIL EVERDELL
SAMANTHA LACHMAN


By: /s/ *Abigail Everdell*
Abigail Everdell
Attorneys for Defendant
CHANNEL 5 LLC

20

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit C
44

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2025, I served the foregoing by electronic mail to counsel of record for Plaintiff.

/s/ *Samantha Lachman*
Samantha Lachman

21

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213)
Fax: (21

Exhibit "C"
45

# Exhibit D

# EXHIBIT D

Excerpts from the Deposition of Andrew Callaghan

as Channel 5, LLC Designee under Rule 30(b)(6)

February 12, 2026

*Reported by Sheba Cohen, CSR No. 13715  |  Job No. 108426*

Excerpted pages: 18, 19, 22-27, and 42

Joiner v. Callaghan, et al., No. 8:24-cv-01160-CBM-KS (C.D. Cal.)

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                    18..21

Page 18

Okay?

The -- let's -- let's -- can you describe, generally, Channel 5's standard workflow for producing a documentary from initial capture of footage to final product?

MS. EVERDELL:  Objection.  Dennis, could you specify a time period, please?

MR. CANTY:  Sure.

BY MR. CANTY:

Q    From -- from 2021 forward.

MS. EVERDELL:  You can answer that.

THE WITNESS:  Yeah, things have definitely changed in terms of organizational structure from then to now.  For example, in 2021 and 2022, we didn't have an office or -- or any kind of formalized structure.  But the process of backing up footage was always the same and dumping footage.  We would take raw files straight from cameras or audio receivers, put them onto hard drives, store them.

And then later in time, when we got an office, we developed a server and hard drive system, and that is the process for storing footage and producing documentaries.  We edit everything in-house, and we store everything in-house.

//

Page 19

BY MR. CANTY:

Q    When did the server come on the scene?

A    Well --

MS. EVERDELL:  Objection.

THE WITNESS:  So we have two --

I guess the -- a better word is actually solid state hard drive.  So at the offices, we have servers that we use for all the other projects that we're working on.  For Dear Kelly, everything was stored on one specific server.

BY MR. CANTY:

Q    At the time of --

At any time, during the production of Dear Kelly, was there a written workflow, a production manual or standard operating procedure that C5 had?

A    No.  No.

Q    All right.  During the period that -- we'll -- we'll talk about -- the -- the Dear Kelly period.  During that -- from 2021 to 2025 --

A    Yeah.

Q    -- when -- when footage was captured, recorded in the field, what happened to it after that?

What was the standard operating procedure?

A    Very straightforward.  So if we do a shoot -- like, if we had a shoot today, and we filmed something on

Page 20

a Sony camera, we would take the -- we would either -- we'd take the memory card out of the camera right after the shoot.

We would plug it into a laptop or a desktop -- desktop computer system, typically a Mac, and then we would transfer it directly to our -- our storage system, which is something that we hold in the office.  So we keep all the raw files for our safekeeping forever.

Q    Okay.  That didn't exist in '21 and '22; right?

A    No, we didn't have an office, and we stored everything on hard drives.  But all of these hard drives were transferred to our larger system when we moved into an office.

Q    All right.  In '21 and '22, how many hard drives were -- were we talking about for Dear Kelly?

A    For Dear Kelly, it only would have been a few hard drives.  It's also important to think a majority of the filming for Dear Kelly took place not in '21 and '22, but in the years following that.  Because, you know, like, the intervention scene and a lot of the stuff with Kelly going to rehab, that took up a lot more space and time.

Q    Okay.  Was there an individual -- a particular individual responsible for managing the -- the transfer of --

A    Yeah.  Me.

Page 21

THE REPORTER:  I'm sorry.  Did you say "me"?

THE WITNESS:  Yes, me, Andrew Callaghan.

THE REPORTER:  Thank you.

THE WITNESS:  Yeah.

BY MR. CANTY:

Q    I apologize.  Give me a minute.  I'm having a -- I'm having a freeze of my screen.  I can't explain it.  The document that I'm reading off of is...

MS. EVERDELL:  Dennis, do you want to go off the record, take a minute, figure it out?

MR. CANTY:  Yeah, let's do it.  Thank you.  I apologize.

MS. EVERDELL:  Okay.

THE VIDEOGRAPHER:  We're going off the record.  The time is 10:28 A.M.

(Off the record.)

THE VIDEOGRAPHER:  We're back on the record.  The time is 10:34 A.M.

BY MR. CANTY:

Q    Okay.  Great.  Yeah, apologies.

A    No worries.

Q    Looks like we're back.  So thinking about what I -- what I -- what I just heard.  It -- it seems like

Exhibit D
48

Page 22

there was a time in -- in Dear Kelly, in 2020, 2021, 2022, when you did not have a -- a server, you didn't have an office, and things -- and -- and the process for ingestion and the -- and the storage places for media, many had been different as opposed to later.

Am I correct so far?

A    Yes.  We basically -- this -- this is --

This refers to all footage shot for Channel 5 was kept on hard drives that were at our home office near the computer.  In 2023, specifically in the spring of 2023, when we set up our -- our first real office, we took all footage that we'd ever shot for Channel 5 and move them from smaller hard drive to a bigger hard drive, and nothing was missed, nothing was forgotten in the transfer, said files.

(BRIEF TECHNICAL INTERRUPTION DUE
TO REPORTER'S LOSS OF INTERNET
CONNECTION.)

(Off the record.)

THE VIDEOGRAPHER:  We're back on the record.  The time is 10:50 A.M.

//

Page 23

BY MR. CANTY:

Q    Okay.  We're back.  Try it again.  Let's reorient.  We are --

It's the spring of 2023?

A    Yeah.

Q    You have your first real office, and all of -- you had -- previously, you had solid state drives, one to two -- one to three-terabyte capacity, SanDisk drives labeled according to their content; right?

A    Yes.

Q    And those drives were -- for lack of a better word -- migrated onto some other storage once you had the -- your first real office; right?

A    Yes.

Q    Okay.  What was --

What was it migrated to?

A    It was migrated to a -- one big server with a hundred-terabyte capacity.  The specific brand was the OWC ThunderBay 8 server, and that's where I migrated all video files to.

Q    Okay.  What happened to the original storage media?

A    Oh, I mean, they're just hard drives, solid state hard drives.  I still have them in my capacity.  But like I mentioned, everything from every hard drive that we

Page 24

previously had before in office were transferred to a larger server system.

Q    Okay.  I'm -- I'm sorry.  I don't want to belabor the point, but I'm not sure I understood the answer.

Where -- where are the original solid state drive?

A    Oh, I still have all of --

Q    (Inaudible) migrate --

A    I still have all of the original solid state drives in my possession.

Q    Okay.  All right.  You mentioned that -- in your -- in the workflow for Dear Kelly that the -- the -- the -- the media storage cards would be -- you download the media from -- from those cards into a -- into the solid state drives.

And you do that with -- using a map; right?

MS. EVERDELL:  Objection.

THE WITNESS:  Yes.

BY MR. CANTY:

Q    Okay.  All right.  And do you still have the map that you used as an intermediary?

A    Yes.

Q    Okay.  I want to talk about the media ingestion, the process of getting the media from the memory card to a storage device.

Page 25

In the time frame prior to spring of 2023, can you describe the steps that were -- that were taken?

A    In terms of getting raw video and audio files transferred to hard drives?

Q    Correct.

A    So cameras typically have an SD card, or audio devices have a micro SD card.  I would put those SD cards directly into a Mac computer.  And then using Finder, I would just drag and drop or copy and paste all of those raw video and audio files onto a hard drive.  You don't need a third-party application or anything like that.  It's an internal mechanism in the Mac software.

Q    And the software is -- it's Finder.  Okay.

A    Yeah.

Q    Yeah.  So you didn't use anything like a ShotPut Pro or a Hedge or a Silverstack or anything like that?

A    Never heard of those things.

Q    Okay.  Is -- was -- was there any process in ingestion of the media from the memory card to the hard drive that -- where there was a Checksum verification performed to verify that the complete file was transferred?

A    Could you repeat that last part?

Q    Sure.  This -- this Finder process that you described -- and I'll apologize because I'm not as

Exhibit D

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                          26..29

Page 26

familiar with the Mac -- is there -- is there any -- is there any Checksum verification performed to verify that a complete file was transferred?

A    I'm not familiar with what the Checksum verification process is; so no.  But it was just a direct drag and drop transfer from the memory cards to hard drives.

Q    We've talked about that process as it existed prior to spring of 2023.

A    Mm-hmm.

Q    Following the spring of 2023, did your process change at all?

A    Yes, it went from transferring to solid state drives to transferring directly to the larger hard drive, and all files related to Dear Kelly were stored in one place, the same place they are now.

Q    Was the process for ingestion any different, i.e., did you use the card to go to a Mac using Finder?

A    The exact same process.

Q    So after ingestion --
Let's -- let's talk about the -- the -- the time frame prior to spring 2023.  After ingestion, the files were stored on the solid state drive.  How many drives were used for Dear Kelly?

A    In terms of in those first couple years?

Page 27

I would say, maximum, maybe three to five.  There were very few drives because we didn't cumulatively shoot that much footage in 2021 and 2022.  We didn't have the -- it wasn't necessary to have a whole bunch of drives.  It's very straightforward.

Q    Do you still have those drives?

A    Yes, we keep all our drives.

Q    Where are they located?

A    Everything is at our office in Los Angeles.

Q    Okay.  Let's talk about the workflow from ingestion through final delivery.  Prior to -- let me first ask the question.
Prior to the -- shall we say -- migration event in spring of 2023 and then afterward, did your process for editing programs change at all as a result of that migration?

MS. EVERDELL:  Objection.

THE WITNESS:  No, we always had the same editing process.

BY MR. CANTY:

Q    Okay.  Can you describe that editing process generally?

A    Yeah.  So we use Adobe Premiere Pro, standard Creative Cloud software, and we work directly with raw files in Premiere projects.

Page 28

Q    The editing that is performed, is it typically performed on native media or proxy media?

A    It's performed on native media, specifically if -- we don't work with really high-value cameras, like, let's say a RED or expensive cinema cameras that would require proxies because proxies are generally used whenever the media's so vague that it will slow the computer down.  But we've always had solid computers when we're working with relatively small-size MP4 and MOV files.  So we never made proxies.  We just worked from raw footage.

Q    Is that true of the Dear Kelly project?

A    Yes.

Q    Was there any time where proxies were -- were made in the -- in the Dear Kelly project?

A    I don't believe so.  Not that I can recall.  I actually don't know how to make them, to be -- to be honest with you.

Q    When you work with Adobe Premiere Pro --

A    Yeah.

Q    -- it creates project files for each project; right?

A    Mm-hmm.  Yes.

Q    How many project files were created for Dear Kelly?

Page 29

A    It's hard to give you the exact number, but I would -- there was one main project that we used for the editing process.  There was one master project that had different sequences and scenes, and then --
But it was one major Premiere project.  There may have been others, but not that I can -- that immediately come to mind.

Q    When you work with Adobe Premiere Pro and you create the project files, are the project files located on the computer that you're -- that's running Adobe?

A    We actually back up project files on the servers themselves because when you use -- when you save a Premiere project to the computer itself, it uses that computer's scratch disk, which has a limited number of what's called RAM, which is the graphics card.  So we would save projects to servers and -- and -- so that they can use that scratch disk to not run down the processing capacity of the computer.  So all Premiere project files were stored on the servers.

Q    Okay.  Prior to the spring of 2023, when you didn't have a server, what was the workflow?

A    It was exactly the same.  The only difference is we didn't have a server to consolidate all of our files.

Q    Okay.  So in that instance, where were the project file located?

Exhibit D
50

Page 42

litigation?

A    So we hired a third-party service called Lighthouse to come to the office and do a full digital imprint of the OWC ThunderBay 8 server which contains all of the Dear Kelly footage, project files, et cetera.  And we also gave them access to my email, Google Drive and let them do a -- a scan of my iPhone because I wanted to do things the right way; so I was pretty hands-off and just let them do their thing and take everything.

Q    When did that occur?

A    I have the date here.  On -- at 10:10 A.M. on March 31st, 2025, Jesse Oropeza from the Lighthouse came for collection.  He took the drive.  They took it to their facility in the Bay Area.  Did a full -- I don't know exactly what they did.  Imprint, scan, whatever.  And then they eventually brought it back, and it's still there.

Q    Did they take a forensic image?

A    Yes.

Q    Did they take any data from the three to five solid state drives that were used prior to 2023?

A    They did not.  However, as mentioned, all of that data is contained in the larger server.  There was nothing that wasn't transferred from those drives to the server.

Q    Other than on March 31, 2025, were there any other collection efforts made by anyone?

Page 43

MS. EVERDELL:  Objection.

THE WITNESS:  I don't believe so.  It was just whatever Lighthouse was instructed to do, which is take the server, take the phone, Google Drive, emails, all that stuff.

BY MR. CANTY:

Q    Were there, to your knowledge, any video or audio files identified as relevant to Dear Kelly, but not collected by Lighthouse?

A    No, they collected everything relevant to Dear Kelly.

MR. CANTY:  Let's look, if we can, at Exhibit 2.

(WHEREUPON, THE AFOREMENTIONED
DOCUMENT WAS MARKED AS PLAINTIFF'S
EXHIBIT 2 FOR IDENTIFICATION AND IS
ATTACHED HERETO.)

MR. CANTY:  Meghan has that.

BY MR. CANTY:

Q    Can you take a look at Exhibit 2, and when you're ready, identify it for us.

A    Yeah.  It says Objections and Responses to Plaintiff's First Set of Requests for Production to Defendant Channel 5, LLC filed on May 30th, 2024.

Page 44

Q    Have you seen this document before?

A    I believe so.

Q    Did you play a role in responding to the Requests for Production that were sent by -- by plaintiff?

MS. EVERDELL:  Objection.

THE WITNESS:  I don't know.  Probably.  I don't really understand the question.  Sorry.  I'm not that trained in legal language.

BY MR. CANTY:

Q    Okay.  What I'm asking is if you've seen this document.

Perhaps you had a role in preparing responses to the -- to the Requests for Production?

MS. EVERDELL:  Objection.

BY MR. CANTY:

Q    Did you?

A    I -- I don't know.  I don't -- I'm sorry.  Like you said, you're asking about technology, I just -- did I prepare responses?  I'm sorry.  I'm trying to answer the question.  I just -- did I prepa- --

Q    Okay.  Were --

Were you asked to conduct a search for anything in response to plaintiff's request?

Did you assist counsel in identifying responsive material?

Page 45

Did you play a role in providing information in response to the request?

MS. EVERDELL:  Objection.  Dennis, that was three questions.  You need to choose one.

MR. CANTY:  I -- I was giving for instances as -- as to say -- as to explain what a role might be.  So --

MS. EVERDELL:  I -- I understand, but some of those called for privileged information.  So you got to choose a question seeking non-privileged information, then my client can answer.

BY MR. CANTY:

Q    Did you assist counsel in identifying responsive materials?

A    Yes, I guess.

Q    Okay.  Did you conduct a search for responsive materials?

A    Oh, you're talking about, like, the materials that contain the Dear Kelly footage?

Like, the hard drive?

Q    Okay.  You see how the first request says, "Produce the film"?

A    Okay.  Yeah, like, produce the final cut of the film for review.

Q    And -- and -- and after all that -- after all these objections, it says, "Subject to and without waiving

# Exhibit E

**Davis Wright Tremaine LLP**

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Abigail B. Everdell**
212 603 6468 tel
212 379-5244 fax

abigaileverdell@dwt.com

March 9, 2026

<u>Via Email</u>
Meghan Murphey
Matt Murphey
Dennis Canty
Murphey & Murphey PC
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656

  Re: *Joiner v. Callaghan et al.*, Case No. 24-1160-CBM

Counsel:

  I write in regards to Plaintiff's claims for violations of the Wiretap Act, 18 U.S.C. §§ 2511, 2520 and Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510, 2520. These two federal causes of action (the "Wiretap Act Claims") are predicated on defendants Andrew Callaghan, Channel 5 LLC, Evan Gilbert-Katz, and Nicolas Mosher (the "C5 Defendants") allegedly making "surreptitious recordings" of Plaintiff's communications. We have participated in fulsome discovery regarding these claims, producing 361 documents and raw footage files, including a supplemental production of 36 additional raw footage files we served today. Our client has sat for a deposition. None of this has yielded any evidence that our clients eavesdropped on or surreptitiously recorded your client. Nor will you be able to provide evidence that occurred. Accordingly, it is time to dismiss these claims.

  While the C5 Defendants' document productions and deposition testimony to date more than sufficiently demonstrate the baselessness of your claims, I write to address some questions raised at the February 12, 2026 deposition of Channel 5 LLC's designee Andrew Callaghan, to resolve any remaining doubt. For the reasons explained in more detail below, we demand that you dismiss your Wiretap Act Claims.

  **A.**  **There Is No Evidence to Support the Wiretap Act Claims**

  The Wiretap Act, which is a part of the ECPA, imposes liability on a person who "intentionally intercepts . . . any wire, oral, or electronic communication," uses a device to so "intercept," or discloses any "intercepted" communication "knowing or having reason to know that the information was obtained through [] interception." 18 U.S.C. § 2511(1)(a), (c), (d), (e); *see* 18 U.S.C. § 2520(a); *see also*. The term "intercept" means that one must "*actually* [acquire]

Anchorage | New York | Seattle
Bellevue | Portland | Shanghai
Los Angeles | San Francisco | Washington, D.C.

March 9, 2026
Page 2

the contents of a communication[.]" *United States v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998) (emphasis in original); *see also Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009).  For a cause of action to arise, the intercepted communication must also have been confidential, *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021), and intercepted "without the consent of at least one party to the conversation."  *Pyankovska v. Abid*, 65 F.4th 1067, 1074 (9th Cir. 2023). Accordingly, for Mr. Joiner to prove his claim, he must prove (1) he engaged in a confidential communication; (2) that this communication was intercepted without the consent of at least one party to it; and (3) that the C5 Defendants either obtained the communication through interception or, knowing the communication had been obtained through interception, obtained and disclosed it anyway.

To date, Mr. Joiner has put forth no evidence in support of any of these elements.  He has not even identified what communication was allegedly intercepted, let alone provided any evidence that the C5 Defendants intercepted a communication.  Instead, you have argued that because the C5 Defendants recorded video of the outside of Mr. Joiner's house, "[i]t is a reasonable inference" that they "recorded not only the house but the persons talking in the interior."  Dkt. 22 at 3.  While the trial court may have considered it sufficient to survive a motion to dismiss, this proposed "inference" is not actually evidence of any of the elements of the Wiretap Act Claims.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1245 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987) (a plaintiff opposing summary judgment is not entitled to inferences that "violate[] common sense"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (To survive a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").  Here, not even a scintilla of evidence exists.

In an attempt to resolve any doubt that no Wiretap Act violation ever occurred, the C5 Defendants agreed to produce their footage and documents evidencing their presence on or in the immediate vicinity of Mr. Joiner's property.  To that end, they made their first production of documents on October 21, 2025.  This production includes footage of the C5 Defendants recording from a hiking trail and open field adjacent to the Shady Canyon community in Irvine, California on October 12, 2021; from inside the Shady Canyon community as guests on February 4, 2022; and from the MacArthur Court office park in Newport Beach where they attempted to visit the offices of Mr. Joiner's company Message Broadcast on February 4, 2022.  None of this footage captures Mr. Joiner (or anyone associated with him, as far as we can tell) in any fashion at all, nor does any of it logically support an inference that he was ever recorded or that any of his communications were intercepted.  Indeed, there is no evidence that the C5 Defendants even had the opportunity to intercept any confidential communications, much less the equipment necessary to do so from the locations they accessed.

During the deposition of Andrew Callaghan on February 12, 2026, Mr. Canty raised questions about C5 Defendants' production of documents.  On the assumption that you believe these concerns are grounds to question whether any evidence might exist to support the Wiretap

March 9, 2026
Page 3

Act Claims, we have looked into them and can tell you they are not, for the following reasons: First, at the deposition, Mr. Canty observed that the produced video files have sequential numbering, and that in some cases file numbers in a continuous sequence were missing. We re-reviewed all of the files in those sequences and can confirm no documents are missing from the sequential sets of files in the server where they are stored. Instead, we did not produce certain files in sequences because they either (1) were not responsive to Plaintiff's requests for production because they did not appear to have been recorded at or in the near vicinity of Mr. Joiner's home or workplace, and did not otherwise evidence any recordings made in those locations or of Mr. Joiner; (2) were so blurry that their content could not be determined, or (3) had been processed for review as empty files with a zero file size. We have since obtained re-loaded copies of all the empty files and have reviewed them. Concurrent with this letter, we are making a supplemental production of any responsive documents from this set of re-processed files, along with other files which, from context and on additional review, appear to have been recorded at the MacArthur Court office park, in the near vicinity of Mr. Joiner's home, or elsewhere in Shady Canyon. As you will see, none of these files provide even a shred of evidence supporting your Wiretap Act Claims.

Mr. Canty also questioned why the C5 Defendants had produced more documents from a folder with the file path "Finding Bill Joiner\01_Footage\Bill Joiner Day 1\Proxies\A7" than from the folder with the file path "Finding Bill Joiner\01_Footage\Bill Joiner Day 1\A7\PRIVATE\M4ROOT\CLIP." We reviewed the original folders to determine why this occurred, and confirmed that four of the files in the latter folder were processed as empty files with a 0 file size. An additional file in the "M4ROOT\CLIP" folder contained video footage we did not realize at first review was recorded at a coffee shop within the MacArthur Court office park. We had produced duplicates of all five files from the "Proxies" folder. In the interest of completeness, however, our concurrent supplemental production includes the five duplicate "M4ROOT\CLIP" video files.

We trust that this explanation resolves your concerns about the C5 Defendants' production of documents and that, pursuant to your ethical obligations under FRCP 11(b)(3), you will voluntarily dismiss, at minimum, your Wiretap Act Claims. *See, e.g., Gin v. Chicago Ins. Co.*, 106 F. 3d 407 (9th Cir. 1997) (affirming sanctions award where "Appellants' frivolous argument resulted in prolonging the litigation"); *Lemaster v. U.S.*, 891 F.2d 115, 118 (6th Cir. 1989) (affirming award of sanctions where plaintiffs "push[ed] ahead with their case" notwithstanding its lack of merit).

Please provide your availability within the next week to meet and confer on this matter.

This letter is sent without waiver of my clients' rights, defenses, privileges, remedies, or claims, all of which are expressly reserved.

March 9, 2026
Page 4

Sincerely

Abigail B. Everdell
Davis Wright Tremaine LLP


CC:     Jonathan Segal (jonathansegal@dwt.com)
        Sam Lachman (samlachman@dwt.com)

# Exhibit F

## Dennis Canty

| | |
|---|---|
| **From:** | Everdell, Abigail <AbigailEverdell@dwt.com> |
| **Sent:** | Thursday, April 23, 2026 12:17 PM |
| **To:** | Dennis Canty; Lachman, Sam; Meghan Murphey; Matt Murphey |
| **Cc:** | Segal, Jonathan; Kerry Moynihan |
| **Subject:** | RE: Channel 5 Defendants' Third Production of Documents |

Dennis,

I disagree entirely that our positions are a moving target.  We have been entirely consistent since our letter memorializing our meet and confer, and I have told you clearly and repeatedly what we have agreed to produce.  From your response, we take it that you are continuing to press for irrelevant footage.

On the project files, I have had a chance to look at what these files look like when opened in the proper application and I disagree with you that there is no chance they are privileged – some include editorial notations which may include legal advice.  Beyond this, the ones I have seen are comprised of irrelevant and sensitive editorial process material.  It would be malpractice for any attorney to produce documents like this by "drag and drop" without pre-review.  I moreover do not understand why you think they are relevant in any way, and you have yet to offer a coherent theory.  While you have suggested these may show "missing" files, that will not indicate what those files are or whether they are relevant and responsive.  This is not a matter of a tech team discussing how to share them – it's a matter of you explaining to me how they contain relevant information and how we are supposed to determine that is the case.  I'm happy to get on a call with your tech personnel next week to get an explanation.

We will propose edits to your proposed submission today.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Thursday, April 23, 2026 2:59 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

**[EXTERNAL]**

I advised Monday that we would get the court involved by the end of the week.

We have made clear what our asks are, including the fact that your positions are a moving target.  And your refusals to make sworn responses as to what exactly you are producing are part of the problem.  And the fact that today, as I write this, you cannot tell me what exactly you are agreeing to produce, is another part.

We do not at this time believe that producing 1500 project files is burdensome - they contain no privileged information that would require review.  Drag and drop.  Easy.  Lighthouse can do it with a couple of keystrokes.  If you want to schedule a call with our tech team and yours, to discuss possible refinement, let's do it early next week.  We can report any resolutions to the court on Tuesday or Wednesday.

We will send an email to the court today, with or without your input.

Thanks.

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Thursday, April 23, 2026 11:36 AM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis –

Thanks for this.  A couple things:

First, we have not objected to producing all of C0040–C0046.  We agreed to re-review these and produce any that fall within the expanded responsiveness parameters we agreed to, including if they refer to the purpose of Defendants' presence near your client's home or attempts to find your client.  One or more of the videos does fall within the parameters we agreed to (apologies I don't know how many exactly; Sam has had a family emergency and is OOO today).  Your ongoing demand is for videos that are not recordings of your client, do not include any reference to recordings of your client, were not recorded within 1000 feet of your client's home, and do not discuss the purpose of defendants' presence near your client's home.  Please confirm you believe we still have a dispute here.

Second, in my email yesterday I offered to meet and confer on a targeted approach to the project files.  You did not take me up on that.  Are you taking the position that you are entitled to all project files without regard to relevance?

Please let me know, and thanks.  If we still have a dispute to tee up, I can send availability for next Tuesday or Wednesday.  I'm not available Monday.

Abigail

**Abigail Everdell**
**Counsel**, Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Thursday, April 23, 2026 1:06 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

[EXTERNAL]

Abigail –

Here is a draft of the statement to work with.  Please provide input.

Happy to continue dialog, but I think we better get a conference scheduled.

Thanks.


**From:** Dennis Canty
**Sent:** Thursday, April 23, 2026 8:05 AM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Thanks, Abigail.

I'll consider your latest missive the conclusion of the meet and confer.  Per the below procedures, we need to send an email to the judge today.  We'll be working on a draft short statement.  I can fit in a conference at the judge's pleasure at any time Mon through Wed.  Please respond with your availability.


https://apps.cacd.uscourts.gov/Jps/honorable-karen-l-stevenson

**Discovery Motions:**

a. **Generally.** Discovery motions are to be scheduled before the magistrate judge unless otherwise ordered by the district judge. The parties are advised to review the procedures and standing orders of the assigned district judge before filing any discovery motion. Strict compliance with Local Civil Rule 37 is required. The Court may take a motion under submission without oral argument. See Local Civil Rule 7-15.

b. **Pre-Motion Telephonic Conference.** In the Court's experience, discovery disputes may often be resolved without the need for formal motion papers. In order to facilitate the just and expedient resolution of discovery matters and to conserve the parties' and Court's resources, the Court requires the parties to follow the following procedure for filing discovery motions. This procedure **does not** apply to ex parte applications (see Procedure 5) or where a party to the discovery dispute is in custody.

   i. First, as Local Civil Rule 37-1 requires, the parties must meet and confer in an attempt to resolve any discovery dispute.

   ii. Once the parties have determined that they have reached an impasse, within twenty-four hours of the last conference, the movant must e-mail the CRD seeking a telephone

conference with the Court to discuss the discovery dispute. The e-mail must include (1) at least three proposed times mutually agreed upon by the parties for the telephone conference; (2) a **neutral** statement of the dispute; and (3) one sentence describing (not arguing) each parties' position. The movant must cc: opposing counsel on the e-mail.

iii.  **No discovery motion may be filed until the Court has conducted its pre-motion telephonic conference** unless the movant has obtained leave of Court sought by an ex parte application. The Court may strike any discovery motion filed in violation of this Rule and Procedure.

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Wednesday, April 22, 2026 6:47 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis,

I appreciate the clarity on the points I asked about.

In the interest of mutual clarity on the remaining issues, I am summarizing below what we have done, what we have agreed to do, and what we object to doing:

What we have done and agreed to:

- We performed a forensic image of the drive where all footage for the Documentary was transferred and held in storage even before your client initiated this dispute.
- We performed a diligent search of that drive for any recordings of your client and found none.
- We agreed to produce all recordings made within 1000 feet of your client's home or place of business.  We have produced substantially all such recordings, supplemented this production when alerted to documents you believed might be missing, performed an additional search, and will be supplementing again with the few straggler or duplicative recordings we found that may fall into this category.  We still have found no recordings of your client's communications and nothing that provides any reason to suggest any such recordings were ever made.
- We collected from relevant email accounts and mobile devices used during the relevant time period, and performed a diligent search for all documents and communications evidencing any recordings of your client.  We found none.  For avoidance of doubt, we also searched for all documents evidencing our clients' presence near your client's home or business, and produced those.
- We have since agreed to also produce all recordings, documents, or communications evidencing the purpose of our clients' presence at or near Mr. Joiner's home or place of business, or showing attempts to find Mr. Joiner, and plan to produce those this week.
- We have also agreed to produce every published version of the Documentary, though you have not cited any recording of your client in any version of the Documentary (nor could you).  We are working on those and will produce them this week or next.
- We were able to locate two drives drive where the relevant footage filmed in October 2021 – including the "ghillie suit" scene – was originally stored before it was copied wholesale to the

solid-state drive we imaged and searched.  While one of these drives was damaged in shipping to our forensic vendor, we were able to find a second copy of the very same drive.  We have no reason to believe that this drive contains any additional footage beyond what we reviewed, our forensic vendor will be picking it up to perform a comparison analysis.

- Note that the original drives where raw footage was stored were not kept in any normal filing system, since once they had been transferred over to the solid-state drive they had no ongoing purpose.  We were lucky to have been able to find the most relevant drives.  We have reviewed all the others we could locate, and have not found any that appear to be original repositories for raw footage relevant to your claims.
- We have performed an on-site search of the Mac computer you identified, from which the Documentary was edited while connected to the solid-state hard drive where all raw footage files were stored.  We found no reason to believe this computer contains additional evidence relevant to your client's Wiretap Act claims.

What we will not agree to do:
- On the Adobe project files, we searched for all files with the extensions you identified and returned more than 1500 related to the Documentary.  Reviewing each of these files would be an undue burden, especially since we aren't sure what you're even looking for that is relevant to your claims – you have not identified any version of the Documentary that contains a recording of your client, so we do not see how project files related to its editing are relevant.  We are open to meeting and conferring on a reasonable protocol to target what you're looking for, but we object to producing all of these as they are not relevant to your claims.
- We will not be amending our discovery responses, as we see no need to do this.  If you have a legal basis for demanding we do so, please send it along.
- We will not be creating forensic images of the Mac computer.  This is an expensive and burdensome process, and not proportional to the needs of the case as we already imaged the relevant hard drive and found nothing of interest on the mac computer itself.
- Aside from the measures we have agreed to above, we will not be engaging in any further document collections or productions absent a legitimate basis to believe that these steps will result in relevant evidence.

In sum, we have already taken measures far beyond what is proportional to the needs of your client's federal Wiretap Act claims, and have found no direct or indirect evidence to support those claims.  When you demanded more, we provided more notwithstanding its now-obvious lack of relevance.  And when you again demanded more, we once again agreed to provide you even more materials, which still do not support your client's Wiretap Act claims in any way.  For your part, you have continued to insist upon additional measures without any reasonable explanation of how they will lead to relevant evidence.  Instead, you appear to now be searching for ways to create an inference that our clients have somehow failed to participate in discovery in good faith, or somehow spoliated evidence without any basis for that belief.  This has gone far enough.  Even without our forthcoming supplemental productions, you have more than enough to establish that the Wiretap Act claims are meritless.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468   **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104

**DWT.COM**

**From:** Everdell, Abigail
**Sent:** Tuesday, April 21, 2026 9:33 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis,

We'll get you a response on this tomorrow.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Monday, April 20, 2026 1:45 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

**[EXTERNAL]**

Thanks, Abigail.

With respect to "the original drive" for the ghillie suit mission, please let us know how recovery is going, and give us a report from qualified personnel that adequately describes the media, its condition and efforts to restore.  Also, Mr. Callaghan testified that there were three to five drives, up to 3 TB each, from the pre 2023 era.  They were never collected and have never been forensically preserved. Your assumption that "all of that data is contained in the larger server" is an assumption that needs to be tested.  We look forward to a report about all of the drives.  This is particularly relevant because any drive containing media used for the project also likely contains (inter alia) relevant project files.

Which brings me to project files and media cache databases.  If you collected the server as described, and it purportedly contained everything, then you have had these project files in your possession all along.  They don't contain privileged information.  We are talking about drag and drop ease of production.  There is no reason for the delay in evaluating our position and providing a response.   Please provide one now.

Your request for clarification with respect to supplemental responses is confusing.  Your recent agreements to produce documents are in direct conflict with your sworn responses, eg (without limitation) 7, 8, 9, 11 and 19.  And one of the problems we are having is that we can have a telephone conversation one day about what you are going to produce, and find out the next day that we didn't hear the same thing.  This is why sworn responses are required.  And I don't understand your reference to "without waiver of appropriately asserted objections."  We don't think you have any.  So if that's what we need to litigate, let's litigate it.  If you refuse

Exhibit F

to supplement, then we will litigate on the responses you've provided.  If that's the case, I'm not sure why we've gone through this meet and confer process or how you'll explain that to the court.

Regarding the Mac hard drive, what we've requested is that you image it and evaluate the presence of relevant data.  There's no question, based on the testimony, that this computer was the one used to ingest media and work on the film project.  This is basic.  If you won't do it, we will ask the court to do so.

We need to present the court with what we agree on and what we don't.  I intend to contact the court by the end of this week.  With or without your cooperation in that.

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Wednesday, April 15, 2026 2:40 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis,

We are continuing to look for the documents you want, to the extent they exist, and we're preparing a supplemental production of documents, which we expect to start producing to you next week.  In addition, we have obtained the original drive where footage from the "ghillie suit" filming session was deposited, and sent it to our vendor to run the comparison you requested.  It appears, however, that the drive has some sort of mechanical fault, and they cannot access its contents.  Notwithstanding that we believe these measures are not proportional to the needs of the case as we have already collected copies of all files on this drive, we will be sending the drive to Drive Savers to see if they can recover it so we can perform the comparison you requested.

Can you clarify what supplemental discovery responses you are asking for?  I don't believe you've identified anything "incomplete or incorrect" in our clients' RFP responses, *see* FRCP 26(e), and our agreement to produce additional documents is without waiver of appropriately asserted objections.  But if I'm missing something please let me know.

Regarding the "Mac hard drive," am I correct you're referring to the one or more Mac computers that were used to transfer files from recording devices to external hard drives?  I'm not aware of testimony about any of those computers being used to "collect and process the original media."  As Mr. Callaghan testified, the original media was moved to external storage drives using a Mac computer, not stored on any such computer.  If you're referring to something else, or have specific testimony in mind about a relevant computer, please let me know.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Monday, April 13, 2026 8:18 PM
**To:** Lachman, Sam <SamLachman@dwt.com>; Everdell, Abigail <AbigailEverdell@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

[EXTERNAL]

Counsel,

Please provide status on the following:

> Your inquiry into project files and media cache database files.

> Receipt of additional documents that you have agreed to produce.

> Supplemental discovery responses.

With respect to the issue of the Mac hard drive, perhaps I was mistaken on our call.  Since it is indisputably the hard drive used to collect and process the original media, I believed it to be included in what you would be imaging.  Imaging the drive, at least for preservation purposes,  should have been done already.  That it hasn't been is a little disturbing.  In any event, checking it for relevant data is also something you should have done already.  If you won't do it, we'll bring it up with the court.

I note that the language we are using with respect to what you have agreed to produce differs.  We don't seem to agree on whether ESI that  "is related to" something (v. "evidences" something) will be produced.  We will bring that up with the court as well.

And I think we are getting the point where court involvement is prudent.

**From:** Lachman, Sam <SamLachman@dwt.com>
**Sent:** Friday, April 3, 2026 5:28 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Everdell, Abigail <AbigailEverdell@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Hi Dennis,

I've attached our letter memorializing what we discussed during the call this morning.

Thanks,
Sam

**Sam Lachman**   She/Her/Hers
**Associate,** Davis Wright Tremaine LLP

**P** 213.633.8611  **C** 919-780-9795  **E** samlachman@dwt.com
**A** 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071

**DWT.COM**

---

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Friday, April 3, 2026 3:15 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

---

**[EXTERNAL]**

---

Abigail –

Thanks for the chat this morning.  Here is where I think we are.

"Without conceding relevance," you have agreed to produce the following (thank you):

    all published iterations of the film (RPD 1)

    documents relating to the purpose for defendants' presence at Joiner's home and office. (RPD 7 & 8)

    documents regarding attempts to locate Joiner (RPD 11)

    communications between the defendants relating to recordings of any Joiner properties (RPD 19)

You state that there are no documents to produce:

    relating to the purpose, possession or use of ghille suits (RPD 9)

    relating to defendants' intent regarding audio and video of Joiner properties (RPD 16)

Disputes remain regarding the following:

    documents relating to the "editorial process" or "what to include in the Film" (seemingly qualifying the responses to RPD 16 and 19)

    communications regarding Joiner (RPD 23)

    communications relating to post-demand letter communications between the defendants regarding the litigation.  (Though this request does not ask for these, we agreed that communications between client and counsel post-letter need not be logged.)

    the files C0040 through C0046 in the "Home Invasion" A7#2 camera sequence.

<mark>Note that, at the least, we will need supplemental discovery responses reflecting the above.  The present responses do not.</mark>

With respect to the collection issues, you have agreed to (again, thank you):

    Image the hard drives which originally stored the media collected for the Project;

    Image the Mac hard drive which was originally used to transfer and edit media for the Project;

9                                                                                    **Exhibit F**

Have Lighthouse compare those images to what was first collected from the server and look for discrepancies.

You are still assessing our request for Adobe Premier Pro project files (*..prproj) and Media Cache Databases (*.mcdb) and we will reconvene soon to discuss.

Let me know if I got anything wrong.  Talk soon.

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Tuesday, March 31, 2026 8:28 AM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis,

We disagree entirely that you've sufficiently articulated the relevance of your requests—in fact we don't understand at all how you think any of these demanded documents could bear upon your federal claims given the comprehensive materials we've already produced to you.  But we can discuss this week.

Regarding the forensic consultant asks, we could use some time to look into the feasibility of these.  Are you available to have this call on Thursday?

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Monday, March 30, 2026 5:18 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

[EXTERNAL]

Abigail,

We think we've sufficiently articulated the relevance of our requests.

After conferring with my forensic consultant, our ask is as follows:

1) Image the hard drives which originally stored the media collected for the Project;

Exhibit F

2)  Image the Mac hard drive which was originally used to transfer and edit media for the Project;

(This is what should have been done in the first place anyway.)

3)  Compare those images to what was first collected from the server, and provide a Lighthouse declaration regarding the comparison, which describes any relevant differences;

4)  Provide all of the Adobe Premier Pro project files (*..prproj) associated with the Project and contained on any of the drives;

5)  Provide all of the Adobe Premier Pro Media Cache Databases (*.db) associated with the Project and contained on any of the drives.

Right now, my calendar is open on Wednesday.  Name your time to discuss.

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Friday, March 27, 2026 12:27 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis,

We disagree that our collection or production were inadequate or that the parameters we applied to our production were insufficiently broad to provide you all direct or circumstantial evidence of wiretapping.

To reiterate, we performed a complete collection from the solid state drive where all relevant footage had been deposited, and produced to you 361 documents and footage files including all material showing our clients within 1000 feet of your client's home or place of business—the relevant distance per your own discovery requests—or even farther away in some cases for avoidance of doubt.  We also looked for any other evidence that your client's communications were intercepted or recorded in any way, and found none.  And, we searched our clients' cell phones and email accounts and produced all other files or correspondence evidencing their presence at Mr. Joiner's home or office.  If there had been any discussion of wiretapping your client or any evidence that this occurred, we would have produced it.  And Mr. Callaghan has now testified under oath that neither he nor anyone else at Channel 5 has ever met Mr. Joiner, seen Mr. Joiner, heard his voice, recorded him in any way, or been in possession of any of his private communications.  We are also surprised that you are raising concerns now about responses and objections we served on June 6, 2025, nearly ten months ago.  That being said, we are happy to meet and confer to discuss your concerns.

To facilitate our conversation, could you please provide us the following context:

1.  Was Mr. Joiner present at his office park when the defendants visited?  To be clear, we have already produced every single recording made at the office park, and Mr. Callaghan has testified he never encountered Mr. Joiner at this visit or at any other time.  What is your basis for believing that additional evidence about that visit would be reasonably calculated to lead to additional relevant information about your wiretap claims?

2.  Was Mr. Joiner present at home when the defendants filmed from a field outside Shady Canyon?  To be clear, we have already produced every single recording made during this filming session or otherwise within Shady Canyon, and Mr. Callaghan has testified he never encountered Mr. Joiner at this filming session or at any other time.  What is your basis for believing that additional evidence about that filming session would be reasonably calculated to lead to additional relevant information about your wiretap claims?

3.  Do you have any reason to believe that Defendants were within 1000 feet—the distance specified in your requests for production—of Mr. Joiner or his home at any point otherwise?  If so, what is the basis of this belief?

4.  At what point do you believe any of the Defendants had the opportunity to intercept or record any of Mr. Joiner's confidential communications?  How could such interception or recording have been done?  To be clear, Andrew Callaghan has testified under oath that Defendants never intercepted or recorded any of Mr. Joiner's communications and did not use recording equipment that would have allowed such interception from the places they recorded.

5.  You have repeatedly referred to our clients "trespassing" on your client's property.  Can you please clarify what evidence supports this claim?  We have not seen, and are not aware of, any evidence of our clients trespassing on your client's property.

6.  Can you please explain why information relating to the acquisition or possession of a camouflage "ghillie suit" is reasonably calculated to lead to relevant evidence about wiretapping?

7.  Can you please explain why you believe efforts to contact Mr. Joiner are relevant to a claim about wiretapping him?

8.  Can you please explain why documents about intent to use recordings of Mr. Joiner's home or office that do not constitute or evidence intercepted communications are relevant to a wiretap claim?   To be clear, we have already produced all recordings of Mr. Joiner's home or office.

9.  Can you please explain why different versions of the Documentary are reasonably calculated to lead to relevant evidence about your wiretap claim?  To be clear, we produced all footage of your client's home or place of business used in any version of the Documentary.

10. Can you please explain why communications about Mr. Joiner's house or place of business, which do not include any discussion of recording or recorded communications, are reasonably calculated to lead to relevant evidence about the unlawful interception of your client's confidential communications?

Regarding your concerns with our document collection, it isn't clear from your email whether you intend to refine this list.  We'd like to see a complete list of asks before conferring, so why don't you send that along and we can talk after we see it.  We can't talk until Wednesday of next week anyway.  Let us know when you have time during the second half of next week.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Wednesday, March 25, 2026 11:58 PM

**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

**[EXTERNAL]**

Abigail –

Following today's telephone call, we write to memorialize deficiencies in Defendant Channel 5 LLC's Objections and Responses to Plaintiff's First Set of Requests for Production (the "Responses") and to formally request a telephone conference to meet and confer prior to motion practice.  We've tried to group the disputes into categories, which we address in turn below.

## RELEVANCE TO FEDERAL v. STATE CLAIMS (RFP NOS. 7, 8, 9, 11, 16, 17, 19, 22, 23)

In response to RFP Nos. 7, 8, 9, 11, 16, 17, 19, 22, and 23, Channel 5 refuses to produce any documents whatsoever.  For each of these, C5 objects on the basis of relevance to the Federal Claims and outside the scope of the Court's Order staying discovery on State Claims.
Plaintiff's claims under the Federal Wiretap Act, 18 U.S.C. § 2510 et seq., and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 are not stayed. Every one of the RFPs at issue is directly, substantively relevant to those federal claims.

> **RFP No. 7** (purpose of Defendants' presence at the Joiner Residence) and **RFP No. 8** (purpose at the Joiner Business): The "purpose" of Defendants' presence goes to the heart of intentional interception under the Wiretap Act. The Act imposes liability on any person who "intentionally intercepts" an oral, wire, or electronic communication. 18 U.S.C. § 2511(1)(a). Documents evidencing why Defendants were at Plaintiff's home and office are directly relevant to intent and knowledge — essential elements of the federal claim.

> **RFP No. 9** (ghillie suit): Callaghan and his co-defendants wore ghillie suits — military-grade camouflage — while conducting surveillance of Plaintiff's residence. Files from the defendants' own hard drives label the footage subdirectory "Bill Joiner home invasion." Documents concerning the acquisition, possession, and use of ghillie suits in proximity to the Joiner Residence are probative of Defendants' deliberate, premeditated plan to surveil Plaintiff without detection — directly relevant to the intentional interception elements of 18 U.S.C. § 2511(1)(a) and (1)(b).

> **RFP No. 11** (attempts to locate Joiner): Documents evidencing the pre-surveillance steps Defendants took to locate Plaintiff are relevant to the planning, purpose, and deliberateness of the interception activity.

> **RFP Nos. 16 and 17** (intent regarding use of recordings; inter-defendant communications regarding Joiner): Communications between Defendants regarding Plaintiff and regarding their intent to use recordings directly bear on the federal claims. They go to mens rea, planning, and the scope of the conspiracy to intercept communications.

> **RFP Nos. 19 and 23** (communications re recordings of Joiner Properties; all communications regarding Joiner): Same analysis. Inter-defendant communications about Plaintiff and the recordings of his properties are squarely relevant to the wiretapping claims, irrespective of any state law claim.

> **RFP No. 22** (communications regarding litigation and pre-suit demand letters): Channel 5 was put on notice of Plaintiff's claims through pre-suit demand letters before this action was filed. Communications between the Defendants once they knew of litigation may reveal discussions of recording efforts,

preservation or destruction of relevant materials, knowledge of the wrongfulness of their conduct and their state of mind — factors relevant to the "intentional" element of the Wiretap Act and to any willfulness finding.

Your blanket refusals to produce on this basis are unwarranted.

## FIRST AMENDMENT PRIVILEGE (ALL REQUESTS)

Across nearly every response, Channel 5 asserts a sweeping First Amendment and California constitutional privilege over "unpublished footage" and "unpublished editorial information." You invoked it again on our call today.  The qualified reporter's privilege does not apply here.

As Ninth Circuit authorities recognize, and as this court has previously stated in this case, the First Amendment to the Constitution is not a license for a "reporter" (even if Callaghan could be called that) to trespass and intrude.

crimes committed during the course of newsgathering," and "[t]he First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office." *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971); *see also Turnbull v. Am. Broad. Cos.*, 2004 WL 2924590, at *18 (C.D. Cal. Aug. 19, 2004) (citing *Dietemann*, 449 F.2d at 249- 50).

Fundamentally, the journalist's privilege exists to protect the editorial process and, particularly, to shield confidential sources from compelled disclosure. Shoen I, 5 F.3d at 1292; Mitchell v. Superior Court, 37 Cal. 3d 268, 279 (1984). It was never intended to permit a media defendant to suppress evidence of its own alleged illegal conduct. Channel 5 and Andrew Callaghan are defendants in this action. The privilege protects journalists from being conscripted as unwilling witnesses against third parties; it does not protect journalists who themselves stand accused of wiretapping from producing evidence of their own conduct. As your own firm has published with respect to the California Constitution, the immunity conferred on a reporter, even when available, isn't available in a civil action in which the reporter is a party.

Even when the reporter is a third party, the Ninth Circuit recognizes that the privilege yields where the party seeking discovery shows that: (1) the information is highly relevant to the claims at issue; (2) the information cannot reasonably be obtained through other means; and (3) there is a compelling need for the information. Shoen I, 5 F.3d at 1292–93; Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Shoen II")  All three elements are satisfied here in spades.

Now you have stated in your email this evening: "As I also stated clearly and repeatedly, we did not withhold any relevant evidence based on privilege."  Great.  You shouldn't have any problem dropping the objection.  Thanks.

## PRIOR ITERATIONS OF THE FILM (RFP NO. 1)

In response to RFP No. 1, Channel 5 agreed to produce only "the version of the FILM referenced in Paragraph 8 of the Complaint." This limitation is improper. RFP No. 1 expressly seeks the FILM as defined in the RFPs, which expressly includes "the final cut and any and all prior iterations of said film, whether or not shown to the public, including any film previously referred to as 'Finding Bill Joiner.'"

14                                                                                           Exhibit F

Prior iterations of the film are directly relevant to the federal claims. According to Mr. Callaghan, various versions with different cuts were produced. The other versions may contain evidence of recordings which those previously produced do not.

## DIRECT v. CIRCUMSTANTIAL EVIDENCE

Following our latest communications, perhaps this next dispute is best characterized as one concerning direct v. circumstantial evidence.

Channel 5's Third Production contains a gap in the "Home Invasion" A7#2 camera footage: files C0040 through C0046 are entirely absent. The footage immediately preceding and following this gap shows Defendants in ghillie suits trespassing in Shady Grove.

You confirmed on our call that you are withholding this material. Your stated basis shifted during the conversation. Your email this evening now states: "They were not filmed within 1000 feet of your client's home (the parameter in your own discovery requests) and contain no evidence of wiretapping." Perhaps you are oversimplifying Request No. 6 ("All DOCUMENTS **relating to, referring to or** evidencing DEFENDANTS' physical presence within 1000 feet of the JOINER PROPERTIES.") Given the context, these files fall within that request, but they are likely also FOOTAGE, (**RPD 2**) which relates to Defendant's presence at the JOINER PROPERTIES (**RPD 5**) and/or their purpose (**RPD 7)** and related to attempts to surveille Joiner **(RPD 12),** to name a few.

Federal Rule of Civil Procedure 26(b)(1) defines discoverable material broadly as anything "reasonably calculated to lead to the discovery of admissible evidence." The decision to withhold it based on a unilateral determination that it lacks relevance is precisely the kind of impermissible self-serving scope limitation that Rule 26 is designed to prevent.

Your position betrays perhaps a more basic area of dispute. It seems that, in order to be "relevant" in your view, the evidence must be a video file taken in a certain proximity of a certain place from which you think it might be possible to record Mr. Joiner. A file which contains *direct* evidence of recording (or not). Let us be clear. The video you are withholding seems undoubtedly to have been taken by the ghillie-suited defendants and their iphone toting, drone flying cohorts whilst on their self-styled "daring mission for revenge." Based on review of related content, it is evident that such footage relates to what they were doing on that trip and why, and may contain discussion of what they've done and what they are planning to do. It's reasonably calculated. And we will move to get it if we have to.

## ADEQUACY OF COLLECTION

At deposition, Mr. Callaghan testified that Channel 5 retained Lighthouse eDiscovery to collect media for this litigation. He testified that Lighthouse took a forensic image of a server he acknowledged was not created until the spring of 2023, well after the relevant surveillance events. Mr. Callaghan also testified that: (a) the original Dear Kelly footage was stored on a Mac desktop computer and three to five solid state drives; (b) he retains all of those original devices; and (c) Lighthouse conducted no collection of the original Mac or the original solid state drives.

Counsel has relied (without verification) on Mr. Callaghan's representation that everything was copied to the server. This is essentially custodian self harvesting without any verification or compliance monitoring by counsel. Courts have been sanctioning parties and counsel for that for at least 20 years since *Zubulake*.

We do not consider this to be adequate search and collection or a "reasonable inquiry." I'm thinking right now that we should consider the following: (1) imaging of the original Mac desktop and all solid state drives identified by Mr. Callaghan; (2) production of a portion of the image already created of the server; (3) production of the Adobe Premiere Pro project files for the Dear Kelly project, which may contain a log of ingested media, version history, and metadata bearing on what was recorded and retained; and (4) a

supplemental declaration from a Lighthouse representative addressing the scope of collection and confirming what was and was not captured.

I need to refine these thoughts with my forensic consultant and will be prepared to further at the conference. I hope we can find a solution short of motion practice. At the moment, my Monday is pretty open. Should we plan to talk then?

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Wednesday, March 25, 2026 6:47 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis –

To your first point, you are mischaracterizing what I said during our call. As I explained clearly and repeatedly, we performed a diligent search and produced all footage and other documents showing our clients within the near vicinity of Mr. Joiner's home or office or evidencing any recordings made of Mr. Joiner or his home. Other footage files that do not show either – including those between C0040 and C0046 – are not relevant and are not reasonably calculated to lead to the discovery of relevant evidence. To be clear: We have reviewed these files. They were not filmed within 1000 feet of your client's home (the parameter in your own discovery requests) and contain no evidence of wiretapping. In addition, I never stated that "the parameters" of our review were limited to only videos showing our clients "actually trespassing on Mr. Joiner's property." If that were the case, we would have produced no documents at all, since our clients never trespassed on Mr. Joiner's property. Your claim is also belied by the numerous video files we produced showing our clients *outside* of the Shady Canyon community and in the Shady Canyon clubhouse. As I also stated clearly and repeatedly, we did not withhold any relevant evidence based on privilege.

We moreover disagree entirely that the additional discovery you have proposed is proportional to the needs of the case. As Mr. Callaghan testified, Channel 5 put copies of all footage files for the documentary on a single solid-state drive, and used the files from that drive to create the Documentary. You have offered no reason to believe that the additional discovery measures you have proposed might lead to additional evidence to support your federal claims, because there is none. Instead, you are proposing these measures *five months* after we produced footage to you, and only after we have insisted upon meeting and conferring on your lack of evidence. Notably, you have not produced a single piece of evidence to support your federal claims. There is little question here that you are engaged in a fishing expedition and employing delay tactics.

This being said, and without waiver of all rights, we will consider any reasonable requests for supplemental information. Please send those over promptly.

Best,
Abigail

Exhibit F

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Wednesday, March 25, 2026 3:41 PM
**To:** Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Everdell, Abigail <AbigailEverdell@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

---

[EXTERNAL]

---

Abigail –

Thanks for the chat today to discuss your letter attached.

As stated, we are continuing to review your supplemental production and discuss with our forensic consultant. For the reasons discussed and evidenced in your letter, we continue to have concerns about whether all material relevant to our "Federal Claims" has been collected and produced.

Among other things, we discussed the glaring gap in your production for camera A7#2 between C0040 and C0046. The preceding media and the following media show the trespassers in ghillie suits commencing the self-described "home invasion." You stated that you are withholding this material. You weren't exactly clear on the basis for this, one moment referencing journalistic privilege, and the next, relevance. As stated on the call, it appears to us that subject matter and timing of the framing media support center-bullseye relevance for the material omitted.

You stated that you have reviewed the material, but because it doesn't show the protagonists on Mr. Joiner's property, it isn't relevant. As I stated, to the extent the material may lead to the discovery of admissible evidence – e.g. the protagonists located in a previously unknown area, discussing what else they have done and recorded that day, or their plans for the evening's incursion – it is unquestionably discoverable on this issue. You have now clarified for us the parameters of your review and production: if it doesn't show the protagonists actually trespassing on Mr. Joiner's property, you have decided it isn't relevant and we don't get to see it.

It appears we have a major dispute about the parameters of your collection and review that we need to address with the court.

Further, deposition testimony revealed that counsel's collection of media was limited to Mr. Callaghan's server. That server did not exist at the time of the visits to Mr. Joiner's home and office. Mr. Callaghan testified that the "Documentary" project was begun well before that time, and the media at issue in your present productions was originally transferred to a Mac computer and solid state drives. He testified he is still in possession of these devices. Based upon his representation that he later transferred all data from the other devices to the server, you collected only the image of the later created server. You have conducted no search of the original media, nor any investigation as to whether his representations are accurate.

In other words, the accuracy and completeness of the production is tethered entirely to the word of the defendant. A defendant who, as the deposition testimony established, has repeatedly and admittedly

misrepresented the contents of the storage devices in his possession.  Who has a reason to lie and a history of lying.

We do not agree that this is a reasonable search under the Federal Rules.  We have another major dispute.

As I indicated, we have some ideas on how we might rectify the problems with collection and production.  This involves imaging and production of the original hard drives, perhaps production of a portion of the image already performed, and production of the Adobe Premier Pro project files, which may provide a log of the media ingested as part of the project and its disposition over time.  I want to provide the most specific information I can about this request, and will be conferring with my forensic consultant.

I will provide you with further details as soon as possible.

---

**From:** Lachman, Sam <SamLachman@dwt.com>
**Sent:** Monday, March 9, 2026 5:47 PM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>
**Cc:** Everdell, Abigail <AbigailEverdell@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** Channel 5 Defendants' Third Production of Documents

Hello,

The Channel 5 Defendants' third production has been uploaded to DWT's secure FTP portal.  Instructions are attached.  Please let us know if you have any trouble accessing the files.

I've also attached a cover regarding Plaintiff's federal claims.

Thanks,
Sam



**Sam Lachman**   She/Her/Hers
**Associate |** Davis Wright Tremaine LLP

**P** 213.633.8611  **C** 919-780-9795  **E** samlachman@dwt.com
**A** 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071

**DWT.COM**   in

# Exhibit G

**Davis Wright Tremaine LLP**

21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**Abigail B. Everdell**
212 603 6468 tel
212 379-5244 fax

abigaileverdell@dwt.com

April 3, 2026

**Via Email**
Meghan Murphey
Matt Murphey
Dennis Canty
Murphey & Murphey PC
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656

     Re:    *Joiner v. Callaghan et al.*, Case No. 24-1160-CBM

Counsel:

I write to memorialize our meet and confer this morning.  During our call, we discussed Plaintiff's claims for violations of the Wiretap Act, 18 U.S.C. §§ 2511, 2520 and Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510, 2520 (the "Wiretap Act Claims"). Note that we have received your email of 3:15 p.m. today, and do not entirely agree with your articulation of what we discussed and what we agreed to.  The below accurately sets out our position.

We first discussed your requests for additional document collections.  In your March 30, 2026 email, you asked us to "[i]mage the hard drives which originally stored the media collected for the Project" and "[c]ompare those images to what was first collected from the server, and provide a Lighthouse declaration regarding the comparison, which describes any relevant differences."  We explained that we are currently in the process of collecting the relevant hard drives and will be asking Lighthouse to perform the requested comparison.  You also asked us to "[p]rovide all of the Adobe Premier Pro project files (*..prproj) associated with the Project and contained on any of the drives" and "[p]rovide all of the Adobe Premier Pro Media Cache Databases (*.db) associated with the Project and contained on any of the drives."  We explained that we have not yet determined how to export these files and need to understand they contain before deciding whether their production is appropriate under Rule 26.  You indicated that the files did not need to be created, but should exist already.  We agreed to look for them and provide you with an answer as soon as practicable.  Finally, contrary to your email, we did not agree to "Image the Mac hard drive which was originally used to transfer and edit metadata for the project"—in fact we didn't discuss this Mac computer at all.  As Mr. Callaghan testified, he did not store files on this computer, but used it to transfer files to external drives where the files were thereafter held in storage.  We don't understand why you have asked for this, and imaging

Anchorage    New York    Seattle
Bellevue    Portland    Shanghai
Los Angeles    San Francisco    Washington, D.C.

www.dwt.    **Exhibit G**
77

April 3, 2026
Page 2

an entire computer without any reason to believe it contains relevant material seems out of proportion to the needs of the case. If you would like to explain to us the reasoning behind your request, we are happy to discuss further.

We next discussed the Channel 5 Defendants' Responses and Objections ("R&O") to Plaintiff's Requests for Production. Notably, we served the R&O to the RFPs on June 9, 2025. It was not until March 25, 2026, ten months later, that you sent your email outlining your disagreement with the Channel 5 Defendants' parameters for production. We have produced to you every recording made within 1000 feet of your client's home or business office, as well as documents evidencing the Channel 5 Defendants' presence near your client's home or business. We searched diligently for and were not able to find a single recording made of your client or any evidence (direct or indirect) that any of his communications were ever intercepted or recorded. In short, there is no evidence to support your Wiretap Act claims. The additional documents you have demanded are not reasonably calculated to lead to the discovery of relevant evidence, but instead ask for increasingly irrelevant documents.

That being said, in the interest of moving this case along, we have agreed to produce the following categories of documents, if any exist:

- Published iterations of the film (RFP No. 1);
- Documents evidencing the purpose of the Channel 5 Defendants' physical presence at Plaintiff's residence and/or business (Nos. 7-8);
- Documents evidencing the purpose of the Channel 5 Defendants' purchase, possession, and/or use of a ghillie suit within 1000 feet of Plaintiff's residence (note we do not believe any such documents exist) (No. 9);
- Documents evidencing the Channel 5 Defendants' attempts to locate Plaintiff (No. 11);
- Documents relating to the collection of any recordings of Plaintiff's residence and/or business (No. 19).

I told you that we would not produce any additional documents in response to RFP No. 16, which asks for documents regarding the Channel 5 Defendants' intent to use recordings of Plaintiff's residence and/or business. These recordings are not actionable under the Wiretap Act, thus the Channel 5 Defendants' intent to use them is irrelevant. To the extent any documents exist regarding the Channel 5 Defendants' intent to use any of Plaintiff's intercepted or surreptitiously recorded communications, we will of course produce those, but we have no reason to believe any such documents exist. We also will not produce documents containing every mention of Plaintiff or documents discussing the litigation—except insofar as these documents are responsive to other requests we have agreed to—as these demands are not proportional to the needs of the case and constitute little more than an end-run around the discovery stay for Plaintiff's state law claims.

4925-5972-7773v.1 0123725-000001

**Exhibit G**

78

April 3, 2026
Page 3


Regarding your demand for video files C0040 through C0046, as we have repeatedly explained, these do not include or evidence any recordings of Plaintiff and were not recorded within 1000 feet of his home or office.  To the extent any of these videos evidence the purpose of the Channel 5 Defendants' presence near Plaintiff's home, or are otherwise responsive to any of the other requests we have agreed to respond to, we will produce them.

This letter is sent without waiver of my clients' rights, defenses, privileges, remedies, or claims, all of which are expressly reserved.


Sincerely


Abigail B. Everdell
Davis Wright Tremaine LLP


CC:    Jonathan Segal (jonathansegal@dwt.com)
       Sam Lachman (samlachman@dwt.com)


4925-5972-7773v.1 0123725-000001

**Exhibit G**
79

# Exhibit H

**Dennis Canty**

| | |
|---|---|
| **From:** | Everdell, Abigail <AbigailEverdell@dwt.com> |
| **Sent:** | Tuesday, April 28, 2026 7:57 PM |
| **To:** | Meghan Murphey; Lachman, Sam; Segal, Jonathan |
| **Cc:** | Dennis Canty; Matt Murphey; Olivia Andonian |
| **Subject:** | RE: Continuance of the Discovery Cut-Off |

Meghan,

We will not agree to a continuance of the discovery deadline.  Our most recent production was in response to concerns you raised with our written discovery responses nearly ten months after we served them, when you could have raised these concerns at any time prior.  Your delay is not grounds to extend the discovery deadline, particularly when you already have every document that could conceivably be relevant to your baseless federal claims.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Meghan Murphey <meghan@themurpheylawyers.com>
**Sent:** Tuesday, April 28, 2026 1:09 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>
**Cc:** Dennis Canty <Dennis@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Olivia Andonian <olivia@themurpheylawyers.com>
**Subject:** Continuance of the Discovery Cut-Off

**[EXTERNAL]**

Counsel:

Given the ongoing discovery dispute and our need to review new documents just produced yesterday, we intend to move the court to continue the discovery cut-off date by approximately thirty days, to June 1 (May 30 is a Saturday).  Please advise as to whether your clients will stipulate to such request. Thank you.

Meghan

**Meghan C. Murphey**
120 Vantis Dr. Suite 300
Aliso Viejo, California 92656
Tel: (949) 464-4540

27307 State Hwy. 189, Suite 206

Exhibit H
81

PO Box 4204
Blue Jay, California 92317
Tel: (909) 657-9366

www.themurpheylawyers.com

**Exhibit H**