JONATHAN L. SEGAL (State Bar No. 264238)
jonathansegal@dwt.com
SAMANTHA LACHMAN (State Bar No. 331969)
samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California  90071-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

ABIGAIL EVERDELL (*Pro hac vice*)
abigaileverdell@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone:  (212) 489-8230
Fax:  (212) 379-5244

Attorneys for Defendants
ANDREW CALLAGHAN, CHANNEL 5 LLC,
EVAN GILBERT-KATZ, AND NICOLAS
MOSHER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOINER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW CALLAGHAN, an Individual; CHANNEL 5 LLC, a Washington Limited Liability Company; EVAN GILBERT-KATZ, an Individual; NICOLAS MOSHER, an Individual; KELLY SCOTT JOHNSON, an Individual; and DOES 1 through 200, Inclusive,<br><br>Defendant. | Case No. 8:24-cv-01160-CBM-KS<br><br>**DECLARATION OF ABIGAIL EVERDELL IN OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION**<br><br>Action Filed:  May 30, 2024 |

DECLARATION OF ABIGAIL EVERDELL

I, Abigail Everdell, declare and state as follows:

1. I am an attorney admitted to practice in the state of New York and the United States District Court for the Southern District of New York (among other federal courts), and have been admitted to this Court *pro hac vice*. I am counsel at the law firm of Davis Wright Tremaine LLP ("DWT"), and I am one of the attorneys representing defendants Andrew Callaghan, Channel 5 LLC ("Channel 5"), Evan Gilbert-Katz, and Nicolas Mosher (collectively "C5 Defendants") in this matter. The matters stated below are true of my own personal knowledge except those matters stated on information and belief, which I am informed and believe to be true.

2. Plaintiff filed this action on May 30, 2024. Plaintiff's counsel began asking for a Rule 26(f) conference on June 18, 2024, before the Court had set an initial conference and before I had properly conferred with all the C5 Defendants. I informed Plaintiff's counsel that the C5 Defendants would be making a motion to dismiss and to strike, and given that and the Court's not having scheduled an initial conference, a Rule 26(f) conference would be premature.

3. On August 2, 2024 the C5 Defendants filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) and Special Motion to Strike the state law claims asserted therein. *See* Dkt. Nos. 16, 19.

4. On February 20, 2025, the Court issued orders denying the C5 Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) and Special Motion to Strike the state law claims asserted by Plaintiff William Joiner ("Plaintiff"). *See* Dkt. Nos. 28, 29, 31. The C5 Defendants filed an interlocutory appeal of the Court's order denying their Motion to Strike on February 26, 2025. Dkt. No. 30.

5. The parties promptly conferred regarding these orders, and held a Rule 26(f) conference on March 7, 2025. *See* Ex. B to Plaintiff's Application.

1

DECLARATION OF ABIGAIL EVERDELL

6.    The parties thereafter stipulated that discovery and other proceedings on Plaintiff's state law claims would be stayed pending the result of the C5 Defendants' appeal.  The Court so-ordered this stipulation.  *See* Dkt. No. 36.

7.    Discovery has proceeded on Plaintiff's two federal claims under the Wiretap Act and Electronic Communications Privacy Act. 18 U.S.C. §§ 2510, 2511, 2520(a) (the "Federal Wiretap Claims").  Both claims are based on the allegation that the C5 Defendants "surreptitious[ly] record[ed]" Plaintiff, his family members, and/or his employee.  Dkt. No. 34 ¶¶ 110, 115.

8.    The C5 Defendants served their First Set of Interrogatories on Plaintiff on April 14, 2025.  Plaintiff served his Verified Responses and Objections to the C5 Defendants' First Set of Interrogatories on May 21, 2025.  A true and correct copy of these Responses is attached as **Exhibit 1**.

9.    The C5 Defendants served their Requests for Production on Plaintiff on April 14, 2025.  Plaintiff served his Responses and Objections to the C5 Defendants' First Set of Requests for Production on May 21, 2025.  A true and correct copy of these Responses is attached as **Exhibit 2**.

10.    Plaintiff has not produced a single document in response to the C5 Defendants' Requests for Production.

11.    Plaintiff served his First Set of Requests for Production on April 30, 2025.  The C5 Defendants served their Responses & Objections to Plaintiff's Requests for Production on June 9, 2025.  A true and correct copy of Channel 5 LL's Responses is attached as **Exhibit 3**.

12.    I am informed and believe based on discussions with my clients and Channel 5's sworn testimony that in 2023, before this litigation commenced, all footage related to the documentary film at issue in this action (the "Documentary") had been placed and stored on an OWC ThunderBay solid-state hard drive "rack" (the "OWC Server") at Channel 5's offices.  At the outset of discovery, we commissioned a forensic image of the OWC Server.  We diligently searched the

2

DECLARATION OF ABIGAIL EVERDELL

OWC Server for recordings of Plaintiff, his family members, or any of his employees. We found none.

13. For avoidance of doubt, we agreed to produce all footage we could identify as having been recorded within 1000 feet of Plaintiff's home or business, amounting to over 300 recordings. We made our first production of the vast majority of this footage on October 21, 2025 (the "First Production"). None of this footage supports any theory that the C5 Defendants ever trespassed on Plaintiff's property. We found no evidence to support that Plaintiff ever was or even could have been wiretapped from where the C5 Defendants filmed. None of this footage captures Plaintiff, nor does any of it support an inference that he was ever recorded or that any of his communications were ever intercepted.

14. After serving the First Production, I initiated a meet and confer with Plaintiff's counsel, which occurred on December 5, 2025. During that discussion, the I asked Plaintiff's counsel to dismiss the Federal Claims as we had found no evidence of any recording of Plaintiff, and Plaintiff had produced no evidence that any such recording ever occurred. Plaintiff's counsel told us that they had not yet begun reviewing the contents of the October 21, 2025 First Production and estimated that it would take until January 2026 to do so. I followed up multiple times to schedule a conference for January. Finally, on January 6, 2025, Plaintiff's counsel responded that after their review of the footage, they had determined that they needed to depose the person most knowledgeable at Channel 5 regarding the filming, storage, maintenance, copying and production of the videos. A true and correct copy of this correspondence is attached as **Exhibit 4**. I followed-up repeatedly to get this deposition scheduled promptly.

15. The C5 Defendants made their second production of documents on February 9, 2026 (the "Second Production"). That production included text messages and other communications evidencing the C5 Defendants' presence within 1000 feet of Plaintiff's home and office. The production contained no

3

DECLARATION OF ABIGAIL EVERDELL

evidence that the C5 Defendants wiretapped Plaintiff or eavesdropped on his confidential communications.

16. Counsel for Plaintiff took the deposition of defendant Channel 5's 30(b)(6) designee, defendant Andrew Callaghan, on February 12, 2026. During the deposition, Callaghan testified that while footage for the Documentary had been transferred to smaller portable hard drives when first recorded, the contents of all of these drives had been transferred wholesale to the OWC Server in 2023, without exception. A true and correct copy of an excerpt from the transcript for that deposition is attached as **Exhibit 5**.

17. Following Mr. Callaghan's deposition, at which Plaintiff's counsel raised questions for the first time about apparent gaps in the First Production, we investigated, determined that some footage files had been incorrectly processed, making them appear empty, reprocessed the documents Plaintiffs had flagged, and the C5 Defendants made their third production of documents on March 9, 2026 (the "Third Production"). The footage produced with the Third Production was either duplicative of footage already produced, or showed the same events. Like the First Production, the Third Production showed no evidence that the C5 Defendants ever wiretapped Plaintiff or eavesdropped on his confidential communications. In a cover letter to the production, I again requested a meet and confer on the voluntary dismissal of the Federal Wiretap Claims. A true and correct copy of this letter is attached as **Exhibit 6**.

18. The parties' counsel continued to exchange correspondence regarding the Federal Claims and our document collection and review on March 25, 2026. A true and correct copy of this correspondence is attached as **Exhibit 7**.

19. On March 25, 2026, counsel for Plaintiff sent correspondence raising, for the first time, purported deficiencies in the C5 Defendants' June 9, 2025 Responses and Objections to Plaintiff's First Set of Requests for Production. This was the first deficiency correspondence Plaintiff sent during the course of

DECLARATION OF ABIGAIL EVERDELL

discovery.  The parties conducted a meet and confer call on April 3, 2026, at which we agreed to produce additional documents and take additional collection measures.  A true and correct copy of my April 3, 2026 letter memorializing our discussion is attached as **Exhibit 8**.

20.    From April 13, 2026 through April 23, 2026, I exchanged further correspondence with Plaintiff's counsel on their continuing discovery concerns.  I repeatedly asked for clarity on the nature of these concerns, and the legal basis for Plaintiff's ongoing demands.  On Plaintiff's counsel's request, we also investigated the Adobe Premiere Pro project files and media cache documents we had collected.  On an initial review, we identified at least 1500 of these files.  I investigated how to review them, and determined that it would require an onerous and detailed file-by-file review through Adobe Premiere Pro itself, making production extraordinarily onerous.  Adobe Premiere Pro allows a user to edit footage files together with other elements to create a final audiovisual product.  Project files created by this program record information about what raw files were used in what order and manner—but do *not* include the audiovisual files themselves.  I also found some files included editorial comments, making review necessary prior to production.  I did not, however, see any basis to consider any of these files relevant, as they did not include any raw footage.  I explained this in correspondence to Plaintiff's counsel, and offered to confer on a more targeted review.  Plaintiff's counsel never offered a time to confer.  A true and correct copy of this correspondence is attached as **Exhibit 9**.

21.    On April 23, 2026, counsel for Plaintiff emailed the chambers of the Magistrate Judge in this matter, requesting a telephonic conference to discuss the parties' purported discovery disputes.  A true and correct copy of this correspondence and Plaintiff's statement requesting the discovery conference, with my edits in track changes, is attached as **Exhibit 10**.  The Magistrate Judge's chambers did not respond to the request for a telephonic conference.

5

DECLARATION OF ABIGAIL EVERDELL

22.     The C5 Defendants made their fourth production of documents on April 25, 2026 (the "Fourth Production") pursuant to our agreement in response to Plaintiff's demand of March 25, 2026.  The production consisted of approximately 321 text message and email files as well as 46 additional video and audio files including discussions or other evidence of attempts to find Plaintiff or the purpose of the C5 Defendants' presence near his home or business—despite these documents having no relevance to the Federal Wiretap Claims as they neither contained nor in provided any direct or indirect evidence of Plaintiff's communications having been intercepted or recorded.

23.     On April 28, 2026, counsel for Plaintiff emailed that, "Given the ongoing discovery dispute and our need to review new documents just produced yesterday, we intend to move the court to continue the discovery cut-off date by approximately thirty days, to June 1."  I responded, "We will not agree to a continuance of the discovery deadline.  Our most recent production was in response to concerns you raised with our written discovery responses nearly ten months after we served them, when you could have raised these concerns at any time prior.  Your delay is not grounds to extend the discovery deadline, particularly when you already have every document that could conceivably be relevant to your baseless federal claims."  A true and correct copy of this correspondence is attached as **Exhibit 11**.

24.     Counsel for Plaintiff did not inform me that they would be filing an *ex parte* application for an extension of the discovery period by 60 days.  Nor did counsel for Plaintiff inform me of the "substance of the proposed ex parte application," as is required by L.R. 7-19.1.

25.     The Channel 5 Defendants made their fourth production of documents on April 30, 2026 (the "Fifth Production").  The Fifth Production included published versions of the Documentary.  Along with the Fifth Production, my colleague Sam Lachman sent a letter from Lighthouse, the C5 Defendants' third-party eDiscovery vendor.  The letter confirmed that Lighthouse had analyzed the

6

DECLARATION OF ABIGAIL EVERDELL

key drive where the footage of Plaintiff's home had been originally stored. The letter further confirmed that all these files had—as Channel 5's designee had previously testified—been transferred to the OWC Server that we had collected and reviewed. A true and correct copy of this letter is attached as **Exhibit 12**.

I declare under penalty of perjury under the laws of the United States of America and the State of New York that the foregoing is true and correct, and that this declaration was executed this 30th day of April 2026, at New York, New York.

/s/ *Abigail Everdell*
Abigail Everdell

DECLARATION OF ABIGAIL EVERDELL

# EXHIBIT 1

MURPHEY & MURPHEY
A PROFESSIONAL CORPORATION
Meghan C. Murphey (SBN 259487)
meghan@themurpheylawyers.com
Matthew D. Murphey (SBN 194111)
matt@themurpheylawyers.com
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656
Tel:  949.464.4540      Fax:  562.375.6674

Attorneys for Plaintiff,
William Joiner

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOINER, | Case No. 8:24-CV-01160-CMB-KS |
| Plaintiff, | |
| v. | |
| ANDREW CALLAGHAN, an individual, CHANNEL 5 LLC, a Washington limited liability company; EVAN GILBERT-KATZ, an individual; NICOLAS MOSHER, an individual; KELLY SCOTT JOHNSON, an individual; and DOES 1 through 200, inclusive, | **PLAINTIFF'S RESPONSE TO CHANNEL 5 LLC'S FIRST SET OF INTERROGATORIES** |
| Defendants. | |

PROPOUNDING PARTY:      Channel 5 LLC

RESPONDING PARTY:      William Joiner

SET:      One

Plaintiff, William Joiner ("Plaintiff" or "Responding Party"), responds to Channel 5 LLC's First Set of Special Interrogatories, as follows:

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

## **PRELIMINARY STATEMENT**

These responses are given solely for the purpose of, and use in, the above-captioned proceeding.  Each response is subject to all objections as to competence, materiality, relevance, propriety, admissibility, and all other appropriate objections. In addition, to those expressly set forth hereinafter, on such grounds as would permit or require exclusion of any of the following responses if made by a witness present and testifying in court, all of which objections are reserved, not waived, and may be interposed at any other time in this action.

Except for further responses, no implied responses are intended herein.  Further, the fact that a response or responses is or are given is not intended as either an admission by the Plaintiff that the purported fact to which Plaintiff responds actually exists or is true, or that the Plaintiff's response constitutes admissible evidence.  No partial response herein is intended as a waiver of any applicable objections to the unanswered part.  Such responses as are given are provided in the spirit of discovery.

Plaintiff believes the following responses are accurate at the present time, and all of the responses contained herein are based on such information and documents that are known to Plaintiff and disclose only those contentions that presently occur to Plaintiff.

To the extent that the Plaintiff responds, he does so solely on his own behalf and based on the documents and information within her possession, custody, or control. These responses are, therefore, given without prejudice to the Plaintiff's right to produce evidence of any subsequently discovered fact or facts that the Plaintiff may later recall.  Accordingly, the Plaintiff reserves the right to change any and all answers herein as additional facts are ascertained, analyses are made, legal research is completed, and contentions are made.

The Plaintiff reserves the right to introduce any and all documents produced by the parties to this action or by any third party that support, or tend to support, the Plaintiff's contentions in this case.  To the extent the Plaintiff identifies a certain

document or describes facts contained within any document or otherwise, the Plaintiff does so without prejudice to establish at a later date any additional facts that may be contained within or discovered as a result of subsequent or additional review of such document or as a result of any additional investigation and discovery. Particularly, Propounding Party has yet to produce any documents responsive to previously served Requests for Production.

The foregoing Preliminary Statement is incorporated into each of the following responses.

## GENERAL OBJECTIONS

A.     Plaintiff objects to each and every Interrogatory to the extent it seeks information protected by any privilege or right to confidentiality, including, but not limited to, the attorney-client privilege, the attorney work-product doctrine, the common interest doctrine, and any applicable rights of privacy.  If any information within the scope of any privilege or confidentiality is inadvertently disclosed or produced in these responses or in connection with these responses, Plaintiff has not done so intentionally and he (i) reserves the right to assert those privileges or confidentiality at any time in this proceeding, and (ii) demands the return of all privileged information, including copies or abstracts of that information.

B.     Plaintiff objects to each and every Interrogatory to the extent that the information or document it seeks is equally available to the Defendant or is already in the Defendant's possession.  Facts, documents and other information which Plaintiff asserts are equally available and/or already in Defendant's possession, include, without limitation: all facts, documents and information filed in or otherwise produced by Defendants in this action; and all facts, documents and information available from the California Secretary of State.

C.     Plaintiff objects to each and every Interrogatory to the extent that it is vague, ambiguous, and/or misleading.

D.  Plaintiff objects to each and every Interrogatory to the extent it is unduly burdensome and excessive.

E.  Plaintiff objects to the Interrogatories to the extent that they seek information which is solely in the possession of Defendants.

**RESPONSES TO REQUESTS FOR SPECIAL INTERROGATORIES**

Without waiving said objections, each and every one of which is fully incorporated into each response as if set forth herein, Plaintiff responds as follows:

**SPECIAL INTERROGATORY NO. 1:**

Identify all knowledge and/or evidence in YOUR possession supporting your allegations that the C5 DEFENDANTS violated the Wiretap Act as alleged the COMPLAINT, including the date you learned of each element of such knowledge or Evidence.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Plaintiff objects to this Interrogatory as compound and/or conjunctive, in that it requests identification of knowledge and/or evidence (which presumably could be personal knowledge, documents, witnesses, etc.), each of which should be a separate interrogatory, and also separately and improperly seeks the date Plaintiff "learned of *each element* of such knowledge *or* evidence." Plaintiff further objects that the Interrogatory is vague and ambiguous as to the term "knowledge and/or evidence," in that it is unclear whether Defendant seeks only Plaintiff's personal knowledge and actual documents in Plaintiff's possession, whether the Interrogatory is intended to cover third parties' knowledge or Plaintiff's knowledge of evidence in the possession of third parties, and/or whether the Interrogatory is intended to include the identification of witnesses as "evidence," all of which render the Interrogatory overbroad, unduly burdensome, and oppressive. Plaintiff objects on the grounds that this Interrogatory seeks the identification of "all" knowledge and/or evidence, which is overbroad and seeks information regardless of materiality or relevance, and to respond thereto would be unduly burdensome, expensive and oppressive. Plaintiff

further objects to the extent the Interrogatory seeks information subject to attorney-client privilege, work product doctrine, settlement communications privilege, confidentiality, any other applicable privilege, or any applicable state, federal, constitutional or other right of privacy. Plaintiff objects to the Interrogatory to the extent that the information sought is equally or more readily available to the Defendant or is solely in the Defendants' possession.

Subject to and without waiving the foregoing objections, as interpreting the terms "knowledge and/or evidence" to include only Plaintiff's personal knowledge and actual documents in Plaintiff's possession, Plaintiff responds as follows:

Plaintiff is in possession of video and footage related to "Dear Kelly," including at least one version of the purported film "Dear Kelly" and the trailer for the same, which were lodged by Defendants in this action and published on the Internet. Based on the footage published and lodged to date, Plaintiff is aware that on at least one occasion, Defendants went to Plaintiff's residence in an attempt to locate, film, and/or record Plaintiff. Defendants trespassed, after dark, into the private gated community in which Plaintiff resides and onto property owned by Plaintiff, while wearing ghillie suits to avoid detection. Plaintiff is further aware that Defendants had audio and video recording equipment with them at the time of the trespassing(s). Plaintiff is further aware that at that time, Defendants did in fact make audio and video recordings of Plaintiff's residence and the curtilage thereof, in which Plaintiff and his family members were present, and the surrounding property. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly," including publishing certain footage of Plaintiff's residence. Plaintiff is further aware that other individuals, whose names are unknown, also trespassed on Plaintiff's property and may have made additional audio and/or video recordings.

Based on the footage published and lodged to date, Plaintiff is further aware that on at least one occasion, Defendants went to Plaintiff's office in an attempt to locate, film and/or record Plaintiff. Plaintiff is further aware that on at least one occasion,

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

Defendants brought audio and video recording equipment to and inside Plaintiff's office building and filmed both the exterior of the office building and the interior of the office suite, where Plaintiff's employee's work. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly."

Plaintiff is aware that additional video and audio recordings or footage relating to "Dear Kelly" exist that Defendants have yet to produce, including all video and/or data filmed, produced and/or published by Defendants, all video and audio recordings and footage taken by Defendants, and all video and audio data in Defendants' possession, custody or control as it relates to Plaintiff and/or the "Dear Kelly" film, including its making, promotion, display, and dissemination.

**SPECIAL INTERROGATORY NO. 2:**

Identify all knowledge and/or evidence in YOUR possession supporting your allegations that the C5 DEFENDANTS violated the Electronic Communications Privacy Act as alleged the COMPLAINT, including the date you learned of each element of such knowledge or evidence.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

Plaintiff objects to this Interrogatory as compound and/or conjunctive, in that it requests identification of knowledge and/or evidence (which presumably could be personal knowledge, documents, witnesses, etc.), each of which should be a separate interrogatory, and also separately and improperly seeks the date Plaintiff "learned of *each element* of such knowledge *or* evidence." Plaintiff further objects that the Interrogatory is vague and ambiguous as to the term "knowledge and/or evidence," in that it is unclear whether Defendant seeks only Plaintiff's personal knowledge and actual documents in Plaintiff's possession, whether the Interrogatory is intended to cover third parties' knowledge or Plaintiff's knowledge of evidence in the possession of third parties, and/or whether the Interrogatory is intended to include the identification of witnesses as "evidence," all of which render the Interrogatory

overbroad, unduly burdensome, and oppressive. Plaintiff objects on the grounds that this Interrogatory seeks the identification of "all" knowledge and/or evidence, which is overbroad and seeks information regardless of materiality or relevance, and to respond thereto would be unduly burdensome, expensive and oppressive. Plaintiff further objects to the extent the Interrogatory seeks information subject to attorney-client privilege, work product doctrine, settlement communications privilege, confidentiality, any other applicable privilege, or any applicable state, federal, constitutional or other right of privacy. Plaintiff objects to the Interrogatory to the extent that the information sought is equally or more readily available to the Defendant or is solely in the Defendants' possession.

Subject to and without waiving the foregoing objections, as interpreting the terms "knowledge and/or evidence" to include only Plaintiff's personal knowledge and actual documents in Plaintiff's possession, Plaintiff responds as follows:

Plaintiff is in possession of video and footage related to "Dear Kelly," including at least one version of the purported film "Dear Kelly" and the trailer for the same, which were lodged by Defendants in this action and published on the Internet. Based on the footage published and lodged to date, Plaintiff is aware that on at least one occasion, Defendants went to Plaintiff's residence in an attempt to locate, film, and/or record Plaintiff. Defendants trespassed, after dark, into the private gated community in which Plaintiff resides and onto property owned by Plaintiff, while wearing ghillie suits to avoid detection. Plaintiff is further aware that Defendants had audio and video recording equipment with them at the time of the trespassing(s). Plaintiff is further aware that at that time, Defendants did in fact make audio and video recordings of Plaintiff's residence and the curtilage thereof, in which Plaintiff and his family members were present, and the surrounding property. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly," including publishing certain footage of Plaintiff's residence. Plaintiff is further aware that other individuals, whose names are unknown, also trespassed on Plaintiff's

property and may have made additional audio and/or video recordings.

Based on the footage published and lodged to date, Plaintiff is further aware that on at least one occasion, Defendants went to Plaintiff's office in an attempt to locate, film and/or record Plaintiff. Plaintiff is further aware that on at least one occasion, Defendants brought audio and video recording equipment to and inside Plaintiff's office building and filmed both the exterior of the office building and the interior of the office suite, where Plaintiff's employee's work. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly."

Plaintiff is aware that additional video and audio recordings or footage relating to "Dear Kelly" exist that Defendants have yet to produce, including all video and/or data filmed, produced and/or published by Defendants, all video and audio recordings and footage taken by Defendants, and all video and audio data in Defendants' possession, custody or control as it relates to Plaintiff and/or the "Dear Kelly" film, including its making, promotion, display, and dissemination.

## SPECIAL INTERROGATORY NO. 3:

Describe in detail all facts supporting YOUR claim that any C5 DEFENDANT created any surreptitious video or audio recording of YOU.

## RESPONSE TO SPECIAL INTERROGATORY NO. 3:

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects on the grounds that this Interrogatory requests Plaintiff describe in detail "all facts," which is overbroad and seeks information regardless of materiality or relevance, and to respond thereto would be unduly burdensome, expensive and oppressive. Plaintiff objects to the Interrogatory to the extent that the information sought is equally or more readily available to the Defendant or is solely in the Defendants' possession. Plaintiff objects that this Interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, including the video

and audio footage lodged by Defendants in this action, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff is in possession of video and footage related to "Dear Kelly," including at least one version of the purported film "Dear Kelly" and the trailer for the same, which were lodged by Defendants in this action and published on the Internet. Based on the footage published and lodged to date, Plaintiff is aware that on at least one occasion, Defendants went to Plaintiff's residence in an attempt to locate, film, and/or record Plaintiff. Defendants trespassed, after dark, into the private gated community in which Plaintiff resides and onto property owned by Plaintiff, while wearing ghillie suits to avoid detection. Plaintiff is further aware that Defendants had audio and video recording equipment with them at the time of the trespassing(s). Plaintiff is further aware that at that time, Defendants did in fact make audio and video recordings of Plaintiff's residence and the curtilage thereof, in which Plaintiff and his family members were present, and the surrounding property. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly," including publishing certain footage of Plaintiff's residence. Plaintiff is further aware that other individuals, whose names are unknown, also trespassed on Plaintiff's property and may have made additional audio and/or video recordings.

Based on the footage published and lodged to date, Plaintiff is further aware that on at least one occasion, Defendants went to Plaintiff's office in an attempt to locate, film and/or record Plaintiff. Plaintiff is further aware that on at least one occasion, Defendants brought audio and video recording equipment to and inside Plaintiff's office building and filmed both the exterior of the office building and the interior of the office suite, where Plaintiff's employee's work. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear

PLAINTIFF'S RESPONSES TO INTERROGATORIES. SET ONE

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

Kelly."

Plaintiff is aware that additional video and audio recordings or footage relating to "Dear Kelly" exist that Defendants have yet to produce, including all video and/or data filmed, produced and/or published by Defendants, all video and audio recordings and footage taken by Defendants, and all video and audio data in Defendants' possession, custody or control as it relates to Plaintiff and/or the "Dear Kelly" film, including its making, promotion, display, and dissemination.

**SPECIAL INTERROGATORY NO. 4:**

Describe in detail all facts supporting YOUR claim that any C5 DEFENDANT created any surreptitious video or audio recording of any of YOUR family members.

**RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

Plaintiff objects on the grounds that this Interrogatory requests Plaintiff describe in detail "all facts," which is overbroad and seeks information regardless of materiality or relevance, and to respond thereto would be unduly burdensome, expensive and oppressive. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession. Plaintiff objects that this Interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, including the video and audio footage lodged by Defendants in this action, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff is in possession of video and footage related to "Dear Kelly," including at least one version of the purported film "Dear Kelly" and the trailer for the same, which were lodged by Defendants in this action and published on the Internet. Based on the footage published and lodged to date, Plaintiff is aware that on at least one occasion, Defendants went to Plaintiff's residence in an attempt to locate, film, and/or

record Plaintiff. Defendants trespassed, after dark, into the private gated community in which Plaintiff resides and onto property owned by Plaintiff, while wearing ghillie suits to avoid detection. Plaintiff is further aware that Defendants had audio and video recording equipment with them at the time of the trespassing(s). Plaintiff is further aware that at that time, Defendants did in fact make audio and video recordings of Plaintiff's residence and the curtilage thereof, in which Plaintiff and his family members were present, and the surrounding property. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly," including publishing certain footage of Plaintiff's residence. Plaintiff is further aware that other individuals, whose names are unknown, also trespassed on Plaintiff's property and may have made additional audio and/or video recordings.

Based on the footage published and lodged to date, Plaintiff is further aware that on at least one occasion, Defendants went to Plaintiff's office in an attempt to locate, film and/or record Plaintiff. Plaintiff is further aware that on at least one occasion, Defendants brought audio and video recording equipment to and inside Plaintiff's office building and filmed both the exterior of the office building and the interior of the office suite, where Plaintiff's employee's work. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly."

Plaintiff is aware that additional video and audio recordings or footage relating to "Dear Kelly" exist that Defendants have yet to produce, including all video and/or data filmed, produced and/or published by Defendants, all video and audio recordings and footage taken by Defendants, and all video and audio data in Defendants' possession, custody or control as it relates to Plaintiff and/or the "Dear Kelly" film, including its making, promotion, display, and dissemination.

**SPECIAL INTERROGATORY NO. 5:**

Describe in detail all facts supporting YOUR claim that any C5 DEFENDANT created any surreptitious video or audio recording of any employee of YOURS.

**RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects on the grounds that this Interrogatory requests Plaintiff describe in detail "all facts," which is overbroad and seeks information regardless of materiality or relevance, and to respond thereto would be unduly burdensome, expensive and oppressive. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in Defendants' possession. Plaintiff objects that this Interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, including the video and audio footage lodged by Defendants in this action, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff is in possession of video and footage related to "Dear Kelly," including at least one version of the purported film "Dear Kelly" and the trailer for the same, which were lodged by Defendants in this action and published on the Internet. Based on the footage published and lodged to date, Plaintiff is aware that on at least one occasion, Defendants went to Plaintiff's residence in an attempt to locate, film, and/or record Plaintiff. Defendants trespassed, after dark, into the private gated community in which Plaintiff resides and onto property owned by Plaintiff, while wearing ghillie suits to avoid detection. Plaintiff is further aware that Defendants had audio and video recording equipment with them at the time of the trespassing(s). Plaintiff is further aware that at that time, Defendants did in fact make audio and video recordings of Plaintiff's residence and the curtilage thereof, in which Plaintiff and his family members were present, and the surrounding property. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear

- 12 -
PLAINTIFF'S RESPONSES TO INTERROGATORIES. SET ONE

Kelly," including publishing certain footage of Plaintiff's residence. Plaintiff is further aware that other individuals, whose names are unknown, also trespassed on Plaintiff's property and may have made additional audio and/or video recordings.

Based on the footage published and lodged to date, Plaintiff is further aware that on at least one occasion, Defendants went to Plaintiff's office in an attempt to locate, film and/or record Plaintiff. Plaintiff is further aware that on at least one occasion, Defendants brought audio and video recording equipment to and inside Plaintiff's office building and filmed both the exterior of the office building and the interior of the office suite, where Plaintiff's employee's work. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly."

Plaintiff is aware that additional video and audio recordings or footage relating to "Dear Kelly" exist that Defendants have yet to produce, including all video and/or data filmed, produced and/or published by Defendants, all video and audio recordings and footage taken by Defendants, and all video and audio data in Defendants' possession, custody or control as it relates to Plaintiff and/or the "Dear Kelly" film, including its making, promotion, display, and dissemination.

**SPECIAL INTERROGATORY NO. 6:**

Describe in detail all facts supporting YOUR claim that any C5 DEFENDANT intercepted any of YOUR communications.

**RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects on the grounds that this Interrogatory requests Plaintiff describe in detail "all facts," which is overbroad and seeks information regardless of materiality or relevance, and to respond thereto would be unduly burdensome, expensive and oppressive. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession. Plaintiff objects that this Interrogatory would necessitate the preparation

or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, including the video and audio footage lodged by Defendants in this action, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff is in possession of video and footage related to "Dear Kelly," including at least one version of the purported film "Dear Kelly" and the trailer for the same, which were lodged by Defendants in this action and published on the Internet. Based on the footage published and lodged to date, Plaintiff is aware that on at least one occasion, Defendants went to Plaintiff's residence in an attempt to locate, film, and/or record Plaintiff. Defendants trespassed, after dark, into the private gated community in which Plaintiff resides and onto property owned by Plaintiff, while wearing ghillie suits to avoid detection. Plaintiff is further aware that Defendants had audio and video recording equipment with them at the time of the trespassing(s). Plaintiff is further aware that at that time, Defendants did in fact make audio and video recordings of Plaintiff's residence and the curtilage thereof, in which Plaintiff and his family members were present, and the surrounding property. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly," including publishing certain footage of Plaintiff's residence. Plaintiff is further aware that other individuals, whose names are unknown, also trespassed on Plaintiff's property and may have made additional audio and/or video recordings.

Based on the footage published and lodged to date, Plaintiff is further aware that on at least one occasion, Defendants went to Plaintiff's office in an attempt to locate, film and/or record Plaintiff. Plaintiff is further aware that on at least one occasion, Defendants brought audio and video recording equipment to and inside Plaintiff's office building and filmed both the exterior of the office building and the interior of

the office suite, where Plaintiff's employee's work. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly."

Plaintiff is aware that additional video and audio recordings or footage relating to "Dear Kelly" exist that Defendants have yet to produce, including all video and/or data filmed, produced and/or published by Defendants, all video and audio recordings and footage taken by Defendants, and all video and audio data in Defendants' possession, custody or control as it relates to Plaintiff and/or the "Dear Kelly" film, including its making, promotion, display, and dissemination.

**SPECIAL INTERROGATORY NO. 7:**

Describe in detail all facts supporting YOUR claim that any C5 DEFENDANT intercepted any communications of YOUR family members.

**RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects on the grounds that this Interrogatory requests Plaintiff describe in detail "all facts," which is overbroad and seeks information regardless of materiality or relevance, and to respond thereto would be unduly burdensome, expensive and oppressive. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession. Plaintiff objects that this Interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, including the video and audio footage lodged by Defendants in this action, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff is in possession of video and footage related to "Dear Kelly," including

at least one version of the purported film "Dear Kelly" and the trailer for the same, which were lodged by Defendants in this action and published on the Internet. Based on the footage published and lodged to date, Plaintiff is aware that on at least one occasion, Defendants went to Plaintiff's residence in an attempt to locate, film, and/or record Plaintiff. Defendants trespassed, after dark, into the private gated community in which Plaintiff resides and onto property owned by Plaintiff, while wearing ghillie suits to avoid detection. Plaintiff is further aware that Defendants had audio and video recording equipment with them at the time of the trespassing(s). Plaintiff is further aware that at that time, Defendants did in fact make audio and video recordings of Plaintiff's residence and the curtilage thereof, in which Plaintiff and his family members were present, and the surrounding property. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly," including publishing certain footage of Plaintiff's residence. Plaintiff is further aware that other individuals, whose names are unknown, also trespassed on Plaintiff's property and may have made additional audio and/or video recordings.

Based on the footage published and lodged to date, Plaintiff is further aware that on at least one occasion, Defendants went to Plaintiff's office in an attempt to locate, film and/or record Plaintiff. Plaintiff is further aware that on at least one occasion, Defendants brought audio and video recording equipment to and inside Plaintiff's office building and filmed both the exterior of the office building and the interior of the office suite, where Plaintiff's employee's work. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly."

Plaintiff is aware that additional video and audio recordings or footage relating to "Dear Kelly" exist that Defendants have yet to produce, including all video and/or data filmed, produced and/or published by Defendants, all video and audio recordings and footage taken by Defendants, and all video and audio data in Defendants' possession, custody or control as it relates to Plaintiff and/or the "Dear Kelly" film,

PLAINTIFF'S RESPONSES TO INTERROGATORIES. SET ONE

MURPHEY & MURPHEY A PROFESSIONAL CORPORATION

including its making, promotion, display, and dissemination.

**SPECIAL INTERROGATORY NO. 8:**

Describe in detail all facts supporting YOUR claim that any C5 DEFENDANT intercepted any communications of any employee of YOURS.

**RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects on the grounds that this Interrogatory requests Plaintiff describe in detail "all facts," which is overbroad and seeks information regardless of materiality or relevance, and to respond thereto would be unduly burdensome, expensive and oppressive. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession. Plaintiff objects that this Interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, including the video and audio footage lodged by Defendants in this action, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff is in possession of video and footage related to "Dear Kelly," including at least one version of the purported film "Dear Kelly" and the trailer for the same, which were lodged by Defendants in this action and published on the Internet. Based on the footage published and lodged to date, Plaintiff is aware that on at least one occasion, Defendants went to Plaintiff's residence in an attempt to locate, film, and/or record Plaintiff. Defendants trespassed, after dark, into the private gated community in which Plaintiff resides and onto property owned by Plaintiff, while wearing ghillie suits to avoid detection. Plaintiff is further aware that Defendants had audio and video recording equipment with them at the time of the trespassing(s). Plaintiff is further

PLAINTIFF'S RESPONSES TO INTERROGATORIES. SET ONE

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

aware that at that time, Defendants did in fact make audio and video recordings of Plaintiff's residence and the curtilage thereof, in which Plaintiff and his family members were present, and the surrounding property. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly," including publishing certain footage of Plaintiff's residence. Plaintiff is further aware that other individuals, whose names are unknown, also trespassed on Plaintiff's property and may have made additional audio and/or video recordings.

Based on the footage published and lodged to date, Plaintiff is further aware that on at least one occasion, Defendants went to Plaintiff's office in an attempt to locate, film and/or record Plaintiff. Plaintiff is further aware that on at least one occasion, Defendants brought audio and video recording equipment to and inside Plaintiff's office building and filmed both the exterior of the office building and the interior of the office suite, where Plaintiff's employee's work. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly."

Plaintiff is aware that additional video and audio recordings or footage relating to "Dear Kelly" exist that Defendants have yet to produce, including all video and/or data filmed, produced and/or published by Defendants, all video and audio recordings and footage taken by Defendants, and all video and audio data in Defendants' possession, custody or control as it relates to Plaintiff and/or the "Dear Kelly" film, including its making, promotion, display, and dissemination.

**SPECIAL INTERROGATORY NO. 9:**

Identify each portion of the TRAILER, DOCUMENTARY, or any other audio and/or visual material created by any C5 DEFENDANT of which YOU are aware that YOU contend includes recordings of YOU, any member of YOUR family, or any employee of YOURS, specifying the individual you contend was recorded and the nature of the recording, whether audio, visual, or both.

**RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects to this Interrogatory as compound and/or conjunctive, in that it requests identification of "each portion of the TRAILER, DOCUMENTARY, and any other audio and/or visual material created by C5 DEFENDANT of which YOU are aware," each of which should be a separate interrogatory. The Interrogatory is further compound in that it additionally requires both the identification of the individual recorded and the nature of the recording. Plaintiff objects that this Interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, including the video and audio footage lodged by Defendants in this action, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff is in possession of video and footage related to "Dear Kelly," including at least one version of the purported film "Dear Kelly," that was lodged by Defendant in this action and published on the internet. Based on the footage published and lodged to date, Plaintiff is aware that on at least one occasion, Defendants went to Plaintiff's residence in an attempt to locate, film, and/or record Plaintiff. Defendants trespassed, after dark, into the private gated community in which Plaintiff resides and onto property owned by Plaintiff, while wearing ghillie suits to avoid detection. Plaintiff is further aware that Defendants had audio and video recording equipment with them at the time of the trespassing(s). Plaintiff is further aware that at that time Defendants did in fact make audio and video recordings of Plaintiff's residence and the curtilage thereof, in which Plaintiff and his family members were present, and the surrounding

property. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly," including publishing certain footage of Plaintiff's residence. Plaintiff is further aware that other individuals, whose names are unknown, also trespassed on Plaintiff's property and likely have made additional audio and/or video recordings.

Based on the footage published and lodged to date, Plaintiff is further aware that on at least one occasion, Defendants went to Plaintiff's office in an attempt to locate, film and/or record Plaintiff. Plaintiff is further aware that on at least one occasion, Defendants brought audio and video recording equipment to and inside Plaintiff's office building and filmed both the exterior of the office building and the interior of the office suite, where Plaintiff's employees work. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly."

Plaintiff is aware that additional video and audio recordings or footage relating to "Dear Kelly" exists that Defendants have yet to produce, including all video and/or data filmed, produced and/or published by Defendants, all video and audio recordings and footage taken by Defendants, and all video and audio data in Defendants' possession, custody or control as it relates to Joiner and/or the Film, including its making, promotion, display, and dissemination.

**SPECIAL INTERROGATORY NO. 10:**

Identify each portion of the TRAILER, DOCUMENTARY, or any other audio and/or visual material created by any C5 DEFENDANT of which YOU are aware that YOU contend includes any communications of YOURS, any member of YOUR family, or any employee of YOURS, specifying the nature of the communication.

**RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

Plaintiff objects to this Interrogatory as compound and/or conjunctive, in that it requests identification of "each portion of the TRAILER, DOCUMENTARY, and any other audio and/or visual material created by C5 DEFENDANT of which YOU are

aware," each of which should be a separate interrogatory. The Interrogatory is further compound in that it additionally requires the identification of the nature of the recording. Plaintiff objects that this Interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, including the video and audio footage lodged by Defendants in this action, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession. Plaintiff further objects to the extent the Interrogatory seeks confidential information that is irrelevant, inadmissible, as well as any other applicable privilege, or other right of privacy.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff is in possession of video and footage related to "Dear Kelly," including at least one version of the purported film "Dear Kelly," that was lodged by Defendant in this action and published on the internet. Based on the footage published and lodged to date, Plaintiff is aware that on at least one occasion, Defendants went to Plaintiff's residence in an attempt to locate, film, and/or record Plaintiff. Defendants trespassed, after dark, into the private gated community in which Plaintiff resides and onto property owned by Plaintiff, while wearing ghillie suits to avoid detection. Plaintiff is further aware that Defendants had audio and video recording equipment with them at the time of the trespassing(s). Plaintiff is further aware that at that time Defendants did in fact make audio and video recordings of Plaintiff's residence and curtilage thereof, in which Plaintiff and his family members were present, and the surrounding property. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly," including publishing certain footage of Plaintiff's residence. Plaintiff is further aware that other individuals, whose names are

unknown, also trespassed on Plaintiff's property and likely have made additional audio and/or video recordings.

Based on the footage published and lodged to date, Plaintiff is further aware that on at least one occasion, Defendants went to Plaintiff's office in an attempt to locate, film and/or record Plaintiff. Plaintiff is further aware that on at least one occasion, Defendants brought audio and video recording equipment to and inside Plaintiff's office building and filmed both the exterior of the office building and the interior of the office suite, where Plaintiff's employees work. Plaintiff is further aware that Defendants used certain of this footage to make, publicize, and/or market "Dear Kelly."

Plaintiff is aware that additional video and audio recordings or footage relating to "Dear Kelly" exists that Defendants have yet to produce, including all video and/or data filmed, produced and/or published by Defendants, all video and audio recordings and footage taken by Defendants, and all video and audio data in Defendants' possession, custody or control as it relates to Joiner and/or the Film, including its making, promotion, display, and dissemination.

**SPECIAL INTERROGATORY NO. 11:**

Identify the date of each COMMUNICATION that you contend was illegally recorded by any C5 DEFENDANT.

**RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects to this Interrogatory as compound and/or conjunctive in violation of CCP 2030.060(f), in that it requests identification of the date of each communication. Plaintiff objects that this Interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff. Plaintiff objects to the Interrogatory to

the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession. Plaintiff objects to the extent the Interrogatory seeks information that is confidential or subject to any applicable state, federal, constitutional or other right of privacy. Plaintiff also objects to this Interrogatory on the basis that it seeks evidence that is irrelevant and inadmissible.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff, after a reasonable inquiry, does not currently have sufficient information to answer the Interrogatory. Plaintiff is informed and believes that the information, including the audio and video recordings which presumably contain date stamps, are in the possession of Defendants.

**SPECIAL INTERROGATORY NO. 12:**

For each COMMUNICATION identified in Interrogatory No. 11, identify the participants in the COMMUNICATION.

**RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects on the grounds that the Interrogatory is unintelligible, as it incorporates Interrogatory No. 11 which does not identify, nor seek the identification of, any communications. Plaintiff objects to the extent the Interrogatory seeks information that is confidential or subject to any applicable state, federal, constitutional or other right of privacy. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession.

Subject to and without waiving the aforementioned objections, Plaintiff responds that it will supplement its response to this Interrogatory after Defendants' produce the video and audio recordings requested by Plaintiff's First Set of Request for Production of Documents previously served on Defendants.

**SPECIAL INTERROGATORY NO. 13:**

For each COMMUNICATION identified in Interrogatory No. 11, identify the basis for your claim, if any, that the COMMUNICATION was confidential.

**RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

Plaintiff objects on the grounds that the Interrogatory is unintelligible, as it incorporates Interrogatory No. 11 which does not identify, nor seek the identification of, any communications. Plaintiff objects to the extent the Interrogatory seeks information that is confidential or subject to any applicable state, federal, constitutional or other right of privacy. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession. Plaintiff further objects to this Interrogatory on the basis that it seeks information that irrelevant and inadmissible.

Subject to and without waiving the aforementioned objections, Plaintiff responds that it will supplement its response to this Interrogatory after Defendants' produce the video and audio recordings requested by Plaintiff's First Set of Request for Production of Documents previously served on Defendants.

**SPECIAL INTERROGATORY NO. 14:**

State the date of each COMMUNICATION that you contend was illegally intercepted by any C5 DEFENDANT.

**RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects to this Interrogatory as compound and/or conjunctive, in that it requests identification of the date of each communication. Plaintiff objects that this Interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff. Plaintiff objects to the Interrogatory to the extent that the information sought is equally

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

available to the Defendant or is solely in the Defendants' possession. Plaintiff objects to the extent the Interrogatory seeks information that is confidential or subject to any applicable state, federal, constitutional or other right of privacy. Plaintiff objects to the extent the Interrogatory is duplicative of Interrogatory No 11.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff, after a reasonable inquiry, does not currently have sufficient information to answer the Interrogatory. Plaintiff is informed and believes that the information, including the audio and video recordings which presumably contain date stamps, are in the possession of Defendants.

**SPECIAL INTERROGATORY NO. 15:**

For each COMMUNICATION identified in Interrogatory No. 13, identify the participants in the COMMUNICATION.

**RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects on the grounds that the Interrogatory is unintelligible, as it incorporates Interrogatory No. 13, which incorporates Interrogatory No. 11, which does not identify, nor seek the identification of, any communications. Plaintiff objects to the extent the Interrogatory seeks information that is confidential or subject to any applicable state, federal, constitutional or other right of privacy. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession.  Plaintiff further objects to this Interrogatory on the basis that the information sought is irrelevant and inadmissible.

**SPECIAL INTERROGATORY NO. 16:**

For each COMMUNICATION identified in Interrogatory No. 13, identify the basis for your claim, if any, that the COMMUNICATION was confidential.

**RESPONSE TO SPECIAL INTERROGATORY NO. 16:**

Plaintiff incorporates by reference the General Objections and Reservation of

Rights. Plaintiff objects on the grounds that the Interrogatory is unintelligible, as it incorporates Interrogatory No. 13, which incorporates Interrogatory No. 11, which does not identify, nor seek the identification of, any communications, and would otherwise appear to be duplicative of Interrogatory No. 13. Plaintiff objects to the extent the Interrogatory seeks information that is confidential or subject to any applicable state, federal, constitutional or other right of privacy. Plaintiff objects to the Interrogatory to the extent that the information sought is equally available to the Defendant or is solely in the Defendants' possession.  Plaintiff further objects to this Interrogatory on the basis that it seeks information that is irrelevant and inadmissible.

**SPECIAL INTERROGATORY NO. 17:**

Identify, and provide a computation of, each category of damage alleged for YOUR FEDERAL CLAIMS, including but not limited to statutory damages and actual and compensatory damages.

**RESPONSE TO SPECIAL INTERROGATORY NO. 17:**

Plaintiff incorporates by reference the General Objections and Reservation of Rights. Plaintiff objects that this Interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the Interrogatory is directed, and the burden or expense of preparing or making it would be substantially the same for the party propounding the Interrogatory as for Plaintiff. Plaintiff objects to the extent the Interrogatory seeks discovery of expert information prior to the time periods specified by the Code of Civil Procedure.

Subject to and without waiving the foregoing objections, Plaintiff identifies the following categories of damages:

1.	Plaintiff has suffered damages in the amount of money he has expended in securing his home, his office, himself, and his family as a result of Defendants' violations of 18 U.S.C. § 2510, *et seq.*, as well as their publication of defamatory statements, in excess of $500,000.

2.	Plaintiff has suffered damages in the amount of at least $400,000 in lost

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

PLAINTIFF'S RESPONSES TO INTERROGATORIES. SET ONE

income as a result of Defendants' violations of 18 U.S.C. § 2510, *et seq.*, as well as their publication of defamatory statements, which forced Plaintiff to leave his company, despite a lucrative offer to stay, in order to spare the company the embarrassment and publicity attendant to Defendants' actions and so that he could stay close to his family and focus on their protection.

3.      Plaintiff has suffered emotional distress damages in an amount to be proven at trial.

4.      Pursuant to 18 U.S.C. § 2520(c)(2), the actual damages identified above plus all profits made by Defendants from and related to the film "Dear Kelly", or in the alternative, $100 per day or $10,000, whichever is higher.

5.      Pursuant to 18 U.S.C. § 2520(b)(2), punitive damages.

6.      Pursuant to 18 U.S.C. § 2520(b)(3), Plaintiff's reasonable attorney's fees.

Discovery is ongoing and Plaintiff reserves the right to supplement this response.

Dated: May 21, 2025                      MURPHEY & MURPHEY, A.P.C.

By: _____
    Meghan C. Murphey
    Matthew D. Murphey
    Attorneys for Plaintiff William
    Joiner

## <u>VERIFICATION</u>

I am the Plaintiff in this action.  I have read the foregoing **PLAINTIFF'S RESPONSE TO CHANNEL 5 LLC'S FIRST SET OF INTERROGATORIES** and know its contents.  Reserving the right to correct or amend the responses if inadvertent errors or additional information is subsequently discovered, the matters stated in the responses are true and correct to my knowledge and on that basis, I verify that they are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 21, 2025, at Irvine, California.

_____
William Joiner

RESPONSE TO CHANNEL 5'S
FIRST SET OF INTERROGATORIES

**PROOF OF SERVICE**

I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 120 Vantis Drive, Suite 300, Aliso Viejo, California 92656. On May 21, 2025, I served the following document(s) described as:

**PLAINTIFF'S RESPONSE TO CHANNEL 5 LLC'S FIRST SET OF INTERROGATORIES**

☒   by transmitting via my electronic service address (lorraine@themurpheylawyers.com) the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Jonathan L. Segal
jonathansegal@dwt.com
Samantha Lachman
samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071

Abigail Everdell (Pro hac vice)
abigaileverdell@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020

*Attorneys for Defendants*
*Andrew Callaghan and Channel 5 LLC*

I declare under penalty of perjury under the laws of the United Staes of America that the above is true and correct.

Executed on May 21, 2025, at Eastvale, California.

_____
Lorraine Wan

PLAINTIFF'S RESPONSES TO INTERROGATORIES. SET ONE

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

# EXHIBIT 2

MURPHEY & MURPHEY
A PROFESSIONAL CORPORATION
Meghan C. Murphey (SBN 259487)
meghan@themurpheylawyers.com
Matthew D. Murphey (SBN 194111)
matt@themurpheylawyers.com
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656
Tel: 949.464.4540      Fax: 562.375.6674

Attorneys for Plaintiff,
William Joiner

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOINER,<br><br>        Plaintiff,<br><br>     v.<br><br>ANDREW CALLAGHAN, an individual, CHANNEL 5 LLC, a Washington limited liability company; EVAN GILBERT-KATZ, an individual; NICOLAS MOSHER, an individual; KELLY SCOTT JOHNSON, an individual; and DOES 1 through 200, inclusive,<br><br>        Defendants. | Case No. 8:24-cv-01160-CBM-KS<br><br>**PLAINTIFF'S RESPONSE TO CHANNEL 5 LLC'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE** |

PROPOUNDING PARTY:    Channel 5 LLC

RESPONDING PARTY:    William Joiner

SET:    One

Plaintiff William Joiner ("Responding Party" or "Plaintiff") hereby responds and objects to Defendant Channel 5 LLC's ("Propounding Party") Requests for Production of Documents, Set One, as follows:

- 1 -

## PRELIMINARY STATEMENT

Plaintiff has not yet completed investigation of the facts relating to this action, has not yet completed discovery, and has not yet completed preparation for trial. Consequently, the following responses are given without prejudice to Plaintiff's right to introduce, at the time of trial or other proceedings, subsequently discovered information relating to the proof of presently known material facts and to introduce all information, whenever discovered, relating to the proof of subsequently discovered material facts. However, Plaintiff does not assume any duty of ongoing amendments to these responses.

Plaintiff reserves the right to introduce at trial any and all documents and/or information heretofore or hereafter produced by the parties in this action or by any third person that supports or tends to support its contentions at trial or in support of or in opposition to any motion in this case. To the extent that Plaintiff identifies certain documents or delineates facts contained within any document or otherwise, it does so without prejudice to establish at a later date any additional facts that may be contained within or discovered as a result of subsequent review of such document or as a result of any additional investigation and discovery.

Inadvertent identification or production of documents or information by Plaintiff does not constitute a waiver of any applicable privilege, nor does identification or production of any documents or information waive any objection, including relevancy, to the admission of such document or information in evidence.

Writings prepared, sent or received in connection with the instant litigation, including but not limited to pleadings, motions, discovery requests and responses, third party document productions and correspondence between counsel, will not be produced by Plaintiff.

This Preliminary Statement applies to each and every response or objection and is incorporated in each as though set forth in full therein.

No category specified herein is intended to, nor shall, supersede, exclude, or

- 2 -

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

restrict the scope of any other category.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

DOCUMENTS sufficient to identify each individual likely to have discoverable information concerning the FEDERAL CLAIMS against the C5 DEFENDANTS, including but not limited to DOCUMENTS identifying the address and telephone number(s) for each such individual.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Plaintiff objects to the extent the Request seeks information subject to attorney-client privilege, the attorney work-product doctrine, confidentiality, confidential trade secrets or other proprietary information, any other applicable privilege, or any applicable constitutional or statutory right of privacy. Plaintiff objects on the grounds that the Request is vague and ambiguous as to the term "sufficient to identify," in that it is ambiguous whether Propounding Party seeks only one document identifying each individual or all documents identifying such individuals. To the extent the Request seeks all documents, the Request is overbroad and unduly burdensome, in that the request is not limited to documents relevant to the time period or subject matter of the federal claims, and thus is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent the Request requires Plaintiff to produce documents obtained from Defendants or pleadings filed in the instant action, as such documents are equally available to Propounding Party.

Subject to and without waiving the foregoing objections, Plaintiff will produce copies of responsive, non-privileged documents sufficient to respond to this request at a time and place mutually convenient to the parties.

**REQUEST FOR PRODUCTION NO. 2:**

ALL DOCUMENTS and COMMUNICATIONS RELATED to YOUR discovery of any alleged violation of the Wiretap Act, as alleged in the

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

PLAINTIFF'S RESPONSE TO REQUESTS FOR PRODUCTION, SET ONE

COMPLAINT, by any C5 DEFENDANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Plaintiff objects to the extent the Request seeks information subject to attorney-client privilege, the attorney work-product doctrine, confidentiality, confidential trade secrets or other proprietary information, any other applicable privilege, or any applicable constitutional or statutory right of privacy. Plaintiff objects on the grounds that the Request is compound, overbroad, and seeks documents that are unrelated and irrelevant to the subject matter of the litigation, and as such is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent the Request requires Plaintiff to produce documents obtained from Defendants or pleadings filed in the instant action, as such documents are equally available to Propounding Party.

Subject to and without waiving the foregoing objections, Plaintiff will produce copies of responsive, non-privileged documents sufficient to respond to this request at a time and place mutually convenient to the parties.

**REQUEST FOR PRODUCTION NO. 3:**

ALL DOCUMENTS and COMMUNICATIONS RELATED to YOUR discovery of any alleged violation of the Electronic Communications Privacy Act**,** as alleged in the COMPLAINT, by any C5 DEFENDANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Plaintiff objects to the extent the Request seeks information subject to attorney-client privilege, the attorney work-product doctrine, confidentiality, confidential trade secrets or other proprietary information, any other applicable privilege, or any applicable constitutional or statutory right of privacy. Plaintiff objects on the grounds that the Request is compound, overbroad, and seeks documents that are unrelated and irrelevant to the subject matter of the litigation, and as such is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent the Request requires Plaintiff to produce

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

PLAINTIFF'S RESPONSE TO REQUESTS FOR PRODUCTION, SET ONE

documents obtained from Defendants or pleadings filed in the instant action, as such documents are equally available to Propounding Party.

Subject to and without waiving the foregoing objections, Plaintiff will produce responsive, non-privileged documents sufficient to respond to this request at a time and place mutually convenient to the parties.

**REQUEST FOR PRODUCTION NO. 4:**

ALL DOCUMENTS and COMMUNICATIONS RELATED to any alleged surreptitious recording of YOU, YOUR family members, and/or YOUR employees by any C5 DEFENDANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Plaintiff objects to the extent the Request seeks information subject to attorney-client privilege, the attorney work-product doctrine, confidentiality, confidential trade secrets or other proprietary information, any other applicable privilege, or any applicable constitutional or statutory right of privacy. Plaintiff objects on the grounds that the Request is compound, overbroad, and seeks documents that are unrelated and irrelevant to the subject matter of the litigation, and as such is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent the Request requires Plaintiff to produce documents obtained from Defendants or pleadings filed in the instant action, as such documents are equally available to Propounding Party.

Subject to and without waiving the foregoing objections, Plaintiff will produce responsive, non-privileged documents sufficient to respond to this request at a time and place mutually convenient to the parties. Additional documents related to this Request are believed to be in the possession, custody or control of Defendants and/or unknown third parties affiliated with or related to Defendants.

**REQUEST FOR PRODUCTION NO. 5:**

ALL DOCUMENTS evidencing that any C5 DEFENDANT violated the Wiretap Act with respect to YOUR communications.

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

- 5 -

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Plaintiff objects to the extent the Request seeks information subject to attorney-client privilege, the attorney work-product doctrine, confidentiality, confidential trade secrets or other proprietary information, any other applicable privilege, or any applicable constitutional or statutory right of privacy. Plaintiff objects to the extent the Request requires Plaintiff to produce documents obtained from Defendants or pleadings filed in the instant action, as such documents are equally available to Propounding Party.

Subject to and without waiving the foregoing objections, Plaintiff will produce responsive, non-privileged documents sufficient to respond to this request at a time and place mutually convenient to the parties. Additional documents related to this Request are believed to be in the possession, custody or control of Defendants and/or unknown third parties affiliated with or related to Defendants.

**REQUEST FOR PRODUCTION NO. 6:**

ALL DOCUMENTS evidencing that any C5 DEFENDANT violated the Electronic Communications Privacy Act with respect to YOUR communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Plaintiff objects to the extent the Request seeks information subject to attorney-client privilege, the attorney work-product doctrine, confidentiality, confidential trade secrets or other proprietary information, any other applicable privilege, or any applicable constitutional or statutory right of privacy. Plaintiff objects to the extent the Request requires Plaintiff to produce documents obtained from Defendants or pleadings filed in the instant action, as such documents are equally available to Propounding Party.

Subject to and without waiving the foregoing objections, Plaintiff will produce responsive, non-privileged documents sufficient to respond to this request at a time and place mutually convenient to the parties. Additional documents related to this Request are believed to be in the possession, custody or control of Defendants and/or

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

- 6 -

unknown third parties affiliated with or related to Defendants.

**REQUEST FOR PRODUCTION NO. 7:**

ALL DOCUMENTS and COMMUNICATIONS evidencing or referring to any wire, oral, or electronic communication by YOU that you claim was intercepted, disclosed, or used by any C5 DEFENDANT in violation of the Wiretap Act and/or Electronic Communications Privacy Act.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Plaintiff objects to the extent the Request seeks information subject to attorney-client privilege, the attorney work-product doctrine, confidentiality, confidential trade secrets or other proprietary information, any other applicable privilege, or any applicable constitutional or statutory right of privacy. Plaintiff objects to the extent the Request requires Plaintiff to produce documents obtained from Defendants or pleadings filed in the instant action, as such documents are equally available to Propounding Party.

Subject to and without waiving the foregoing objections, Plaintiff will produce responsive, non-privileged documents sufficient to respond to this request at a time and place mutually convenient to the parties. Additional documents related to this Request are believed to be in the possession, custody or control of Defendants and/or unknown third parties affiliated with or related to Defendants.

**REQUEST FOR PRODUCTION NO. 8:**

ALL DOCUMENTS and COMMUNICATIONS RELATED TO any alleged interception of YOUR COMMUNICATIONS by any C5 DEFENDANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Plaintiff objects to the extent the Request seeks information subject to attorney-client privilege, the attorney work-product doctrine, confidentiality, confidential trade secrets or other proprietary information, any other applicable privilege, or any applicable constitutional or statutory right of privacy. Plaintiff objects to the extent the Request requires Plaintiff to produce documents obtained

from Defendants or pleadings filed in the instant action, as such documents are equally available to Propounding Party.

Subject to and without waiving the foregoing objections, Plaintiff will produce responsive, non-privileged documents sufficient to respond to this request at a time and place mutually convenient to the parties. Additional documents related to this Request are believed to be in the possession, custody or control of Defendants and/or unknown third parties affiliated with or related to Defendants.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS sufficient to show any actual damages YOU suffered as a result of C5 DEFENDANTS' alleged violation of the Wiretap Act as alleged in the COMPLAINT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiff objects to the extent the Request seeks information subject to attorney-client privilege, the attorney work-product doctrine, confidentiality, confidential trade secrets or other proprietary information, any other applicable privilege, or any applicable constitutional or statutory right of privacy. Plaintiff objects to the extent the Request requires Plaintiff to produce documents obtained from Defendants or pleadings filed in the instant action, as such documents are equally available to Propounding Party. Plaintiff further objects to the Requests to the extent they seek premature disclosure of expert testimony.

Subject to and without waiving the foregoing objections, Plaintiff will produce responsive, non-privileged documents sufficient to respond to this request at a time and place mutually convenient to the parties, subject to entry of an appropriate protective order.

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS sufficient to show any actual damages YOU suffered as a result of C5 DEFENDANTS' alleged violation of the Electronic Communications Privacy Act as alleged in the COMPLAINT.

MURPHEY & MURPHEY
A PROFESSIONAL CORPORATION

PLAINTIFF'S RESPONSE TO REQUESTS FOR PRODUCTION, SET ONE

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Plaintiff objects to the extent the Request seeks information subject to attorney-client privilege, the attorney work-product doctrine, confidentiality, confidential trade secrets or other proprietary information, any other applicable privilege, or any applicable constitutional or statutory right of privacy. Plaintiff objects to the extent the Request requires Plaintiff to produce documents obtained from Defendants or pleadings filed in the instant action, as such documents are equally available to Propounding Party. Plaintiff further objects to the Requests to the extent they seek premature disclosure of expert testimony.

Subject to and without waiving the foregoing objections, Plaintiff will produce responsive, non-privileged documents sufficient to respond to this request at a time and place mutually convenient to the parties, subject to entry of an appropriate protective order.

Dated: May 21, 2025                    MURPHEY & MURPHEY, A.P.C.

By: _____
Meghan C. Murphey
Matthew D. Murphey
Attorneys for Plaintiff William
Joiner

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

## PROOF OF SERVICE

I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 120 Vantis Drive, Suite 300, Aliso Viejo, California 92656. On May 21, 2025, I served the following document(s) described as:

**PLAINTIFF'S RESPONSE TO CHANNEL 5 LLC'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE**

☒     by transmitting via my electronic service address (lorraine@themurpheylawyers.com) the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Jonathan L. Segal
jonathansegal@dwt.com
Samantha Lachman
samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071

Abigail Everdell (Pro hac vice)
abigaileverdell@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020

*Attorneys for Defendants*
*Andrew Callaghan and Channel 5 LLC*

I declare under penalty of perjury under the laws of the United Staes of America that the above is true and correct.

Executed on May 21, 2025, at Eastvale, California.

_____
Lorraine Wan

MURPHEY &
MURPHEY
A PROFESSIONAL
CORPORATION

PLAINTIFF'S RESPONSE TO REQUESTS FOR PRODUCTION, SET ONE

# EXHIBIT 3

JONATHAN L. SEGAL (State Bar No. 264238)
  jonathansegal@dwt.com
SAMANTHA LACHMAN (State Bar No. 331969)
  samlachman@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

ABIGAIL EVERDELL (*Pro hac vice*)
  abigaileverdell@dwt.com
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone:  (212) 489-8230
Fax:  (212) 379-5244

Attorneys for Defendants
ANDREW CALLAGHAN and CHANNEL 5
LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOINER, an individual,<br><br>                    Plaintiff,<br><br>      vs.<br><br>ANDREW CALLAGHAN, an Individual;<br>CHANNEL 5 LLC, a Washington<br>Limited Liability Company; EVAN<br>GILBERT-KATZ, an Individual;<br>NICOLAS MOSHER, an Individual;<br>KELLY SCOTT JOHNSON, an<br>Individual; and DOES 1 through 200,<br>Inclusive,<br><br>                    Defendant. | Case No. **8:24-cv-01160-CBM-KS**<br><br>**OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT CHANNEL 5 LLC**<br><br>Action Filed:  May 30, 2024 |

PROPOUNDING PARTY:     Plaintiff Willaim Joiner

RESPONDING PARTY:     Defendant Channel 5 LLC

SET NUMBER:     ONE

Defendant Channel 5 LLC ("Defendant") responds to plaintiff Willaim Joiner's ("Plaintiff") First Set of Requests for Production as follows:

## PRELIMINARY STATEMENT

The responses set forth below represent Defendant's present knowledge based on discovery, investigation, and case preparation to date.  Defendant has made reasonable efforts to locate responsive documents and the contents hereof are based on the information obtained from these efforts.  Defendant's investigation into this matter is, and will continue to be, ongoing.  Defendant may locate additional responsive documents at a later date, and may assert appropriate objections to the use of the documents identified herein.  Defendant, therefore, expressly reserves the right to rely on additional responsive documents, whether located in the course of its continuing investigation or in the course of discovery, at all future hearings and at trial, and the right to object on appropriate grounds to the use of any documents produced in response to this Request.  Similarly, Defendant expressly reserves the right to rely on any and all responsive documents already filed in this matter, and incorporates any and all such responsive documents herein by this reference.  Defendant also reserves the right to supplement this Response and any production in response to the Request in the future.

The production of any given document pursuant to the Request is not an admission or acknowledgment by Defendant that such document is relevant to any claim or defense in this action; is without prejudice to Defendant's right to contend at trial or in any other or subsequent proceeding in this action or otherwise that such document is inadmissible, irrelevant, immaterial, or not the proper basis for discovery; and is without prejudice to or waiver of any objection to any future use of such document which Defendant may be advised to make.

Many of the categories in the Request are duplicative or overlapping.  As a result, any document produced is, or potentially may be, responsive to more than one category.  Nonetheless, Defendant may only produce each such document once

1

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

and not each time it conceivably may be responsive to a given item in the Request. The circumstance that a document is produced only once is not an acknowledgment that it is potentially germane only to one category and is not a waiver of Defendant's right to use such document, if any, in any manner or on any point or subject as may be appropriate.

## GENERAL OBJECTIONS

1.      Defendant objects to the Requests, and to each and every item contained therein, to the extent that they attempt or purport to impose obligations beyond those set forth in the Code of Civil Procedure or the Local Rules of the United States District Court for the Central District of California.  Defendant's responses are made pursuant to, and as limited by, the Federal Rules of Civil Procedure.

2.      Defendant objects to any request to the extent that it seeks disclosure of information protected by the attorney-client privilege, the attorney work-product doctrine, the common-interest privilege, or any other applicable privilege, doctrine, or immunity.  To the extent that any request may be construed as seeking such privileged or protected information, Defendant hereby claims such privilege and invokes such protection.  The fact that Defendant does not specifically object to an individual request on the grounds that it seeks such privileged or protected documents shall not be deemed a waiver of the protection afforded by the attorney-client privilege, the attorney work-product doctrine, the common-interest privilege, or any other applicable privilege or protection.

3.      Insofar as certain requests are overbroad and/or vague and ambiguous, Defendant objects because such requests are unduly burdensome.  Reasonable assumptions will be made, where possible, as to the intended meanings.

4.      Defendant objects to any request to the extent that it calls for the disclosures of confidential or proprietary business information and/or trade secrets.

2

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

Such material will be produced, if it is discoverable, subject to the terms of a protective order entered in this action.

5.      Defendant objects to the Requests to the extent they seek information or documents already within Plaintiff's possession, publicly available or otherwise available to Plaintiff from other source(s) equally convenient, less burdensome, or less expensive.

6.      Defendant objects to the Requests to the extent they seek disclosure of documents from persons or entities over whom Defendant has no control, or seek documents not in Defendant's possession, custody, or control.

7.      Defendant objects to the Requests to the extent that they are not limited in time and seek documents or information created after Plaintiff filed his Complaint.

8.      Defendant objects to the Requests as premature to the extent that they seek information related to opinion testimony or expert discovery.

9.      Defendant objects to the definition of the term "YOU" or "YOUR" as being vague and overbroad.  Defendant will review and produce documents in its possession, custody, and control.

10.     Defendant objects generally to the Requests on the grounds that they call for the disclosure of unpublished editorial information that is independently protected from compelled disclosure under the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. *E.g., Shoen v. Shoen*, 5 F.3d 1289, 1294 (9th Cir. 1993) ("*Shoen I*"); *Mitchell v. Super. Ct.*, 37 Cal. 3d 268, 280, 282 (1984); *O'Grady v. Super. Ct.*, 139 Cal. App. 4th 1423, 1466-68 (2006).

11.     Defendant objects to the Requests to the extent that they seek information not relevant to Plaintiff's Wiretap Act and Electronic Communications Privacy Act claims (together, the "Federal Claims") and outside of the scope of the

3

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

Court's order staying discovery regarding Plaintiff's state law claims (the "Order"). ECF No. 36.

12.    Defendant's responses do not in any way constitute an adoption of Plaintiff's purported definitions of words or phrases contained in the Requests. Defendant objects to the definitions to the extent they are (a) unclear, ambiguous, overly broad, or unduly burdensome; or (b) inconsistent with the ordinary and customary meaning of the words or phrases they purport to define.

13.    Defendant's investigation is ongoing, and Defendant specifically reserves the right to correct, amend, modify, or supplement its responses to the Requests at any time in the future, as warranted by the circumstances.

14.    These General Objections are incorporated by reference into each of the responses set forth below.

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:

Produce the FILM.

RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case, including on the grounds that Plaintiff is already in possession of the multiple published iterations of the FILM.  Defendant objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case on the grounds that it seeks information not relevant to Plaintiff's Federal Claims.  Defendant further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case on the grounds that it seeks material duplicative of the raw footage requested in Request No. 2. Defendant further objects to this Request to the extent it seeks unpublished iterations of the FILM, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, Defendant will produce the version of the FILM referenced in Paragraph 8 of the Complaint.

REQUEST FOR PRODUCTION NO. 2:

Produce all FOOTAGE.

RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague and ambiguous to the extent that "FOOTAGE" is defined to encompass recordings "as it relates to JOINER and/or the FILM."  Defendant further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it calls for the production of recordings other than recordings of Plaintiff or concerning recordings of Plaintiff, which are irrelevant to the alleged Federal Claims at issue, and will not produce such recordings.  Defendant further objects to this Request to the extent that it seeks unpublished footage, which is privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce non-privileged footage relevant to Plaintiff's Federal Claims in its possession, custody, or control, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS relating to, referring to or evidencing recordings of any JOINER PARTIES.

5

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, vague and ambiguous, and not proportional to the needs of the case on the grounds that it seeks information relating to recordings of parties other than Plaintiff, which are irrelevant to the alleged Federal Claims at issue, and will not produce such recordings. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant states that it will produce non-privileged documents referring to or evidencing recordings of Plaintiff, if any, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS relating to, referring to or evidencing recordings of any JOINER PROPERTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the

6

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce non-privileged documents evidencing recordings of any JOINER PROPERTIES in its possession, custody, or control, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' physical presence at the JOINER PROPERTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims.  Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce any non-privileged documents evidencing any of DEFENDANTS' physical presence in or on any JOINER PROPERTY, if any exist, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' physical presence within 1000 feet of the JOINER PROPERTIES.

7

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, and seeking information that is not relevant to any claim or defense or proportional to the needs of the case, to the extent that it seeks documents relating to a physical proximity from which communications could not reasonably be intercepted, which are not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce non-privileged documents evidencing their presence in the immediate vicinity of the JOINER PROPERTIES, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS relating to, referring to or evidencing the purpose of DEFENDANTS' physical presence at the JOINER RESIDENCE.

RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague and ambiguous as to the undefined term "purpose." Defendant further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it calls for the production of documents irrelevant to the alleged Federal Claims at issue and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from

8

disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS relating to, referring to or evidencing the purpose of DEFENDANTS' physical presence at the JOINER BUSINESS.

RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague and ambiguous as to the undefined term "purpose." Defendant further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it calls for the production of documents irrelevant to the alleged Federal Claims at issue and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 9:

All DOCUMENTS relating to, referring to or evidencing the purpose of DEFENDANTS' purchase, possession, and/or use of a ghillie suit on or within 1000 feet of the JOINER RESIDENCE.

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague and ambiguous as to the undefined term "purpose." Defendant further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case to the extent that it calls for the production of documents irrelevant to the alleged Federal Claims at issue and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 10:

All DOCUMENTS relating to, referring to or evidencing equipment, including surveillance or recording equipment, in DEFENDANTS' possession, custody or control at the time DEFENDANTS were within 1000 feet of any of the JOINER PROPERTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a)

10

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged documents in its possession, custody, or control sufficient to identify any recording equipment used to make recordings of the JOINER PROPERTIES, or of Plaintiff, if any exist, and subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 11:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' attempts to locate and/or communicate with JOINER.

RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims.  Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 12:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' attempts to surveille JOINER.

11

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged documents referring to or evidencing recordings made of Plaintiff in its possession, custody, or control, if any exist, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 13:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' attempts to obtain audio or video recordings of any JOINER PARTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the

12

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged documents referring to or evidencing recordings made of Plaintiff in its possession, custody, or control responsive to this Request, if any exist, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 14:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' attempts to obtain audio or video recordings at the JOINER PROPERTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged documents referring to or evidencing recordings made of Plaintiff in its possession, custody, or control responsive to this Request, if any exist, subject to the terms of a protective order entered in this action.

13

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

REQUEST FOR PRODUCTION NO. 15:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' intent regarding publishing, broadcasting, disclosing or otherwise using audio or video recordings of any JOINER PARTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague, ambiguous, and not susceptible to a reasonably discernable meaning as to the undefined term "intent."  Defendant will construe "intent" as meaning documents evidencing its intent with regard to the use of recordings made of the JOINER PARTIES. Defendant further objects to this Request on the grounds that it is overbroad, unduly burdensome, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution.  Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.

Subject to and without waiving these objections, Defendant states that, to its knowledge, it has not published, broadcast, disclosed, or otherwise used audio or video recordings of any JOINER PARTIES, thus no responsive documents exist.

REQUEST FOR PRODUCTION NO. 16:

All DOCUMENTS relating to, referring to or evidencing DEFENDANTS' intent regarding publishing, broadcasting, disclosing or otherwise using audio or video recordings of any JOINER PROPERTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is vague and ambiguous as to the undefined term "intent." Defendant further objects on the grounds that the Request is overbroad, unduly burdensome, and seeks information that is not proportional to the needs of the case to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections. On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 17:

All DOCUMENTS consisting of or evidencing communications by and between any DEFENDANTS relating to JOINER.

RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. On the basis

15

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 18:

All DOCUMENTS consisting of or evidencing communications by and between any DEFENDANTS relating to audio or video recordings of any JOINER PARTIES.

RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections. Defendant further objects to this Request on the grounds that, to the extent not objectionable, the Request is duplicative of other Requests, including Request No. 3.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce responsive, non-privileged communications between DEFENDANTS referring to any audio or video recordings made of Plaintiff in its possession, custody, or control responsive to this Request, if any exist, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 19:

All DOCUMENTS consisting of or evidencing communications by and between any DEFENDANTS relating to audio or video recordings of any JOINER PROPERTIES.

16

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims. Defendant further objects to this Request to the extent that it seeks unpublished recordings, which are privileged from disclosure pursuant to the First Amendment to the United States Constitution and Article I, Section 2(a) of the California Constitution. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections. Defendant further objects to this Request on the grounds that, to the extent not objectionable, the Request is duplicative of other Requests, including Request No. 4.

On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 20:

All DOCUMENTS relating to, referring to or evidencing YOUR Affirmative Defenses to the First Claim for Relief set forth in YOUR ANSWER.

RESPONSE TO REQUEST FOR PRODUCTION NO. 20:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, vague and ambiguous, and not proportional to the needs of the case to the extent it seeks documents "relating to" or "referring to" Defendant's affirmative defenses. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections. Defendant further objects to the Request to the extent

17

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

that it calls for documents not relevant to affirmative defenses asserted by Defendant with respect to claims other than Plaintiff's Federal Claims.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce non-privileged documents sufficient to support its affirmative defenses, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 21:

All DOCUMENTS relating to, referring to or evidencing YOUR Affirmative Defenses to the Second Claim for Relief set forth in YOUR ANSWER.

RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, vague and ambiguous, and not proportional to the needs of the case to the extent it seeks documents "relating to" or "referring to" Defendant's affirmative defenses. Defendant further objects to this Request to the extent that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections. Defendant further objects to the Request to the extent that it calls for documents not relevant to affirmative defenses asserted by Defendant with respect to claims other than Plaintiff's Federal Claims.

Subject to and without waiving these objections, after a reasonable and diligent search, Defendant will produce non-privileged documents sufficient to support its affirmative defenses, subject to the terms of a protective order entered in this action.

REQUEST FOR PRODUCTION NO. 22:

All DOCUMENTS consisting of or evidencing communications by, between, or among any DEFENDANTS relating to the above-captioned litigation and/or the demand letters sent by counsel for JOINER before the litigation was filed.

18

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request as overbroad, unduly burdensome, vague and ambiguous, and not proportional to the needs of the case to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims.  Defendant further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.  On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

REQUEST FOR PRODUCTION NO. 23:

All DOCUMENTS consisting of or evidencing communications by, between, or among any DEFENDANTS regarding JOINER.

RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

Defendant incorporates its General Objections as if fully set forth here.

Defendant objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and ambiguous, and seeks information that is not proportional to the needs of the case, to the extent that it seeks documents not relevant to Plaintiff's Federal Claims and outside the scope of the Court's Order staying discovery into Plaintiff's state law claims.  Defendant further objects to this Request on the grounds that it seeks information protected by the attorney-client privilege, work product privilege, and/or other privileges and protections.  Defendant further objects to this Request on the grounds that, to the extent not objectionable, the Request is duplicative of other Requests, including Request Nos. 3 and 12.  On the basis of these general and specific objections, Defendant will not produce documents in response to this Request.

19

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

DATED: June 9, 2025

DAVIS WRIGHT TREMAINE LLP
JONATHAN L. SEGAL
ABIGAIL EVERDELL
SAMANTHA LACHMAN

By: /s/ *Abigail Everdell*

Abigail Everdell
Attorneys for Defendant
CHANNEL 5 LLC

20

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2025, I served the foregoing by electronic mail to counsel of record for Plaintiff.

/s/ *Samantha Lachman*
Samantha Lachman

21

OBJECTIONS AND RESPONSES TO PLAINTIFF'S
FIRST SET OF RFPs TO DEFENDANT CHANNEL 5 LLC

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 4

## Pearmain, Lina

| | |
|---|---|
| **From:** | Meghan Murphey <meghan@themurpheylawyers.com> |
| **Sent:** | Tuesday, January 20, 2026 5:33 PM |
| **To:** | Everdell, Abigail; Matt Murphey; Dennis Canty |
| **Cc:** | Segal, Jonathan; Lachman, Sam; Olivia Andonian |
| **Subject:** | Re: Channel 5 Defendants' First Production of Documents |
| **Attachments:** | 20260120 - Notice of Deposition of Channel 5.pdf |

**[EXTERNAL]**

Thanks Abigail, you too. Please see attached.

Meghan C. Murphey
**Murphey & Murphey, A.P.C.**
Tel: 949-464-4540

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Tuesday, January 20, 2026 10:08 AM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** RE: Channel 5 Defendants' First Production of Documents

Meghan,

Hope you had a good long weekend.  Could you please send the depo notice today?  We need to get the date solidified.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Everdell, Abigail
**Sent:** Monday, January 12, 2026 5:19 PM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** RE: Channel 5 Defendants' First Production of Documents

Meghan,

Following on, and assuming you can't do the week of Feb 2, let's pencil February 12 in for this.  But please send us the deposition notice so we can confirm.

1

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Everdell, Abigail
**Sent:** Thursday, January 8, 2026 2:46 PM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** RE: Channel 5 Defendants' First Production of Documents

Hi Meghan,

Pending confirming our witness I don't think we can do that week.  Are you sure there isn't any day the week of Feb 2 that works for you?

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Meghan Murphey <meghan@themurpheylawyers.com>
**Sent:** Thursday, January 8, 2026 2:40 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** Re: Channel 5 Defendants' First Production of Documents

**[EXTERNAL]**

Yes, we will get you a 30(b)(6) notice. That week does not work for us, how about a date on or after February 12?

Meghan C. Murphey
Murphey & Murphey, APC
949-464-4540
www.themurpheylawyers.com

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Wednesday, January 7, 2026 11:32:52 AM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>

**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** RE: Channel 5 Defendants' First Production of Documents

Meghan,

Could you send us a 30(b)(6) notice with topics so we can be sure we're finding the person most knowledgeable?

I believe we can do the week of February 2-6 but will confirm when we know more.  And we should do it at DWT's offices at 350 S Grand Ave 27th Floor, Los Angeles, CA 90071.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Meghan Murphey <meghan@themurpheylawyers.com>
**Sent:** Tuesday, January 6, 2026 4:28 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** Re: Channel 5 Defendants' First Production of Documents

**[EXTERNAL]**

Abigail - after review of the footage, we have determined we need to depose the person most knowledgeable at Channel 5 regarding the filming, storage, maintenance, copying, and production of the videos. Please provide us with dates in the second half of January that will work for you and your client. I anticipate taking the deposition at our office in Aliso Viejo. Thank you.

Meghan C. Murphey
**Murphey & Murphey, A.P.C.**
Tel: 949-464-4540

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Tuesday, January 6, 2026 12:17 PM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** RE: Channel 5 Defendants' First Production of Documents

Hi Meghan and Dennis,

Hope you all had a happy new year.  Just following up on the below.  Please let us know when we can schedule a call to discuss your federal wiretap claims in light of the footage we produced.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Everdell, Abigail
**Sent:** Friday, December 19, 2025 1:02 PM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** RE: Channel 5 Defendants' First Production of Documents

Meghan and Dennis,

Just following up on your review of the footage we produced.  Can we schedule a call in early January to discuss?

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Everdell, Abigail
**Sent:** Wednesday, December 3, 2025 6:42 PM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** RE: Channel 5 Defendants' First Production of Documents

That works.  I'll send a calendar invite.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Meghan Murphey <meghan@themurpheylawyers.com>
**Sent:** Wednesday, December 3, 2025 6:40 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>

4

**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** Re: Channel 5 Defendants' First Production of Documents

**[EXTERNAL]**

Sure. How about this Friday at 11 am Pacific?

Meghan C. Murphey
Murphey & Murphey, APC
949-464-4540
www.themurpheylawyers.com

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Wednesday, December 3, 2025 11:17 AM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Lachman, Sam <SamLachman@dwt.com>
**Subject:** RE: Channel 5 Defendants' First Production of Documents

Counsel,

Do you have time for a call regarding this production this week or next?  We're available this Friday 9:30 am to 3 pm pt, or, if that doesn't work, next Thursday or Friday.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 21st Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Lachman, Sam <SamLachman@dwt.com>
**Sent:** Tuesday, October 21, 2025 8:35 PM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <dennis@themurpheylawyers.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Cc:** Everdell, Abigail <AbigailEverdell@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>
**Subject:** Channel 5 Defendants' First Production of Documents

Hello,

The Channel 5 Defendants' first production has been uploaded to DWT's secure FTP portal.  Instructions are attached.  Please let us know if you have any trouble accessing the files.

Thanks,
Sam

5

**Sam Lachman**  She/Her/Hers
**Associate |** Davis Wright Tremaine LLP
**P** 213.633.8611  **C** 919-780-9795  **E** samlachman@dwt.com
**A** 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071

**DWT.COM**  in

We're pleased to announce our upcoming move!
Starting January 5, 2026, you will find us on the 42nd floor of our building.
Our updated mailing address will be:
**1251 Avenue of the Americas**
**42nd Floor**
**New York, NY 10020-1104**

We're pleased to announce our upcoming move!
Starting January 5, 2026, you will find us on the 42nd floor of our building.
Our updated mailing address will be:
**1251 Avenue of the Americas**
**42nd Floor**
**New York, NY 10020-1104**
We're pleased to announce our upcoming move!
Starting January 5, 2026, you will find us on the 42nd floor of our building.
Our updated mailing address will be:
**1251 Avenue of the Americas**
**42nd Floor**
**New York, NY 10020-1104**
We're pleased to announce our upcoming move!
Starting January 5, 2026, you will find us on the 42nd floor of our building.
Our updated mailing address will be:
**1251 Avenue of the Americas**
**42nd Floor**
**New York, NY 10020-1104**

# EXHIBIT 5



In the Matter Of:

WILLIAM JOINER

vs

ANDREW CALLAGHAN

ANDREW CALLAGHAN

February 12, 2026

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM JOINER, | ) |
| | ) |
|           Plaintiff, | ) Case No. |
| | ) 8:24-cv-01160-CBM-KS |
|   v. | ) |
| | ) |
| | ) Volume I |
| ANDREW CALLAGHAN, an individual, | ) |
| CHANNEL 5 LLC, a Washington limited | ) |
| liability company; EVAN GILBERT-KATZ, | ) |
| an individual; NICHOLAS MOSHER, an | ) |
| individual; KELLY SCOTT JOHNSON, an | ) |
| individual; and DOES 1 through 200, | ) |
| inclusive, | ) |
| | ) |
| | ) |
|          Defendants. | ) |
| _____ | ) |

**CERTIFIED COPY**

REMOTE DEPOSITION OF

ANDREW CALLAGHAN

THURSDAY, FEBRUARY 12, 2026

Reported by:
Sheba Cohen
CSR 13715
No. 108426

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WILLIAM JOINER,                         )
                                        )
                    Plaintiff,          )   Case No.
                                        )   8:24-cv-01160-CBM-KS
      v.                                )
                                        )
                                        )   Volume I
ANDREW CALLAGHAN, an individual,        )
CHANNEL 5 LLC, a Washington limited     )
liability company; EVAN GILBERT-KATZ,   )
an individual; NICHOLAS MOSHER, an      )
individual; KELLY SCOTT JOHNSON, an     )
individual; and DOES 1 through 200,     )
inclusive,                              )
                                        )
                                        )
                    Defendants.         )
_____)

            REMOTE DEPOSITION OF ANDREW CALLAGHAN,

a Defendant herein, taken on behalf of the Plaintiff,

at 10:09 A.M., on Thursday, February 12, 2026, before

Sheba Cohen, CSR 13715.

REMOTE APPEARANCES OF COUNSEL:


For Plaintiff:

MURPHEY & MURPHEY, A PROFESSIONAL CORPORATION
BY: DENNIS J. CANTY, ESQ.
    MEGHAN C. MURPHEY, ESQ.
120 Vantis Drive
Suite 300
Aliso Viejo, California 92656
949.464.4540
dennis@themurpheylawyers.com
meghan@themurpheylawyers.com


For Defendants:

DAVIS WRIGHT TREMAINE LLP
BY: ABIGAIL EVERDELL, ESQ.
865 South Figueroa Street
24th Floor
Los Angeles, California 90017
(213) 633-6800
abigaileverdell@dwt.com




Also present:

Geo Brown

Jonathan Hernandez, Videographer

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                          4

                            I N D E X

WITNESS:  ANDREW CALLAGHAN

EXAMINATION BY:                                    PAGE

MR. CANTY, ESQ.                                      6

MS. EVERDELL, ESQ.                                 107


                         E X H I B I T S

PLAINTIFF'S                 DESCRIPTION              PAGE

1 -  Plaintiff William Joiner's Notice of            12
     Deposition of Defendant Channel 5, LLC

2 -  Objections and Responses to Plaintiff's         43
     First Set of Requests for Production to
     Defendant Channel 5 LLC

3 -  Excel document titled C5001_export_REPLACEMENT  47

4 -  Document titled Callaghan Video Production       49

5.1 - Screenshot 2026-02-11 173108                   69

5.2 - Screenshot 2026-02-11 173505                 69-70

5.3 - Screenshot 2026-02-11 175130                   72

8 -   Handwritten notes                              87

6 -   Clip from Charlotte Atlanta                    88

7 -   Screenshot 2026-02-12 090938                 99-100



                    INSTRUCTIONS NOT TO ANSWER:

                         PAGE    LINE

                          40      17

*Exhibit 8 not attached to transcript/retained by counsel.

THURSDAY, FEBRUARY 12, 2026

10:09 A.M.

THE VIDEOGRAPHER:  Good morning.  We're on the record.  The time is 10:09 A.M., Pacific Standard Time.  Today is February 12th, 2026.  My name is Jonathan Hernandez.  I'm a video technician with Veritext Legal Solutions located in Los Angeles, California.  We are recording these proceedings at 350 South Brand Avenue, Los Angeles, California.

This is the video deposition of Andrew Callaghan in the action entitled William Joiner versus Andrew Callaghan, et al.  This deposition is being taken on behalf of the plaintiff.  The Case Number is 8:24-cv-01160-CBM-KS.

Now, would you all please identify yourselves and who you represent, starting with the noticing attorney.

MR. CANTY:  I'm Dennis Canty, Murphey & Murphey, for plaintiff Bill Joiner.

MS. MURPHEY:  Meghan Murphey also for plaintiff Bill Joiner.

MS. EVERDELL:  Abigail Everdell, Davis Wright Tremaine, for Andrew Callaghan and Channel 5 and the remainder of the defendants in the -- I'm sorry.  Not the remainder.  Nicholas Mosher and Evan Gilbert-Katz.

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                    6

THE VIDEOGRAPHER:  Thank you.  Now, will the court reporter please introduce herself and administer the oath to the witness, and then Counsel may begin.

THE REPORTER:  My name is Sheba Cohen.

Please raise your right hand.

THE WITNESS:  Me?

THE REPORTER:  Yes.

THE WITNESS:  Yes.  Okay.

THE REPORTER:  Do you state to tell the truth, the whole truth and nothing but the truth?

THE WITNESS:  Yes, ma'am.

THE REPORTER:  You can put your hand down.

THE WITNESS:  Yes.


                         EXAMINATION


BY MR. CANTY:

    Q    Okay.  This is going to get stilted on Zoom.  I apologize.  My name is Dennis Canty.

         Hi, Mr. Callaghan.  Can you hear me okay?

    A    Yes, sir.

    Q    Okay.  Great.  Could you just -- we're going to go through some housekeeping things to -- to start with; so bear with.

         Could you please just state your name and spell

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                          22

there was a time in -- in Dear Kelly, in 2020, 2021, 2022, when you did not have a -- a server, you didn't have an office, and things -- and -- and the process for ingestion and the -- and the storage places for media, many had been different as opposed to later.

          Am I correct so far?

   A     Yes.  We basically -- this -- this is --

          This refers to all footage shot for Channel 5 was kept on hard drives that were at our home office near the computer.  In 2023, specifically in the spring of 2023, when we set up our -- our first real office, we took all footage that we'd ever shot for Channel 5 and move them from smaller hard drive to a bigger hard drive, and nothing was missed, nothing was forgotten in the transfer, said files.

                    (BRIEF TECHNICAL INTERRUPTION DUE

                    TO REPORTER'S LOSS OF INTERNET

                    CONNECTION.)

                         (Off the record.)

          THE VIDEOGRAPHER:  We're back on the record.  The time is 10:50 A.M.

   //

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                    23

BY MR. CANTY:

Q    Okay.  We're back.  Try it again.  Let's reorient.  We are --

It's the spring of 2023?

A    Yeah.

Q    You have your first real office, and all of -- you had -- previously, you had solid state drives, one to two -- one to three-terabyte capacity, SanDisk drives labeled according to their content; right?

A    Yes.

Q    And those drives were -- for lack of a better word -- migrated onto some other storage once you had the -- your first real office; right?

A    Yes.

Q    Okay.  What was --

What was it migrated to?

A    It was migrated to a -- one big server with a hundred-terabyte capacity.  The specific brand was the OWC ThunderBay 8 server, and that's where I migrated all video files to.

Q    Okay.  What happened to the original storage media?

A    Oh, I mean, they're just hard drives, solid state hard drives.  I still have them in my capacity.  But like I mentioned, everything from every hard drive that we

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                    24

previously had before in office were transferred to a larger server system.

Q    Okay.  I'm -- I'm sorry.  I don't want to belabor the point, but I'm not sure I understood the answer.

Where -- where are the original solid state drive?

A    Oh, I still have all of --

Q    (Inaudible) migrate --

A    I still have all of the original solid state drives in my possession.

Q    Okay.  All right.  You mentioned that -- in your -- in the workflow for Dear Kelly that the -- the -- the -- the media storage cards would be -- you download the media from -- from those cards into a -- into the solid state drives.

And you do that with -- using a map; right?

MS. EVERDELL:  Objection.

THE WITNESS:  Yes.

BY MR. CANTY:

Q    Okay.  All right.  And do you still have the map that you used as an intermediary?

A    Yes.

Q    Okay.  I want to talk about the media ingestion, the process of getting the media from the memory card to a storage device.

**In the time frame prior to spring of 2023, can you describe the steps that were -- that were taken?**

A    In terms of getting raw video and audio files transferred to hard drives?

**Q    Correct.**

A    So cameras typically have an SD card, or audio devices have a micro SD card.  I would put those SD cards directly into a Mac computer.  And then using Finder, I would just drag and drop or copy and paste all of those raw video and audio files onto a hard drive.  You don't need a third-party application or anything like that.  It's an internal mechanism in the Mac software.

**Q    And the software is -- it's Finder.  Okay.**

A    Yeah.

**Q    Yeah.  So you didn't use anything like a ShotPut Pro or a Hedge or a Silverstack or anything like that?**

A    Never heard of those things.

**Q    Okay.  Is -- was -- was there any process in ingestion of the media from the memory card to the hard drive that -- where there was a Checksum verification performed to verify that the complete file was transferred?**

A    Could you repeat that last part?

**Q    Sure.  This -- this Finder process that you described -- and I'll apologize because I'm not as**

10:52:20
10:52:25
10:52:30
10:52:34
10:52:36
10:52:36
10:52:41
10:52:46
10:52:49
10:52:53
10:52:57
10:53:00
10:53:04
10:53:08
10:53:08
10:53:14
10:53:18
10:53:20
10:53:25
10:53:31
10:53:34
10:53:37
10:53:38
10:53:40
10:53:44

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                    26

familiar with the Mac -- is there -- is there any -- is    10:53:47

there any Checksum verification performed to verify that a    10:53:49

complete file was transferred?    10:53:55

A    I'm not familiar with what the Checksum    10:53:58

verification process is; so no.  But it was just a direct    10:54:01

drag and drop transfer from the memory cards to hard    10:54:05

drives.    10:54:08

Q    We've talked about that process as it existed    10:54:14

prior to spring of 2023.    10:54:18

A    Mm-hmm.    10:54:20

Q    Following the spring of 2023, did your process    10:54:20

change at all?    10:54:24

A    Yes, it went from transferring to solid state    10:54:25

drives to transferring directly to the larger hard drive,    10:54:28

and all files related to Dear Kelly were stored in one    10:54:32

place, the same place they are now.    10:54:38

Q    Was the process for ingestion any different,    10:54:42

i.e., did you use the card to go to a Mac using Finder?    10:54:46

A    The exact same process.    10:54:51

Q    So after ingestion --    10:55:08

Let's -- let's talk about the -- the -- the time    10:55:11

frame prior to spring 2023.  After ingestion, the files    10:55:13

were stored on the solid state drive.  How many drives    10:55:21

were used for Dear Kelly?    10:55:24

A    In terms of in those first couple years?    10:55:26

I would say, maximum, maybe three to five.  There were very few drives because we didn't cumulatively shoot that much footage in 2021 and 2022.  We didn't have the -- it wasn't necessary to have a whole bunch of drives.  It's very straightforward.

Q     Do you still have those drives?

A     Yes, we keep all our drives.

Q     Where are they located?

A     Everything is at our office in Los Angeles.

Q     Okay.  Let's talk about the workflow from ingestion through final delivery.  Prior to -- let me first ask the question.

Prior to the -- shall we say -- migration event in spring of 2023 and then afterward, did your process for editing programs change at all as a result of that migration?

MS. EVERDELL:  Objection.

THE WITNESS:  No, we always had the same editing process.

BY MR. CANTY:

Q     Okay.  Can you describe that editing process generally?

A     Yeah.  So we use Adobe Premiere Pro, standard Creative Cloud software, and we work directly with raw files in Premiere projects.

Q    The editing that is performed, is it typically performed on native media or proxy media?

A    It's performed on native media, specifically if -- we don't work with really high-value cameras, like, let's say a RED or expensive cinema cameras that would require proxies because proxies are generally used whenever the media's so vague that it will slow the computer down.  But we've always had solid computers when we're working with relatively small-size MP4 and MOV files.  So we never made proxies.  We just worked from raw footage.

Q    Is that true of the Dear Kelly project?

A    Yes.

Q    Was there any time where proxies were -- were made in the -- in the Dear Kelly project?

A    I don't believe so.  Not that I can recall.  I actually don't know how to make them, to be -- to be honest with you.

Q    When you work with Adobe Premiere Pro --

A    Yeah.

Q    -- it creates project files for each project; right?

A    Mm-hmm.  Yes.

Q    How many project files were created for Dear Kelly?

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                              29

A    It's hard to give you the exact number, but I would -- there was one main project that we used for the editing process.  There was one master project that had different sequences and scenes, and then --

But it was one major Premiere project.  There may have been others, but not that I can -- that immediately come to mind.

Q    When you work with Adobe Premiere Pro and you create the project files, are the project files located on the computer that you're -- that's running Adobe?

A    We actually back up project files on the servers themselves because when you use -- when you save a Premiere project to the computer itself, it uses that computer's scratch disk, which has a limited number of what's called RAM, which is the graphics card.  So we would save projects to servers and -- and -- so that they can use that scratch disk to not run down the processing capacity of the computer.  So all Premiere project files were stored on the servers.

Q    Okay.  Prior to the spring of 2023, when you didn't have a server, what was the workflow?

A    It was exactly the same.  The only difference is we didn't have a server to consolidate all of our files.

Q    Okay.  So in that instance, where were the project file located?

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                      30

A    Onto hard drives that were transferred to the server in the spring of 2023.

Q    **The same hard drives that contained the raw media?**

A    Yes.  We -- our -- our practice has always been, with every project, to save project files to the same place where the raw video files are stored.  Otherwise, things can get confusing.  Like, if a laptop malfunctions or something, then you lose the project file; so we keep it elsewhere.

Q    **Okay.  And that was true of the three to five maximum drives that -- that you were using for the Dear Kelly project?**

A    Yes.  Yeah.  Definitely.

Q    **And these three to five drives that we're using, do they contain anything else other than Dear Kelly material?**

A    No.  They were --

They were specific.

Q    **And -- so they would contain all of the files -- media files and project files and whatever you needed to -- to -- to work on that Dear Kelly project?**

A    Yes.

Q    **And nothing else?**

A    Nothing else.  Not to my -- not to my knowledge.

11:00:17
11:00:20
11:00:23
11:00:25
11:00:26
11:00:29
11:00:32
11:00:35
11:00:40
11:00:43
11:00:45
11:00:49
11:00:52
11:00:55
11:00:56
11:01:00
11:01:03
11:01:03
11:01:05
11:01:09
11:01:14
11:01:18
11:01:24
11:01:25
11:01:27

A     Yes.                                              11:11:26

      MS. EVERDELL:  Sorry.  I'm just going to object,  11:11:26
and that's it.                                          11:11:29

BY MR. CANTY:                                           11:11:32

   Q     There was one main project file that was created;   11:11:36
correct?                                                11:11:41

   A     Yes.                                           11:11:41

   Q     There may have been a few others that you can't   11:11:43
recall?                                                 11:11:45

      MS. EVERDELL:  Objection.                         11:11:46

      THE WITNESS:  Possibly.  None come to mind.       11:11:47
There was one that we worked from primarily and did all of   11:11:49
the creative stuff in.                                  11:11:52

BY MR. CANTY:                                           11:11:54

   Q     Okay.  That project file references the original   11:11:55
paths of all the original source -- source media; correct?   11:12:01

   A     Yes.                                           11:12:09

   Q     And you've retained --                         11:12:09

      If there's any project file related to Dear       11:12:11
Kelly, you've retained it?                              11:12:14

   A     Yes.                                           11:12:16

   Q     And it would be --                             11:12:16

      Prior to 2023, it would be on those three to five   11:12:18
solid state drives?                                     11:12:23

   A     Yes.                                           11:12:24

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                    38

Q     And after 2023, it would be on the server?    11:12:25

A     Yes.    11:12:27

Q     To your knowledge, at any time, was any Dear    11:12:46
Kelly source file deleted?    11:12:48

A     No.    11:12:51

Q     Were any earlier edits deleted?    11:12:56

A     No.    11:13:00

      MS. EVERDELL:  Objection.    11:13:01

      THE WITNESS:  No.    11:13:03

BY MR. CANTY:    11:13:04

Q     Were any exports deleted?    11:13:04

A     No.    11:13:07

Q     Okay.  So prior to 2023, the process was that    11:13:29
the -- the project files would have been created on those    11:13:38
three to five solid state drives, and the -- the movie    11:13:45
itself would have been edited on a Mac?    11:13:52

A     Yes.    11:13:55

Q     And you still have that Mac?    11:13:57

A     Yes.    11:13:59

Q     Were there any other computers that were used in    11:14:05
editing the Dear Kelly project?    11:14:09

A     I don't believe so.  We edited everything from my    11:14:12
Mac desktop, which is the one that I use in my office.    11:14:16
It's my computer.    11:14:20

Q     Were any personal devices owned by any of the C5    11:14:29

personnel used for editing Dear Kelly footage or -- or -- or versions of the movie?

A    No.

Q    Were any Dear Kelly files ever transferred via Dropbox, WeTransfer, Google Drive or anything like that?

MS. EVERDELL:  Objection.

THE WITNESS:  I -- I don't believe so.  I don't recall.  No, I don't think so.

BY MR. CANTY:

Q    Are there any personal accounts belonging to employees or former employees of C5 which might contain Dear Kelly material?

MS. EVERDELL:  Objection.

THE WITNESS:  I don't believe so.

BY MR. CANTY:

Q    Did C5 take any steps to preserve video and audio files in light of this litigation?

A    I was advised by the counsel --

MS. EVERDELL:  I don't -- I don't want you to talk about any advice you got from counsel.  Just this is a yes-or-no question.  Sorry.

THE WITNESS:  We just -- we -- like I --

Like I mentioned, we keep everything.  So when I saw that I was being sued, I was, like, all right, I'm going to keep everything.

BY MR. CANTY:

Q    So the steps that you took to preserve video and audio files were that you saved the solid state drives that you used prior to the spring of 2023?

MS. EVERDELL:  Objection.

THE WITNESS:  Our policy for preserving audio and video files is the same whether or not there (sic) litigation involved.  We back everything up on the servers.  We don't move anything.  We keep it there for safekeeping and our (inaudible) purposes.

BY MR. CANTY:

Q    Did you send any notice in writing or discuss with any of your employees, hey, if there's a litigation that involves this material, please don't let anything get destroyed?

MS. EVERDELL:  Dennis, I'm going to object to that and instruct my client not to answer.  That's work product material and attorney-client privilege.

MR. CANTY:  Whether he performed those acts is the attorney-client privilege?

MS. EVERDELL:  You can ask him whether he took steps to preserve documents, but you can't ask him about the content of communications that were further to this litigation.

MR. CANTY:  How about -- let's -- let's try to

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                       41

rephra- -- let's do -- let's do the fact of the communication.

BY MR. CANTY:

Q    Did you communicate, at any time with any of your employees, that there was a litigation hold of any kind on materials related to Dear Kelly?

A    Our policy is always the same, just don't delete anything, and that would have gone for whether or not there's litigation or not.

Q    So is that a no?

A    I'm trying to understand your question.  Did I tell people at the office, like, hey, don't delete anything?

Is that your question?

Q    Right.

A    I told them that every day no matter what.

Q    Did you take any steps specific to this litigation to tell your employees not to destroy things related to Dear Kelly?

A    No, they would never do that.  And I'm the custodian in possession of the Dear Kelly solid state drive OWC ThunderBay that was used for Dear Kelly.  And it's in my office; so it wouldn't be tampered with.

Q    Were you involved in identifying or locating or collecting video and audio files relevant to this

litigation?                                              11:19:07

A     So we hired a third-party service called         11:19:08
Lighthouse to come to the office and do a full digital  11:19:12
imprint of the OWC ThunderBay 8 server which contains all 11:19:17
of the Dear Kelly footage, project files, et cetera.  And 11:19:22
we also gave them access to my email, Google Drive and let 11:19:26
them do a -- a scan of my iPhone because I wanted to do  11:19:30
things the right way; so I was pretty hands-off and just 11:19:34
let them do their thing and take everything.            11:19:37

Q     When did that occur?                             11:19:42

A     I have the date here.  On -- at 10:10 A.M. on    11:19:47
March 31st, 2025, Jesse Oropeza from the Lighthouse came 11:19:52
for collection.  He took the drive.  They took it to their 11:19:58
facility in the Bay Area.  Did a full -- I don't know   11:20:01
exactly what they did.  Imprint, scan, whatever.  And then 11:20:06
they eventually brought it back, and it's still there.  11:20:09

Q     Did they take a forensic image?                  11:20:13

A     Yes.                                             11:20:16

Q     Did they take any data from the three to five    11:20:32
solid state drives that were used prior to 2023?        11:20:38

A     They did not.  However, as mentioned, all of that 11:20:43
data is contained in the larger server.  There was nothing 11:20:46
that wasn't transferred from those drives to the server. 11:20:51

Q     Other than on March 31, 2025, were there any     11:21:14
other collection efforts made by anyone?                11:21:18

WILLIAM JOINER vs ANDREW CALLAGHAN
Andrew Callaghan on 02/12/2026                                              46

these objections, Defendant will produce the version of the film referenced in Paragraph 8 of the Complaint."

Do you see that?

A    Yeah.  Oh, yeah, I produced a version of the -- the final version of the film for you guys.

Q    So when this product- --

When this Request for Production came in, did you assist counsel in identifying materials that would be responsive?

A    Yes, because I know where everything is.

Q    Right.  And so what sources of data did you use to find the responsive material?

A    As far as sources of data, as I mentioned, everything is stored on the OWC ThunderBay 8 server and including the final export of the film, which was ultimately released.  So I would have been -- would have been able to provide any and all of that stuff upon request.

MR. CANTY:  I'm going to move on to a -- a next exhibit.  It's a good time for a break if everyone needs one.

MS. EVERDELL:  Sounds good.

MR. CANTY:  Okay.

THE VIDEOGRAPHER:  We're going off the record. The time is 11:27 A.M.

duplicate of the final product, and he was making small modifications based upon the audience feedback.

Q    Who owns the computer that he's using?

A    I think it was his.  Yeah.  Larry Susan's MacBook Pro.

Q    Were there any other computers owned by anyone else used to edit video for the Dear Kelly project?

A    I don't believe so.  I think it just would have been Larry Susan and I.  And then, also, those hard drives that he has there, I also still have in my possession as well.  It's just more duplicates what's on the big drive.

Q    Let's be very specific about what those hard drives contain.

What was copied to them?

A    Working project files from the hard drive, the OWC ThunderBay 8 server that contains all of the Dear Kelly files.

Q    Who decided what files would be put on the hard drive?

A    They're the files that were actually used in the final working project of Dear Kelly.  So if you just imagine, if we have a hundred terabytes of footage, and, you know, they compile maybe a thousand hours, and we -- we bake (phonetic) down an hour and 30-minute long cut, that would only be a small fraction of those files.  So

those hard drives, G: drives, only contain what was used in the -- in the final working project of Dear Kelly.

Q    What was the size of the final working project that was on the drive?

A    I'm not sure of the size of the final working --

You mean the Premiere project or the total number of files used?

Q    What is the size...

A    The -- the amount --

Q    Of the files on the -- those drives.

A    Minimal, between one and five terabytes.

Q    Who decided what files to put on those drives?

A    Larry Susan and I, because we transferred the working project -- the final working project from the larger hard drive, which -- which contains all -- all of the footage onto the smaller drives, only -- only attaching the files that were explicitly used in the final cut of the film so that we're not carrying around unused video files, and they can remain backed up on the server.

Q    Who transferred the files to the hard drive?

A    Larry Susan.  That's my recollection.

Q    Where are the drives now?

A    At the Channel 5 office.

Q    Have they ever been backed up?

A    All of the footage that's on the drive that Larry

01:24:57
01:25:00
01:25:06
01:25:09
01:25:11
01:25:13
01:25:16
01:25:20
01:25:23
01:25:24
01:25:28
01:25:35
01:25:40
01:25:43
01:25:46
01:25:50
01:25:52
01:25:57
01:25:59
01:26:06
01:26:09
01:26:22
01:26:24
01:26:30
01:26:33

Susan is using is backed up on the larger server that we used as the master server for all Dear Kelly footage.  The OWC ThunderBay 8.  So that is the -- that is the backup, the one that was imaged, the one that we've been talking about.

Q    So to summarize, if I can, some subset of the -- of the files that were on the server, you and Larry decided to put on those hard drives that we see in this video.

True so far?

A    Yes.  Only the files that were used in the final cut, and that was for the purposes of transport during the live tour.  Also, remember that the large server, the ThunderBay where we keep everything is our backup.  You don't want to travel with the backup because that -- you know, if you lose that, you lose everything.

Q    Okay.  When was that transfer made?

A    Right before tour happened.

Q    So May/June of 2024?

A    Yeah, it would have been really close to the -- the start date of the tour in June.

Q    And throughout the course of the tour, changes were made to the -- to the video?

A    Minimal changes, yes.  But the video was only cut down and down because part of the benefit of having a live

EXAMINATION                                    02:00:10

02:00:10

BY MS. EVERDELL:                                      02:00:14

Q     Okay.  Andrew, the OWC server, I guess, solid    02:00:15
state drive, what -- what should we call that?         02:00:21

The OWC?                                    02:00:23

A     Yeah, you could just call it the OWC.            02:00:23

Q     Okay.  After May of 2024, were any changes made   02:00:26
to that server?                                       02:00:30

A     No changes or modifications were made to the     02:00:31
server.  Only new things were added because there were a   02:00:35
couple scenes that we filmed past that date.          02:00:38

Q     Okay.  Have you ever met Bill Joiner?           02:00:41

A     I have never met Bill Joiner.                    02:00:44

Q     To your knowledge, has any other employee or a   02:00:45
contract worker at Channel 5 met Bill Joiner?         02:00:47

A     They have not.                                   02:00:50

Q     Have you ever spoken to Bill Joiner?            02:00:51

A     I've never spoken to Bill Joiner.               02:00:53

Q     Okay.  To your knowledge, has anyone else at     02:00:55
Channel 5 -- employee or working for Channel 5 -- have   02:00:58
spoken to Bill Joiner?                                02:01:01

A     No.                                    02:01:02

Q     Have you ever seen Bill Joiner?                  02:01:03

A     I have never seen Bill Joiner.                   02:01:05

# EXHIBIT 6



21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Abigail B. Everdell**
212 603 6468 tel
212 379-5244 fax

abigaileverdell@dwt.com

March 9, 2026

<u>**Via Email**</u>
Meghan Murphey
Matt Murphey
Dennis Canty
Murphey & Murphey PC
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656

      Re:    *Joiner v. Callaghan et al.*, Case No. 24-1160-CBM

Counsel:

I write in regards to Plaintiff's claims for violations of the Wiretap Act, 18 U.S.C. §§ 2511, 2520 and Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510, 2520. These two federal causes of action (the "Wiretap Act Claims") are predicated on defendants Andrew Callaghan, Channel 5 LLC, Evan Gilbert-Katz, and Nicolas Mosher (the "C5 Defendants") allegedly making "surreptitious recordings" of Plaintiff's communications. We have participated in fulsome discovery regarding these claims, producing 361 documents and raw footage files, including a supplemental production of 36 additional raw footage files we served today. Our client has sat for a deposition. None of this has yielded any evidence that our clients eavesdropped on or surreptitiously recorded your client. Nor will you be able to provide evidence that occurred. Accordingly, it is time to dismiss these claims.

While the C5 Defendants' document productions and deposition testimony to date more than sufficiently demonstrate the baselessness of your claims, I write to address some questions raised at the February 12, 2026 deposition of Channel 5 LLC's designee Andrew Callaghan, to resolve any remaining doubt. For the reasons explained in more detail below, we demand that you dismiss your Wiretap Act Claims.

      **A.**      **There Is No Evidence to Support the Wiretap Act Claims**

The Wiretap Act, which is a part of the ECPA, imposes liability on a person who "intentionally intercepts . . . any wire, oral, or electronic communication," uses a device to so "intercept," or discloses any "intercepted" communication "knowing or having reason to know that the information was obtained through [] interception." 18 U.S.C. § 2511(1)(a), (c), (d), (e); *see* 18 U.S.C. § 2520(a); *see also*. The term "intercept" means that one must "*actually* [acquire]

Anchorage | New York | Seattle
Bellevue | Portland | Shanghai
Los Angeles | San Francisco | Washington, D.C.

www.dwt.com

March 9, 2026
Page 2

the contents of a communication[.]" *United States v. Smith*, 155 F.3d 1051, 1058 (9th Cir. 1998) (emphasis in original); *see also Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009). For a cause of action to arise, the intercepted communication must also have been confidential, *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021), and intercepted "without the consent of at least one party to the conversation." *Pyankovska v. Abid*, 65 F.4th 1067, 1074 (9th Cir. 2023). Accordingly, for Mr. Joiner to prove his claim, he must prove (1) he engaged in a confidential communication; (2) that this communication was intercepted without the consent of at least one party to it; and (3) that the C5 Defendants either obtained the communication through interception or, knowing the communication had been obtained through interception, obtained and disclosed it anyway.

To date, Mr. Joiner has put forth no evidence in support of any of these elements. He has not even identified what communication was allegedly intercepted, let alone provided any evidence that the C5 Defendants intercepted a communication. Instead, you have argued that because the C5 Defendants recorded video of the outside of Mr. Joiner's house, "[i]t is a reasonable inference" that they "recorded not only the house but the persons talking in the interior." Dkt. 22 at 3. While the trial court may have considered it sufficient to survive a motion to dismiss, this proposed "inference" is not actually evidence of any of the elements of the Wiretap Act Claims. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1245 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987) (a plaintiff opposing summary judgment is not entitled to inferences that "violate[] common sense"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (To survive a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Here, not even a scintilla of evidence exists.

In an attempt to resolve any doubt that no Wiretap Act violation ever occurred, the C5 Defendants agreed to produce their footage and documents evidencing their presence on or in the immediate vicinity of Mr. Joiner's property. To that end, they made their first production of documents on October 21, 2025. This production includes footage of the C5 Defendants recording from a hiking trail and open field adjacent to the Shady Canyon community in Irvine, California on October 12, 2021; from inside the Shady Canyon community as guests on February 4, 2022; and from the MacArthur Court office park in Newport Beach where they attempted to visit the offices of Mr. Joiner's company Message Broadcast on February 4, 2022. None of this footage captures Mr. Joiner (or anyone associated with him, as far as we can tell) in any fashion at all, nor does any of it logically support an inference that he was ever recorded or that any of his communications were intercepted. Indeed, there is no evidence that the C5 Defendants even had the opportunity to intercept any confidential communications, much less the equipment necessary to do so from the locations they accessed.

During the deposition of Andrew Callaghan on February 12, 2026, Mr. Canty raised questions about C5 Defendants' production of documents. On the assumption that you believe these concerns are grounds to question whether any evidence might exist to support the Wiretap

March 9, 2026
Page 3

Act Claims, we have looked into them and can tell you they are not, for the following reasons: First, at the deposition, Mr. Canty observed that the produced video files have sequential numbering, and that in some cases file numbers in a continuous sequence were missing. We re-reviewed all of the files in those sequences and can confirm no documents are missing from the sequential sets of files in the server where they are stored. Instead, we did not produce certain files in sequences because they either (1) were not responsive to Plaintiff's requests for production because they did not appear to have been recorded at or in the near vicinity of Mr. Joiner's home or workplace, and did not otherwise evidence any recordings made in those locations or of Mr. Joiner; (2) were so blurry that their content could not be determined, or (3) had been processed for review as empty files with a zero file size. We have since obtained re-loaded copies of all the empty files and have reviewed them. Concurrent with this letter, we are making a supplemental production of any responsive documents from this set of re-processed files, along with other files which, from context and on additional review, appear to have been recorded at the MacArthur Court office park, in the near vicinity of Mr. Joiner's home, or elsewhere in Shady Canyon. As you will see, none of these files provide even a shred of evidence supporting your Wiretap Act Claims.

Mr. Canty also questioned why the C5 Defendants had produced more documents from a folder with the file path "Finding Bill Joiner\01_Footage\Bill Joiner Day 1\Proxies\A7" than from the folder with the file path "Finding Bill Joiner\01_Footage\Bill Joiner Day 1\A7\PRIVATE\M4ROOT\CLIP." We reviewed the original folders to determine why this occurred, and confirmed that four of the files in the latter folder were processed as empty files with a 0 file size. An additional file in the "M4ROOT\CLIP" folder contained video footage we did not realize at first review was recorded at a coffee shop within the MacArthur Court office park. We had produced duplicates of all five files from the "Proxies" folder. In the interest of completeness, however, our concurrent supplemental production includes the five duplicate "M4ROOT\CLIP" video files.

We trust that this explanation resolves your concerns about the C5 Defendants' production of documents and that, pursuant to your ethical obligations under FRCP 11(b)(3), you will voluntarily dismiss, at minimum, your Wiretap Act Claims. *See, e.g., Gin v. Chicago Ins. Co.*, 106 F. 3d 407 (9th Cir. 1997) (affirming sanctions award where "Appellants' frivolous argument resulted in prolonging the litigation"); *Lemaster v. U.S.*, 891 F.2d 115, 118 (6th Cir. 1989) (affirming award of sanctions where plaintiffs "push[ed] ahead with their case" notwithstanding its lack of merit).

Please provide your availability within the next week to meet and confer on this matter.

This letter is sent without waiver of my clients' rights, defenses, privileges, remedies, or claims, all of which are expressly reserved.

March 9, 2026
Page 4

Sincerely

Abigail B. Everdell
Davis Wright Tremaine LLP

CC:   Jonathan Segal (jonathansegal@dwt.com)
      Sam Lachman (samlachman@dwt.com)

# EXHIBIT 7

**Pearmain, Lina**

---

| | |
|---|---|
| **From:** | Dennis Canty <Dennis@themurpheylawyers.com> |
| **Sent:** | Wednesday, March 25, 2026 8:58 PM |
| **To:** | Everdell, Abigail; Lachman, Sam; Meghan Murphey; Matt Murphey |
| **Cc:** | Segal, Jonathan; Kerry Moynihan |
| **Subject:** | RE: Channel 5 Defendants' Third Production of Documents |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

[EXTERNAL]

Abigail –

Following today's telephone call, we write to memorialize deficiencies in Defendant Channel 5 LLC's Objections and Responses to Plaintiff's First Set of Requests for Production (the "Responses") and to formally request a telephone conference to meet and confer prior to motion practice.  We've tried to group the disputes into categories, which we address in turn below.

## RELEVANCE TO FEDERAL v. STATE CLAIMS (RFP NOS. 7, 8, 9, 11, 16, 17, 19, 22, 23)

In response to RFP Nos. 7, 8, 9, 11, 16, 17, 19, 22, and 23, Channel 5 refuses to produce any documents whatsoever.  For each of these, C5 objects on the basis of relevance to the Federal Claims and outside the scope of the Court's Order staying discovery on State Claims.

Plaintiff's claims under the Federal Wiretap Act, 18 U.S.C. § 2510 et seq., and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 are not stayed. Every one of the RFPs at issue is directly, substantively relevant to those federal claims.

> **RFP No. 7** (purpose of Defendants' presence at the Joiner Residence) and **RFP No. 8** (purpose at the Joiner Business): The "purpose" of Defendants' presence goes to the heart of intentional interception under the Wiretap Act. The Act imposes liability on any person who "intentionally intercepts" an oral, wire, or electronic communication. 18 U.S.C. § 2511(1)(a). Documents evidencing why Defendants were at Plaintiff's home and office are directly relevant to intent and knowledge — essential elements of the federal claim.

> **RFP No. 9** (ghillie suit): Callaghan and his co-defendants wore ghillie suits — military-grade camouflage — while conducting surveillance of Plaintiff's residence. Files from the defendants' own hard drives label the footage subdirectory "Bill Joiner home invasion." Documents concerning the acquisition, possession, and use of ghillie suits in proximity to the Joiner Residence are probative of Defendants' deliberate, premeditated plan to surveil Plaintiff without detection — directly relevant to the intentional interception elements of 18 U.S.C. § 2511(1)(a) and (1)(b).

> **RFP No. 11** (attempts to locate Joiner): Documents evidencing the pre-surveillance steps Defendants took to locate Plaintiff are relevant to the planning, purpose, and deliberateness of the interception activity.

> **RFP Nos. 16 and 17** (intent regarding use of recordings; inter-defendant communications regarding Joiner): Communications between Defendants regarding Plaintiff and regarding their intent to use recordings directly bear on the federal claims. They go to mens rea, planning, and the scope of the conspiracy to intercept communications.

1

**RFP Nos. 19 and 23** (communications re recordings of Joiner Properties; all communications regarding Joiner): Same analysis. Inter-defendant communications about Plaintiff and the recordings of his properties are squarely relevant to the wiretapping claims, irrespective of any state law claim.

**RFP No. 22** (communications regarding litigation and pre-suit demand letters): Channel 5 was put on notice of Plaintiff's claims through pre-suit demand letters before this action was filed. Communications between the Defendants once they knew of litigation may reveal discussions of recording efforts, preservation or destruction of relevant materials, knowledge of the wrongfulness of their conduct and their state of mind — factors relevant to the "intentional" element of the Wiretap Act and to any willfulness finding.

Your blanket refusals to produce on this basis are unwarranted.

## FIRST AMENDMENT PRIVILEGE (ALL REQUESTS)

Across nearly every response, Channel 5 asserts a sweeping First Amendment and California constitutional privilege over "unpublished footage" and "unpublished editorial information." You invoked it again on our call today.  The qualified reporter's privilege does not apply here.

As Ninth Circuit authorities recognize, and as this court has previously stated in this case, the First Amendment to the Constitution is not a license for a "reporter" (even if Callaghan could be called that) to trespass and intrude.

crimes committed during the course of newsgathering," and "[t]he First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office." *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971); *see also Turnbull v. Am. Broad. Cos.*, 2004 WL 2924590, at *18 (C.D. Cal. Aug. 19, 2004) (citing *Dietemann*, 449 F.2d at 249-50).

Fundamentally, the journalist's privilege exists to protect the editorial process and, particularly, to shield confidential sources from compelled disclosure. Shoen I, 5 F.3d at 1292; Mitchell v. Superior Court, 37 Cal. 3d 268, 279 (1984). It was never intended to permit a media defendant to suppress evidence of its own alleged illegal conduct. Channel 5 and Andrew Callaghan are defendants in this action. The privilege protects journalists from being conscripted as unwilling witnesses against third parties; it does not protect journalists who themselves stand accused of wiretapping from producing evidence of their own conduct. As your own firm has published with respect to the California Constitution, the immunity conferred on a reporter, even when available, isn't available in a civil action in which the reporter is a party.

Even when the reporter is a third party, the Ninth Circuit recognizes that the privilege yields where the party seeking discovery shows that: (1) the information is highly relevant to the claims at issue; (2) the information cannot reasonably be obtained through other means; and (3) there is a compelling need for the information. Shoen I, 5 F.3d at 1292–93; Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Shoen II")  All three elements are satisfied here in spades.

Now you have stated in your email this evening: "As I also stated clearly and repeatedly, we did not withhold any relevant evidence based on privilege."  Great.  You shouldn't have any problem dropping the objection.  Thanks.

## PRIOR ITERATIONS OF THE FILM (RFP NO. 1)

2

In response to RFP No. 1, Channel 5 agreed to produce only "the version of the FILM referenced in Paragraph 8 of the Complaint." This limitation is improper. RFP No. 1 expressly seeks the FILM as defined in the RFPs, which expressly includes "the final cut and any and all prior iterations of said film, whether or not shown to the public, including any film previously referred to as 'Finding Bill Joiner.'"

Prior iterations of the film are directly relevant to the federal claims. According to Mr. Callaghan, various versions with different cuts were produced.  The other versions may contain evidence of recordings which those previously produced do not.

## DIRECT v. CIRCUMSTANTIAL EVIDENCE

Following our latest communications, perhaps this next dispute is best characterized as one concerning direct v. circumstantial evidence.

Channel 5's Third Production contains a gap in the "Home Invasion" A7#2 camera footage: files C0040 through C0046 are entirely absent. The footage immediately preceding and following this gap shows Defendants in ghillie suits trespassing in Shady Grove.

You confirmed on our call that you are withholding this material. Your stated basis shifted during the conversation.  Your email this evening now states: "They were not filmed within 1000 feet of your client's home (the parameter in your own discovery requests) and contain no evidence of wiretapping."   Perhaps you are oversimplifying Request No. 6 ("All DOCUMENTS **relating to, referring to or** evidencing DEFENDANTS' physical presence within 1000 feet of the JOINER PROPERTIES.") Given the context, these files fall within that request, but they are likely also FOOTAGE, (**RPD 2**) which relates to Defendant's presence at the JOINER PROPERTIES (**RPD 5**) and/or their purpose (**RPD 7)** and related to attempts to surveille Joiner **(RPD 12),** to name a few.

Federal Rule of Civil Procedure 26(b)(1) defines discoverable material broadly as anything "reasonably calculated to lead to the discovery of admissible evidence." The decision to withhold it based on a unilateral determination that it lacks relevance is precisely the kind of impermissible self-serving scope limitation that Rule 26 is designed to prevent.

Your position betrays perhaps a more basic area of dispute.  It seems that, in order to be "relevant" in your view, the evidence must be a video file taken in a certain proximity of a certain place from which you think it might be possible to record Mr. Joiner.  A file which contains *direct* evidence of recording (or not).  Let us be clear.  The video you are withholding seems undoubtedly to have been taken by the ghillie-suited defendants and their iphone toting, drone flying cohorts whilst on their self-styled "daring mission for revenge." Based on review of related content, it is evident that such footage relates to what they were doing on that trip and why, and may contain discussion of what they've done and what they are planning to do.  It's reasonably calculated. And we will move to get it if we have to.

## ADEQUACY OF COLLECTION

At deposition, Mr. Callaghan testified that Channel 5 retained Lighthouse eDiscovery to collect media for this litigation. He testified that Lighthouse took a forensic image of a server he acknowledged was not created until the spring of 2023, well after the relevant surveillance events. Mr. Callaghan also testified that: (a) the original Dear Kelly footage was stored on a Mac desktop computer and three to five solid state drives; (b) he retains all of those original devices; and (c) Lighthouse conducted no collection of the original Mac or the original solid state drives.

Counsel has relied (without verification) on Mr. Callaghan's representation that everything was copied to the server.  This is essentially custodian self harvesting without any verification or compliance monitoring by counsel.  Courts have been sanctioning parties and counsel for that for at least 20 years since *Zubulake*.

3

We do not consider this to be adequate search and collection or a "reasonable inquiry." I'm thinking right now that we should consider the following: (1) imaging of the original Mac desktop and all solid state drives identified by Mr. Callaghan; (2) production of a portion of the image already created of the server; (3) production of the Adobe Premiere Pro project files for the Dear Kelly project, which may contain a log of ingested media, version history, and metadata bearing on what was recorded and retained; and (4) a supplemental declaration from a Lighthouse representative addressing the scope of collection and confirming what was and was not captured.

I need to refine these thoughts with my forensic consultant and will be prepared to further at the conference. I hope we can find a solution short of motion practice. At the moment, my Monday is pretty open. Should we plan to talk then?

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Wednesday, March 25, 2026 6:47 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis –

To your first point, you are mischaracterizing what I said during our call. As I explained clearly and repeatedly, we performed a diligent search and produced all footage and other documents showing our clients within the near vicinity of Mr. Joiner's home or office or evidencing any recordings made of Mr. Joiner or his home. Other footage files that do not show either – including those between C0040 and C0046 – are not relevant and are not reasonably calculated to lead to the discovery of relevant evidence. To be clear: We have reviewed these files. They were not filmed within 1000 feet of your client's home (the parameter in your own discovery requests) and contain no evidence of wiretapping. In addition, I never stated that "the parameters" of our review were limited to only videos showing our clients "actually trespassing on Mr. Joiner's property." If that were the case, we would have produced no documents at all, since our clients never trespassed on Mr. Joiner's property. Your claim is also belied by the numerous video files we produced showing our clients *outside* of the Shady Canyon community and in the Shady Canyon clubhouse. As I also stated clearly and repeatedly, we did not withhold any relevant evidence based on privilege.

We moreover disagree entirely that the additional discovery you have proposed is proportional to the needs of the case. As Mr. Callaghan testified, Channel 5 put copies of all footage files for the documentary on a single solid-state drive, and used the files from that drive to create the Documentary. You have offered no reason to believe that the additional discovery measures you have proposed might lead to additional evidence to support your federal claims, because there is none. Instead, you are proposing these measures *five months* after we produced footage to you, and only after we have insisted upon meeting and conferring on your lack of evidence. Notably, you have not produced a single piece of evidence to support your federal claims. There is little question here that you are engaged in a fishing expedition and employing delay tactics.

This being said, and without waiver of all rights, we will consider any reasonable requests for supplemental information.  Please send those over promptly.


Best,
Abigail


**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Wednesday, March 25, 2026 3:41 PM
**To:** Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Everdell, Abigail <AbigailEverdell@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

---

**[EXTERNAL]**

---

Abigail –

Thanks for the chat today to discuss your letter attached.

As stated, we are continuing to review your supplemental production and discuss with our forensic consultant.  For the reasons discussed and evidenced in your letter, we continue to have concerns about whether all material relevant to our "Federal Claims" has been collected and produced.

Among other things, we discussed the glaring gap in your production for camera A7#2 between C0040 and C0046.  The preceding media and the following media show the trespassers in ghillie suits commencing the self-described "home invasion."  You stated that you are withholding this material.  You weren't exactly clear on the basis for this, one moment referencing journalistic privilege, and the next, relevance.  As stated on the call, it appears to us that subject matter and timing of the framing media support center-bullseye relevance for the material omitted.

You stated that you have reviewed the material, but because it doesn't show the protagonists on Mr. Joiner's property, it isn't relevant.  As I stated, to the extent the material may lead to the discovery of admissible evidence – e.g. the protagonists located in a previously unknown area, discussing what else they have done and recorded that day, or their plans for the evening's incursion – it is unquestionably discoverable on this issue.  You have now clarified for us the parameters of your review and production: if it doesn't show the protagonists actually trespassing on Mr. Joiner's property, you have decided it isn't relevant and we don't get to see it.

It appears we have a major dispute about the parameters of your collection and review that we need to address with the court.

Further, deposition testimony revealed that counsel's collection of media was limited to Mr. Callaghan's server.  That server did not exist at the time of the visits to Mr. Joiner's home and office.  Mr. Callaghan testified that the "Documentary" project was begun well before that time, and the media at issue in your

5

present productions was originally transferred to a Mac computer and solid state drives.  He testified he is still in possession of these devices.  Based upon his representation that he later transferred all data from the other devices to the server, you collected only the image of the later created server.  You have conducted no search of the original media, nor any investigation as to whether his representations are accurate.

In other words, the accuracy and completeness of the production is tethered entirely to the word of the defendant.  A defendant who, as the deposition testimony established, has repeatedly and admittedly misrepresented the contents of the storage devices in his possession.  Who has a reason to lie and a history of lying.

We do not agree that this is a reasonable search under the Federal Rules.  We have another major dispute.

As I indicated, we have some ideas on how we might rectify the problems with collection and production.  This involves imaging and production of the original hard drives, perhaps production of a portion of the image already performed, and production of the Adobe Premier Pro project files, which may provide a log of the media ingested as part of the project and its disposition over time.  I want to provide the most specific information I can about this request, and will be conferring with my forensic consultant.

I will provide you with further details as soon as possible.

---

**From:** Lachman, Sam <SamLachman@dwt.com>
**Sent:** Monday, March 9, 2026 5:47 PM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>
**Cc:** Everdell, Abigail <AbigailEverdell@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** Channel 5 Defendants' Third Production of Documents

Hello,

The Channel 5 Defendants' third production has been uploaded to DWT's secure FTP portal.  Instructions are attached.  Please let us know if you have any trouble accessing the files.

I've also attached a cover regarding Plaintiff's federal claims.

Thanks,
Sam



**Sam Lachman**  She/Her/Hers
**Associate |** Davis Wright Tremaine LLP

**P** 213.633.8611  **C** 919-780-9795  **E** samlachman@dwt.com
**A** 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071

**DWT.COM**  in

# EXHIBIT 8

**Davis Wright Tremaine LLP**

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Abigail B. Everdell**
212 603 6468 tel
212 379-5244 fax

abigaileverdell@dwt.com

April 3, 2026

<u>**Via Email**</u>
Meghan Murphey
Matt Murphey
Dennis Canty
Murphey & Murphey PC
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656

   Re: *Joiner v. Callaghan et al*., Case No. 24-1160-CBM

Counsel:

   I write to memorialize our meet and confer this morning.  During our call, we discussed Plaintiff's claims for violations of the Wiretap Act, 18 U.S.C. §§ 2511, 2520 and Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510, 2520 (the "Wiretap Act Claims"). Note that we have received your email of 3:15 p.m. today, and do not entirely agree with your articulation of what we discussed and what we agreed to.  The below accurately sets out our position.

   We first discussed your requests for additional document collections.  In your March 30, 2026 email, you asked us to "[i]mage the hard drives which originally stored the media collected for the Project" and "[c]ompare those images to what was first collected from the server, and provide a Lighthouse declaration regarding the comparison, which describes any relevant differences."  We explained that we are currently in the process of collecting the relevant hard drives and will be asking Lighthouse to perform the requested comparison.  You also asked us to "[p]rovide all of the Adobe Premier Pro project files (*..prproj) associated with the Project and contained on any of the drives" and "[p]rovide all of the Adobe Premier Pro Media Cache Databases (*.db) associated with the Project and contained on any of the drives."  We explained that we have not yet determined how to export these files and need to understand they contain before deciding whether their production is appropriate under Rule 26.  You indicated that the files did not need to be created, but should exist already.  We agreed to look for them and provide you with an answer as soon as practicable.  Finally, contrary to your email, we did not agree to "Image the Mac hard drive which was originally used to transfer and edit metadata for the project"—in fact we didn't discuss this Mac computer at all.  As Mr. Callaghan testified, he did not store files on this computer, but used it to transfer files to external drives where the files were thereafter held in storage.  We don't understand why you have asked for this, and imaging

4925-5972-7773v.1 0123725-000001

Anchorage New York Seattle
Bellevue Portland Shanghai
Los Angeles San Francisco Washington, D.C.

www.dwt.com

April 3, 2026
Page 2


an entire computer without any reason to believe it contains relevant material seems out of proportion to the needs of the case.  If you would like to explain to us the reasoning behind your request, we are happy to discuss further.

We next discussed the Channel 5 Defendants' Responses and Objections ("R&O") to Plaintiff's Requests for Production.  Notably, we served the R&O to the RFPs on June 9, 2025.  It was not until March 25, 2026, ten months later, that you sent your email outlining your disagreement with the Channel 5 Defendants' parameters for production.  We have produced to you every recording made within 1000 feet of your client's home or business office, as well as documents evidencing the Channel 5 Defendants' presence near your client's home or business.  We searched diligently for and were not able to find a single recording made of your client or any evidence (direct or indirect) that any of his communications were ever intercepted or recorded.  In short, there is no evidence to support your Wiretap Act claims.  The additional documents you have demanded are not reasonably calculated to lead to the discovery of relevant evidence, but instead ask for increasingly irrelevant documents.

That being said, in the interest of moving this case along, we have agreed to produce the following categories of documents, if any exist:

- Published iterations of the film (RFP No. 1);
- Documents evidencing the purpose of the Channel 5 Defendants' physical presence at Plaintiff's residence and/or business (Nos. 7-8);
- Documents evidencing the purpose of the Channel 5 Defendants' purchase, possession, and/or use of a ghillie suit within 1000 feet of Plaintiff's residence (note we do not believe any such documents exist) (No. 9);
- Documents evidencing the Channel 5 Defendants' attempts to locate Plaintiff (No. 11);
- Documents relating to the collection of any recordings of Plaintiff's residence and/or business (No. 19).

I told you that we would not produce any additional documents in response to RFP No. 16, which asks for documents regarding the Channel 5 Defendants' intent to use recordings of Plaintiff's residence and/or business.  These recordings are not actionable under the Wiretap Act, thus the Channel 5 Defendants' intent to use them is irrelevant.  To the extent any documents exist regarding the Channel 5 Defendants' intent to use any of Plaintiff's intercepted or surreptitiously recorded communications, we will of course produce those, but we have no reason to believe any such documents exist.  We also will not produce documents containing every mention of Plaintiff or documents discussing the litigation—except insofar as these documents are responsive to other requests we have agreed to—as these demands are not proportional to the needs of the case and constitute little more than an end-run around the discovery stay for Plaintiff's state law claims.


4925-5972-7773v.1 0123725-000001

April 3, 2026
Page 3


        Regarding your demand for video files C0040 through C0046, as we have repeatedly explained, these do not include or evidence any recordings of Plaintiff and were not recorded within 1000 feet of his home or office.  To the extent any of these videos evidence the purpose of the Channel 5 Defendants' presence near Plaintiff's home, or are otherwise responsive to any of the other requests we have agreed to respond to, we will produce them.

        This letter is sent without waiver of my clients' rights, defenses, privileges, remedies, or claims, all of which are expressly reserved.


                                    Sincerely



                                    Abigail B. Everdell
                                    Davis Wright Tremaine LLP



CC:    Jonathan Segal (jonathansegal@dwt.com)
       Sam Lachman (samlachman@dwt.com)

# EXHIBIT 9

**Pearmain, Lina**

| | |
|---|---|
| **From:** | Everdell, Abigail |
| **Sent:** | Thursday, April 23, 2026 12:17 PM |
| **To:** | Dennis Canty; Lachman, Sam; Meghan Murphey; Matt Murphey |
| **Cc:** | Segal, Jonathan; Kerry Moynihan |
| **Subject:** | RE: Channel 5 Defendants' Third Production of Documents |

Dennis,

I disagree entirely that our positions are a moving target.  We have been entirely consistent since our letter memorializing our meet and confer, and I have told you clearly and repeatedly what we have agreed to produce.  From your response, we take it that you are continuing to press for irrelevant footage.

On the project files, I have had a chance to look at what these files look like when opened in the proper application and I disagree with you that there is no chance they are privileged – some include editorial notations which may include legal advice.  Beyond this, the ones I have seen are comprised of irrelevant and sensitive editorial process material.  It would be malpractice for any attorney to produce documents like this by "drag and drop" without pre-review.  I moreover do not understand why you think they are relevant in any way, and you have yet to offer a coherent theory.  While you have suggested these may show "missing" files, that will not indicate what those files are or whether they are relevant and responsive.  This is not a matter of a tech team discussing how to share them – it's a matter of you explaining to me how they contain relevant information and how we are supposed to determine that is the case.  I'm happy to get on a call with your tech personnel next week to get an explanation.

We will propose edits to your proposed submission today.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Thursday, April 23, 2026 2:59 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

**[EXTERNAL]**

I advised Monday that we would get the court involved by the end of the week.

We have made clear what our asks are, including the fact that your positions are a moving target.  And your refusals to make sworn responses as to what exactly you are producing are part of the problem.  And the fact that today, as I write this, you cannot tell me what exactly you are agreeing to produce, is another part.

We do not at this time believe that producing 1500 project files is burdensome - they contain no privileged information that would require review.  Drag and drop.  Easy.  Lighthouse can do it with a couple of keystrokes.  If you want to schedule a call with our tech team and yours, to discuss possible refinement, let's do it early next week.  We can report any resolutions to the court on Tuesday or Wednesday.

We will send an email to the court today, with or without your input.

Thanks.

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Thursday, April 23, 2026 11:36 AM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis –

Thanks for this.  A couple things:

First, we have not objected to producing all of C0040–C0046.  We agreed to re-review these and produce any that fall within the expanded responsiveness parameters we agreed to, including if they refer to the purpose of Defendants' presence near your client's home or attempts to find your client.  One or more of the videos does fall within the parameters we agreed to (apologies I don't know how many exactly; Sam has had a family emergency and is OOO today).  Your ongoing demand is for videos that are not recordings of your client, do not include any reference to recordings of your client, were not recorded within 1000 feet of your client's home, and do not discuss the purpose of defendants' presence near your client's home.  Please confirm you believe we still have a dispute here.

Second, in my email yesterday I offered to meet and confer on a targeted approach to the project files.  You did not take me up on that.  Are you taking the position that you are entitled to all project files without regard to relevance?

Please let me know, and thanks.  If we still have a dispute to tee up, I can send availability for next Tuesday or Wednesday.  I'm not available Monday.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Thursday, April 23, 2026 1:06 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

[EXTERNAL]

Abigail –

Here is a draft of the statement to work with.  Please provide input.

Happy to continue dialog, but I think we better get a conference scheduled.

Thanks.

---

**From:** Dennis Canty
**Sent:** Thursday, April 23, 2026 8:05 AM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Thanks, Abigail.

I'll consider your latest missive the conclusion of the meet and confer.  Per the below procedures, we need to send an email to the judge today.  We'll be working on a draft short statement.  I can fit in a conference at the judge's pleasure at any time Mon through Wed.  Please respond with your availability.

https://apps.cacd.uscourts.gov/Jps/honorable-karen-l-stevenson

**Discovery Motions:**

a. **Generally.** Discovery motions are to be scheduled before the magistrate judge unless otherwise ordered by the district judge. The parties are advised to review the procedures and standing orders of the assigned district judge before filing any discovery motion. Strict compliance with Local Civil Rule 37 is required. The Court may take a motion under submission without oral argument. See Local Civil Rule 7-15.

b. **Pre-Motion Telephonic Conference.** In the Court's experience, discovery disputes may often be resolved without the need for formal motion papers. In order to facilitate the just and expedient resolution of discovery matters and to conserve the parties' and Court's resources, the Court requires the parties to follow the following procedure for filing discovery motions. This procedure **does not** apply to ex parte applications (see Procedure 5) or where a party to the discovery dispute is in custody.

   i. First, as Local Civil Rule 37-1 requires, the parties must meet and confer in an attempt to resolve any discovery dispute.

   ii. Once the parties have determined that they have reached an impasse, within twenty-four hours of the last conference, the movant must e-mail the CRD seeking a telephone

3

conference with the Court to discuss the discovery dispute. The e-mail must include (1) at least three proposed times mutually agreed upon by the parties for the telephone conference; (2) a **neutral** statement of the dispute; and (3) one sentence describing (not arguing) each parties' position. The movant must cc: opposing counsel on the e-mail.

      iii.   **No discovery motion may be filed until the Court has conducted its pre-motion telephonic conference** unless the movant has obtained leave of Court sought by an ex parte application. The Court may strike any discovery motion filed in violation of this Rule and Procedure.

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Wednesday, April 22, 2026 6:47 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis,

I appreciate the clarity on the points I asked about.

In the interest of mutual clarity on the remaining issues, I am summarizing below what we have done, what we have agreed to do, and what we object to doing:

What we have done and agreed to:
- We performed a forensic image of the drive where all footage for the Documentary was transferred and held in storage even before your client initiated this dispute.
- We performed a diligent search of that drive for any recordings of your client and found none.
- We agreed to produce all recordings made within 1000 feet of your client's home or place of business.  We have produced substantially all such recordings, supplemented this production when alerted to documents you believed might be missing, performed an additional search, and will be supplementing again with the few straggler or duplicative recordings we found that may fall into this category.  We still have found no recordings of your client's communications and nothing that provides any reason to suggest any such recordings were ever made.
- We collected from relevant email accounts and mobile devices used during the relevant time period, and performed a diligent search for all documents and communications evidencing any recordings of your client.  We found none.  For avoidance of doubt, we also searched for all documents evidencing our clients' presence near your client's home or business, and produced those.
- We have since agreed to also produce all recordings, documents, or communications evidencing the purpose of our clients' presence at or near Mr. Joiner's home or place of business, or showing attempts to find Mr. Joiner, and plan to produce those this week.
- We have also agreed to produce every published version of the Documentary, though you have not cited any recording of your client in any version of the Documentary (nor could you).  We are working on those and will produce them this week or next.
- We were able to locate two drives drive where the relevant footage filmed in October 2021 – including the "ghillie suit" scene – was originally stored before it was copied wholesale to the

4

solid-state drive we imaged and searched.  While one of these drives was damaged in shipping to our forensic vendor, we were able to find a second copy of the very same drive.  We have no reason to believe that this drive contains any additional footage beyond what we reviewed, our forensic vendor will be picking it up to perform a comparison analysis.

- Note that the original drives where raw footage was stored were not kept in any normal filing system, since once they had been transferred over to the solid-state drive they had no ongoing purpose.  We were lucky to have been able to find the most relevant drives.  We have reviewed all the others we could locate, and have not found any that appear to be original repositories for raw footage relevant to your claims.

- We have performed an on-site search of the Mac computer you identified, from which the Documentary was edited while connected to the solid-state hard drive where all raw footage files were stored.  We found no reason to believe this computer contains additional evidence relevant to your client's Wiretap Act claims.

What we will not agree to do:

- On the Adobe project files, we searched for all files with the extensions you identified and returned more than 1500 related to the Documentary.  Reviewing each of these files would be an undue burden, especially since we aren't sure what you're even looking for that is relevant to your claims – you have not identified any version of the Documentary that contains a recording of your client, so we do not see how project files related to its editing are relevant.  We are open to meeting and conferring on a reasonable protocol to target what you're looking for, but we object to producing all of these as they are not relevant to your claims.

- We will not be amending our discovery responses, as we see no need to do this.  If you have a legal basis for demanding we do so, please send it along.

- We will not be creating forensic images of the Mac computer.  This is an expensive and burdensome process, and not proportional to the needs of the case as we already imaged the relevant hard drive and found nothing of interest on the mac computer itself.

- Aside from the measures we have agreed to above, we will not be engaging in any further document collections or productions absent a legitimate basis to believe that these steps will result in relevant evidence.

In sum, we have already taken measures far beyond what is proportional to the needs of your client's federal Wiretap Act claims, and have found no direct or indirect evidence to support those claims.  When you demanded more, we provided more notwithstanding its now-obvious lack of relevance.  And when you again demanded more, we once again agreed to provide you even more materials, which still do not support your client's Wiretap Act claims in any way.  For your part, you have continued to insist upon additional measures without any reasonable explanation of how they will lead to relevant evidence.  Instead, you appear to now be searching for ways to create an inference that our clients have somehow failed to participate in discovery in good faith, or somehow spoliated evidence without any basis for that belief.  This has gone far enough.  Even without our forthcoming supplemental productions, you have more than enough to establish that the Wiretap Act claims are meritless.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104

5

DWT.COM

**From:** Everdell, Abigail
**Sent:** Tuesday, April 21, 2026 9:33 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis,

We'll get you a response on this tomorrow.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Monday, April 20, 2026 1:45 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

[EXTERNAL]

Thanks, Abigail.

With respect to "the original drive" for the ghillie suit mission, please let us know how recovery is going, and give us a report from qualified personnel that adequately describes the media, its condition and efforts to restore.  Also, Mr. Callaghan testified that there were three to five drives, up to 3 TB each, from the pre 2023 era.  They were never collected and have never been forensically preserved. Your assumption that "all of that data is contained in the larger server" is an assumption that needs to be tested.  We look forward to a report about all of the drives.  This is particularly relevant because any drive containing media used for the project also likely contains (inter alia) relevant project files.

Which brings me to project files and media cache databases.  If you collected the server as described, and it purportedly contained everything, then you have had these project files in your possession all along.  They don't contain privileged information.  We are talking about drag and drop ease of production.  There is no reason for the delay in evaluating our position and providing a response.   Please provide one now.

Your request for clarification with respect to supplemental responses is confusing.  Your recent agreements to produce documents are in direct conflict with your sworn responses, eg (without limitation) 7, 8, 9, 11 and 19.  And one of the problems we are having is that we can have a telephone conversation one day about what you are going to produce, and find out the next day that we didn't hear the same thing.  This is why sworn responses are required.  And I don't understand your reference to "without waiver of appropriately asserted objections."  We don't think you have any.  So if that's what we need to litigate, let's litigate it.  If you refuse

6

to supplement, then we will litigate on the responses you've provided. If that's the case, I'm not sure why we've gone through this meet and confer process or how you'll explain that to the court.

Regarding the Mac hard drive, what we've requested is that you image it and evaluate the presence of relevant data. There's no question, based on the testimony, that this computer was the one used to ingest media and work on the film project. This is basic. If you won't do it, we will ask the court to do so.

We need to present the court with what we agree on and what we don't. I intend to contact the court by the end of this week. With or without your cooperation in that.

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Wednesday, April 15, 2026 2:40 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis,

We are continuing to look for the documents you want, to the extent they exist, and we're preparing a supplemental production of documents, which we expect to start producing to you next week. In addition, we have obtained the original drive where footage from the "ghillie suit" filming session was deposited, and sent it to our vendor to run the comparison you requested. It appears, however, that the drive has some sort of mechanical fault, and they cannot access its contents. Notwithstanding that we believe these measures are not proportional to the needs of the case as we have already collected copies of all files on this drive, we will be sending the drive to Drive Savers to see if they can recover it so we can perform the comparison you requested.

Can you clarify what supplemental discovery responses you are asking for? I don't believe you've identified anything "incomplete or incorrect" in our clients' RFP responses, *see* FRCP 26(e), and our agreement to produce additional documents is without waiver of appropriately asserted objections. But if I'm missing something please let me know.

Regarding the "Mac hard drive," am I correct you're referring to the one or more Mac computers that were used to transfer files from recording devices to external hard drives? I'm not aware of testimony about any of those computers being used to "collect and process the original media." As Mr. Callaghan testified, the original media was moved to external storage drives using a Mac computer, not stored on any such computer. If you're referring to something else, or have specific testimony in mind about a relevant computer, please let me know.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Monday, April 13, 2026 8:18 PM
**To:** Lachman, Sam <SamLachman@dwt.com>; Everdell, Abigail <AbigailEverdell@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

**[EXTERNAL]**

Counsel,

Please provide status on the following:

Your inquiry into project files and media cache database files.

Receipt of additional documents that you have agreed to produce.

Supplemental discovery responses.

With respect to the issue of the Mac hard drive, perhaps I was mistaken on our call. Since it is indisputably the hard drive used to collect and process the original media, I believed it to be included in what you would be imaging. Imaging the drive, at least for preservation purposes, should have been done already. That it hasn't been is a little disturbing. In any event, checking it for relevant data is also something you should have done already. If you won't do it, we'll bring it up with the court.

I note that the language we are using with respect to what you have agreed to produce differs. We don't seem to agree on whether ESI that "is related to" something (v. "evidences" something) will be produced. We will bring that up with the court as well.

And I think we are getting the point where court involvement is prudent.

**From:** Lachman, Sam <SamLachman@dwt.com>
**Sent:** Friday, April 3, 2026 5:28 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Everdell, Abigail <AbigailEverdell@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Hi Dennis,

I've attached our letter memorializing what we discussed during the call this morning.

Thanks,
Sam

**Sam Lachman**   She/Her/Hers
**Associate,** Davis Wright Tremaine LLP

**P** 213.633.8611  **C** 919-780-9795  **E** samlachman@dwt.com
**A** 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071

DWT.COM

---

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Friday, April 3, 2026 3:15 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey
<meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

---

[EXTERNAL]

---

Abigail –

Thanks for the chat this morning.  Here is where I think we are.

"Without conceding relevance," you have agreed to produce the following (thank you):

        all published iterations of the film (RPD 1)

        documents relating to the purpose for defendants' presence at Joiner's home and office. (RPD 7 & 8)

        documents regarding attempts to locate Joiner (RPD 11)

        communications between the defendants relating to recordings of any Joiner properties (RPD 19)

You state that there are no documents to produce:

        relating to the purpose, possession or use of ghille suits (RPD 9)

        relating to defendants' intent regarding audio and video of Joiner properties (RPD 16)

Disputes remain regarding the following:

        documents relating to the "editorial process" or "what to include in the Film" (seemingly qualifying the
        responses to RPD 16 and 19)

        communications regarding Joiner (RPD 23)

        communications relating to post-demand letter communications between the defendants regarding the
        litigation.  (Though this request does not ask for these, we agreed that communications between client
        and counsel post-letter need not be logged.)

        the files C0040 through C0046 in the "Home Invasion" A7#2 camera sequence.

Note that, at the least, we will need supplemental discovery responses reflecting the above.  The present
responses do not.

With respect to the collection issues, you have agreed to (again, thank you):

        Image the hard drives which originally stored the media collected for the Project;

        Image the Mac hard drive which was originally used to transfer and edit media for the Project;

9

Have Lighthouse compare those images to what was first collected from the server and look for discrepancies.

You are still assessing our request for Adobe Premier Pro project files (*..prproj) and Media Cache Databases (*.mcdb) and we will reconvene soon to discuss.

Let me know if I got anything wrong.  Talk soon.

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Tuesday, March 31, 2026 8:28 AM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis,

We disagree entirely that you've sufficiently articulated the relevance of your requests—in fact we don't understand at all how you think any of these demanded documents could bear upon your federal claims given the comprehensive materials we've already produced to you.  But we can discuss this week.

Regarding the forensic consultant asks, we could use some time to look into the feasibility of these.  Are you available to have this call on Thursday?

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Monday, March 30, 2026 5:18 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

**[EXTERNAL]**

---

Abigail,

We think we've sufficiently articulated the relevance of our requests.

After conferring with my forensic consultant, our ask is as follows:

1)  Image the hard drives which originally stored the media collected for the Project;

2) Image the Mac hard drive which was originally used to transfer and edit media for the Project;

(This is what should have been done in the first place anyway.)

3) Compare those images to what was first collected from the server, and provide a Lighthouse declaration regarding the comparison, which describes any relevant differences;

4) Provide all of the Adobe Premier Pro project files (*..prproj) associated with the Project and contained on any of the drives;

5) Provide all of the Adobe Premier Pro Media Cache Databases (*.db) associated with the Project and contained on any of the drives.

Right now, my calendar is open on Wednesday.  Name your time to discuss.

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Friday, March 27, 2026 12:27 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis,

We disagree that our collection or production were inadequate or that the parameters we applied to our production were insufficiently broad to provide you all direct or circumstantial evidence of wiretapping.

To reiterate, we performed a complete collection from the solid state drive where all relevant footage had been deposited, and produced to you 361 documents and footage files including all material showing our clients within 1000 feet of your client's home or place of business—the relevant distance per your own discovery requests—or even farther away in some cases for avoidance of doubt.  We also looked for any other evidence that your client's communications were intercepted or recorded in any way, and found none.  And, we searched our clients' cell phones and email accounts and produced all other files or correspondence evidencing their presence at Mr. Joiner's home or office.  If there had been any discussion of wiretapping your client or any evidence that this occurred, we would have produced it.  And Mr. Callaghan has now testified under oath that neither he nor anyone else at Channel 5 has ever met Mr. Joiner, seen Mr. Joiner, heard his voice, recorded him in any way, or been in possession of any of his private communications.  We are also surprised that you are raising concerns now about responses and objections we served on June 6, 2025, nearly ten months ago.  That being said, we are happy to meet and confer to discuss your concerns.

To facilitate our conversation, could you please provide us the following context:

1. Was Mr. Joiner present at his office park when the defendants visited?  To be clear, we have already produced every single recording made at the office park, and Mr. Callaghan has testified he never encountered Mr. Joiner at this visit or at any other time.  What is your basis for believing that additional evidence about that visit would be reasonably calculated to lead to additional relevant information about your wiretap claims?

11

2. Was Mr. Joiner present at home when the defendants filmed from a field outside Shady Canyon?  To be clear, we have already produced every single recording made during this filming session or otherwise within Shady Canyon, and Mr. Callaghan has testified he never encountered Mr. Joiner at this filming session or at any other time.  What is your basis for believing that additional evidence about that filming session would be reasonably calculated to lead to additional relevant information about your wiretap claims?

3. Do you have any reason to believe that Defendants were within 1000 feet—the distance specified in your requests for production—of Mr. Joiner or his home at any point otherwise?  If so, what is the basis of this belief?

4. At what point do you believe any of the Defendants had the opportunity to intercept or record any of Mr. Joiner's confidential communications?  How could such interception or recording have been done?  To be clear, Andrew Callaghan has testified under oath that Defendants never intercepted or recorded any of Mr. Joiner's communications and did not use recording equipment that would have allowed such interception from the places they recorded.

5. You have repeatedly referred to our clients "trespassing" on your client's property.  Can you please clarify what evidence supports this claim?  We have not seen, and are not aware of, any evidence of our clients trespassing on your client's property.

6. Can you please explain why information relating to the acquisition or possession of a camouflage "ghillie suit" is reasonably calculated to lead to relevant evidence about wiretapping?

7. Can you please explain why you believe efforts to contact Mr. Joiner are relevant to a claim about wiretapping him?

8. Can you please explain why documents about intent to use recordings of Mr. Joiner's home or office that do not constitute or evidence intercepted communications are relevant to a wiretap claim?  To be clear, we have already produced all recordings of Mr. Joiner's home or office.

9. Can you please explain why different versions of the Documentary are reasonably calculated to lead to relevant evidence about your wiretap claim?  To be clear, we produced all footage of your client's home or place of business used in any version of the Documentary.

10. Can you please explain why communications about Mr. Joiner's house or place of business, which do not include any discussion of recording or recorded communications, are reasonably calculated to lead to relevant evidence about the unlawful interception of your client's confidential communications?

Regarding your concerns with our document collection, it isn't clear from your email whether you intend to refine this list.  We'd like to see a complete list of asks before conferring, so why don't you send that along and we can talk after we see it.  We can't talk until Wednesday of next week anyway.  Let us know when you have time during the second half of next week.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Wednesday, March 25, 2026 11:58 PM

**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

**[EXTERNAL]**

Abigail –

Following today's telephone call, we write to memorialize deficiencies in Defendant Channel 5 LLC's Objections and Responses to Plaintiff's First Set of Requests for Production (the "Responses") and to formally request a telephone conference to meet and confer prior to motion practice.  We've tried to group the disputes into categories, which we address in turn below.

## RELEVANCE TO FEDERAL v. STATE CLAIMS (RFP NOS. 7, 8, 9, 11, 16, 17, 19, 22, 23)

In response to RFP Nos. 7, 8, 9, 11, 16, 17, 19, 22, and 23, Channel 5 refuses to produce any documents whatsoever.  For each of these, C5 objects on the basis of relevance to the Federal Claims and outside the scope of the Court's Order staying discovery on State Claims.
Plaintiff's claims under the Federal Wiretap Act, 18 U.S.C. § 2510 et seq., and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 are not stayed. Every one of the RFPs at issue is directly, substantively relevant to those federal claims.

> **RFP No. 7** (purpose of Defendants' presence at the Joiner Residence) and **RFP No. 8** (purpose at the Joiner Business): The "purpose" of Defendants' presence goes to the heart of intentional interception under the Wiretap Act. The Act imposes liability on any person who "intentionally intercepts" an oral, wire, or electronic communication. 18 U.S.C. § 2511(1)(a). Documents evidencing why Defendants were at Plaintiff's home and office are directly relevant to intent and knowledge — essential elements of the federal claim.

> **RFP No. 9** (ghillie suit): Callaghan and his co-defendants wore ghillie suits — military-grade camouflage — while conducting surveillance of Plaintiff's residence. Files from the defendants' own hard drives label the footage subdirectory "Bill Joiner home invasion." Documents concerning the acquisition, possession, and use of ghillie suits in proximity to the Joiner Residence are probative of Defendants' deliberate, premeditated plan to surveil Plaintiff without detection — directly relevant to the intentional interception elements of 18 U.S.C. § 2511(1)(a) and (1)(b).

> **RFP No. 11** (attempts to locate Joiner): Documents evidencing the pre-surveillance steps Defendants took to locate Plaintiff are relevant to the planning, purpose, and deliberateness of the interception activity.

> **RFP Nos. 16 and 17** (intent regarding use of recordings; inter-defendant communications regarding Joiner): Communications between Defendants regarding Plaintiff and regarding their intent to use recordings directly bear on the federal claims. They go to mens rea, planning, and the scope of the conspiracy to intercept communications.

> **RFP Nos. 19 and 23** (communications re recordings of Joiner Properties; all communications regarding Joiner): Same analysis. Inter-defendant communications about Plaintiff and the recordings of his properties are squarely relevant to the wiretapping claims, irrespective of any state law claim.

> **RFP No. 22** (communications regarding litigation and pre-suit demand letters): Channel 5 was put on notice of Plaintiff's claims through pre-suit demand letters before this action was filed. Communications between the Defendants once they knew of litigation may reveal discussions of recording efforts,

13

preservation or destruction of relevant materials, knowledge of the wrongfulness of their conduct and their state of mind — factors relevant to the "intentional" element of the Wiretap Act and to any willfulness finding.

Your blanket refusals to produce on this basis are unwarranted.

## FIRST AMENDMENT PRIVILEGE (ALL REQUESTS)

Across nearly every response, Channel 5 asserts a sweeping First Amendment and California constitutional privilege over "unpublished footage" and "unpublished editorial information." You invoked it again on our call today.  The qualified reporter's privilege does not apply here.

As Ninth Circuit authorities recognize, and as this court has previously stated in this case, the First Amendment to the Constitution is not a license for a "reporter" (even if Callaghan could be called that) to trespass and intrude.

crimes committed during the course of newsgathering," and "[t]he First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office." *Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971); *see also Turnbull v. Am. Broad. Cos.*, 2004 WL 2924590, at *18 (C.D. Cal. Aug. 19, 2004) (citing *Dietemann*, 449 F.2d at 249-50).

Fundamentally, the journalist's privilege exists to protect the editorial process and, particularly, to shield confidential sources from compelled disclosure. Shoen I, 5 F.3d at 1292; Mitchell v. Superior Court, 37 Cal. 3d 268, 279 (1984). It was never intended to permit a media defendant to suppress evidence of its own alleged illegal conduct. Channel 5 and Andrew Callaghan are defendants in this action. The privilege protects journalists from being conscripted as unwilling witnesses against third parties; it does not protect journalists who themselves stand accused of wiretapping from producing evidence of their own conduct. As your own firm has published with respect to the California Constitution, the immunity conferred on a reporter, even when available, isn't available in a civil action in which the reporter is a party.

Even when the reporter is a third party, the Ninth Circuit recognizes that the privilege yields where the party seeking discovery shows that: (1) the information is highly relevant to the claims at issue; (2) the information cannot reasonably be obtained through other means; and (3) there is a compelling need for the information. Shoen I, 5 F.3d at 1292–93; Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Shoen II")  All three elements are satisfied here in spades.

Now you have stated in your email this evening: "As I also stated clearly and repeatedly, we did not withhold any relevant evidence based on privilege."  Great.  You shouldn't have any problem dropping the objection.  Thanks.

## PRIOR ITERATIONS OF THE FILM (RFP NO. 1)

In response to RFP No. 1, Channel 5 agreed to produce only "the version of the FILM referenced in Paragraph 8 of the Complaint." This limitation is improper. RFP No. 1 expressly seeks the FILM as defined in the RFPs, which expressly includes "the final cut and any and all prior iterations of said film, whether or not shown to the public, including any film previously referred to as 'Finding Bill Joiner.'"

14

Prior iterations of the film are directly relevant to the federal claims. According to Mr. Callaghan, various versions with different cuts were produced.  The other versions may contain evidence of recordings which those previously produced do not.

## DIRECT v. CIRCUMSTANTIAL EVIDENCE

Following our latest communications, perhaps this next dispute is best characterized as one concerning direct v. circumstantial evidence.

Channel 5's Third Production contains a gap in the "Home Invasion" A7#2 camera footage: files C0040 through C0046 are entirely absent. The footage immediately preceding and following this gap shows Defendants in ghillie suits trespassing in Shady Grove.

You confirmed on our call that you are withholding this material. Your stated basis shifted during the conversation.  Your email this evening now states: "They were not filmed within 1000 feet of your client's home (the parameter in your own discovery requests) and contain no evidence of wiretapping."  Perhaps you are oversimplifying Request No. 6 ("All DOCUMENTS **relating to, referring to or** evidencing DEFENDANTS' physical presence within 1000 feet of the JOINER PROPERTIES.") Given the context, these files fall within that request, but they are likely also FOOTAGE, (**RPD 2**) which relates to Defendant's presence at the JOINER PROPERTIES (**RPD 5**) and/or their purpose (**RPD 7)** and related to attempts to surveille Joiner **(RPD 12),** to name a few.

Federal Rule of Civil Procedure 26(b)(1) defines discoverable material broadly as anything "reasonably calculated to lead to the discovery of admissible evidence." The decision to withhold it based on a unilateral determination that it lacks relevance is precisely the kind of impermissible self-serving scope limitation that Rule 26 is designed to prevent.

Your position betrays perhaps a more basic area of dispute.  It seems that, in order to be "relevant" in your view, the evidence must be a video file taken in a certain proximity of a certain place from which you think it might be possible to record Mr. Joiner.  A file which contains *direct* evidence of recording (or not).  Let us be clear.  The video you are withholding seems undoubtedly to have been taken by the ghillie-suited defendants and their iphone toting, drone flying cohorts whilst on their self-styled "daring mission for revenge." Based on review of related content, it is evident that such footage relates to what they were doing on that trip and why, and may contain discussion of what they've done and what they are planning to do.  It's reasonably calculated. And we will move to get it if we have to.

## ADEQUACY OF COLLECTION

At deposition, Mr. Callaghan testified that Channel 5 retained Lighthouse eDiscovery to collect media for this litigation. He testified that Lighthouse took a forensic image of a server he acknowledged was not created until the spring of 2023, well after the relevant surveillance events. Mr. Callaghan also testified that: (a) the original Dear Kelly footage was stored on a Mac desktop computer and three to five solid state drives; (b) he retains all of those original devices; and (c) Lighthouse conducted no collection of the original Mac or the original solid state drives.

Counsel has relied (without verification) on Mr. Callaghan's representation that everything was copied to the server.  This is essentially custodian self harvesting without any verification or compliance monitoring by counsel.  Courts have been sanctioning parties and counsel for that for at least 20 years since *Zubulake*.

We do not consider this to be adequate search and collection or a "reasonable inquiry."  I'm thinking right now that we should consider the following: (1) imaging of the original Mac desktop and all solid state drives identified by Mr. Callaghan; (2) production of a portion of the image already created of the server; (3) production of the Adobe Premiere Pro project files for the Dear Kelly project, which may contain a log of ingested media, version history, and metadata bearing on what was recorded and retained; and (4) a

15

supplemental declaration from a Lighthouse representative addressing the scope of collection and confirming what was and was not captured.

I need to refine these thoughts with my forensic consultant and will be prepared to further at the conference.  I hope we can find a solution short of motion practice.  At the moment, my Monday is pretty open.  Should we plan to talk then?

---

**From:** Everdell, Abigail <AbigailEverdell@dwt.com>
**Sent:** Wednesday, March 25, 2026 6:47 PM
**To:** Dennis Canty <Dennis@themurpheylawyers.com>; Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

Dennis –

To your first point, you are mischaracterizing what I said during our call.  As I explained clearly and repeatedly, we performed a diligent search and produced all footage and other documents showing our clients within the near vicinity of Mr. Joiner's home or office or evidencing any recordings made of Mr. Joiner or his home.  Other footage files that do not show either – including those between C0040 and C0046 – are not relevant and are not reasonably calculated to lead to the discovery of relevant evidence.  To be clear:  We have reviewed these files.  They were not filmed within 1000 feet of your client's home (the parameter in your own discovery requests) and contain no evidence of wiretapping.  In addition, I never stated that "the parameters" of our review were limited to only videos showing our clients "actually trespassing on Mr. Joiner's property."  If that were the case, we would have produced no documents at all, since our clients never trespassed on Mr. Joiner's property.  Your claim is also belied by the numerous video files we produced showing our clients *outside* of the Shady Canyon community and in the Shady Canyon clubhouse.  As I also stated clearly and repeatedly, we did not withhold any relevant evidence based on privilege.

We moreover disagree entirely that the additional discovery you have proposed is proportional to the needs of the case.  As Mr. Callaghan testified, Channel 5 put copies of all footage files for the documentary on a single solid-state drive, and used the files from that drive to create the Documentary.  You have offered no reason to believe that the additional discovery measures you have proposed might lead to additional evidence to support your federal claims, because there is none.  Instead, you are proposing these measures *five months* after we produced footage to you, and only after we have insisted upon meeting and conferring on your lack of evidence.  Notably, you have not produced a single piece of evidence to support your federal claims.  There is little question here that you are engaged in a fishing expedition and employing delay tactics.

This being said, and without waiver of all rights, we will consider any reasonable requests for supplemental information.  Please send those over promptly.

Best,
Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

---

**From:** Dennis Canty <Dennis@themurpheylawyers.com>
**Sent:** Wednesday, March 25, 2026 3:41 PM
**To:** Lachman, Sam <SamLachman@dwt.com>; Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>
**Cc:** Everdell, Abigail <AbigailEverdell@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** RE: Channel 5 Defendants' Third Production of Documents

---

[EXTERNAL]

---

Abigail –

Thanks for the chat today to discuss your letter attached.

As stated, we are continuing to review your supplemental production and discuss with our forensic consultant.  For the reasons discussed and evidenced in your letter, we continue to have concerns about whether all material relevant to our "Federal Claims" has been collected and produced.

Among other things, we discussed the glaring gap in your production for camera A7#2 between C0040 and C0046.  The preceding media and the following media show the trespassers in ghillie suits commencing the self-described "home invasion."  You stated that you are withholding this material.  You weren't exactly clear on the basis for this, one moment referencing journalistic privilege, and the next, relevance.  As stated on the call, it appears to us that subject matter and timing of the framing media support center-bullseye relevance for the material omitted.

You stated that you have reviewed the material, but because it doesn't show the protagonists on Mr. Joiner's property, it isn't relevant.  As I stated, to the extent the material may lead to the discovery of admissible evidence – e.g. the protagonists located in a previously unknown area, discussing what else they have done and recorded that day, or their plans for the evening's incursion – it is unquestionably discoverable on this issue.  You have now clarified for us the parameters of your review and production: if it doesn't show the protagonists actually trespassing on Mr. Joiner's property, you have decided it isn't relevant and we don't get to see it.

It appears we have a major dispute about the parameters of your collection and review that we need to address with the court.

Further, deposition testimony revealed that counsel's collection of media was limited to Mr. Callaghan's server.  That server did not exist at the time of the visits to Mr. Joiner's home and office.  Mr. Callaghan testified that the "Documentary" project was begun well before that time, and the media at issue in your present productions was originally transferred to a Mac computer and solid state drives.  He testified he is still in possession of these devices.  Based upon his representation that he later transferred all data from the other devices to the server, you collected only the image of the later created server.  You have conducted no search of the original media, nor any investigation as to whether his representations are accurate.

In other words, the accuracy and completeness of the production is tethered entirely to the word of the defendant.  A defendant who, as the deposition testimony established, has repeatedly and admittedly

17

misrepresented the contents of the storage devices in his possession.  Who has a reason to lie and a history of lying.

We do not agree that this is a reasonable search under the Federal Rules.  We have another major dispute.

As I indicated, we have some ideas on how we might rectify the problems with collection and production.  This involves imaging and production of the original hard drives, perhaps production of a portion of the image already performed, and production of the Adobe Premier Pro project files, which may provide a log of the media ingested as part of the project and its disposition over time.  I want to provide the most specific information I can about this request, and will be conferring with my forensic consultant.

I will provide you with further details as soon as possible.

---

**From:** Lachman, Sam <SamLachman@dwt.com>
**Sent:** Monday, March 9, 2026 5:47 PM
**To:** Meghan Murphey <meghan@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Dennis Canty <Dennis@themurpheylawyers.com>
**Cc:** Everdell, Abigail <AbigailEverdell@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>; Kerry Moynihan <kerry@themurpheylawyers.com>
**Subject:** Channel 5 Defendants' Third Production of Documents

Hello,

The Channel 5 Defendants' third production has been uploaded to DWT's secure FTP portal.  Instructions are attached.  Please let us know if you have any trouble accessing the files.

I've also attached a cover regarding Plaintiff's federal claims.

Thanks,
Sam



**Sam Lachman**   She/Her/Hers
**Associate |** Davis Wright Tremaine LLP

**P** 213.633.8611  **C** 919-780-9795  **E** samlachman@dwt.com
**A** 350 South Grand Avenue, 27th Floor, Los Angeles, CA 90071

**DWT.COM**  in

18

# EXHIBIT 10

**Pearmain, Lina**

| | |
|---|---|
| **From:** | Meghan Murphey <meghan@themurpheylawyers.com> |
| **Sent:** | Monday, April 27, 2026 5:49 PM |
| **To:** | KS_Chambers@cacd.uscourts.gov |
| **Cc:** | Dennis Canty; Matt Murphey; Everdell, Abigail; Segal, Jonathan; Lachman, Sam |
| **Subject:** | Re: Discovery dispute - Joiner v. Callaghan, et al., Case No. 8:24-cv-01160-CBM-KS |

**[EXTERNAL]**

Good evening - following up on my email below. Please advise as to whether you need us to find alternative available dates. Thank you.

Meghan C. Murphey
**Murphey & Murphey, A.P.C.**
Tel: 949-464-4540

**From:** Meghan Murphey <meghan@themurpheylawyers.com>
**Sent:** Thursday, April 23, 2026 4:35 PM
**To:** KS_Chambers@cacd.uscourts.gov <KS_Chambers@cacd.uscourts.gov>
**Cc:** Dennis Canty <Dennis@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Everdell, Abigail <abigaileverdell@dwt.com>; Segal, Jonathan <jonathansegal@dwt.com>; Lachman, Sam <samlachman@dwt.com>
**Subject:** Discovery dispute - Joiner v. Callaghan, et al., Case No. 8:24-cv-01160-CBM-KS

Dear Chambers:

My office represents plaintiff William Joiner in the above-captioned action, and I have copied counsel for the defendants (all but Kelly Johnson) on this email. I write to request a telephone conference with the Court to discuss the parties' discovery dispute.

As required by the Court's standing order, plaintiff submitted a neutral statement for defendants' input, with one sentence describing each party's position at the end.  Attached is the result, with markups inserted by defendants' counsel.  The parties are available Tuesday from 10am-3pm and Wednesday from 10am-1pm.

Thank you,
Meghan

**Meghan C. Murphey**
120 Vantis Dr. Suite 300
Aliso Viejo, California 92656
Tel: (949) 464-4540

27307 State Hwy. 189, Suite 206

PO Box 4204
Blue Jay, California 92317
Tel: (909) 657-9366

www.themurpheylawyers.com

Joiner v. Callaghan, et al., Case No. 8:24-cv-01160-CBM-KS

STATEMENT requesting discovery conference.


Plaintiff William Joiner asserts claims (inter alia) under the Federal Wiretap Act, 18 U.S.C. § 2510 et seq., and the Electronic Communications Privacy Act. Plaintiff alleges that Defendants Andrew Callaghan and Channel 5 LLC intercepted, and attempted to intercept, his private communications during production of a documentary film. Plaintiff's allegations are based solely upon footage in the film and its trailer showing Defendants filmed outside Plaintiff's home and office. Discovery on Plaintiff's state-law claims is stayed pending the Ninth Circuit's resolution of Defendants' anti-SLAPP appeal, see ECF No. 36, and discovery on the federal Wiretap Act and Electronic Communications Privacy Act claims is proceeding. Following service of Plaintiff's First Set of Requests for Production on April 30, 2025, the Channel 5 Defendants served written responses and objections on June 9, 2025 and have since made three productions of documents and audiovisual files.

The parties have engaged in the pre-filing conference process required by C.D. Cal. L.R. 37-1 over the past weeks, conferring by telephone and exchanging detailed correspondence on multiple occasions. Those efforts have narrowed, but not resolved, the issues in dispute. At least four categories of disagreement remain.

First, the parties disagree about whether Defendants must serve supplemental responses to production demands under Rules 34, 26(e), and 37, updating objections and statements of compliance to reflect their present positions and the production agreements reached during meet-and-confer.  Defendants contend that their objections in their written responses remain appropriate, and they have made clear in written correspondence with plaintiffs what documents they will produce notwithstanding those objections.  Plaintiff contends [...]  One major piece of this dispute concerns the effect of the stipulated discovery stay as to state court claims and what the parties consider to be "relevant."

Second, Defendants continue to withhold production of camera video files C0042–C0046, which Defendants have represented were not recorded within 1000 feet of plaintiff's property and do not contain or refer to any recordings of Plaintiff.  Plaintiff believes these videos are relevant because they were recorded on the night defendants recorded from a field adjacent to plaintiff's gated community, and bookended by produced videos showing defendants in ghillie suits.

Third, the parties disagree about whether Defendants must produce the Adobe Premiere Pro project files (.prproj) and Media Cache Database files (.mcdb) associated with the documentary project.  Defendant contends that these files are not relevant because the

Documentary contained no recordings of Plaintiff, and the burden of review is not proportional to the needs of the case as there are at least 1500 project files which would each require a close review of numerous components.  Defendants have nonetheless agreed to confer on whether or how they might target relevant evidence among these files, to the extent any exists (which Defendants deny).

Fourth, the parties disagree about the adequacy of Defendants' ESI collection and whether a pre-2023 Mac workstation used to work on the project should be imaged and searched. Defendant contends that when this workstation was used for the Documentary they worked from a connected solid-state hard drive not from the computer's own hard drive; that Defendants already imaged and searched the solid-state hard drive; and Defendants' counsel moreover performed an on-site examination of the workstation and found no reason to believe it contains relevant materials.

Plaintiff contends the disputed materials are relevant and discoverable under Fed. R. Civ. P. 26(b)(1). Defendants contend that certain of the materials are not relevant and the additional measures sought are not proportional to the needs of the case.

# EXHIBIT 11

## Pearmain, Lina

| | |
|---|---|
| **From:** | Everdell, Abigail |
| **Sent:** | Tuesday, April 28, 2026 7:57 PM |
| **To:** | Meghan Murphey; Lachman, Sam; Segal, Jonathan |
| **Cc:** | Dennis Canty; Matt Murphey; Olivia Andonian |
| **Subject:** | RE: Continuance of the Discovery Cut-Off |

Meghan,

We will not agree to a continuance of the discovery deadline.  Our most recent production was in response to concerns you raised with our written discovery responses nearly ten months after we served them, when you could have raised these concerns at any time prior.  Your delay is not grounds to extend the discovery deadline, particularly when you already have every document that could conceivably be relevant to your baseless federal claims.

Abigail

**Abigail Everdell**
**Counsel,** Davis Wright Tremaine LLP

**P** 212.603.6468  **E** abigaileverdell@dwt.com
**A** 1251 Avenue of the Americas, 42nd Floor, New York, NY 10020-1104
**DWT.COM**

**From:** Meghan Murphey <meghan@themurpheylawyers.com>
**Sent:** Tuesday, April 28, 2026 1:09 PM
**To:** Everdell, Abigail <AbigailEverdell@dwt.com>; Lachman, Sam <SamLachman@dwt.com>; Segal, Jonathan <JonathanSegal@dwt.com>
**Cc:** Dennis Canty <Dennis@themurpheylawyers.com>; Matt Murphey <matt@themurpheylawyers.com>; Olivia Andonian <olivia@themurpheylawyers.com>
**Subject:** Continuance of the Discovery Cut-Off

**[EXTERNAL]**

Counsel:

Given the ongoing discovery dispute and our need to review new documents just produced yesterday, we intend to move the court to continue the discovery cut-off date by approximately thirty days, to June 1 (May 30 is a Saturday).  Please advise as to whether your clients will stipulate to such request. Thank you.

Meghan

**Meghan C. Murphey**
120 Vantis Dr. Suite 300
Aliso Viejo, California 92656
Tel: (949) 464-4540

27307 State Hwy. 189, Suite 206

PO Box 4204
Blue Jay, California 92317
Tel: (909) 657-9366

www.themurpheylawyers.com

# EXHIBIT 12



April 30, 2026

RE: DWS01_WILLJ / DWS01_JOIN2 – CHANNEL 5 JOINER MATTER

My name is Ryan Maxwell.  I am a Director of Digital Forensics at Lighthouse, an industry leader in technology-enabled eDiscovery and information governance services.  In 2025, Lighthouse earned a Band 1 ranking from Chambers and Partners for the fourth consecutive year.  I have held this position at Lighthouse for 5 years and have over 20 years of experience consulting within the field of Digital Forensics.

Lighthouse took custody of a Western Digital "Passport for Mac" external hard drive, Serial No WX62A616U5HF, labeled "FBJ-Original" from Channel 5 LLC's office in Los Angeles on April 23, 2026 (the "Passport" drive).  We obtained a forensic image of this drive on April 27, 2026, for preservation and analysis.

The Passport drive contains a folder called "Bill Joiner home invasion," which includes a variety of files, including video footage, all showing Last Modified dates in 2019 - 2021.  We performed a comparison of the files and folders on the Passport drive to the files and folders found within a forensic image we previously obtained of an OWC Thunder Bay RAID storage enclosure, Serial No OWUS0000106903, (the "OWC Server"), which was collected from Channel 5 LLC on March 31, 2025.  Through a comparison of folder and file names, we confirmed that all files from the "Bill Joiner home invasion" folder contained on the Passport drive had corresponding matches present on the OWC Server.

Sincerely,

Ryan Maxwell